# EXHIBIT E



**280 King of Prussia Road, Radnor, Pennsylvania 19087 • 610-667-7706 • Fax: 610-667-7056 • info@ktmc.com**
**One Sansome Street, Suite 1850, San Francisco, CA 94104 • 415-400-3000 • Fax: 415-400-3001 • info@ktmc.com**

**www.ktmc.com**

# FIRM PROFILE

Since 1987, Kessler Topaz Meltzer & Check, LLP has specialized in the prosecution of securities class actions and has grown into one of the largest and most successful shareholder litigation firms in the field. With offices in Radnor, Pennsylvania and San Francisco, California, the Firm is comprised of 94 attorneys as well as an experienced support staff consisting of over 80 paralegals, in-house investigators, legal clerks and other personnel. With a large and sophisticated client base (numbering over 180 institutional investors from around the world -- including public and Taft-Hartley pension funds, mutual fund managers, investment advisors, insurance companies, hedge funds and other large investors), Kessler Topaz has developed an international reputation for excellence and has extensive experience prosecuting securities fraud actions. For the past several years, the National Law Journal has recognized Kessler Topaz as one of the top securities class action law firms in the country. In addition, the Legal Intelligencer recently awarded Kessler Topaz with its Class Action Litigation Firm of The Year award. Lastly, Kessler Topaz and several of its attorneys are regularly recognized by Legal500 and Benchmark: Plaintiffs as leaders in our field.

Kessler Topaz is serving or has served as lead or co-lead counsel in many of the largest and most significant securities class actions pending in the United States, including actions against: Bank of America, Duke Energy, Lehman Brothers, Hewlett Packard, Johnson & Johnson, JPMorgan Chase, Morgan Stanley and MGM Mirage, among others. As demonstrated by the magnitude of these high-profile cases, we take seriously our role in advising clients to seek lead plaintiff appointment in cases, paying special attention to the factual elements of the fraud, the size of losses and damages, and whether there are viable sources of recovery.

Kessler Topaz has recovered billions of dollars in the course of representing defrauded shareholders from around the world and takes pride in the reputation we have earned for our dedication to our clients. Kessler Topaz devotes significant time to developing relationships with its clients in a manner that enables the Firm to understand the types of cases they will be interested in pursuing and their expectations. Further, the Firm is committed to pursuing meaningful corporate governance reforms in cases where we suspect that systemic problems within a company could lead to recurring litigation and where such changes also have the possibility to increase the value of the underlying company. The Firm is poised to continue protecting rights worldwide.

## NOTEWORTHY ACHIEVEMENTS

*During the Firm's successful history, Kessler Topaz has recovered billions of dollars for defrauded stockholders and consumers. The following are among the Firm's notable achievements:*

## Securities Fraud Litigation

*In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* **Master File No. 09 MDL 2058:**
Kessler Topaz, as Co-Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Bank of America Corp. ("BoA") and certain of BoA's officers and board members relating to BoA's merger with Merrill Lynch & Co. ("Merrill") and its failure to inform its shareholders of billions of dollars of losses which Merrill had suffered before the pivotal shareholder vote, as well as an undisclosed agreement allowing Merrill to pay up to $5.8 billion in bonuses before the acquisition closed, despite these losses. On September 28, 2012, the Parties announced a $2.425 billion case settlement with BoA to settle all claims asserted against all defendants in the action which has since received final approval from the Court. BoA also agreed to implement significant corporate governance improvements. The settlement, reached after almost four years of litigation with a trial set to begin on October 22, 2012, amounts to 1) the sixth largest securities class action lawsuit settlement ever; 2) the fourth largest securities class action settlement ever funded by a single corporate defendant; 3) the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; 4) the single largest securities class action settlement ever resolving a Section 14(a) claim (the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation); and 5) by far the largest securities class action settlement to come out of the subprime meltdown and credit crisis to date*.*

*In re Tyco International, Ltd. Sec. Litig.,* **No. 02-1335-B (D.N.H. 2002):**
Kessler Topaz, which served as Co-Lead Counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3.2 billion settlement with Tyco International, Ltd. ("Tyco") and their auditor PricewaterhouseCoopers ("PwC"). The $2.975 billion settlement with Tyco represents the single-largest securities class action recovery from a single corporate defendant in history. In addition, the $225 million settlement with PwC represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history.

The action asserted federal securities claims on behalf of all purchasers of Tyco securities between December 13, 1999 and June 7, 2002 ("Class Period") against Tyco, certain former officers and directors of Tyco and PwC. Tyco is alleged to have overstated its income during the Class Period by $5.8 billion through a multitude of accounting manipulations and shenanigans. The case also involved allegations of looting and self-dealing by the officers and directors of the Company. In that regard, Defendants L. Dennis Kozlowski, the former CEO and Mark H. Swartz, the former CFO have been sentenced to up to 25 years in prison after being convicted of grand larceny, falsification of business records and conspiracy for their roles in the alleged scheme to defraud investors.

As presiding Judge Paul Barbadoro aptly stated in his Order approving the final settlement, "[i]t is difficult to overstate the complexity of [the litigation]." Judge Barbadoro noted the extraordinary effort required to pursue the litigation towards its successful conclusion, which included the review of more than 82.5 million pages of documents, more than 220 depositions and over 700 hundred discovery requests and responses. In addition to the complexity of the litigation, Judge Barbadoro also highlighted the great risk undertaken by

Co-Lead Counsel in pursuit of the litigation, which he indicated was greater than in other multi-billion dollar securities cases and "put [Plaintiffs] at the cutting edge of a rapidly changing area of law."

In sum, the Tyco settlement is of historic proportions for the investors who suffered significant financial losses and it has sent a strong message to those who would try to engage in this type of misconduct in the future.

**In re Tenet Healthcare Corp. Sec. Litig., No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):**
Kessler Topaz served as Co-Lead Counsel in this action. A partial settlement, approved on May 26, 2006, was comprised of three distinct elements: (i) a substantial monetary commitment of $215 million by the company; (ii) personal contributions totaling $1.5 million by two of the individual defendants; and (iii) the enactment and/or continuation of numerous changes to the company's corporate governance practices, which have led various institutional rating entities to rank Tenet among the best in the U.S. in regards to corporate governance. The significance of the partial settlement was heightened by Tenet's precarious financial condition. Faced with many financial pressures — including several pending civil actions and federal investigations, with total contingent liabilities in the hundreds of millions of dollars — there was real concern that Tenet would be unable to fund a settlement or satisfy a judgment of any greater amount in the near future. By reaching the partial settlement, we were able to avoid the risks associated with a long and costly litigation battle and provide a significant and immediate benefit to the class. Notably, this resolution represented a unique result in securities class action litigation — personal financial contributions from individual defendants. After taking the case through the summary judgment stage, we were able to secure an additional $65 million recovery from KPMG – Tenet's outside auditor during the relevant period – for the class, bringing the total recovery to $281.5 million.

**In re Wachovia Preferred Securities and Bond/Notes Litigation, Master File No. 09 Civ. 6351 (RJS) (S.D.N.Y.):**
Kessler Topaz, as court-appointed Co-Lead Counsel, asserted class action claims for violations of the Securities Act of 1933 on behalf of all persons who purchased Wachovia Corporation ("Wachovia") preferred securities issued in thirty separate offerings (the "Offerings") between July 31, 2006 and Mary 29, 2008 (the "Offering Period"). Defendants in the action included Wachovia, various Wachovia related trusts, Wells Fargo as successor-in-interest to Wachovia, certain of Wachovia's officer and board members, numerous underwriters that underwrote the Offerings, and KPMG LLP ("KPMG"), Wachovia's former outside auditor. Plaintiffs alleged that the registration statements and prospectuses and prospectus supplements used to market the Offerings to Plaintiffs and other members of the class during the Offerings Period contained materially false and misleading statements and omitted material information. Specifically, the Complaint alleged that in connection with the Offerings, Wachovia: (i) failed to reveal the full extent to which its mortgage portfolio was increasingly impaired due to dangerously lax underwriting practices; (ii) materially misstated the true value of its mortgage-related assets; (iii) failed to disclose that its loan loss reserves were grossly inadequate; and (iv) failed to record write-downs and impairments to those assets as required by Generally Accepted Accounting Principles ("GAAP"). Even as Wachovia faced insolvency, the Offering Materials assured investors that Wachovia's capital and liquidity positions were "strong," and that it was so "well capitalized" that it was actually a "provider of liquidity" to the market. On August 5, 2011, the Parties announced a $590 million cash settlement with Wells Fargo (as successor-in-interest to Wachovia) and a $37 million cash settlement with KPMG, to settle all claims asserted against all defendants in the action. This settlement was approved by the Hon. Judge Richard J. Sullivan by order issued on January 3, 2012.

**In re Initial Public Offering Sec. Litig., Master File No. 21 MC 92(SAS):**
This action settled for $586 million on January 1, 2010, after years of litigation overseen by U.S. District Judge Shira Scheindlin. Kessler Topaz served on the plaintiffs' executive committee for the case, which was based upon the artificial inflation of stock prices during the dot-com boom of the late 1990s that led to

the collapse of the technology stock market in 2000 that was related to allegations of laddering and excess commissions being paid for IPO allocations.

*In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.):
Kessler Topaz, as Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Longtop Financial Technologies Ltd. ("Longtop"), its Chief Executive Officer, Weizhou Lian, and its Chief Financial Officer, Derek Palaschuk. The claims against Longtop and these two individuals were based on a massive fraud that occurred at the company. As the CEO later confessed, the company had been a fraud since 2004. Specifically, Weizhou Lian confessed that the company's cash balances and revenues were overstated by hundreds of millions of dollars and it had millions of dollars in unrecorded bank loans. The CEO further admitted that, in 2011 alone, Longtop's revenues were overstated by about 40 percent. On November 14, 2013, after Weizhou Lian and Longtop failed to appear and defend the action, Judge Shira Scheindlin entered default judgment against these two defendants in the amount of $882.3 million plus 9 percent interest running from February 21, 2008 to the date of payment. The case then proceeded to trial against Longtop's CFO who claimed he did not know about the fraud - and was not reckless in not knowing – when he made false statements to investors about Longtop's financial results. On November 21, 2014, the jury returned a verdict on liability in favor of plaintiffs. Specifically, the jury found that the CFO was liable to the plaintiffs and the class for each of the eight challenged misstatements. Then, on November 24, 2014, the jury returned its damages verdict, ascribing a certain amount of inflation to each day of the class period and apportioning liability for those damages amongst the three named defendants. The Longtop trial was only the 14th securities class action to be tried to a verdict since the passage of the Private Securities Litigation Reform Act in 1995 and represents a historic victory for investors.

*Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund v. Lehman Brothers Holdings, Inc.,* No. 1:08-cv-05523-LAK (S.D.N.Y.):
Kessler Topaz, on behalf of lead plaintiffs, asserted claims against certain individual defendants and underwriters of Lehman securities arising from misstatements and omissions regarding Lehman's financial condition, and its exposure to the residential and commercial real estate markets in the period leading to Lehman's unprecedented bankruptcy filing on September 14, 2008. In July 2011, the Court sustained the majority of the amended Complaint finding that Lehman's use of Repo 105, while technically complying with GAAP, still rendered numerous statements relating to Lehman's purported Net Leverage Ration materially false and misleading. The Court also found that Defendants' statements related to Lehman's risk management policies were sufficient to state a claim. With respect to loss causation, the Court also failed to accept Defendants' contention that the financial condition of the economy led to the losses suffered by the Class. As the case was being prepared for trial, a $517 million settlement was reached on behalf of shareholders --- $426 million of which came from various underwriters of the Offerings, representing a significant recovery for investors in this now bankrupt entity. In addition, $90 million came from Lehman's former directors and officers, which is significant considering the diminishing assets available to pay any future judgment. Following these settlements, the litigation continued against Lehman's auditor, Ernst & Young LLP. A settlement for $99 million was subsequently reached with Ernst & Young LLP and was approved by the Court.

*Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al.* Case No. 0:08-cv-06324-PAM-AJB (D. Minn.):
Kessler Topaz brought an action on behalf of lead plaintiffs that alleged that the company failed to disclose its reliance on illegal "off-label" marketing techniques to drive the sales of its INFUSE Bone Graft ("INFUSE") medical device. While physicians are allowed to prescribe a drug or medical device for any use they see fit, federal law prohibits medical device manufacturers from marketing devices for any uses not specifically approved by the United States Food and Drug Administration. The company's off-label marketing practices have resulted in the company becoming the target of a probe by the federal government

which was revealed on November 18, 2008, when the company's CEO reported that Medtronic received a subpoena from the United States Department of Justice which is "looking into off-label use of INFUSE." After hearing oral argument on Defendants' Motions to Dismiss, on February 3, 2010, the Court issued an order granting in part and denying in part Defendants' motions, allowing a large portion of the action to move forward. The Court held that Plaintiff successfully stated a claim against each Defendant for a majority of the misstatements alleged in the Complaint and that each of the Defendants knew or recklessly disregarded the falsity of these statements and that Defendants' fraud caused the losses experienced by members of the Class when the market learned the truth behind Defendants' INFUSE marketing efforts. While the case was in discovery, on April 2, 2012, Medtronic agreed to pay shareholders an $85 million settlement. The settlement was approved by the Court by order issued on November 8, 2012.

*In re Brocade Sec. Litig.*, **Case No. 3:05-CV-02042 (N.D. Cal. 2005) (CRB):**
The complaint in this action alleges that Defendants engaged in repeated violations of federal securities laws by backdating options grants to top executives and falsified the date of stock option grants and other information regarding options grants to numerous employees from 2000 through 2004, which ultimately caused Brocade to restate all of its financial statements from 2000 through 2005. In addition, concurrent SEC civil and Department of Justice criminal actions against certain individual defendants were commenced. In August, 2007 the Court denied Defendant's motions to dismiss and in October, 2007 certified a class of Brocade investors who were damaged by the alleged fraud. Discovery is currently proceeding and the case is being prepared for trial. Furthermore, while litigating the securities class action Kessler Topaz and its co-counsel objected to a proposed settlement in the Brocade derivative action. On March 21, 2007, the parties in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C05-02233 (N.D. Cal. 2005) (CRB) gave notice that they had obtained preliminary approval of their settlement. According to the notice, which was buried on the back pages of the Wall Street Journal, Brocade shareholders were given less than three weeks to evaluate the settlement and file any objection with the Court. Kessler Topaz client Puerto Rico Government Employees' Retirement System ("PRGERS") had a large investment in Brocade and, because the settlement was woefully inadequate, filed an objection. PRGERS, joined by fellow institutional investor Arkansas Public Employees Retirement System, challenged the settlement on two fundamental grounds. First, PRGERS criticized the derivative plaintiffs for failing to conduct any discovery before settling their claims. PRGERS also argued that derivative plaintiff's abject failure to investigate its own claims before providing the defendants with broad releases from liability made it impossible to weigh the merits of the settlement. The Court agreed, and strongly admonished derivative plaintiffs for their failure to perform this most basic act of service to their fellow Brocade shareholders. The settlement was rejected and later withdrawn. Second, and more significantly, PRGERS claimed that the presence of the well-respected law firm Wilson, Sonsini Goodrich and Rosati, in this case, created an incurable conflict of interest that corrupted the entire settlement process. The conflict stemmed from WSGR's dual role as counsel to Brocade and the Individual Settling Defendants, including WSGR Chairman and former Brocade Board Member Larry Sonsini. On this point, the Court also agreed and advised WSGR to remove itself from the case entirely. On May 25, 2007, WSGR complied and withdrew as counsel to Brocade. The case settled for $160 million and was approved by the Court.

*In re Satyam Computer Services, Ltd. Sec. Litig.*, **No. 09 MD 02027 (BSJ) (S.D.N.Y.):**
Kessler Topaz served as Co-Lead Counsel in this securities fraud class action in the Southern District of New York. The action asserts claims by lead plaintiffs for violations of the federal securities laws against Satyam Computer Services Limited ("Satyam" or the "Company") and certain of Satyam's former officers and directors and its former auditor PricewaterhouseCoopers International Ltd. ("PwC") relating to the Company's January 7, 2009, disclosure admitting that B. Ramalinga Raju ("B. Raju"), the Company's former chairman, falsified Satyam's financial reports by, among other things, inflating its reported cash balances by more than $1 billion. The news caused the price of Satyam's common stock (traded on the National Stock Exchange of India and the Bombay Stock Exchange) and American Depository Shares ("ADSs") (traded on the New York Stock Exchange ("NYSE")) to collapse. From a closing price of $3.67

per share on January 6, 2009, Satyam's common stock closed at $0.82 per share on January 7, 2009. With respect to the ADSs, the news of B. Raju's letter was revealed overnight in the United States and, as a result, trading in Satyam ADSs was halted on the NYSE before the markets opened on January 7, 2009. When trading in Satyam ADSs resumed on January 12, 2009, Satyam ADSs opened at $1.14 per ADS, down steeply from a closing price of $9.35 on January 6, 2009. Lead Plaintiffs filed a consolidated complaint on July 17, 2009, on behalf of all persons or entities, who (a) purchased or otherwise acquired Satyam's ADSs in the United States; and (b) residents of the United States who purchased or otherwise acquired Satyam shares on the National Stock Exchange of India or the Bombay Stock Exchange between January 6, 2004 and January 6, 2009. Co-Lead Counsel secured a settlement for $125 million from Satyam on February 16, 2011. Additionally, Co-Lead Counsel was able to secure a $25.5 million settlement from PwC on April 29, 2011, who was alleged to have signed off on the misleading audit reports.

### *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, Case No. 07-CV-61542 (S.D. Fla. 2007):

On November 18, 2010, a panel of nine Miami, Florida jurors returned the first securities fraud verdict to arise out of the financial crisis against BankAtlantic Bancorp. Inc., its chief executive officer and chief financial officer. This case was only the tenth securities class action to be tried to a verdict following the passage of the Private Securities Litigation Reform Act of 1995, which governs such suits. Following extensive post-trial motion practice, the District Court upheld all of the Jury's findings of fraud but vacated the damages award on a narrow legal issue and granted Defendant's motion for a judgment as a matter of law. Plaintiffs appealed to the U.S. Court of Appeals for the Eleventh Circuit. On July 23, 2012, a three-judge panel for the Appeals Court found the District Court erred in granting the Defendant's motion for a judgment as a matter of law based in part on the Jury's findings (perceived inconsistency of two of the Jury's answers to the special interrogatories) instead of focusing solely on the sufficiency of the evidence. However, upon its review of the record, the Appeals Court affirmed the District Court's decision as it determined the Plaintiffs did not introduce evidence sufficient to support a finding in its favor on the element of loss causation. The Appeals Court's decision in this case does not diminish the five years of hard work which Kessler Topaz expended to bring the matter to trial and secure an initial jury verdict in the Plaintiffs' favor. This case is an excellent example of the Firm's dedication to our clients and the lengths it will go to try to achieve the best possible results for institutional investors in shareholder litigation.

### *In re AremisSoft Corp. Sec. Litig.,* C.A. No. 01-CV-2486 (D.N.J. 2002):

Kessler Topaz is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, one of whom remains a fugitive. In settling the action, Kessler Topaz, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new company to allow for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The approved Settlement enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of any amounts recovered by the litigation trust. During this litigation, actions have been initiated in the Isle of Man, Cyprus, as well as in the United States as we continue our efforts to recover assets stolen by corporate insiders and related entities.

### *In re CVS Corporation Sec. Litig.,* C.A. No. 01-11464 JLT (D.Mass. 2001):

Kessler Topaz, serving as Co-Lead Counsel on behalf of a group of institutional investors, secured a cash recovery of $110 million for the class, a figure which represents the third-largest payout for a securities action in Boston federal court. Kessler Topaz successfully litigated the case through summary judgment before ultimately achieving this outstanding result for the class following several mediation sessions, and just prior to the commencement of trial.

*In re Marvell Technology, Group, Ltd. Sec. Lit., Master* **File No. 06-06286 RWM:**

Kessler Topaz served as Co-Lead Counsel in this securities class action brought against Marvell Technology Group Ltd. ("Marvell") and three of Marvell's executive officers. This case centered around an alleged options backdating scheme carried out by Defendants from June 2000 through June 2006, which enabled Marvell's executives and employees to receive options with favorable option exercise prices chosen with the benefit of hindsight, in direct violation of Marvell's stock option plan, as well as to avoid recording hundreds of millions of dollars in compensation expenses on the Marvell's books. In total, the restatement conceded that Marvell had understated the cumulative effect of its compensation expense by $327.3 million, and overstated net income by $309.4 million, for the period covered by the restatement. Following nearly three years of investigation and prosecution of the Class' claims as well as a protracted and contentious mediation process, Co-Lead Counsel secured a settlement for $72 million from defendants on June 9, 2009. This Settlement represents a substantial portion of the Class' maximum provable damages, and is among the largest settlements, in total dollar amount, reached in an option backdating securities class action.

*In re Delphi Corp. Sec. Litig.,* **Master File No. 1:05-MD-1725 (E.D. Mich. 2005):**

In early 2005, various securities class actions were filed against auto-parts manufacturer Delphi Corporation in the Southern District of New York. Kessler Topaz its client, Austria-based mutual fund manager Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen"), were appointed as Co-Lead Counsel and Co-Lead Plaintiff, respectively. The Lead Plaintiffs alleged that (i) Delphi improperly treated financing transactions involving inventory as sales and disposition of inventory; (ii) improperly treated financing transactions involving "indirect materials" as sales of these materials; and (iii) improperly accounted for payments made to and credits received from General Motors as warranty settlements and obligations. As a result, Delphi's reported revenue, net income and financial results were materially overstated, prompting Delphi to restate its earnings for the five previous years. Complex litigation involving difficult bankruptcy issues has potentially resulted in an excellent recovery for the class. In addition, Co-Lead Plaintiffs also reached a settlement of claims against Delphi's outside auditor, Deloitte & Touche, LLP, for $38.25 million on behalf of Delphi investors.

*In re Royal Dutch Shell European Shareholder Litigation*, **No. 106.010.887, Gerechtshof Te Amsterdam (Amsterdam Court of Appeal):**

Kessler Topaz was instrumental in achieving a landmark $352 million settlement on behalf non-US investors with Royal Dutch Shell plc relating to Shell's 2004 restatement of oil reserves. This settlement of securities fraud claims on a class-wide basis under Dutch law was the first of its kind, and sought to resolve claims exclusively on behalf of European and other non-United States investors. Uncertainty over whether jurisdiction for non-United States investors existed in a 2004 class action filed in federal court in New Jersey prompted a significant number of prominent European institutional investors from nine countries, representing more than one billion shares of Shell, to actively pursue a potential resolution of their claims outside the United States. Among the European investors which actively sought and supported this settlement were Alecta pensionsförsäkring, ömsesidigt, PKA Pension Funds Administration Ltd., Swedbank Robur Fonder AB, AP7 and AFA Insurance, all of which were represented by Kessler Topaz.

*In re Computer Associates Sec. Litig.,* **No. 02-CV-1226 (E.D.N.Y. 2002):**

Kessler Topaz served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Kessler Topaz helped obtain a settlement of $150 million in cash and stock from the company.

*In re The Interpublic Group of Companies Sec. Litig.,* **No. 02 Civ. 6527 (S.D.N.Y. 2002):**

Kessler Topaz served as sole Lead Counsel in this action on behalf of an institutional investor and received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of the final hearing in the case, the stock had an approximate value of $87 million, resulting in a total

settlement value of approximately $107 million. In granting its approval, the Court praised Kessler Topaz for acting responsibly and noted the Firm's professionalism, competence and contribution to achieving such a favorable result.

***In re Digital Lightwave, Inc. Sec. Litig.,* Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):**
The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions in history measured by the percentage of damages recovered. After extensive litigation and negotiations, a settlement consisting primarily of stock was worth over $170 million at the time when it was distributed to the Class. Kessler Topaz took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses.

***In re Transkaryotic Therapies, Inc. Sec. Litig.,* Civil Action No.: 03-10165-RWZ (D. Mass. 2003):**
After five years of hard-fought, contentious litigation, Kessler Topaz as Lead Counsel on behalf of the Class, entered into one of largest settlements ever against a biotech company with regard to non-approval of one of its drugs by the U.S. Food and Drug Administration ("FDA"). Specifically, the Plaintiffs alleged that Transkaryotic Therapies, Inc. ("TKT") and its CEO, Richard Selden, engaged in a fraudulent scheme to artificially inflate the price of TKT common stock and to deceive Class Members by making misrepresentations and nondisclosures of material facts concerning TKT's prospects for FDA approval of Replagal, TKT's experimental enzyme replacement therapy for Fabry disease. With the assistance of the Honorable Daniel Weinstein, a retired state court judge from California, Kessler Topaz secured a $50 million settlement from the Defendants during a complex and arduous mediation.

***In re PNC Financial Services Group, Inc. Sec. Litig.,* Case No. 02-CV-271 (W.D. Pa. 2002):**
Kessler Topaz served as Co-Lead Counsel in a securities class action case brought against PNC bank, certain of its officers and directors, and its outside auditor, Ernst & Young, LLP ("E&Y"), relating to the conduct of Defendants in establishing, accounting for and making disclosures concerning three special purpose entities ("SPEs") in the second, third and fourth quarters of PNC's 2001 fiscal year. Plaintiffs alleged that these entities were created by Defendants for the sole purpose of allowing PNC to secretly transfer hundreds of millions of dollars worth of non-performing assets from its own books to the books of the SPEs without disclosing the transfers or consolidating the results and then making positive announcements to the public concerning the bank's performance with respect to its non-performing assets. Complex issues were presented with respect to all defendants, but particularly E&Y. Throughout the litigation E&Y contended that because it did not make any false and misleading statements itself, the Supreme Court's opinion in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1993) foreclosed securities liability for "aiding or abetting" securities fraud for purposes of Section 10(b) liability. Plaintiffs, in addition to contending that E&Y did make false statements, argued that Rule 10b-5's deceptive conduct prong stood on its own as an independent means of committing fraud and that so long as E&Y itself committed a deceptive act, it could be found liable under the securities laws for fraud. After several years of litigation and negotiations, PNC paid $30 million to settle the action, while also assigning any claims it may have had against E&Y and certain other entities that were involved in establishing and/or reporting on the SPEs. Armed with these claims, class counsel was able to secure an additional $6.6 million in settlement funds for the class from two law firms and a third party insurance company and $9.075 million from E&Y. Class counsel was also able to negotiate with the U.S. government, which had previously obtained a disgorgement fund of $90 million from PNC and $46 million from the third party insurance carrier, to combine all funds into a single settlement fund that exceeded $180 million and is currently in the process of being distributed to the entire class, with PNC paying all costs of notifying the Class of the settlement.

*In re SemGroup Energy Partners, L.P., Sec. Litig.*, **No. 08-md-1989 (DC) (N.D. Okla.):**
Kessler Topaz, which was appointed by the Court as sole Lead Counsel, litigated this matter, which ultimately settled for $28 million. The defense was led by 17 of the largest and best capitalized defense law firms in the world. On April 20, 2010, in a fifty-page published opinion, the United States District Court for the Northern District of Oklahoma largely denied defendants' ten separate motions to dismiss Lead Plaintiff's Consolidated Amended Complaint. The Complaint alleged that: (i) defendants concealed SemGroup's risky trading operations that eventually caused SemGroup to declare bankruptcy; and (ii) defendants made numerous false statements concerning SemGroup's ability to provide its publicly-traded Master Limited Partnership stable cash-flows. The case was aggressively litigated out of the Firm's San Francisco and Radnor offices and the significant recovery was obtained, not only from the Company's principals, but also from its underwriters and outside directors.

*In re Liberate Technologies Sec. Litig.*, **No. C-02-5017 (MJJ) (N.D. Cal. 2005):**
Kessler Topaz represented plaintiffs which alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, Kessler Topaz successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

*In re Riverstone Networks, Inc. Sec. Litig.*, **Case No. CV-02-3581 (N.D. Cal. 2002):**
Kessler Topaz served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of extensive mediation, the parties reached a settlement of $18.5 million.

## Shareholder Derivative Actions

*In re Facebook, Inc. Class C Reclassification Litig.*, **C.A. No. 12286-VCL (Del. Ch. Sept. 25, 2017):**
Kessler Topaz served as co-lead counsel in this stockholder class action that challenged a proposed reclassification of Facebook's capital structure to accommodate the charitable giving goals of its founder and controlling stockholder Mark Zuckerberg. The Reclassification involved the creation of a new class of nonvoting Class C stock, which would be issued as a dividend to all Facebook Class A and Class B stockholders (including Zuckerberg) on a 2-for-1 basis. The purpose and effect of the Reclassification was that it would allow Zuckerberg to sell billions of dollars worth of nonvoting Class C shares without losing his voting control of Facebook. The litigation alleged that Zuckerberg and Facebook's board of directors breached their fiduciary duties in approving the Reclassification at the behest of Zuckerberg and for his personal benefit. At trial Kessler Topaz was seeking a permanent injunction to prevent the consummation of the Reclassification. The litigation was carefully followed in the business and corporate governance communities, due to the high-profile nature of Facebook, Zuckerberg, and the issues at stake. After almost a year and a half of hard fought litigation, just one business day before trial was set to commence, Facebook and Zuckerberg abandoned the Reclassification, granting Plaintiffs complete victory.

*In re CytRx Stockholder Derivative Litig.*, **Consol. C.A. No. 9864-VCL (Del. Ch. Nov. 20, 2015):**
Kessler Topaz served as co-lead counsel in a shareholder derivative action challenging 2.745 million "spring-loaded" stock options. On the day before CytRx announced the most important news in the Company's history concerning the positive trial results for one of its significant pipeline drugs, the Compensation Committee of CytRx's Board of Directors granted the stock options to themselves, their

fellow directors and several Company officers which immediately came "into the money" when CytRx's stock price shot up immediately following the announcement the next day.  Kessler Topaz negotiated a settlement recovering 100% of the excess compensation received by the directors and approximately 76% of the damages potentially obtainable from the officers. In addition, as part of the settlement, Kessler Topaz obtained the appointment of a new independent director to the Board of Directors and the implementation of significant reforms to the Company's stock option award processes.  The Court complimented the settlement, explaining that it "serves what Delaware views as the overall positive function of stockholder litigation, which is not just recovery in the individual case but also deterrence and norm enforcement."

***International Brotherhood of Electrical Workers Local 98 Pension Fund v. Black, et al.***, **Case No. 37-2011-00097795-CU-SL-CTL (Sup. Ct. Cal., San Diego Feb. 5, 2016)** *("Encore Capital Group, Inc.")*:
Kessler Topaz, as co-lead counsel, represented International Brotherhood of Electrical Workers Local 98 Pension Fund in a shareholder derivative action challenging breaches of fiduciary duties and other violations of law in connection with Encore's debt collection practices, including robo-signing affidavits and improper use of the court system to collect alleged consumer debts.  Kessler Topaz negotiated a settlement in which the Company implemented industry-leading reforms to its risk management and corporate governance practices, including creating Chief Risk Officer and Chief Compliance Officer positions, various compliance committees, and procedures for consumer complaint monitoring.

***In re Southern Peru Copper Corp. Derivative Litigation,*** **Consol. CA No. 961-CS (Del. Ch. 2011):**
Kessler Topaz served as co-lead counsel in this landmark $2 billion post-trial decision, believed to be the largest verdict in Delaware corporate law history.  In 2005, Southern Peru, a publicly-traded copper mining company, acquired Minera Mexico, a private mining company owned by Southern Peru's majority stockholder Grupo Mexico.  The acquisition required Southern Peru to pay Grupo Mexico more than $3 billion in Southern Peru stock.  We alleged that Grupo Mexico had caused Southern Peru to grossly overpay for the private company in deference to its majority shareholder's interests.  Discovery in the case spanned years and continents, with depositions in Peru and Mexico.  The trial court agreed and ordered Grupo Mexico to pay more than $2 billion in damages and interest.  The Delaware Supreme Court affirmed on appeal.

***Quinn v. Knight***, **No. 3:16-cv-610 (E.D. Va. Mar. 16, 2017) ("*Apple REIT Ten*"):**
This shareholder derivative action challenged a conflicted "roll up" REIT transaction orchestrated by Glade M. Knight and his son Justin Knight.  The proposed transaction paid the Knights millions of dollars while paying public stockholders less than they had invested in the company.  The case was brought under Virginia law, and settled just ten days before trial, with stockholders receiving an additional $32 million in merger consideration.

***Kastis v. Carter***, **C.A. No. 8657-CB (Del. Ch. Sept. 19, 2016) ("*Hemispherx Biopharma, Inc.*"):**
This derivative action challenged improper bonuses paid to two company executives of this small pharmaceutical company that had never turned a profit. In response to the complaint, Hemispherx's board first adopted a "fee-shifting" bylaw that would have required stockholder plaintiffs to pay the company's legal fees unless the plaintiffs achieved 100% of the relief they sought. This sort of bylaw, if adopted more broadly, could substantially curtail meritorious litigation by stockholders unwilling to risk losing millions of dollars if they bring an unsuccsessful case. After Kessler Topaz presented its argument in court, Hemispherx withdrew the bylaw. Kessler Topaz ultimately negotiated a settlement requiring the two executives to forfeit several million dollars' worth of accrued but unpaid bonuses, future bonuses and director fees. The company also recovered $1.75 million from its insurance carriers, appointed a new independent director to the board, and revised its compensation program.

*Montgomery v. Erickson, Inc., et al.*, **C.A. No. 8784-VCL (Del. Ch. Sept. 12, 2016):**
Kessler Topaz represented an individual stockholder who asserted in the Delaware Court of Chancery class action and derivative claims challenging merger and recapitalization transactions that benefitted the company's controlling stockholders at the expense of the company and its minority stockholders. Plaintiff alleged that the controlling stockholders of Erickson orchestrated a series of transactions with the intent and effect of using Erickson's money to bail themselves out of a failing investment. Defendants filed a motion to dismiss the complaint, which Kessler Topaz defeated, and the case proceeded through more than a year of fact discovery. Following an initially unsuccessful mediation and further litigation, Kessler Topaz ultimately achieved an $18.5 million cash settlement, 80% of which was distributed to members of the stockholder class to resolve their direct claims and 20% of which was paid to the company to resolve the derivative claims. The settlement also instituted changes to the company's governing documents to prevent future self-dealing transactions like those that gave rise to the case.

*In re Helios Closed-End Funds Derivative Litig.*, **No. 2:11-cv-02935-SHM-TMP (W.D. Tenn.):**
Kessler Topaz represented stockholders of four closed-end mutual funds in a derivative action against the funds' former investment advisor, Morgan Asset Management. Plaintiffs alleged that the defendants mismanaged the funds by investing in riskier securities than permitted by the funds' governing documents and, after the values of these securities began to precipitously decline beginning in early 2007, cover up their wrongdoing by assigning phony values to the funds' investments and failing to disclose the extent of the decrease in value of the funds' assets. In a rare occurrence in derivative litigation, the funds' Boards of Directors eventually hired Kessler Topaz to prosecute the claims against the defendants on behalf of the funds. Our litigation efforts led to a settlement that recovered $6 million for the funds and ensured that the funds would not be responsible for making any payment to resolve claims asserted against them in a related multi-million dollar securities class action. The fund's Boards fully supported and endorsed the settlement, which was negotiated independently of the parallel securities class action.

*In re Viacom, Inc. Shareholder Derivative Litig.*, **Index No. 602527/05 (New York County, NY 2005):**
Kessler Topaz represented the Public Employees' Retirement System of Mississippi and served as Lead Counsel in a derivative action alleging that the members of the Board of Directors of Viacom, Inc. paid excessive and unwarranted compensation to Viacom's Executive Chairman and CEO, Sumner M. Redstone, and co-COOs Thomas E. Freston and Leslie Moonves, in breach of their fiduciary duties. Specifically, we alleged that in fiscal year 2004, when Viacom reported a record net loss of $17.46 billion, the board improperly approved compensation payments to Redstone, Freston, and Moonves of approximately $56 million, $52 million, and $52 million, respectively. Judge Ramos of the New York Supreme Court denied Defendants' motion to dismiss the action as we overcame several complex arguments related to the failure to make a demand on Viacom's Board; Defendants then appealed that decision to the Appellate Division of the Supreme Court of New York. Prior to a decision by the appellate court, a settlement was reached in early 2007. Pursuant to the settlement, Sumner Redstone, the company's Executive Chairman and controlling shareholder, agreed to a new compensation package that, among other things, substantially reduces his annual salary and cash bonus, and ties the majority of his incentive compensation directly to shareholder returns.

*In re Family Dollar Stores, Inc. Derivative Litig.,* **Master File No. 06-CVS-16796 (Mecklenburg County, NC 2006):**
Kessler Topaz served as Lead Counsel, derivatively on behalf of Family Dollar Stores, Inc., and against certain of Family Dollar's current and former officers and directors. The actions were pending in Mecklenburg County Superior Court, Charlotte, North Carolina, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of these shareholder derivative actions, Kessler Topaz was able to achieve substantial relief for Family Dollar and its shareholders. Through Kessler Topaz's litigation of this action, Family Dollar agreed to cancel hundreds of thousands of stock options

granted to certain current and former officers, resulting in a seven-figure net financial benefit for the company. In addition, Family Dollar has agreed to, among other things: implement internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; appoint two new independent directors to the board of directors; maintain a board composition of at least 75 percent independent directors; and adopt stringent officer stock-ownership policies to further align the interests of officers with those of Family Dollar shareholders. The settlement was approved by Order of the Court on August 13, 2007.

***Carbon County Employees Retirement System, et al., Derivatively on Behalf of Nominal Defendant Southwest Airlines Co. v. Gary C. Kelly, et al.* Cause No. 08-08692 (District Court of Dallas County, Texas):**
As lead counsel in this derivative action, we negotiated a settlement with far-reaching implications for the safety and security of airline passengers.

Our clients were shareholders of Southwest Airlines Co. (Southwest) who alleged that certain officers and directors had breached their fiduciary duties in connection with Southwest's violations of Federal Aviation Administration safety and maintenance regulations. Plaintiffs alleged that from June 2006 to March 2007, Southwest flew 46 Boeing 737 airplanes on nearly 60,000 flights without complying with a 2004 FAA Airworthiness Directive requiring fuselage fatigue inspections. As a result, Southwest was forced to pay a record $7.5 million fine. We negotiated numerous reforms to ensure that Southwest's Board is adequately apprised of safety and operations issues, and implementing significant measures to strengthen safety and maintenance processes and procedures.

***The South Financial Group, Inc. Shareholder Litigation,* C.A. No. 2008-CP-23-8395 (S.C. C.C.P. 2009):**
Represented shareholders in derivative litigation challenging board's decision to accelerate "golden parachute" payments to South Financial Group's CEO as the company applied for emergency assistance in 2008 under the Troubled Asset Recovery Plan (TARP).

We sought injunctive relief to block the payments and protect the company's ability to receive the TARP funds. The litigation was settled with the CEO giving up part of his severance package and agreeing to leave the board, as well as the implementation of important corporate governance changes one commentator described as "unprecedented."

## Options Backdating

In 2006, the Wall Street Journal reported that three companies appeared to have "backdated" stock option grants to their senior executives, pretending that the options had been awarded when the stock price was at its lowest price of the quarter, or even year.  An executive who exercised the option thus paid the company an artificially low price, which stole money from the corporate coffers.  While stock options are designed to incentivize recipients to drive the company's stock price up, backdating options to artificially low prices undercut those incentives, overpaid executives, violated tax rules, and decreased shareholder value.

Kessler Topaz worked with a financial analyst to identify dozens of other companies that had engaged in similar practices, and filed more than 50 derivative suits challenging the practice.  These suits sought to force the executives to disgorge their improper compensation and to revamp the companies' executive compensation policies.  Ultimately, as lead counsel in these derivative actions, Kessler Topaz achieved significant monetary and non-monetary benefits at dozens of companies, including:

*Comverse Technology, Inc.*:  Settlement required Comverse's founder and CEO Kobi Alexander, who fled to Namibia after the backdating was revealed, to disgorge more than $62 million in excessive backdated option compensation.  The settlement also overhauled the company's corporate governance and internal controls, replacing a number of directors and corporate executives, splitting the Chairman and CEO positions, and instituting majority voting for directors.

*Monster Worldwide, Inc.*:  Settlement required recipients of backdated stock options to disgorge more than $32 million in unlawful gains back to the company, plus agreeing to significant corporate governance measures. These measures included (a) requiring Monster's founder Andrew McKelvey to reduce his voting control over Monster from 31% to 7%, by exchanging super-voting stock for common stock; and (b) implementing new equity granting practices that require greater accountability and transparency in the granting of stock options moving forward. In approving the settlement, the court noted "the good results, mainly the amount of money for the shareholders and also the change in governance of the company itself, and really the hard work that had to go into that to achieve the results…."

*Affiliated Computer Services, Inc.*:  Settlement required executives, including founder Darwin Deason, to give up $20 million in improper backdated options.  The litigation was also a catalyst for the company to replace its CEO and CFO and revamp its executive compensation policies.

## Mergers & Acquisitions Litigation

*City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al.*, C.A. No. 12481-VCL (Del. Ch.):
On September 12, 2017, the Delaware Chancery Court approved one of the largest class action M&A settlements in the history of the Delaware Chancery Court, a $86.5 million settlement relating to the acquisition of ExamWorks Group, Inc. by private equity firm Leonard Green & Partners, LP.

The settlement caused ExamWorks stockholders to receive a 6% improvement on the $35.05 per share merger consideration negotiated by the defendants. This amount is unusual especially for litigation challenging a third-party merger. The settlement amount is also noteworthy because it includes a $46.5 million contribution from ExamWorks' outside legal counsel, Paul Hastings LLP.

*In re ArthroCare Corporation S'holder Litig., Consol.* C.A. No. 9313-VCL (Del. Ch. Nov. 13, 2014):
Kessler Topaz, as co-lead counsel, challenged the take-private of Arthrocare Corporation by private equity firm Smith & Nephew.  This class action litigation alleged, among other things, that Arthrocare's Board breached their fiduciary duties by failing to maximize stockholder value in the merger.  Plaintiffs also alleged that that the merger violated Section 203 of the Delaware General Corporation Law, which prohibits mergers with "interested stockholders," because Smith & Nephew had contracted with JP Morgan to provide financial advice and financing in the merger, while a subsidiary of JP Morgan owned more than 15% of Arthrocare's stock.  Plaintiffs also alleged that the agreement between Smith & Nephew and the JP Morgan subsidiary violated a "standstill" agreement between the JP Morgan subsidiary and Arthrocare.  The court set these novel legal claims for an expedited trial prior to the closing of the merger.  The parties agreed to settle the action when Smith & Nephew agreed to increase the merger consideration paid to Arthrocare stockholders by $12 million, less than a month before trial.

*In re Safeway Inc. Stockholders Litig.,* C.A. No. 9445-VCL (Del. Ch. Sept. 17, 2014):
Kessler Topaz represented the Oklahoma Firefighters Pension and Retirement System in class action litigation challenging the acquisition of Safeway, Inc. by Albertson's grocery chain for $32.50 per share in cash and contingent value rights.  Kessler Topaz argued that the value of CVRs was illusory, and Safeway's shareholder rights plan had a prohibitive effect on potential bidders making superior offers to acquire

Safeway, which undermined the effectiveness of the post-signing "go shop." Plaintiffs sought to enjoin the transaction, but before the scheduled preliminary injunction hearing took place, Kessler Topaz negotiated (i) modifications to the terms of the CVRs and (ii) defendants' withdrawal of the shareholder rights plan. In approving the settlement, Vice Chancellor Laster of the Delaware Chancery Court stated that "the plaintiffs obtained significant changes to the transaction . . . that may well result in material increases in the compensation received by the class," including substantial benefits potentially in excess of $230 million.

*In re MPG Office Trust, Inc. Preferred Shareholder Litig.,* **Cons. Case No. 24-C-13-004097 (Md. Cir. Oct. 20, 2015):**
Kessler Topaz challenged a coercive tender offer whereby MPG preferred stockholders received preferred stock in Brookfield Office Properties, Inc. without receiving any compensation for their accrued and unpaid dividends. Kessler Topaz negotiated a settlement where MPG preferred stockholders received a dividend of $2.25 per share, worth approximately $21 million, which was the only payment of accrued dividends Brookfield DTLA Preferred Stockholders had received as of the time of the settlement.

*In re Globe Specialty Metals, Inc. Stockholders Litig.,* **C.A. 10865-VCG (Del. Ch. Feb. 15, 2016):**
Kessler Topaz served as co-lead counsel in class action litigation arising from Globe's acquisition by Grupo Atlantica to form Ferroglobe. Plaintiffs alleged that Globe's Board breached their fiduciary duties to Globe's public stockholders by agreeing to sell Globe for an unfair price, negotiating personal benefits for themselves at the expense of the public stockholders, failing to adequately inform themselves of material issues with Grupo Atlantica, and issuing a number of materially deficient disclosures in an attempt to mask issues with the negotiations. At oral argument on Plaintiffs' preliminary injunction motion, the Court held that Globe stockholders likely faced irreparable harm from the Board's conduct, but reserved ruling on the other preliminary injunction factors. Prior to the Court's final ruling, the parties agreed to settle the action for $32.5 million and various corporate governance reforms to protect Globe stockholders' rights in Ferroglobe.

*In re Dole Food Co., Inc. Stockholder Litig.,* **Consol. C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015):**
On August 27, 2015, Vice Chancellor J. Travis Laster issued his much-anticipated post-trial verdict in litigation by former stockholders of Dole Food Company against Dole's chairman and controlling stockholder David Murdock. In a 106-page ruling, Vice Chancellor Laster found that Murdock and his longtime lieutenant, Dole's former president and general counsel C. Michael Carter, unfairly manipulated Dole's financial projections and misled the market as part of Murdock's efforts to take the company private in a deal that closed in November 2013. Among other things, the Court concluded that Murdock and Carter "primed the market for the freeze-out by driving down Dole's stock price" and provided the company's outside directors with "knowingly false" information and intended to "mislead the board for Mr. Murdock's benefit."

Vice Chancellor Laster found that the $13.50 per share going-private deal underpaid stockholders, and awarded class damages of $2.74 per share, totaling $148 million. That award represents the largest post-trial class recovery in the merger context. The largest post-trial derivative recovery in a merger case remains Kessler Topaz's landmark 2011 $2 billion verdict in *In re Southern Peru*.

*In re Genentech, Inc. Shareholders Lit.,* **Cons. Civ. Action No. 3991-VCS (Del. Ch. 2008):**
Kessler Topaz served as Co-Lead Counsel in this shareholder class action brought against the directors of Genentech and Genentech's majority stockholder, Roche Holdings, Inc., in response to Roche's July 21, 2008 attempt to acquire Genentech for $89 per share. We sought to enforce provisions of an Affiliation Agreement between Roche and Genentech and to ensure that Roche fulfilled its fiduciary obligations to Genentech's shareholders through any buyout effort by Roche. After moving to enjoin the tender offer, Kessler Topaz negotiated with Roche and Genentech to amend the Affiliation Agreement to allow a

negotiated transaction between Roche and Genentech, which enabled Roche to acquire Genentech for $95 per share, approximately $3.9 billion more than Roche offered in its hostile tender offer. In approving the settlement, then-Vice Chancellor Leo Strine complimented plaintiffs' counsel, noting that this benefit was only achieved through "real hard-fought litigation in a complicated setting."

*In re GSI Commerce, Inc. Shareholder Litig.*, **Consol. C.A. No. 6346-VCN (Del. Ch. Nov. 15, 2011):**
On behalf of the Erie County Employees' Retirement System, we alleged that GSI's founder breached his fiduciary duties by negotiating a secret deal with eBay for him to buy several GSI subsidiaries at below market prices before selling the remainder of the company to eBay.  These side deals significantly reduced the acquisition price paid to GSI stockholders. Days before an injunction hearing, we negotiated an improvement in the deal price of $24 million.

*In re Amicas, Inc. Shareholder Litigation,* **10-0174-BLS2 (Suffolk County, MA 2010):**
Kessler Topaz served as lead counsel in class action litigation challenging a proposed private equity buyout of Amicas that would have paid Amicas shareholders $5.35 per share in cash while certain Amicas executives retained an equity stake in the surviving entity moving forward. Kessler Topaz prevailed in securing a preliminary injunction against the deal, which then allowed a superior bidder to purchase the Company for an additional $0.70 per share ($26 million). The court complimented Kessler Topaz attorneys for causing an "exceptionally favorable result for Amicas' shareholders" after "expend[ing] substantial resources."

*In re Harleysville Mutual*, **Nov. Term 2011, No. 02137 (C.C.P., Phila. Cnty.):**
Kessler Topaz served as co-lead counsel in expedited merger litigation challenging Harleysville's agreement to sell the company to Nationwide Insurance Company.  Plaintiffs alleged that policyholders were entitled to receive cash in exchange for their ownership interests in the company, not just new Nationwide policies. Plaintiffs also alleged that the merger was "fundamentally unfair" under Pennsylvania law. The defendants contested the allegations and contended that the claims could not be prosecuted directly by policyholders (as opposed to derivatively on the company's behalf). Following a two-day preliminary injunction hearing, we settled the case in exchange for a $26 million cash payment to policyholders.

## Consumer Protection and Fiduciary Litigation

*In re: J.P. Jeanneret Associates Inc., et al.,* **No. 09-cv-3907 (S.D.N.Y.):**
Kessler Topaz served as lead counsel for one of the plaintiff groups in an action against J.P. Jeanneret and Ivy Asset Management relating to an alleged breach of fiduciary and statutory duty in connection with the investment of retirement plan assets in Bernard Madoff-related entities.  By breaching their fiduciary duties, Defendants caused significant losses to the retirement plans.  Following extensive hard-fought litigation, the case settled for a total of $216.5 million.

*In re: National City Corp. Securities, Derivative and ERISA Litig,* **No. 08-nc-7000 (N.D. Ohio):**
Kessler Topaz served as a lead counsel in this complex action alleging that certain directors and officers of National City Corp. breached their fiduciary duties under the Employee Retirement Income Security Act of 1974. These breaches arose from an investment in National City stock during a time when defendants knew, or should have known, that the company stock was artificially inflated and an imprudent investment for the company's 401(k) plan. The case settled for $43 million on behalf of the plan, plaintiffs and a settlement class of plan participants.

*Alston, et al. v. Countrywide Financial Corp. et al.*, **No. 07-cv-03508 (E.D. Pa.):**
Kessler Topaz served as lead counsel in this novel and complex action which alleged that Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc. and Balboa Reinsurance Co. violated

the Real Estate Settlement Procedure Act ("RESPA") and ultimately cost borrowers millions of dollars. Specifically, the action alleged that Defendants engaged in a scheme related to private mortgage insurance involving kickbacks, which are prohibited under RESPA. After three and a half years of hard-fought litigation, the action settled for $34 million.

### *Trustees of the Local 464A United Food and Commercial Workers Union Pension Fund, et al. v. Wachovia Bank, N.A., et al.*, No. 09-cv-00668 (DNJ):

For more than 50 years, Wachovia and its predecessors acted as investment manager for the Local 464A UFCW Union Funds, exercising investment discretion consistent with certain investment guidelines and fiduciary obligations. Until mid-2007, Wachovia managed the fixed income assets of the funds safely and conservatively, and their returns closely tracked the Lehman Aggregate Bond Index (now known as the Barclay's Capital Aggregate Bond Index) to which the funds were benchmarked. However, beginning in mid-2007 Wachovia significantly changed the investment strategy, causing the funds' portfolio value to drop drastically below the benchmark. Specifically, Wachovia began to dramatically decrease the funds' holdings in short-term, high-quality, low-risk debt instruments and materially increase their holdings in high-risk mortgage-backed securities and collateralized mortgage obligations. We represented the funds' trustees in alleging that, among other things, Wachovia breached its fiduciary duty by: failing to invest the assets in accordance with the funds' conservative investment guidelines; failing to adequately monitor the funds' fixed income investments; and failing to provide complete and accurate information to plaintiffs concerning the change in investment strategy. The matter was resolved privately between the parties.

### *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, No. 1:12-md-02335 (S.D.N.Y.):

On behalf of the Southeastern Pennsylvania Transportation Authority Pension Fund and a class of similarly situated domestic custodial clients of BNY Mellon, we alleged that BNY Mellon secretly assigned a spread to the FX rates at which it transacted FX transactions on behalf of its clients who participated in the BNY Mellon's automated "Standing Instruction" FX service. BNY Mellon determining this spread by executing its clients' transactions at one rate and then, typically, at the end of the trading day, assigned a rate to its clients which approximated the worst possible rates of the trading day, pocketing the difference as riskless profit. This practice was despite BNY Mellon's contractual promises to its clients that its Standing Instruction service was designed to provide "best execution," was "free of charge" and provided the "best rates of the day." The case asserted claims for breach of contract and breach of fiduciary duty on behalf of BNY Mellon's custodial clients and sought to recover the unlawful profits that BNY Mellon earned from its unfair and unlawful FX practices. The case was litigated in collaboration with separate cases brought by state and federal agencies, with Kessler Topaz serving as lead counsel and a member of the executive committee overseeing the private litigation. After extensive discovery, including more than 100 depositions, over 25 million pages of fact discovery, and the submission of multiple expert reports, Plaintiffs reached a settlement with BNY Mellon of $335 million. Additionally, the settlement is being administered by Kessler Topaz along with separate recoveries by state and federal agencies which bring the total recovery for BNY Mellon's custodial customers to $504 million. The settlement was finally approved on September 24, 2015. In approving the settlement, Judge Lewis Kaplan praised counsel for a "wonderful job," recognizing that they were "fought tooth and nail at every step of the road." In further recognition of the efforts of counsel, Judge Kaplan noted that "[t]his was an outrageous wrong by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

### *CompSource Oklahoma v. BNY Mellon Bank, N.A.*, No. CIV 08-469-KEW (E.D. Okla. October 25, 2012):

Kessler Topaz served as Interim Class Counsel in this matter alleging that BNY Mellon Bank, N.A. and the Bank of New York Mellon (collectively, "BNYM") breached their statutory, common law and contractual duties in connection with the administration of their securities lending program. The Second Amended

Complaint alleged, among other things, that BNYM imprudently invested cash collateral obtained under its securities lending program in medium term notes issued by Sigma Finance, Inc. -- a foreign structured investment vehicle ("SIV") that is now in receivership -- and that such conduct constituted a breach of BNYM's fiduciary obligations under the Employee Retirement Income Security Act of 1974, a breach of its fiduciary duties under common law, and a breach of its contractual obligations under the securities lending agreements. The Complaint also asserted claims for negligence, gross negligence and willful misconduct. The case recently settled for $280 million.

*Transatlantic Holdings, Inc., et al. v. American International Group, Inc., et al.,* **American Arbitration Association Case No. 50 148 T 00376 10:**
Kessler Topaz served as counsel for Transatlantic Holdings, Inc., and its subsidiaries ("TRH"), alleging that American International Group, Inc. and its subsidiaries ("AIG") breached their fiduciary duties, contractual duties, and committed fraud in connection with the administration of its securities lending program. Until June 2009, AIG was TRH's majority shareholder and, at the same time, administered TRH's securities lending program. TRH's Statement of Claim alleged that, among other things, AIG breached its fiduciary obligations as investment advisor and majority shareholder by imprudently investing the majority of the cash collateral obtained under its securities lending program in mortgage backed securities, including Alt-A and subprime investments. The Statement of Claim further alleged that AIG concealed the extent of TRH's subprime exposure and that when the collateral pools began experiencing liquidity problems in 2007, AIG unilaterally carved TRH out of the pools so that it could provide funding to its wholly owned subsidiaries to the exclusion of TRH. The matter was litigated through a binding arbitration and TRH was awarded $75 million.

*Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.* – **Consolidated Action No. 09-cv-00686 (SAS) (S.D.N.Y.):**
On January 23, 2009, the firm filed a class action complaint on behalf of all entities that were participants in JPMorgan's securities lending program and that incurred losses on investments that JPMorgan, acting in its capacity as a discretionary investment manager, made in medium-term notes issue by Sigma Finance, Inc. – a now defunct structured investment vehicle. The losses of the Class exceeded $500 million. The complaint asserted claims for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), as well as common law breach of fiduciary duty, breach of contract and negligence. Over the course of discovery, the parties produced and reviewed over 500,000 pages of documents, took 40 depositions (domestic and foreign) and exchanged 21 expert reports. The case settled for $150 million. Trial was scheduled to commence on February 6, 2012.

*In re Global Crossing, Ltd. ERISA Litigation,* **No. 02 Civ. 7453 (S.D.N.Y. 2004):**
Kessler Topaz served as Co-Lead Counsel in this novel, complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to certain company-provided 401(k) plans and their participants. These breaches arose from the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

*In re AOL Time Warner ERISA Litigation,* **No. 02-CV-8853 (S.D.N.Y. 2006):**
Kessler Topaz, which served as Co-Lead Counsel in this highly-publicized ERISA fiduciary breach class action brought on behalf of the Company's 401(k) plans and their participants, achieved a record $100 million settlement with defendants. The $100 million restorative cash payment to the plans (and, concomitantly, their participants) represents the largest recovery from a single defendant in a breach of fiduciary action relating to mismanagement of plan assets held in the form of employer securities. The

action asserted claims for breach of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the participants in the AOL Time Warner Savings Plan, the AOL Time Warner Thrift Plan, and the Time Warner Cable Savings Plan (collectively, the "Plans") whose accounts purchased and/or held interests in the AOLTW Stock Fund at any time between January 27, 1999 and July 3, 2003. Named as defendants in the case were Time Warner (and its corporate predecessor, AOL Time Warner), several of the Plans' committees, as well as certain current and former officers and directors of the company. In March 2005, the Court largely denied defendants' motion to dismiss and the parties began the discovery phase of the case. In January 2006, Plaintiffs filed a motion for class certification, while at the same time defendants moved for partial summary judgment. These motions were pending before the Court when the settlement in principle was reached. Notably, an Independent Fiduciary retained by the Plans to review the settlement in accordance with Department of Labor regulations approved the settlement and filed a report with Court noting that the settlement, in addition to being "more than a reasonable recovery" for the Plans, is "one of the largest ERISA employer stock action settlements in history."

### *In re Honeywell International ERISA Litigation,* No. 03-1214 (DRD) (D.N.J. 2004):

Kessler Topaz served as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell defined contribution pension plans. The suit alleged that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. The settlement of plaintiffs' claims included a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios.

### *Henry v. Sears, et. al.,* Case No. 98 C 4110 (N.D. Ill. 1999):

The Firm served as Co-Lead Counsel for one of the largest consumer class actions in history, consisting of approximately 11 million Sears credit card holders whose interest rates were improperly increased in connection with the transfer of the credit card accounts to a national bank. Kessler Topaz successfully negotiated a settlement representing approximately 66% of all class members' damages, thereby providing a total benefit exceeding $156 million. All $156 million was distributed automatically to the Class members, without the filing of a single proof of claim form. In approving the settlement, the District Court stated: ". . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance."

## Antitrust Litigation

### *In re: Flonase Antitrust Litigation,* No. 08-cv-3149 (E.D. Pa.):

Kessler Topaz served as a lead counsel on behalf of a class of direct purchaser plaintiffs in an antitrust action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging, among other things, that defendant GlaxoSmithKline (GSK) violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by engaging in "sham" petitioning of a government agency.  Specifically, the Direct Purchasers alleged that GSK unlawfully abused the citizen petition process contained in Section 505(j) of the Federal Food, Drug, and Cosmetic Act and thus delayed the introduction of less expensive generic versions of Flonase, a highly popular allergy drug, causing injury to the Direct Purchaser Class.  Throughout the course of the four year litigation, Plaintiffs defeated two motions for summary judgment, succeeded in having a class certified and conducted extensive discovery.  After lengthy negotiations and shortly before trial, the action settled for $150 million.

*In re: Wellbutrin SR Antitrust Litigation,* **No. 04-cv-5898 (E.D. Pa.):**
Kessler Topaz was a lead counsel in an action which alleged, among other things, that defendant GlaxoSmithKline (GSK) violated the antitrust, consumer fraud, and consumer protection laws of various states. Specifically, Plaintiffs and the class of Third-Party Payors alleged that GSK manipulated patent filings and commenced baseless infringement lawsuits in connection wrongfully delaying generic versions of Wellbutrin SR and Zyban from entering the market, and that Plaintiffs and the Class of Third-Party Payors suffered antitrust injury and calculable damages as a result. After more than eight years of litigation, the action settled for $21.5 million.

*In re: Metoprolol Succinate End-Payor Antitrust Litigation,* **No. 06-cv-71 (D. Del.):**
Kessler Topaz was co-lead counsel in a lawsuit which alleged that defendant AstraZeneca prevented generic versions of Toprol-XL from entering the market by, among other things, improperly manipulating patent filings and filing baseless patent infringement lawsuits. As a result, AstraZeneca unlawfully monopolized the domestic market for Toprol-XL and its generic bio-equivalents. After seven years of litigation, extensive discovery and motion practice, the case settled for $11 million.

*In re Remeron Antitrust Litigation,* **No. 02-CV-2007 (D.N.J. 2004):**
Kessler Topaz was Co-Lead Counsel in an action which challenged Organon, Inc.'s filing of certain patents and patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully extend their monopoly in the market for Remeron. Specifically, the lawsuit alleged that defendants violated state and federal antitrust laws in their efforts to keep competing products from entering the market, and sought damages sustained by consumers and third-party payors. After lengthy litigation, including numerous motions and over 50 depositions, the matter settled for $36 million.

## OUR PROFESSIONALS

## PARTNERS

**JULES D. ALBERT,** a partner of the Firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. Mr. Albert received his law degree from the University of Pennsylvania Law School, where he was a Senior Editor of the *University of Pennsylvania Journal of Labor and Employment Law* and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated *magna cum laude* with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Albert has litigated in state and federal courts across the country, and has represented stockholders in numerous actions that have resulted in significant monetary recoveries and corporate governance improvements, including: *In re Sunrise Senior Living, Inc. Deriv. Litig.*, No. 07-00143 (D.D.C.); *Mercier v. Whittle, et al.*, No. 2008-CP-23-8395 (S.C. Ct. Com. Pl., 13th Jud. Cir.); *In re K-V Pharmaceutical Co. Deriv. Litig.*, No. 06-00384 (E.D. Mo.); *In re Progress Software Corp. Deriv. Litig.*, No. SUCV2007-01937-BLS2 (Mass. Super. Ct., Suffolk Cty.); *In re Quest Software, Inc. Deriv. Litig.* No 06CC00115 (Cal. Super. Ct., Orange Cty.); and *Quaco v. Balakrishnan, et al.,* No. 06-2811 (N.D. Cal.).

**NAUMON A. AMJED,** a partner of the Firm, concentrates his practice on new matter development with a focus on analyzing securities class action lawsuits, direct (or opt-out) actions, non-U.S. securities and shareholder litigation, SEC whistleblower actions, breach of fiduciary duty cases, antitrust matters, data

breach actions and oil and gas litigation. Mr. Amjed is a graduate of the Villanova University School of Law, *cum laude*, and holds an undergraduate degree in business administration from Temple University, *cum laude*. Mr. Amjed is a member of the Delaware State Bar, the Bar of the Commonwealth of Pennsylvania, the New York State Bar, and is admitted to practice before the United States Courts for the District of Delaware, the Eastern District of Pennsylvania and the Southern District of New York.

As a member of the Firm's lead plaintiff practice group, Mr. Amjed has represented clients serving as lead plaintiffs in several notable securities class action lawsuits including: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litig.*, No. 09-MDL-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery) and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery). Additionally, Mr. Amjed served on the national Executive Committee representing financial institutions suffering losses from Target Corporation's 2013 data breach – one of the largest data breaches in history. The Target litigation team was responsible for a landmark data breach opinion that substantially denied Target's motion to dismiss and was also responsible for obtaining certification of a class of financial institutions. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304 (D. Minn. 2014); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 PAM/JJK, 2015 WL 5432115 (D. Minn. Sept. 15, 2015). At the time of its issuance, the class certification order in Target was the first of its kind in data breach litigation by financial institutions.

Mr. Amjed also has significant experience conducting complex litigation in state and federal courts including federal securities class actions, shareholder derivative actions, suits by third-party insurers and other actions concerning corporate and alternative business entity disputes. Mr. Amjed has litigated in numerous state and federal courts across the country, including the Delaware Court of Chancery, and has represented shareholders in several high profile lawsuits, including: *LAMPERS v. CBOT Holdings, Inc. et al.*, C.A. No. 2803-VCN (Del. Ch.); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006); *In re Global Crossing Sec. Litig.,* 02— Civ. — 910 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687 (S.D. Tex. 2006); and *In re Marsh McLennan Cos., Inc. Sec. Litig.* 501 F. Supp. 2d 452 (S.D.N.Y. 2006).

**STUART L. BERMAN,** a partner of the Firm, concentrates his practice on securities class action litigation in federal courts throughout the country, with a particular emphasis on representing institutional investors active in litigation. Mr. Berman received his law degree from George Washington University National Law Center, and is an honors graduate from Brandeis University. Mr. Berman is licensed to practice in Pennsylvania and New Jersey.

Mr. Berman regularly counsels and educates institutional investors located around the world on emerging legal trends, new case ideas and the rights and obligations of institutional investors as they relate to securities fraud class actions and individual actions. In this respect, Mr. Berman has been instrumental in courts appointing the Firm's institutional clients as lead plaintiffs in class actions as well as in representing institutions individually in direct actions. Mr. Berman is currently representing institutional investors in direct actions against Vivendi and Merck, and took a very active role in the precedent setting Shell settlement on behalf of many of the Firm's European institutional clients.

Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, at events such as The European Pension Symposium in Florence, Italy; the Public Funds Symposium in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities

for Institutional Investors in Amsterdam, Netherlands; and the European Investment Roundtable in Barcelona, Spain.

**DAVID A. BOCIAN**, a partner of the Firm, focuses his practice on whistleblower representation and False Claims Act litigation. Mr. Bocian received his law degree from the University of Virginia School of Law and graduated *cum laude* from Princeton University. He is licensed to practice law in the Commonwealth of Pennsylvania, New Jersey, New York and the District of Columbia.

Mr. Bocian began his legal career in Washington, D.C., as a litigation associate at Patton Boggs LLP, where his practice included internal corporate investigations, government contracts litigation and securities fraud matters. He spent more than ten years as a federal prosecutor in the U.S. Attorney's Office for the District of New Jersey, where he was appointed Senior Litigation Counsel and managed the Trenton U.S. Attorney's office. During his tenure, Mr. Bocian oversaw multifaceted investigations and prosecutions pertaining to government corruption and federal program fraud, commercial and public sector kickbacks, tax fraud, and other white collar and financial crimes. He tried numerous cases before federal juries, and was a recipient of the Justice Department's Director's Award for superior performance by an Assistant U.S. Attorney, as well as commendations from federal law enforcement agencies including the FBI and IRS.

Mr. Bocian has extensive experience in the health care field. As an adjunct professor of law, he has taught Healthcare Fraud and Abuse at Rutgers School of Law – Camden, and previously was employed in the health care industry, where he was responsible for implementing and overseeing a system-wide compliance program for a complex health system.

**GREGORY M. CASTALDO,** a partner of the Firm, concentrates his practice in the area of securities litigation. Mr. Castaldo received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey.

Mr. Castaldo served as one of Kessler Topaz's lead litigation partners in *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* Master File No. 09 MDL 2058, recovering $2.425 billion settlement for the class. Mr. Castaldo also served as the lead litigation partner in *In re Tenet Healthcare Corp*., No. 02-CV-8462 (C.D. Cal. 2002), securing an aggregate recovery of $281.5 million for the class, including $65 million from Tenet's auditor. Mr. Castaldo also played a primary litigation role in the following cases: *In re Liberate Technologies Sec. Litig.*, No. C-02-5017 (MJJ) (N.D. Cal. 2005) (settled — $13.8 million); *In re Sodexho Marriott Shareholders Litig.*, Consol. C.A. No. 18640-NC (Del. Ch. 1999) (settled — $166 million benefit); *In re Motive, Inc. Sec. Litig.*, 05-CV-923 (W.D.Tex. 2005) (settled — $7 million cash, 2.5 million shares); and *In re Wireless Facilities, Inc., Sec. Litig.*, 04-CV-1589 (S.D. Cal. 2004) (settled — $16.5 million). In addition, Mr. Castaldo served as one of the lead trial attorneys for shareholders in the historic *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) trial, which resulted in a verdict in favor of investors on liability and damages.

**DARREN J. CHECK,** a partner of the Firm, concentrates his practice in the area of shareholder litigation and client relations. Mr. Check manages the Firm's Portfolio Monitoring Department and works closely with the Firm's Case Evaluation Department. Mr. Check received his law degree from Temple University School of Law and is a graduate of Franklin & Marshall College. Mr. Check is admitted to practice in numerous state and federal courts across the United States.

Currently, Mr. Check consults with institutional investors from around the world with regard to their investment rights and responsibilities. He currently works with clients in the United States, Canada, the

Netherlands, Sweden, Denmark, Norway, Finland, United Kingdom, Italy, Germany, Austria, Switzerland, France, Australia and throughout Asia and the Middle East.

Mr. Check assists Firm clients in evaluating and analyzing opportunities to take an active role in shareholder litigation, arbitration, and other loss recovery methods. This includes U.S. based litigation and arbitration, as well as an increasing number of cases from jurisdictions around the globe. With an increasingly complex investment and legal landscape, Mr. Check has experience advising on traditional class actions, direct actions, non-U.S. opt-in actions, fiduciary actions, appraisal actions and arbitrations to name a few. Mr. Check is frequently called upon by his clients to help ensure they are taking an active role when their involvement can make a difference, and that they are not leaving money on the table.

Mr. Check regularly speaks on the subjects of shareholder litigation, corporate governance, investor activism, and recovery of investment losses at conferences around the world.

Mr. Check has also been actively involved in the precedent setting Shell and Fortis settlements in the Netherlands, the Olympus shareholder case in Japan, direct actions against Petrobras, BP, Vivendi, and Merck, and securities class actions against Bank of America, Lehman Brothers, Royal Bank of Scotland (U.K.), and Hewlett-Packard. Currently Mr. Check represents investors in numerous high profile actions in the United States, the Netherlands, Germany, Canada, France, Japan, and the United Kingdom.

**JOSHUA E. D'ANCONA,** a partner of the Firm, concentrates his practice in the securities litigation and lead plaintiff departments of the Firm. Mr. D'Ancona received his J.D., *magna cum laude*, from the Temple University Beasley School of Law in 2007, where he served on the Temple Law Review and as president of the Moot Court Honors Society, and graduated with honors from Wesleyan University. He is licensed to practice in Pennsylvania and New Jersey.

Before joining the Firm in 2009, he served as a law clerk to the Honorable Cynthia M. Rufe of the United States District Court for the Eastern District of Pennsylvania.

**JONATHAN R. DAVIDSON**, a partner of the Firm, concentrates his practice in the area of shareholder litigation. Mr. Davidson currently consults with institutional investors from around the world, including public pension funds at the state, county and municipal level, as well as Taft-Hartley funds across all trades, with regard to their investment rights and responsibilities. Mr. Davidson assists Firm clients in evaluating and analyzing opportunities to take an active role in shareholder litigation. With an increasingly complex shareholder litigation landscape that includes traditional securities class actions, shareholder derivative actions and takeover actions, non-U.S. opt-in actions, and fiduciary actions to name a few, Mr. Davidson is frequently called upon by his clients to help ensure they are taking an active role when their involvement can make a difference, and to ensure they are not leaving money on the table.

Mr. Davidson has been involved in the following successfully concluded shareholder litigation matters: *City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc.*, C.A. No. 12481-VCL (Del. Ch.) ($86.5 million settlement, including $46.5 million funded by outside legal advisor); *In re MGM Mirage Securities Litigation*, Case No. 2:09-cv-01558-GMN-VCF (D. Nev.) ($75 million settlement); *In re Weatherford International Securities Litigation*, No. 11-1646 (S.D.N.Y.) ($52.5 million settlement); *Beaver County Employees' Retirement Fund, et al. v. Tile Shop Holdings, Inc., et al.,* No. 0:14-CV-00786-ADM/TNL (D. Minn.) ($9.5 million settlement); *Bucks County Employees Retirement Fund vs. Hillshire Brands Co*, No. 24-C-14-003492 (Md. Cir. Ct.) (Alternative deal struck paying a 71% premium to stockholders); and *City of Sunrise Firefighters' Retirement Fund v. Schaeffer*, No. 8703 (Del. Ch. Ct.) (Invalid bylaws repealed; board disclosed that it unlawfully adopted the bylaws).

Mr. Davidson is a frequent lecturer on shareholder litigation, corporate governance, fiduciary issues facing institutional investors, investor activism and the recovery of investment losses -- speaking on these subjects at conferences around the world each year, including the National Conference on Public Employee Retirement Systems' Annual Conference & Exhibition, the International Foundation of Employee Benefit Plans Annual Conference, the California Association of Public Retirement Systems Administrators Roundtable, the Florida Public Pension Trustees Association Trustee Schools and Wall Street Program, the Pennsylvania Association of Public Employees Retirement Systems Spring Forum, the Fiduciary Investors Symposium, the U.S. Markets' Institutional Investor Forum, and The Evolving Fiduciary Obligations of Pension Plans.  Mr. Davidson is also a member of numerous professional and educational organizations, including the National Association of Public Pension Attorneys.

Mr. Davidson is a graduate of The George Washington University where he received his Bachelor of Arts, *summa cum laude*, in Political Communication. Mr. Davidson received his Juris Doctor and Dispute Resolution Certificate from Pepperdine University School of Law and is licensed to practice law in Pennsylvania and California.

**RYAN T. DEGNAN,** a partner of the Firm, concentrates his practice on new matter development with a specific focus on analyzing securities class action lawsuits, antitrust actions, and complex consumer actions. Mr. Degnan received his law degree from Temple University Beasley School of Law, where he was a Notes and Comments Editor for the Temple Journal of Science, Technology & Environmental Law, and earned his undergraduate degree in Biology from The Johns Hopkins University. While a law student, Mr. Degnan served as a Judicial Intern to the Honorable Gene E.K. Pratter of the United States District Court for the Eastern District of Pennsylvania. Mr. Degnan is licensed to practice in Pennsylvania and New Jersey.

As a member of the Firm's lead plaintiff litigation practice group, Mr. Degnan has helped secure the Firm's clients' appointments as lead plaintiffs in: *In re HP Sec. Litig.*, No. 12-cv-5090, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-03852 (S.D.N.Y.); *Freedman v. St. Jude Medical, Inc., et al.*, No. 12-cv-3070 (D. Minn.); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 14 Civ. 81057 (WPD), 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014); *Louisiana Municipal Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc., et al.*, No. 11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012); and *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11-cv-3658, 2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011). Additional representative matters include: *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, No. 12-md-02335 (S.D.N.Y.) ($335 million settlement); and *Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.*, No. 12-cv-02865 (S.D.N.Y.) ($69 million settlement).

**ELI R. GREENSTEIN** is managing partner of the Firm's San Francisco office and a member of the Firm's federal securities litigation practice group. Mr. Greenstein concentrates his practice on federal securities law violations and white collar fraud, including violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Mr. Greenstein received his J.D. from Santa Clara University School of Law in 2001, and his M.B.A. from Santa Clara's Leavey School of Business in 2002. Mr. Greenstein received his B.A. in Business Administration from the University of San Diego in 1997 where he was awarded the Presidential Scholarship. He is licensed to practice in California.

Mr. Greenstein also was a judicial extern for the Honorable James Ware (Ret.), Chief Judge of the United States District Court for the Northern District of California. Prior to joining the Firm, Mr. Greenstein was a partner at Robbins Geller Rudman & Dowd LLP in its federal securities litigation practice group. His relevant background also includes consulting for PricewaterhouseCoopers LLP's International Tax and Legal Services division, and work on the trading floor of the Chicago Mercantile Exchange, S&P 500 futures and options division.

Mr. Greenstein has been involved in dozens of high-profile securities fraud actions resulting in more than $1 billion in recoveries for clients and investors, including: *Nieman v. Duke Energy Corp.*, 2013 U.S. Dist. LEXIS 110693 (W.D.N.C.) ($146 million recovery); *In re HP Secs. Litig.*, 2013 U.S. Dist. LEXIS 168292 (N.D. Cal.) ($100 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (N.D. Cal) ($95 million recovery); *In re AOL Time Warner Sec. Litig. State Opt-Out Actions* (*Regents of the Univ. of Cal. v. Parsons* (Cal. Super. Ct.), *Ohio Pub. Emps. Ret. Sys. v. Parsons* (Franklin County Ct. of Common Pleas) ($618 million in total recoveries); *Minneapolis Firefighters Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454 (D. Minn.) ($85 million recovery); *In re MGM Mirage Secs. Litig.*, 2014 U.S. Dist. LEXIS 165486 (D. Nev.) ($75 million recovery); *Dobina v. Weatherford Int'l*, 909 F. Supp. 2d 228 (S.D.N.Y.) ($52.5 million recovery); *In re Sunpower Secs. Litig.*, 2011 U.S. Dist. LEXIS 152920 (N.D. Cal.) ($19.7 million recovery); *In re Am. Serv. Group, Inc.*, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn.) ($15.1 million recovery); *In re Terayon Communs. Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 5502 (N.D. Cal.) ($15 million recovery); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217 (N.D. Cal.) ($8.9 million recovery); *In re Endocare, Inc. Sec. Litig.*, No. CV02-8429 DT (CTX) (C.D. Cal.) ($8.95 million recovery); *Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, 2005 U.S. Dist. LEXIS 12971 (N.D. Ill.) ($7.5 million recovery); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 U.S. Dist. LEXIS 6977 (C.D. Cal.) ($4.8 million recovery); *In re Purus* Sec. Litig. No. C-98-20449-JF(RS) (N.D. Cal) ($9.95 million recovery).

**SEAN M. HANDLER,** a partner of the Firm and member of Kessler Topaz's Management Committee, currently concentrates his practice on all aspects of new matter development for the Firm including securities, consumer and intellectual property. Mr. Handler earned his Juris Doctor, *cum laude*, from Temple University School of Law, and received his Bachelor of Arts degree from Colby College, graduating *with distinction* in American Studies. Mr. Handler is licensed to practice in Pennsylvania, New Jersey and New York.

As part of his responsibilities, Mr. Handler also oversees the lead plaintiff appointment process in securities class actions for the Firm's clients. In this role, Mr. Handler has achieved numerous noteworthy appointments for clients in reported decisions including *Foley v. Transocean*, 272 F.R.D. 126 (S.D.N.Y. 2011); *In re Bank of America Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009) and *Tanne v. Autobytel, Inc.,* 226 F.R.D. 659 (C.D. Cal. 2005) and has argued before federal courts throughout the country.

Mr. Handler was also one of the principal attorneys in *In re Brocade Securities Litigation* (N.D. Cal. 2008)*,* where the team achieved a $160 million settlement on behalf of the class and two public pension fund class representatives. This settlement is believed to be one of the largest settlements in a securities fraud case in terms of the ratio of settlement amount to actual investor damages.

Mr. Handler also lectures and serves on discussion panels concerning securities litigation matters, most recently appearing at American Conference Institute's National Summit on the Future of Fiduciary Responsibility and Institutional Investor's The Rights & Responsibilities of Institutional Investors.

**GEOFFREY C. JARVIS**, a partner of the Firm, focuses on securities litigation for institutional investors. Mr. Jarvis graduated from Harvard Law School in 1984, and received his undergraduate degree from Cornell University in 1980. He is licensed to practice in Pennsylvania, Delaware, New York and Washington, D.C.

Following law school, Mr. Jarvis served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry.

Mr. Jarvis had a major role in *Oxford Health Plans Securities Litigation, DaimlerChrysler Securities Litigation*, and *Tyco Securities Litigation* all of which were among the top ten securities settlements in U.S. history at the time they were resolved, as well as a large number of other securities cases over the past 16 years. He has also been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial, and a Delaware appraisal case that was tried in October, argued in 2016, which is still awaiting a final decision.

Mr. Jarvis then became an associate in the Washington office of Rogers & Wells (subsequently merged into Clifford Chance), principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters. He was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the U.S. Court of Appeals for the Third Circuit. From 2000 until early 2016, Mr. Jarvis was a Director (Senior Counsel through 2001) at Grant & Eisenhofer, P.A., where he engaged in a number of federal securities, and state fiduciary cases (primarily in Delaware), including several of the largest settlements of the past 15 years. He also was lead trial counsel and/or associate counsel in a number of cases that were tried to a verdict (or are pending final decision).

**JENNIFER L. JOOST,** a partner in the Firm's San Francisco office, focuses her practice on securities litigation.  Ms. Joost received her law degree, *cum laude*, from Temple University Beasley School of Law, where she was the Special Projects Editor for the *Temple International and Comparative Law Journal.* Ms. Joost earned her undergraduate degree with honors from Washington University in St. Louis. She is licensed to practice in Pennsylvania and California and is admitted to practice before the United States Courts of Appeals for the Second, Fourth, Ninth, and Eleventh Circuits, and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California and the Southern District of California.

Ms. Joost has represented institutional investors in numerous securities fraud class actions including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Citigroup, Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS) (S.D.N.Y.) (settled -- $730 million); *Luther, et al. v. Countrywide Financial Corp.*, No. BC 380698 (settled -- $500 million); *In re JPMorgan & Co. Securities Litigation,* No. 12-cv-03852 (S.D.N.Y.) (settled -- $150 million); *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,* No. 08-cv-06324-PAM-AJB (D. Minn.) (settled -- $85 million); *In re MGM Mirage Securities Litigation,* No. 09-cv-01558-GMN-VCF (D. Nev.) (settled -- $75 million); and *In re Weatherford Int'l Securities Litigation*, No. 11-cv-01646-LAK-JCF (S.D.N.Y.) (settled -- $52.5 million).

**KIMBERLY A. JUSTICE,** a partner of the Firm and co-chair of its antitrust practice group, concentrates her practice in the areas of securities and antitrust litigation, principally representing the interests of plaintiffs in class action and complex commercial litigation. Ms. Justice graduated *magna cum laude* from Temple University School of Law, where she was Articles/Symposium Editor of the Temple Law Review and received the Jacob Kossman Award in Criminal Law. Ms. Justice earned her undergraduate degree, *cum laude* and Phi Beta Kappa, from Kalamazoo College. Ms. Justice is licensed to practice law in Pennsylvania and admitted to practice before the United States Court of Appeals for the Second, Eighth, Ninth and Eleventh Circuits and the United States District Court for the Eastern District of Pennsylvania.

Upon graduating from law school, Ms. Justice served as a judicial clerk to the Honorable William H. Yohn, Jr. of the United States District Court for the Eastern District of Pennsylvania.

Since joining Kessler Topaz, Ms. Justice has played a significant role in several securities fraud and antitrust matters in which the Firm has served as Lead or Co-Lead Counsel. In addition, Ms. Justice recently was appointed as Co-Lead Counsel in *In re:  Chicago Board of Options Exchange Volatility Index Manipulation Antitrust Litigation*.  Ms. Justice also serves by appointment on the Plaintiff Steering Committees in *In re: Liquid Aluminum Sulfate Antitrust Litigation and In re:  German Automotive Manufacturers Antitrust Litigation*.  Ms. Justice's notable federal securities actions and recoveries include: *In re: Lehman Brothers Securities and ERISA Litigation*, Master File No. 09 MD 2017 (LAK) (S.D.N.Y.) ($516,218,000 recovery for purchasers of Lehman securities); *Luther, et al. v. Countrywide Financial Cor., et al.,* No. 2:12-cv-05125-MRP(MANx) ($500 million recovery for the class in connection with Countrywide's issuance of mortgage-backed securities); *Dobina v. Weatherford Int'l*, No. 1:11-cv-01646 (LAK) (S.D.N.Y.) ($52.5 million recovery for the class in connection with Weatherford's financial accounting scheme); *Monk v. Johnson & Johnson*, No. 3:10-cv-04841 (D.N.J.) ($23 million recovery for investors). Ms. Justice also served as lead trial attorney for shareholders in the *Longtop Financial Technologies* securities class action that resulted in a jury verdict on liability and damages in favor of investors.

Ms. Justice frequently lectures and serves on discussion panels concerning antitrust and securities litigation matters and currently serves as a member of the Advisory Board of the American Antitrust Institute and as an Advisory Council Member for The Duke Conferences:  Bench-Bar-Academy Distinguished Lawyers' Series.

Ms. Justice joined the Firm after nearly a decade of serving as a trial attorney and prosecutor in the Antitrust Division of the U.S. Department of Justice where she led teams of trial attorneys and law enforcement agents who investigated and prosecuted domestic and international cartel conduct, including in the following industries:  graphite electrodes, carbon products, ocean shipping and benchmark interest rates (LIBOR), and where her success at trial was recognized with the *Antitrust Division Assistant Attorney General Award of Distinction* for outstanding contribution to the protection of American consumers and competition.

Ms. Justice began her practice as an associate at Dechert LLP where she defended a broad range of complex commercial cases, including antitrust and product liability class actions, and where she advised clients concerning mergers and acquisitions and general corporate matters.

**STACEY KAPLAN**, a partner in the Firm's San Francisco office, concentrates her practice on prosecuting securities class actions. Ms. Kaplan received her J.D. from the University of California at Los Angeles School of Law in 2005, and received her Bachelor of Business Administration from the University of Notre Dame in 2002, with majors in Finance and Philosophy. Ms. Kaplan is admitted to the California Bar and is licensed to practice in all California state courts, as well as the United States District Courts for the Northern and Central Districts of California.

During law school, Ms. Kaplan served as a Judicial Extern to the Honorable Terry J. Hatter, Jr., United States District Court, Central District of California. Prior to joining the Firm, Ms. Kaplan was an associate with Robbins Geller Rudman & Dowd LLP in San Diego, California.

**DAVID KESSLER**, a partner of the Firm, manages the Firm's internationally recognized securities department. Mr. Kessler graduated with distinction from the Emory School of Law, after receiving his undergraduate B.S.B.A. degree from American University. Mr. Kessler is licensed to practice law in Pennsylvania, New Jersey and New York, and has been admitted to practice before numerous United States District Courts. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania.

Mr. Kessler has achieved or assisted in obtaining Court approval for the following outstanding results in federal securities class action cases: *In re Bank of America Corp. Securities, Derivative, and Employee*

*Retirement Income Security Act (ERISA) Litigation,* Master File No. 09 MDL 2058 ($2.425 billion settlement); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) ($3.2 billion settlement); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, Master File No. 09 Civ. 6351 (RJS) ($627 million settlement); *In re: Lehman Brothers Securities and ERISA Litigation*, Master File No. 09 MD 2017 (LAK) ($516,218,000 settlement); *In re Satyam Computer Services Ltd. Sec. Litig.*, Master File No. 09 MD 02027 (BSJ) ($150.5 million settlement); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002) ($280 million settlement); *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) ($586 million settlement).

Mr. Kessler is also currently serving as one of the Firm's primary litigation partners in the Citigroup, JPMorgan, Hewlett Packard, Pfizer and Morgan Stanley securities litigation matters.

In addition, Mr. Kessler often lectures and writes on securities litigation related topics and has been recognized as "Litigator of the Week" by the American Lawyer magazine for his work in connection with the Lehman Brothers securities litigation matter in December of 2011 and was honored by Benchmark as one of the preeminent plaintiffs practitioners in securities litigation throughout the country. Most recently Mr. Kessler co-authored *The FindWhat.com Case: Acknowledging Policy Considerations When Deciding Issues of Causation in Securities Class Actions* published in Securities Litigation Report.

**JAMES A. MARO, JR.,** a partner of the Firm, concentrates his practice in the Firm's case development department. He also has experience in the areas of consumer protection, ERISA, mergers and acquisitions, and shareholder derivative actions. Mr. Maro received his law degree from the Villanova University School of Law, and received a B.A. in Political Science from the Johns Hopkins University. Mr. Maro is licensed to practice law in Commonwealth of Pennsylvania and New Jersey. He is admitted to practice in the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

**JOSEPH H. MELTZER,** a partner of the Firm, concentrates his practice in the areas of ERISA, fiduciary and antitrust complex litigation. Mr. Meltzer received his law degree with honors from Temple University School of Law and is an honors graduate of the University of Maryland. Honors include being named a Pennsylvania Super Lawyer. Mr. Meltzer is licensed to practice in Pennsylvania, New Jersey, New York, the Supreme Court of the United States, and the U.S. Court of Federal Claims.

Mr. Meltzer leads the Firm's Fiduciary Litigation Group which has excelled in the highly specialized area of prosecuting cases involving breach of fiduciary duty claims. Mr. Meltzer has served as lead or co-lead counsel in numerous nationwide class actions brought under ERISA. Since founding the Fiduciary Litigation Group, Mr. Meltzer has helped recover hundreds of millions of dollars for clients and class members including some of the largest settlements in ERISA fiduciary breach actions. Mr. Meltzer represented the Board of Trustees of the Buffalo Laborers Security Fund in its action against J.P. Jeanneret Associates which involved a massive, fraudulent scheme orchestrated by Bernard L. Madoff, No. 09-3907 (S.D.N.Y.). Mr. Meltzer also represented an institutional client in a fiduciary breach action against Wells Fargo for large losses sustained while Wachovia Bank and its subsidiaries, including Evergreen Investments, were managing the client's investment portfolio.

As part of his fiduciary litigation practice, Mr. Meltzer was actively involved in actions related to losses sustained in securities lending programs, including *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank,* No. 09-00686 (S.D.N.Y.) ($150 million settlement) and *CompSource Okla. v. BNY Mellon,* No. 08-469 (E.D. OK) ($280 million settlement). In addition, Mr. Meltzer represented a publicly traded company in a large arbitration against AIG, Inc. related to securities lending losses, *Transatlantic Holdings, Inc. v. AIG,* No. 50-148T0037610 (AAA) ($75million settlement).

A frequent lecturer on ERISA litigation, Mr. Meltzer is a member of the ABA and has been recognized by numerous courts for his ability and expertise in this complex area of the law. Mr. Meltzer is also a patron member of Public Justice and a member of the Class Action Preservation Committee.

Mr. Meltzer also manages the Firm's Antitrust and Pharmaceutical Pricing Groups. Here, Mr. Meltzer focuses on helping clients that have been injured by anticompetitive and unlawful business practices, including with respect to overcharges related to prescription drug and other health care expenditures. Mr. Meltzer served as co-lead counsel for direct purchasers in the *Flonase Antitrust Litigation,* No.08-3149 (E.D. PA) ($150 million settlement) and has served as lead or co-lead counsel in numerous nationwide actions. Mr. Meltzer also serves as a special assistant attorney general for the states of Montana, Utah and Alaska. Mr. Meltzer also lectures on issues related to antitrust litigation.

**PETER A. MUHIC,** a partner of the Firm, focuses his practice on ERISA, Fiduciary and complex Consumer Litigation. Mr. Muhic is an honors graduate of the Temple University School of Law where he was Managing Editor of the Temple Law Review and a member of the Moot Court Board. He received his undergraduate degree in finance from Syracuse University. He is licensed to practice law in Pennsylvania and New Jersey.

Mr. Muhic has represented investors, consumers and other clients in obtaining substantial recoveries, including: *In Re Beacon Associates Litigation*, No. 09-cv-0777 (S.D.N.Y. 2009) (settled -- $219 million); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649 (S.D. Fla. 2014) (settled -- $140 million available relief); *Transatlantic Holdings, Inc. v. American International Group, Inc.*, No. 50 148 T 00376 10 ($75 million arbitration award); *In Re Staples Inc. Wage and Hour Employment Practices Litigation*, No. 08-5746 (MDL 2025) (D. N.J. 2008) (settled -- $41 million).

**MATTHEW L. MUSTOKOFF**, a partner of the Firm, is an experienced securities and corporate governance litigator. He has represented clients at the trial and appellate level in numerous high-profile shareholder class actions and other litigations involving a wide array of matters, including financial fraud, market manipulation, mergers and acquisitions, fiduciary mismanagement of investment portfolios, and patent infringement. Mr. Mustokoff received his law degree from the Temple University School of Law, and is a Phi Beta Kappa honors graduate of Wesleyan University. At law school, Mr. Mustokoff was the articles and commentary editor of the *Temple Political and Civil Rights Law Review* and the recipient of the Raynes, McCarty, Binder, Ross and Mundy Graduation Prize for scholarly achievement in the law. He is admitted to practice before the state courts of New York and Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Pennsylvania and the District of Colorado, and the United States Courts of Appeals for the Eleventh and Federal Circuits.

Mr. Mustokoff is currently prosecuting several nationwide securities cases on behalf of U.S. and overseas institutional investors, including *In re JPMorgan Chase Securities Litigation (*S.D.N.Y.), arising out of the "London Whale" derivatives trading scandal which led to over $6 billion in losses in the bank's proprietary trading portfolio. He serves as lead counsel for six public pension funds in the multi-district securities litigation against BP in Texas federal court stemming from the 2010 Deepwater Horizon disaster in the Gulf of Mexico. He successfully argued the opposition to BP's motion to dismiss, resulting in a landmark decision sustaining fraud claims under English law for purchasers of BP shares on the London Stock Exchange.

Mr. Mustokoff also played a major role in prosecuting *In re Citigroup Bond Litigation* (S.D.N.Y.), involving allegations that Citigroup concealed its exposure to subprime mortgage debt on the eve of the 2008 financial crisis. The $730 million settlement marks the second largest recovery under Section 11 of the Securities Act in the history of the statute. Mr. Mustokoff's significant courtroom experience includes serving as one of the lead trial lawyers for shareholders in the only securities fraud class action arising out

of the financial crisis to be tried to jury verdict. In addition to his trial practice in federal courts, he has successfully tried cases before the Financial Industry Regulatory Authority (FINRA).

Prior to joining the Firm, Mr. Mustokoff practiced at Weil, Gotshal & Manges LLP in New York, where he represented public companies and financial institutions in SEC enforcement and white collar criminal matters, shareholder litigation and contested bankruptcy proceedings.

**SHARAN NIRMUL,** a partner of the Firm, concentrates his practice in the area of securities, consumer and fiduciary class litigation, principally representing the interests of plaintiffs in class action and complex commercial litigation. Mr. Nirmul has represented clients in federal and state courts and in alternative dispute resolution forums. Mr. Nirmul received his law degree from The George Washington University Law School (J.D. 2001) where he served as an articles editor for the *Environmental Lawyer Journal* and was a member of the Moot Court Board. He was awarded the school's Lewis Memorial Award for excellence in clinical practice. He received his undergraduate degree from Cornell University (B.S. 1996). Mr. Nirmul is admitted to practice law in the state courts of New York, New Jersey, Pennsylvania and Delaware, and in the U.S. District Courts for the Southern District of New York, District of New Jersey, and District of Delaware.

Mr. Nirmul has represented institutional investors in a number of notable securities class action cases. These include *In re Bank of America Securities Litigation*, a case which represents the sixth largest recovery for shareholders under the federal securities laws ($2.43 billion settlement) and which included significant corporate governance enhancements at Bank of America; *In re Global Crossing Securities Litigation* (recovery of over $450 million); *In re Delphi Securities Litigation* ($284 million settlement with Delphi, its former officers and directors and underwriters, and a separate $38.25 million settlement with the auditors); and *Satyam Computer Services Securities Litigation*, ($150.5 million settlement).

Mr. Nirmul has also been at the forefront of litigation on behalf of investors who suffered losses through fraud, breach of fiduciary and breach of contract by their custodians and investment fiduciaries. In a matter before the American Arbitration Association, Mr. Nirmul represented a publicly traded reinsurance company in a breach of contract and breach of fiduciary suit against its former controlling shareholder and fiduciary investment manager, arising out of its participation and losses through a securities lending program and securing a $70 million recovery. Mr. Nirmul is also presently litigating breach of contract and Trust Indenture Act claims against the trustees of mortgage backed securities issued by Washington Mutual (Washington State Investments Board et al v. Bank of America National Association et al) on behalf of several state public pension funds. In connection with a scheme to manipulate foreign exchange rates assigned to its custodial clients, Mr. Nirmul is a member of the team litigating a consumer class action asserting contractual and fiduciary duty claims against BNY Mellon in the Southern District of New York (In re BNY Mellon Forex Litigation).

Mr. Nirmul regularly speaks on matters affecting institutional investors at conferences and symposiums. He has been a speaker and/or panelist at the annual Rights and Responsibilities of Institutional Investors in Amsterdam, The Netherlands and annual Evolving Fiduciary Obligations of Pension Plans in Washington, D.C.

**JUSTIN O. RELIFORD,** a partner of the Firm, concentrates his practice on mergers and acquisition litigation and shareholder derivative litigation. Mr. Reliford graduated from the University of Pennsylvania Law School in 2007 and received his B.A. from Williams College in 2003, majoring in Psychology with a concentration in Leadership Studies. Mr. Reliford is a member of the Pennsylvania and New Jersey bars, and he is admitted to practice in the Third Circuit Court of Appeals, the Eastern District of Pennsylvania, and the District of New Jersey.

Mr. Reliford has extensive experience representing clients in connection with nationwide class and collective actions. Most notably, Mr. Reliford, was part of the trial team *In re Dole Food Co., Inc. Stockholder Litig.*, C.A. No. 8703-VCL, that won a trial verdict in favor of Dole stockholders for $148 million. He also litigated *In re GFI Group, Inc. Stockholder Litig.* Consol. C.A. No. 10136-VCL (Del. Ch.) ($10.75 million cash settlement); *In re Globe Specialty Metals, Inc. Stockholders Litig.*, Consol. C.A. No. 10865-VCG (Del. Ch.) ($32.5 million settlement); and *In re Harleysville Mutual* (CCP, Phila. Cnty. 2012) (an expedited merger litigation case challenging Harleysville's agreement to sell the company to Nationwide Insurance Company, which lead to a $26 million cash payment to policyholders). Prior to joining the Firm, Mr. Reliford was an associate in the labor and employment practice group of Morgan Lewis & Bockius, LLP. There, Mr. Reliford concentrated his practice on employee benefits, fiduciary, and workplace discrimination litigation.

**LEE D. RUDY**, a partner of the Firm, manages the Firm's mergers and acquisition and shareholder derivative litigation. Mr. Rudy received his law degree from Fordham University, and his undergraduate degree, *cum laude*, from the University of Pennsylvania. Mr. Rudy is licensed to practice in Pennsylvania and New York.

Representing both institutional and individual shareholders in these actions, he has helped cause significant monetary and corporate governance improvements for those companies and their shareholders. Lee also co-chairs the Firm's qui tam and whistleblower practices, where he represents whistleblowers before administrative agencies and in court.  Mr. Rudy regularly practices in the Delaware Court of Chancery, where he served as co-lead trial counsel in the landmark case of *In re S. Peru Copper Corp. S'holder Derivative Litig.*, C.A. No. 961-CS, a $2 billion trial verdict against Southern Peru's majority shareholder. He previously served as lead counsel in dozens of high profile derivative actions relating to the "backdating" of stock options. Prior to civil practice, Mr. Rudy served for several years as an Assistant District Attorney in the Manhattan (NY) District Attorney's Office, and as an Assistant United States Attorney in the US Attorney's Office (DNJ).

**RICHARD A. RUSSO, JR.**, a partner of the Firm, focuses his practice on securities litigation. Mr. Russo received his law degree from the Temple University Beasley School of Law, where he graduated *cum laude* and was a member of the Temple Law Review, and graduated *cum laude* from Villanova University, where he received a Bachelor of Science degree in Business Administration. Mr. Russo is licensed to practice in Pennsylvania and New Jersey.

Mr. Russo has represented individual and institutional investors in obtaining significant recoveries in numerous class actions arising under the federal securities laws, including *In re Bank of American Securities Litigation*, No. 1:09-md-02058-PKC (S.D.N.Y.) ($2.43 billion recovery), *In re Citigroup Bond Litigation*, No. 08-cv-09522-SHS (S.D.N.Y.) ($730 million recovery), *In re Lehman Brothers Securities Litigation*, No. 1:09-md-02017-LAK (S.D.N.Y.) ($616 million recovery).

**MARC A. TOPAZ**, a partner of the Firm, oversees the Firm's derivative, transactional and case development departments. Mr. Topaz received his law degree from Temple University School of Law, where he was an editor of the *Temple Law Review* and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the *New York University Tax Law Review*. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Topaz has been heavily involved in all of the Firm's cases related to the subprime mortgage crisis, including cases seeking recovery on behalf of shareholders in companies affected by the subprime crisis, as well as cases seeking recovery for 401K plan participants that have suffered losses in their retirement

plans. Mr. Topaz has also played an instrumental role in the Firm's option backdating litigation. These cases, which are pled mainly as derivative claims or as securities law violations, have served as an important vehicle both for re-pricing erroneously issued options and providing for meaningful corporate governance changes. In his capacity as the Firm's department leader of case initiation and development, Mr. Topaz has been involved in many of the Firm's most prominent cases, including *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) (S.D.N.Y. Dec. 12, 2002); *Wanstrath v. Doctor R. Crants, et al.*, No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled — $3.2 billion); and virtually all of the 80 options backdating cases in which the Firm is serving as Lead or Co-Lead Counsel. Mr. Topaz has played an important role in the Firm's focus on remedying breaches of fiduciary duties by corporate officers and directors and improving corporate governance practices of corporate defendants.

**MELISSA L. TROUTNER,** a partner of the Firm, concentrates her practice on new matter development with a specific focus on analyzing securities class action lawsuits, antitrust actions, and complex consumer actions. Ms. Troutner is also a member of the Firm's lead plaintiff litigation practice group. Ms. Troutner received her law degree, Order of the Coif, *cum laude*, from the University of Pennsylvania Law School in 2002 and her Bachelor of Arts, Phi Beta Kappa, *magna cum laude*, from Syracuse University in 1999. Ms. Troutner is licensed to practice law in Pennsylvania, New York and Delaware.

Prior to joining Kessler Topaz, Ms. Troutner practiced as a litigator with several large defense firms, focusing on complex commercial, products liability and patent litigation, and clerked for the Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey.

**MICHAEL C. WAGNER**, a partner of the Firm, handles class-action merger litigation and shareholder derivative litigation for the Firm's individual and institutional clients. A graduate of the University of Pittsburgh School of Law and Franklin and Marshall College, Mr. Wagner has clerked for two appellate court judges and began his career at a Philadelphia-based commercial litigation firm, representing clients in business and corporate disputes across the United States. Mr. Wagner is admitted to practice in the courts of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Courts for the Eastern and Western Districts of Pennsylvania, the Eastern District of Michigan, and the District of Colorado.

Frequently appearing in the Delaware Court of Chancery, Mr. Wagner has helped to achieve substantial monetary recoveries for stockholders of public companies in cases arising from corporate mergers and acquisitions. Mr. Wagner served as co-lead trial counsel in *In re Dole Food Co., Inc. Stockholder Litig.*, C.A. No. 8703-VCL, which won a trial verdict in favor of Dole stockholders for ($148 million settlement). He has also achieved significant monetary results in similar cases such as: *In re Genentech, Inc. S'holders Litig.*, Consol. C.A. No. 3911-VCS (Del. Ch.) (litigation caused Genentech's stockholders to receive $3.9 billion in additional merger consideration from Roche); *In re Anheuser Busch Companies, Inc. S'holders Litig.*, C.A. No. 3851-VCP (Del. Ch.) (settlement required enhanced disclosures to stockholders and resulted in a $5 per share increase in the price paid by InBev in its acquisition of Anheuser-Busch); *In re GSI Commerce, Inc. S'holders Litig.*, C.A. No. 6346-VCN (Del. Ch.) (settlement required additional $23.9 million to be paid to public stockholders as a part of the company's merger with eBay, Inc.); *In re GFI Group, Inc. Stockholder Litig.* Consol. C.A. No. 10136-VCL (Del. Ch.) ($10.75 million); *In re Globe Specialty Metals, Inc. Stockholders Litig.*, Consol. C.A. No. 10865-VCG (Del. Ch.) ($32.5 million settlement). Mr. Wagner was also a part of the team that prosecuted *In re S. Peru Copper Corp. S'holder Derivative Litig.*, C.A. No. 961-CS, which resulted in a $2 billion post-trial judgment.

**JOHNSTON de F. WHITMAN, JR**., a partner of the Firm, focuses his practice on securities litigation, primarily in federal court. Mr. Whitman received his law degree from Fordham University School of Law, where he was a member of the Fordham International Law Journal, and graduated *cum laude* from Colgate

University. He is licensed to practice in Pennsylvania and New York., and is admitted to practice in courts around the country, including the United States Courts of Appeal for the Second, Third, and Fourth Circuits.

Mr. Whitman has represented institutional investors in obtaining substantial recoveries in numerous securities fraud class actions, including: (i) *In re Bank of America Securities Litigation*, a case which represents the sixth largest recovery for shareholders under the federal securities laws (settled --$2.425 billion); (ii) *In re Royal Ahold Sec. Litig.*, No. 03-md-01539 (D. Md. 2003) ($1.1 billion settlement); (iii) *In re DaimlerChrysler AG Sec. Litig.*, No. 00-0993 (D. Del. 2000) ($300 million settlement); (iv) *In re Dollar General, Inc. Sec. Litig.*, No. 01-cv-0388 (M.D. Tenn. 2001) ( $162 million settlement); and (v) *In re JPMorgan & Co. Securities Litigation,* No. 12-cv-03852 (S.D.N.Y.) ($150 million settlement). Mr. Whitman has also obtained favorable recoveries for institutional investors pursuing direct securities fraud claims, including cases against Merck & Co., Inc., Qwest Communications International, Inc. and Merrill Lynch & Co., Inc. In addition, Mr. Whitman  represented a publicly traded company in a large arbitration against AIG, Inc. related to securities lending losses, *Transatlantic Holdings, Inc. v. AIG,* No. 50-148T0037610 (AAA) ($75million settlement).

**ROBIN WINCHESTER,** a partner of the Firm, concentrated her practice in the areas of securities litigation and lead plaintiff litigation, when she joined the Firm. Presently, Ms. Winchester concentrates her practice in the area of shareholder derivative actions. Ms. Winchester earned her Juris Doctor degree from Villanova University School of Law, and received her Bachelor of Science degree in Finance from St. Joseph's University. Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania.

Ms. Winchester has served as lead counsel in numerous high-profile derivative actions relating to the backdating of stock options, including *In re Eclipsys Corp. Derivative Litigation*, Case No. 07-80611-Civ-MIDDLEBROOKS (S.D. Fla.); *In re Juniper Derivative Actions,* Case No. 5:06-cv-3396-JW (N.D. Cal.); *In re McAfee Derivative Litigation,* Master File No. 5:06-cv-03484-JF (N.D. Cal.); *In re Quest Software, Inc. Derivative Litigation,* Consolidated Case No. 06CC00115 (Cal. Super. Ct., Orange County); and *In re Sigma Designs, Inc. Derivative Litigation,* Master File No. C-06-4460-RMW (N.D. Cal.). Settlements of these, and similar, actions have resulted in significant monetary returns and corporate governance improvements for those companies, which, in turn, greatly benefits their public shareholders.

**ERIC L. ZAGAR,** a partner of the Firm, concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the *Michigan Law Review*, and his undergraduate degree from Washington University in St. Louis*.* He is admitted to practice in Pennsylvania, California and New York. Mr. Zagar previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court.

Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen*, Case No. 01-CC-03930 (Orange County, CA 2001) (Broadcom Corp. Derivative Action); and *In re Viacom, Inc. Shareholder Derivative Litig*., Index No. 602527/05 (New York County, NY 2005). He was a member of the trial team in the landmark case of *In re S. Peru Copper Corp. S'holder Derivative Litig.*, C.A. No. 961-CS, a $2 billion trial verdict against Southern Peru's majority shareholder. Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.

**TERENCE S. ZIEGLER,** a partner of the Firm, concentrates a significant percentage of his practice to the investigation and prosecution of pharmaceutical antitrust actions, medical device litigation, and related anticompetitive and unfair business practice claims. Mr. Ziegler received his law degree from the Tulane University School of Law and received his undergraduate degree from Loyola University. Mr. Ziegler is licensed to practice law in Pennsylvania and the State of Louisiana, and has been admitted to practice before several courts including the United States Court of Appeals for the Third Circuit.

Mr. Ziegler has represented investors, consumers and other clients in obtaining substantial recoveries, including: *In re Flonase Antitrust Litigation; In re Wellbutrin SR Antitrust Litigation; In re Modafinil Antitrust Litigation; In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (against manufacturers of defective medical devices — pacemakers/implantable defibrillators — seeking costs of removal and replacement); and *In re Actiq Sales and Marketing Practices Litigation* (regarding drug manufacturer's unlawful marketing, sales and promotional activities for non-indicated and unapproved uses).

**ANDREW L. ZIVITZ**, a partner of the Firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Mr. Zivitz is licensed to practice in Pennsylvania and New Jersey.

Drawing on two decades of litigation experience, Mr. Zivitz concentrates his practice in the area of securities litigation and is currently litigating several of the largest federal securities fraud class actions in the U.S. Andy is skilled in all aspects of complex litigation, from developing and implementing strategies, to conducting merits and expert discovery, to negotiating resolutions. He has represented dozens of major institutional investors in securities class actions and has helped the firm recover more than $1 billion for damaged clients and class members in numerous securities fraud matters in which Kessler Topaz was Lead or Co-Lead Counsel, including *David H. Luther, et al., v. Countrywide Financial Corp., et. al*., 2:12-cv-05125 (C.D.Cal. 2012) (settled -- $500 million); *In re Pfizer Sec. Litig*., 1:04-cv-09866 (S.D.N.Y. 2004) (settled -- $486 million); *In re Tenet Healthcare Corp*., 02-CV-8462 (C.D. Cal. 2002) (settled — $281.5 million); *In re JPMorgan Sec. Litig*., 1:12-cv-03852 (S.D.N.Y. 2012) (settled -- $150 million); *In re Computer Associates Sec. Litig.*, No. 02-CV-122 6 (E.D.N.Y. 2002) (settled — $150 million); *In re Hewlett-Packard Sec. Litig.*, 12-cv-05980 (N.D.Cal. 2012) (settled -- $100 million); and *In re Medtronic Inc. Sec. Litig*., 08-cv-0624 (D. Minn. 2008) (settled -- $ 85 million).

Andy's extensive courtroom experience serves his clients well in trial situations, as well as pre-trial proceedings and settlement negotiations. He served as one of the lead plaintiffs' attorneys in the only securities fraud class action arising out of the financial crisis to be tried to a jury verdict, has handled a Daubert trial in the U.S. District Court for the Southern District of New York, and successfully argued back-to-back appeals before the Ninth Circuit Court of Appeals. Before joining Kessler Topaz, Andy worked at the international law firm Drinker Biddle and Reath, primarily representing defendants in large, complex litigation. His experience on the defense side of the bar provides a unique perspective in prosecuting complex plaintiffs' litigation.

## COUNSEL

**JENNIFER L. ENCK,** Counsel to the Firm, concentrates her practice in the area of securities litigation and settlement matters. Ms. Enck received her law degree, *cum laude*, from Syracuse University College of Law, where she was a member of the Syracuse Journal of International Law and Commerce, and her undergraduate degree in International Politics/International Studies from The Pennsylvania State University. Ms. Enck also received a Masters degree in International Relations from Syracuse University's

Maxwell School of Citizenship and Public Affairs. She is licensed to practice in Pennsylvania and has been admitted to practice before the United States Court of Appeals for the Third and Eleventh Circuits and the United States District Court for the Eastern District of Pennsylvania.

Ms. Enck has been involved in documenting and obtaining the required court approval for many of the firm's largest and most complex securities class action settlements, including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* Master File No. 09 MDL 2058 (S.D.N.Y.) (settled -$2.425 billion); *Luther v. Countrywide Financial Corp., et al.*, No. 2:12-cv-05125-MRP(MANx) (C.D. Cal.) (settled - $500 million); *In re: Lehman Brothers Securities and ERISA Litigation*, Master File No. 09 MD 2017 (LAK) (S.D.N.Y) (settled - $516,218,000); and *In re Satyam Computer Services, Ltd. Securities Litigation*, No. 09 MD 02027 (BSJ) (S.D.N.Y.) (settled - $150.5 million).

**MARK K. GYANDOH,** Counsel to the Firm, concentrates his practice in the area of ERISA and consumer protection litigation. Mr. Gyandoh received his J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law, where, during law school, Mr. Gyandoh served as the research editor for the Temple International and Comparative Law Journal. Mr. Gyandoh received his undergraduate degree from Haverford College (B.A. 1996). He is licensed to practice in New Jersey and Pennsylvania.

Mr. Gyandoh, has helped obtain substantial recoveries in numerous ERISA breach of fiduciary duty class actions, including: *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, $49.5 million; *In re Colgate-Palmolive Co. ERISA Litigation*, $45.9 million; and *In re National City ERISA Litigation*, $43 million.

**DONNA SIEGEL MOFFA,** Counsel to the Firm, concentrates her practice in the area of consumer protection litigation. Ms. Siegel Moffa received her law degree, with honors, from Georgetown University Law Center in May 1982 and a masters degree in Public Administration from Rutgers, the State University of New Jersey, Graduate School-Camden in January 2017. She received her undergraduate degree, *cum laude*, from Mount Holyoke College in Massachusetts. Ms. Siegel Moffa is admitted to practice before the Third Circuit Court of Appeals, the United States Courts for the District of New Jersey and the District of Columbia, as well as the Supreme Court of New Jersey and the District of Columbia Court of Appeals.

Prior to joining the Firm, Ms. Siegel Moffa was a member of the law firm of Trujillo, Rodriguez & Richards, LLC, where she litigated, and served as co-lead counsel, in complex class actions arising under federal and state consumer protection statutes, lending laws and laws governing contracts and employee compensation. Prior to entering private practice, Ms. Siegel Moffa worked at both the Federal Energy Regulatory Commission (FERC) and the Federal Trade Commission (FTC). At the FTC, she prosecuted cases involving allegations of deceptive and unsubstantiated advertising. In addition, both at FERC and the FTC, Ms. Siegel Moffa was involved in a wide range of administrative and regulatory issues including labeling and marketing claims, compliance, FOIA and disclosure obligations, employment matters, licensing and rulemaking proceedings.

Ms. Siegel Moffa served as co-lead counsel for the class in *Robinson v. Thorn Americas, Inc.*, L-03697-94 (Law Div. 1995), a case that resulted in a significant monetary recovery for consumers and changes to rent-to-own contracts in New Jersey. Ms. Siegel Moffa was also counsel in *Muhammad v. County Bank of Rehoboth Beach, Delaware,* 189 N.J. 1 (2006), U.S. Sup. Ct. cert. denied, 127 S. Ct. 2032(2007), in which the New Jersey Supreme Court struck a class action ban in a consumer arbitration contract. She has served as class counsel representing consumers pressing TILA claims, e.g. *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540 (D.N.J. 1999), and *Dal Ponte v. Am. Mortg. Express Corp.*, CV- 04-2152 (D.N.J. 2006), and has pursued a wide variety of claims that impact consumers and individuals including those involving predatory and sub-prime lending, mandatory arbitration clauses, price fixing, improper medical billing

practices, the marketing of light cigarettes and employee compensation. Ms. Siegel Moffa's practice has involved significant appellate work representing individuals, classes, and non-profit organizations participating as amicus curiae, such as the National Consumer Law Center and the AARP. In addition, Ms. Siegel Moffa has regularly addressed consumer protection and litigation issues in presentations to organizations and professional associations.

**MICHELLE M. NEWCOMER**, Counsel to the Firm, concentrates her practice in the area of securities litigation. Ms. Newcomer earned her law degree from Villanova University School of Law in 2005, and earned her B.B.A. in Finance and Art History from Loyola University Maryland in 2002. Ms. Newcomer is licensed to practice law in the Commonwealth of Pennsylvania and the State of New Jersey and has been admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Second, Ninth and Tenth Circuits, and the United States District Court for the Districts of New Jersey and Colorado.

Ms. Newcomer has represented shareholders in numerous securities class actions in which the Firm has served as Lead or Co-Lead Counsel, through all aspects of pre-trial proceedings, including complaint drafting, litigating motions to dismiss and for summary judgment, conducting document, deposition and expert discovery, and appeal. Ms. Newcomer also has been involved in the Firm's securities class action trials, including most recently serving as part of the trial team in the Longtop Financial Technologies securities class action trial that resulted in a jury verdict on liability and damages in favor of investors. Ms. Newcomer began her legal career with the Firm in 2005. Prior to joining the Firm, she was a summer law clerk for the Hon. John T.J. Kelly, Jr. of the Pennsylvania Superior Court.

Ms. Newcomer's representative cases include: *In re Longtop Financial Technologies Ltd. Sec. Litig*. No. 11-cv-3658 (SAS) (S.D.N.Y.) – obtained on behalf of investors a jury verdict on liability and damages against the company's former CFO; *In re Lehman Brothers Sec. & ERISA Litig*., No. 09 MD 2017 (LAK) (S.D.N.Y.) ($616 million settlement); *In re Pfizer, Inc. Sec. Litig*., No. 04-9866-LTS (S.D.N.Y.) – represents three of the court-appointed class representatives, and serves as additional counsel for the class in securities fraud class action based on alleged misrepresentations and omissions concerning cardiovascular risks associated with Celebrex® and Bextra®, which survived Defendants' motion for summary judgment; *Connecticut Retirement Plans & Trust Funds et al. v. BP p.l.c. et al*. (S.D. Tex.) – represents several public pension funds in direct action asserting claims under Section 10(b) and Rule 10b-5, for purchases of BP ADRs on the NYSE, and under English law for purchasers of BP ordinary shares on the London Stock Exchange, which recently survived Defendants' motion to dismiss; litigation is ongoing.

**RICHARD B. YATES**, Of Counsel to the Firm, focuses his practice on securities fraud litigation and portfolio monitoring.  He received his law degree from Brooklyn Law School, cum laude, where he was the Business Editor of the Brooklyn Journal of International Law and did his undergraduate work at the University of Rochester. He is licensed to practice in the state of New York.

## ASSOCIATES & STAFF ATTORNEYS

**ASHER S. ALAVI,** an associate of the Firm, concentrates his practice in the area of qui tam litigation. Mr. Alavi received his law degree, cum laude, from Boston College Law School in 2011 where he served as Note Editor for the Boston College Journal of Law & Social Justice. He received his undergraduate degree in Communication Studies and Political Science Northwestern University in 2007. Mr. Alavi is licensed to practice law in Pennsylvania and Maryland. Prior to joining Kessler Topaz, Mr. Alavi was an associate with Pietragallo Gordon Alfano Bosick & Raspanti LLP in Philadelphia, where he worked on a variety of whistleblower and healthcare matters.

**LaMARLON R. BARKSDALE,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Barksdale received his law degree from Temple University, James E. Beasley School of Law in 2005 and his undergraduate degree, cum laude, from the University of Delaware in 2001. He is licensed to practice law in Pennsylvania and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Prior to joining Kessler Topaz, Mr. Barksdale worked in complex pharmaceutical litigation, commercial litigation, criminal law and bankruptcy law.

**ETHAN J. BARLIEB,** an associate of the Firm, concentrates his practice in the areas of ERISA, consumer protection and antitrust litigation. Mr. Barlieb received his law degree, *magna cum laude*, from the University of Miami School of Law in 2007 and his undergraduate degree from Cornell University in 2003. Mr. Barlieb is licensed to practice in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Mr. Barlieb was an associate with Pietragallo Gordon Alfano Bosick & Raspanti, LLP, where he worked on various commercial, securities and employment matters. Before that, Mr. Barlieb served as a law clerk for the Honorable Mitchell S. Goldberg in the U.S. District Court for the Eastern District of Pennsylvania.

**ADRIENNE BELL,** an associate of the Firm, focuses her practice on case development and client relations. Ms. Bell received her law degree from Brooklyn Law School and her undergraduate degree in Music Theory and Composition from New York University, where she graduated *magna cum laude.* Ms. Bell is licensed to practice in Pennsylvania. Prior to joining the Firm, Ms. Bell practiced in the areas of entertainment law and commercial litigation.

**MATTHEW BENEDICT,** an associate of the Firm, concentrates his practice in the area of mergers and acquisitions litigation and shareholder derivative litigation. Mr. Benedict earned his law degree from Villanova University School of Law and his undergraduate degree from Haverford College. He is licensed to practice law in Pennsylvania and New Jersey. Prior to joining the firm, he worked as a staff attorney in the White Collar / Securities Litigation department at Dechert LLP.

**STACEY BERGER,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Widener University School of Law, and her undergraduate degree in Business Administration from George Washington University. Ms. Berger is licensed to practice in Pennsylvania.

While in law school, Ms. Berger was a law clerk for a general practice firm in Bucks County. Prior to joining Kessler Topaz, she worked as an associate for a Bucks County law firm.

**ELIZABETH WATSON CALHOUN,** a staff attorney of the Firm, focuses on securities litigation. She has represented investors in major securities fraud and has also represented shareholders in derivative and direct shareholder litigation. Ms. Calhoun received her law degree from Georgetown University Law Center (*cum laude*), where she served as Executive Editor of the Georgetown Journal of Gender and the Law. She received her undergraduate degree in Political Science from the University of Maine, Orono (*with high distinction*). Ms. Calhoun is admitted to practice before the state court of Pennsylvania and the U.S. District Court for the Eastern District of Pennsylvania. Prior to joining the Firm, Ms. Calhoun was employed with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

**QUIANA CHAPMAN-SMITH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Temple University Beasley School of Law in

Pennsylvania and her Bachelor of Science in Management and Organizations from The Pennsylvania State University. Ms. Chapman-Smith is licensed to practice law in the Commonwealth of Pennsylvania. Prior to joining Kessler Topaz, she worked in pharmaceutical litigation.

**EMILY N. CHRISTIANSEN,** an associate of the Firm, focuses her practice in securities litigation and international actions, in particular. Ms. Christiansen received her Juris Doctor and Global Law certificate, *cum laude*, from Lewis and Clark Law School in 2012. Ms. Christiansen is a graduate of the University of Portland, where she received her Bachelor of Arts, *cum laude*, in Political Science and German Studies. Ms. Christiansen is currently licensed to practice law in New York and Pennsylvania.

While in law school, Ms. Christiansen worked as an intern in Trial Chambers III at the International Criminal Tribunal for the Former Yugoslavia. Ms. Christiansen also spent two months in India as foreign legal trainee with the corporate law firm of Fox Mandal. Ms. Christiansen is a 2007 recipient of a Fulbright Fellowship and is fluent in German.

Ms. Christiansen devotes her time to advising clients on the challenges and benefits of pursuing particular litigation opportunities in jurisdictions outside the U.S. In those non-US actions where Kessler Topaz is actively involved, Emily liaises with local counsel, helps develop case strategy, reviews pleadings, and helps clients understand and successfully navigate the legal process. Her experience includes non-US opt-in actions, international law, and portfolio monitoring and claims administration. In her role, Ms. Christiansen has helped secure recoveries for institutional investors in the litigation in Japan against *Olympus Corporation* (settled - ¥11 billion) and in the Netherlands against *Fortis Bank N.V.* (settled - €1.2 billion).

**SARA A. CLOSIC,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Mrs. Closic earned her Juris Doctor degree from Widener University School of Law in Wilmington, Delaware, and her undergraduate degree from Pennsylvania State University. Mrs. Closic is admitted to practice in Pennsylvania and New Jersey.

During law school, Mrs. Closic interned at the U.S. Food and Drug Administration and the Delaware Department of Justice in the Consumer Protection & Fraud Division where she was heavily involved in protecting consumers within a wide variety of subject areas. Prior to joining the Firm, Mrs. Closic practiced in the areas of pharmaceutical & health law litigation, and was an Associate at a general practice firm in Bensalem, Pennsylvania.

**THERESA M. DEANGELIS,** an associate of the Firm, concentrates her practice in Whistleblower Litigation. Ms. DeAngelis received her law degree from Penn State Law in 2018 and her undergraduate degree from Penn State University in 2014. Ms. DeAngelis is licensed to practice in Pennsylvania.

**STEPHEN J. DUSKIN**, a staff attorney of the Firm, concentrates his practice in the area of antitrust litigation. Mr. Duskin received his law degree from Rutgers School of Law at Camden in 1985, and his undergraduate degree in Mathematics from the University of Rochester in 1976. Mr. Duskin is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Duskin practiced corporate and securities law in private practice and in corporate legal departments, and also worked for the U.S. Securities and Exchange Commission and the Resolution Trust Corporation.

**DONNA EAGLESON,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation discovery matters. She received her law degree from the University of Dayton School of Law in Dayton, Ohio. Ms. Eagleson is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Eagleson worked as an attorney in the law enforcement field, and practiced insurance defense law with the Philadelphia firm Margolis Edelstein.

**PATRICK J. EDDIS,** a staff attorney of the Firm, concentrates his practice in the area of corporate governance litigation. Mr. Eddis received his law degree from Temple University School of Law in 2002 and his undergraduate degree from the University of Vermont in 1995. Mr. Eddis is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Eddis was a Deputy Public Defender with the Bucks County Office of the Public Defender. Before that, Mr. Eddis was an attorney with Pepper Hamilton LLP, where he worked on various pharmaceutical and commercial matters.

**SAMUEL C. FELDMAN**, an associate of the Firm, concentrates his practice in securities litigation. Mr. Feldman received his law degree, with honors, from the Emory University School of Law in 2018 and his undergraduate degree, with honors, from the University of Florida in 2015. Mr. Feldman is licensed to practice in Pennsylvania.

While in law school, Sam worked as an extern at The Coca-Cola Company, taught two lab sections of Advanced Legal Writing & Editing under Professor Timothy Terrell, and served as President of the Student Bar Association.

**MARK FRANEK**, an associate of the Firm, concentrates his practice on securities fraud, antitrust, and unfair business practices litigation. Mr. Franek received his law degree from Temple University Beasley School of Law, and graduated *with honors* from Duke University. He is licensed to practice in Pennsylvania and New Jersey.

Before joining the Firm, Mr. Franek was a Judicial Officer to the Honorable Annette M. Rizzo, Philadelphia Court of Common Pleas, and a Judicial Intern to the Honorable Gene E.K. Pratter, U.S. District Court for the Eastern District of Pennsylvania. In law school, Mr. Franek served on Temple's Law Review and was a member of Temple's Moot Court Honor Society.

Prior to law school, Mr. Franek worked for over 15 years in a variety of educational settings, including K-12 and higher education environments. Mr. Franek was the Dean of Students at the William Penn Charter School, a Quaker K-12 independent school in Philadelphia, and also taught at the University of Pennsylvania, in its Masters in School Leadership Program, and at Cabrini College and Philadelphia University, in their English departments.

**KIMBERLY V. GAMBLE**, a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Widener University, School of Law in Wilmington, DE. While in law school, she was a CASA/Youth Advocates volunteer and had internships with the Delaware County Public Defender's Office as well as The Honorable Judge Ann Osborne in Media, Pennsylvania. She received her Bachelor of Arts degree in Sociology from The Pennsylvania State University. Ms. Gamble is licensed to practice law in the Commonwealth of Pennsylvania. Prior to joining Kessler Topaz, she worked in pharmaceutical litigation.

**ABIGAIL J. GERTNER,** a staff attorney of the Firm, concentrates her practice in consumer and ERISA litigation. Ms. Gertner earned her Juris Doctor degree from Santa Clara University School of Law, and her Bachelor of Arts degree in Classical Studies and her Bachelor of Sciences degree in Psychology from Tulane University, *cum laude.* Ms. Gertner is licensed to practice in Pennsylvania and New Jersey. She is also admitted to practice before the Eastern District of Pennsylvania.

Ms. Gertner has experience in a wide range of litigation including securities, consumer, pharmaceutical, and toxic tort matters. Prior to joining the Firm, Ms. Gertner was an associate with the Wilmington, Delaware law firm of Maron, Marvel, Bradley & Anderson. Before that, she was employed by the Wilmington office of Grant & Eisenhofer, P.A.

**GRANT D. GOODHART**, an associate of the Firm, concentrates his practice in the areas of mergers and acquisitions litigation and stockholder derivative actions. Mr. Goodhart received his law degree, cum laude, from Temple University Beasley School of Law and his undergraduate degree, magna cum laude, from the University of Pittsburgh. He is licensed to practice law in Pennsylvania and New Jersey.

**TYLER S. GRADEN,** an associate of the Firm, focuses his practice on consumer protection and whistleblower litigation. Mr. Graden received his Juris Doctor degree from Temple Law School and his undergraduate degrees in Economics and International Relations from American University. Mr. Graden is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before numerous United States District Courts.

Prior to joining Kessler Topaz, Mr. Graden practiced with a Philadelphia law firm where he litigated various complex commercial matters, and also served as an investigator with the Chicago District Office of the Equal Employment Opportunity Commission.

Mr. Graden has represented individuals and institutional investors in obtaining substantial recoveries in numerous class actions, including *Board of Trustees of the Buffalo Laborers Security Fund v. J.P. Jeanneret Associates, Inc.,* Case No. 09 Civ. 8362 (S.D.N.Y.) (settled - $219 million); *Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, NA*., Case No. 09 Civ. 0686 (S.D.N.Y.) (settled - $150 million); *In re Merck & Co., Inc. Vytorin ERISA Litig*., Case No. 09 Civ. 197 4 (D.N.J.) (settled - $10.4 million); and *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) (settled - $9 million). Mr. Graden has also obtained favorable recoveries on behalf of multiple, nationwide classes of borrowers whose insurance was force-placed by their mortgage servicers.

**STACEY A. GREENSPAN,** an associate of the Firm, concentrates her practice in the areas of merger and acquisition litigation and shareholder derivative actions. Ms. Greenspan received her law degree from Temple University in 2007 and her undergraduate degree from the University of Michigan in 2001, with honors. Ms. Greenspan is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Greenspan served as an Assistant Public Defender in Philadelphia for almost a decade, litigating hundreds of trials to verdict. Ms. Greenspan also worked at the Trial and Capital Habeas Units of the Federal Community Defender Office of the Eastern District of Pennsylvania throughout law school.

**KEITH S. GREENWALD,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Greenwald received his law degree from Temple University, Beasley School of Law in 2013 and his undergraduate degree in History, summa cum laude, from Temple University in 2004. Mr. Greenwald is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Greenwald was a contract attorney on various projects in Philadelphia and was at the International Criminal Tribunal for the Former Yugoslavia, at The Hague in The Netherlands, working in international criminal law.

**STEPHANIE M. GREY**, an associate of the Firm, concentrates her practice in the area of securities fraud litigation. Ms. Grey received her law degree, *cum laude*, from Temple University Beasley School of Law

in 2017 and her undergraduate degree from University of Maryland in 2014. Ms. Grey is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Grey served as a law clerk for the Honorable Deborah Silverman Katz, A.J.S.C. in the New Jersey Superior Court.

**JOHN J. GROSSI**, a staff attorney at the Firm, focuses his practice on securities litigation. Mr. Grossi received his law degree from Widener University Delaware School of Law and graduated *cum laude* from Curry College. He is licensed to practice law in Pennsylvania. Prior to joining the Firm as a Staff Attorney, Mr. Grossi was employed in the Firm's internship program as a Summer Law Clerk, where he was also a member of the securities fraud department.

During his time as a Summer Law Clerk, Mr. Grossi conducted legal research for several securities fraud class actions on behalf of shareholders, including Bank of America related to its acquisition of Merrill Lynch, Lehman Brothers, St. Jude Medical and NII Holdings.

**NATHAN A. HASIUK**, an associate of the Firm, concentrates his practice on securities litigation.  Mr. Hasiuk received his law degree from Temple University Beasley School of Law, and graduated *summa cum laude* from Temple University. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey. Prior to joining the Firm, Mr. Hasiuk was an Assistant Public Defender in Philadelphia.

**BRANDON R. HERLING,** an associate of the Firm, concentrates his practice in the areas of securities litigation and lead plaintiff litigation. Mr. Herling received his law degree, *magna cum laude*, from Temple University Beasley School of Law, and received his undergraduate degree from Franklin & Marshall College. Mr. Herling is licensed to practice in Pennsylvania.

**EVAN R. HOEY**, an associate of the Firm, focuses his practice on securities litigation.  Mr. Hoey received his law degree from Temple University Beasley School of Law, where he graduated *cum laude*, and graduated *summa cum laude* from Arizona State University.  He is licensed to practice in Pennsylvania and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

**SUFEI HU,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her J.D. from Villanova University School of Law, where she was a member of the Moot Court Board. Ms. Hu received her undergraduate degree from Haverford College in Political Science, with honors. She is licensed to practice law in Pennsylvania and New Jersey, and is admitted to the United States District Court of the Eastern District of Pennsylvania. Prior to joining the Firm, Ms. Hu worked in pharmaceutical, anti-trust, and securities law.

**NATALIE LESSER,** an associate of the Firm, concentrates her practice in the area of consumer protection. Ms. Lesser received her law degree from the University of Pittsburgh School of Law in 2010 and her undergraduate degree in English from the State University of New York at Albany in 2007. While attending Pitt Law, Ms. Lesser served as Editor in Chief of the University of Pittsburgh Law Review. Ms. Lesser is licensed to practice law in Pennsylvania and New Jersey.

Prior to Joining Kessler Topaz, Ms. Lesser was an associate with Akin Gump Strauss Hauer & Feld LLP, where she worked on a number of complex commercial litigation cases, including defending allegations of securities fraud and violations of ERISA for improper calculation and processing of insurance benefits.

**JOSHUA A. LEVIN,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Levin received his law degree from Widener University School of Law, and earned his undergraduate degree from The Pennsylvania State University. Mr. Levin is licensed to practice in Pennsylvania and New Jersey. Prior to joining Kessler Topaz, he worked in pharmaceutical litigation.

**JOSHUA A. MATERESE**, an associate of the Firm, concentrates his practice at Kessler Topaz in the areas of securities and consumer protection litigation. Mr. Materese received his Juris Doctor from Temple University Beasley School of Law in 2012, graduating with honors. He received his undergraduate degree from the Syracuse University Newhouse School of Communications. Mr. Materese is licensed to practice in Pennsylvania and admitted to practice before the United States Courts of Appeals for the Second and Third Circuits, and the United States District Courts for the Eastern District of Pennsylvania, the District of New Jersey and the District of Colorado.

**MARGARET E. MAZZEO,** an associate of the Firm, focuses her practice on securities litigation. Ms. Mazzeo received her law degree, *cum laude*, from Temple University Beasley School of Law, where she was a Beasley Scholar and a staff editor for the Temple Journal of Science, Technology, and Environmental Law. Ms. Mazzeo graduated with honors from Franklin and Marshall College. She is licensed to practice in Pennsylvania and New Jersey.

Ms. Mazzeo has been involved in several nationwide securities cases on behalf of investors, including *In re Lehman Brothers Sec. & ERISA Litig.*, No. 09 MD 2017 (S.D.N.Y.) (settled - $616 million, combined); and *Luther, et al. v. Countrywide Fin. Corp.*, No. 2:12-cv-05125 (C.D. Cal.) (settled - $500 million, combined). Ms. Mazzeo also was a member of the trial team who won a jury verdict in favor of investors in the *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) action.

**JOHN J. McCULLOUGH,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. In 2012, Mr. McCullough passed the CPA Exam. Mr. McCullough earned his Juris Doctor degree from Temple University School of Law, and his undergraduate degree from Temple University. Mr. McCullough is licensed to practice in Pennsylvania.

**STEVEN D. McLAIN,** a Staff Attorney of the Firm, concentrates his practice in megers and acquisition litigation and stockholder derivative litigation. He received his law degree from George Mason University School of Law, and his undergraduate degree from the University of Virginia. Mr. McLain is licensed to practice in Virginia. Prior to joining Kessler, Topaz, he practiced with an insurance defense firm in Virginia.

**STEFANIE J. MENZANO,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Menzano received her law degree from Drexel University School of Law in 2012 and her undergraduate degree in Political Science from Loyola University Maryland. Ms. Menzano is licensed to practice law in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Ms. Menzano was a fact witness for the Institute for Justice. During law school, Ms. Menzano served as a case worker for the Pennsylvania Innocence Project and as a judicial intern under the Honorable Judge Mark Sandson in the Superior Court of New Jersey, Atlantic County.

**JONATHAN F. NEUMANN,** an associate of the Firm, concentrates his practice in the area of securities litigation and fiduciary matters. Mr. Neumann earned his Juris Doctor degree from Temple University Beasley School of Law, where he was an editor for the Temple International and Comparative Law Journal and a member of the Moot Court Honor Society. Mr. Neumann earned his undergraduate degree from the University of Delaware. Mr. Neumann is licensed to practice in Pennsylvania and New York. Prior to joining the Firm, Mr. Neumann served as a law clerk to the Honorable Douglas E. Arpert of the United States District Court for the District of New Jersey.

Mr. Neumann has represented institutional investors in obtaining substantial recoveries in numerous cases, including *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12-md-2334 (S.D.N.Y.) (settled $335 million); *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, et al.*, No. 12-cv-2865 (S.D.N.Y.) (settled $69 million); *In re NII Holdings Sec. Litig.*, No. 14-cv-227 (E.D. Va.) (settled $41.5 million).

**ELAINE M. OLDENETTEL,** a staff attorney of the Firm, concentrates her practice in consumer and ERISA litigation. She received her law degree from the University of Maryland School of Law and her undergraduate degree in International Studies from the University of Oregon. While attending law school, Ms. Oldenettel served as a law clerk for the Honorable Robert H. Hodges of the United States Court of Federal Claims and the Honorable Marcus Z. Shar of the Baltimore City Circuit Court. Ms. Oldenettel is licensed to practice in Pennsylvania and Virginia.

**JENNY L. PAQUETTE**, an associate of the firm, concentrates her practice in securities litigation. Ms. Paquette received her law degree, *cum laude*, from Temple University's Beasley School of Law in 2017 and her undergraduate degree from Rutgers University, Camden, *cum laude*, in 2007. Ms. Paquette is licensed to practice in California.

**ALLYSON M. ROSSEEL**, a staff attorney of the Firm, concentrates her practice at Kessler Topaz in the area of securities litigation. She received her law degree from Widener University School of Law, and earned her B.A. in Political Science from Widener University. Ms. Rosseel is licensed to practice law in Pennsylvania and New Jersey. Prior to joining the Firm, Ms. Rosseel was employed as general counsel for a boutique insurance consultancy/brokerage focused on life insurance sales, premium finance and structured settlements.

**MICHAEL J. RULLO**, an associate of the Firm, focuses his practice on merger and acquisition litigation and shareholder derivative actions. Mr. Rullo received his law degree from Temple University Beasley School of Law in 2016, where he was a Staff Editor on the Temple Law Review. He obtained his B.A. from Temple University in 2013, graduating *summa cum laude*. Prior to joining the Firm, Mr. Rullo was a law clerk to the Honorable Francisco Dominguez, J.S.C., Camden Vicinage.

**NICOLE T. SCHWARTZBERG**, an associate of the Firm, concentrates her practice in the area of securities fraud litigation. Ms. Schwartzberg received her law degree from The University of California, Berkeley, School of Law in 2012, a masters in political science from Yale University in 2008, and her undergraduate degree from Cornell University, magna cum laude, in 2006. Ms. Schwartzberg is licensed to practice in New York.

Prior to joining Kessler Topaz, Ms. Schwartzberg was a litigation associate at Skadden, Arps, Slate, Meagher & Flom LLP in New York.

**MICHAEL J. SECHRIST,** a staff attorney at the Firm, concentrates his practice in the area of securities litigation. Mr. Sechrist received his law degree from Widener University School of Law in 2005 and his undergraduate degree in Biology from Lycoming College in 1998. Mr. Sechrist is licensed to practice law in Pennsylvania. Prior to joining Kessler Topaz, Mr. Sechrist worked in pharmaceutical litigation.

**IGOR SIKAVICA**, a staff attorney of the Firm, practices in the area of corporate governance litigation, with a focus on transactional and derivative cases. Mr. Sikavica received his J.D. from the Loyola University Chicago School of Law and his LL.B. from the University of Belgrade Faculty Of Law. Mr. Sikavica is licensed to practice in Pennsylvania. Mr. Sikavica's licenses to practice law in Illinois and the former Yugoslavia are no longer active.

Prior to joining Kessler Topaz, Mr. Sikavica has represented clients in complex commercial, civil and criminal matters before trial and appellate courts in the United States and the former Yugoslavia. Also, Mr. Sikavica has represented clients before international courts and tribunals, including – the International Criminal Tribunal for the Former Yugoslavia (ICTY), European Court of Human Rights and the UN Committee Against Torture.

**MELISSA J. STARKS,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Starks earned her Juris Doctor degree from Temple University--Beasley School of Law, her LLM from Temple University--Beasley School of Law, and her undergraduate degree from Lincoln University. Ms. Starks is licensed to practice in Pennsylvania.

**MICHAEL P. STEINBRECHER,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Steinbrecher earned his Juris Doctor from Temple University James E. Beasley School of Law, and received his Bachelors of Arts in Marketing from Temple University. Mr. Steinbrecher is licensed to practice in Pennsylvania and New Jersey. Prior to joining Kessler Topaz, he worked in pharmaceutical litigation.

**JULIE SWERDLOFF,** a staff attorney of the Firm, concentrates her practice in the areas of consumer protection, antitrust, and whistleblower litigation. She received her law degree from Widener University School of Law, and her undergraduate degree in Real Estate and Business Law from The Pennsylvania State University. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

While attending law school, Ms. Swerdloff interned as a judicial clerk for the Honorable James R. Melinson of the United States District Court for the Eastern District of Pennsylvania. Prior to joining Kessler Topaz, Ms. Swerdloff managed major environmental claims litigation for a Philadelphia-based insurance company, and was an associate at a general practice firm in Montgomery County, PA.  At Kessler Topaz, she has assisted the Firm in obtaining meaningful recoveries on behalf of clients in securities fraud litigation, including the historic Tyco case (*In re Tyco International, Ltd. Sec. Litig*., No. 02-1335-B (D.N.H. 2002) (settled -- $3.2 billion)), federal and state wage and hour litigation (*In re FootLocker Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.,* No. 11-mdl-02235 (E.D. Pa. 2007) (settled – $7.15 million)), and numerous shareholder derivative actions relating to the backdating of stock options.

**BRIAN W. THOMER,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Thomer received his Juris Doctor degree from Temple University Beasley School of Law, and his undergraduate degree from Widener University. Mr. Thomer is licensed to practice in Pennsylvania.

**ALEXANDRA H. TOMICH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Temple Law School and her undergraduate degree, from Columbia University, with a B.A. in English. She is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, she worked as an associate at Trujillo, Rodriguez, and Richards, LLC in Philadelphia. Ms. Tomich volunteers as an advocate for children through the Support Center for Child Advocates in Philadelphia and at Philadelphia VIP.

**JACQUELINE A. TRIEBL,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Triebl received her law degree, cum laude, from Widener University School of Law in 2007 and her undergraduate degree in English from The Pennsylvania State University in 1990. Ms. Triebl is licensed to practice law in Pennsylvania and New Jersey.

**KURT WEILER**, a staff attorney of the Firm, concentrates his practice in the area of securities litigation. He received his law degree from Duquesne University School of Law, where he was a member of the Moot Court Board and McArdle Wall Honoree, and received his undergraduate degree from the University of Pennsylvania. Mr. Weiler is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Weiler was associate corporate counsel for a Philadelphia-based mortgage company, where he specialized in the area of foreclosures and bankruptcy.

**JAMES A. WELLS**, an associate of the Firm, represents whistleblowers in the *Qui Tam* Department of the Firm. Mr. Wells received his J.D. from Temple University Beasley School of Law in 1998 where he was published in the Temple Journal of International and Comparative Law, and received his undergraduate degree from Fordham University. He is licensed to practice in Pennsylvania.

Following graduation, Mr. Wells was an Assistant Defender at the Defender Association of Philadelphia for six years. Prior to joining the Firm in 2015, he worked at two prominent Philadelphia law firms practicing class action employment and whistleblower law.

**CHRISTOPHER M. WINDOVER,** an associate of the Firm, concentrates his practice in the areas of shareholder derivative actions and mergers and acquisitions litigation. Mr. Windover received his law degree from Rutgers University School of Law, *cum laude*, and received his undergraduate degree from Villanova University. He is licensed to practice in the Commonwealth of Pennsylvania and New Jersey. Prior to joining the Firm, Mr. Windover practiced litigation at a mid-sized law firm in Philadelphia.

**ANNE M. ZANESKI**\*, a staff attorney of the Firm, concentrates her practice in the area of securities litigation.  Ms. Zaneski received her J.D. from Brooklyn Law School where she was a recipient of the CALI Award of Excellence, and her B.A. from Wellesley College.  She is licensed to practice law in New York and Pennsylvania.

Prior to joining the Firm, she was an associate with a boutique securities litigation law firm in New York City and served as a legal counsel with the New York City Economic Development Corporation in the areas of bond financing and complex litigation.

\* Admitted as Anne M. Zaniewski in Pennsylvania.

## PROFESSIONALS

**WILLIAM MONKS**, CPA, CFF, CVA, Director of Investigative Services at Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), brings nearly 30 years of white collar investigative experience as a Special Agent of the Federal Bureau of Investigation (FBI) and "Big Four" Forensic Accountant. As the Director, he leads the Firm's Investigative Services Department, a group of highly trained professionals dedicated to investigating fraud, misrepresentation and other acts of malfeasance resulting in harm to institutional and individual investors, as well as other stakeholders.

William's recent experience includes being the corporate investigations practice leader for a global forensic accounting firm, which involved widespread investigations into procurement fraud, asset misappropriation, financial statement misrepresentation, and violations of the Foreign Corrupt Practices Act (FCPA).

While at the FBI, William worked sophisticated white collar forensic matters involving securities and other frauds, bribery, and corruption. He also initiated and managed fraud investigations of entities in the

manufacturing, transportation, energy, and sanitation industries. During his 25 year FBI career, William also conducted dozens of construction company procurement fraud and commercial bribery investigations, which were recognized as a "Best Practice" to be modeled by FBI offices nationwide.

William also served as an Undercover Agent for the FBI on long term successful operations targeting organizations and individuals such as the KGB, Russian Organized Crime, Italian Organized Crime, and numerous federal, state and local politicians. Each matter ended successfully and resulted in commendations from the FBI and related agencies.

William has also been recognized by the FBI, DOJ, and IRS on numerous occasions for leading multi-agency teams charged with investigating high level fraud, bribery, and corruption investigations. His considerable experience includes the performance of over 10,000 interviews incident to white collar criminal and civil matters. His skills in interviewing and detecting deception in sensitive financial investigations have been a featured part of training for numerous law enforcement agencies (including the FBI), private sector companies, law firms and accounting firms.

Among the numerous government awards William has received over his distinguished career is a personal commendation from FBI Director Louis Freeh for outstanding work in the prosecution of the West New York Police Department, the largest police corruption investigation in New Jersey history.

William regards his work at Kessler Topaz as an opportunity to continue the public service that has been the focus of his professional life. Experience has shown and William believes, one person with conviction can make all the difference. William looks forward to providing assistance to any aggrieved party, investor, consumer, whistleblower, or other witness with information relative to a securities fraud, consumer protection, corporate governance, qui-tam, anti-trust, shareholder derivative, merger & acquisition or other matter.

Education
Pace University: Bachelor of Business Administration (cum laude)
Florida Atlantic University: Masters in Forensic Accounting (cum laude)

**BRAM HENDRIKS,** European Client Relations Manager at Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), guides European institutional investors through the intricacies of U.S. class action litigation as well as securities litigation in Europe and Asia. His experience with securities litigation allows him to translate complex document and discovery requirements into straightforward, practical action. For shareholders who want to effect change without litigation, Bram advises on corporate governance issues and strategies for active investment.

Bram has been involved in some of the highest-profile U.S. securities class actions of the last 20 years. Before joining Kessler Topaz, he handled securities litigation and policy development for NN Group N.V., a publicly-traded financial services company with approximately EUR 197 billion in assets under management. He previously oversaw corporate governance activities for a leading Amsterdam pension fund manager with a portfolio of more than 4,000 corporate holdings.

A globally-respected investor advocate, Bram has co-chaired the International Corporate Governance Network Shareholder Rights Committee since 2009. In that capacity, he works with investors from more than 50 countries to advance public policies that give institutional investors a voice in decision-making. He is a sought-after speaker, panelist and author on corporate governance and responsible investment policies. Based in the Netherlands, Bram is available to meet with clients personally and provide hands-on-assistance when needed.

<u>Education</u>

University of Amsterdam, MSc International Finance, specialization Law & Finance, 2010

Maastricht Graduate School of Governance, MSc in Public Policy and Human Development, specialization WTO law, 2006

Tilburg University, Public Administration and administrative law B.A., 2004