**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

I.     FACTUAL BACKGROUND.......................................................................................4

    A.   Maxar And The Individual Defendants ...................................................................4

    B.   The AMOS-8 Contract............................................................................................4

    C.   The GeoComm Business..........................................................................................5

    D.   WorldView-4 ...........................................................................................................7

II.    LEGAL STANDARD................................................................................................7

III.   ARGUMENT ...........................................................................................................10

    A.   Plaintiff Fails To Plead A Claim Under Section 10(b)..........................................11

         1.   Plaintiff Fails To Allege A Material False Or Misleading
            Statement.....................................................................................................11

              a.   Defendants' Statements Related To AMOS-8 Were Not
                  False When Made ...........................................................................11

              b.   Defendants' Financial Statements Were Not False When
                  Reported.........................................................................................12

              c.   Defendants' Statements Regarding WorldView-4 Were Not
                  False When Made ...........................................................................13

          2.   Plaintiff Fails To Allege Scienter ...............................................................15

              a.   Plaintiff Fails To Allege A Strong Inference Of Scienter
                  With Respect To Statements Related To AMOS-8 ......................15

              b.   Plaintiff Fails To Allege A Strong Inference Of Scienter
                  With Respect To The GeoComm Impairment ..............................16

              c.   Plaintiff Fails To Allege A Strong Inference Of Scienter
                  With Respect To Statements Related To WorldView-4 ...............17

              d.   Plaintiff's "Additional Allegations" Add Nothing To The
                Scienter Analysis ..........................................................................18

              e.   The Non-Fraudulent Inference Is Far More Cogent And
                Compelling.....................................................................................21

          3.   Plaintiff Fails To Allege Loss Causation .....................................................22

              a.   The August 7 Spruce Point Capital Report....................................22

              b.   Maxar's August 24, 2018 Press Release........................................23

|  | c. | The Israeli Ministry of Science September 3, 2018 Press Release | 24 |
|  | d. | Spacecom's September 25, 2018 Tel Aviv Stock Exchange Filing | 24 |
|  | e. | Maxar's October 31, 2018 Form 6-K | 24 |
|  | f. | Maxar's January 7, 2019 Press Release | 25 |
| B. | Plaintiff Fails To Plead A Claim Under Section 20(a) | | 25 |
| CONCLUSION | | | 25 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) .................................................................................8, 9, 18

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016) .........................................................................................11

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007)......................................................................19, 21, 22

*Barrett v. Rumsfeld*,
158 F. App'x 89 (10th Cir. 2005) .........................................................................................6

*In re BofI Holding, Inc. Sec. Litig.*,
302 F. Supp. 3d 1128 (S.D. Cal. 2018)................................................................................23

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV-17-1490, 2018 WL 4802058 (C.D. Cal. June 7, 2018) ............................................19

*City of Phila. v. Fleming Cos. Inc.*,
264 F.3d 1245 (10th Cir. 2001) ................................................................................. *passim*

*Decker v. GlenFed, Inc.*,
42 F.3d 1541 (9th Cir. 1994) .............................................................................................12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................................10, 22

*In re Gold Res. Corp.*,
957 F. Supp. 2d 1284 (D. Colo. 2013).................................................................................13

*Grossman v. Novell, Inc.*,
120 F.3d 1112 (10th Cir. 1997) .........................................................................................14

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...............................................................................19

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) .......................................................................................19, 22

*Kessman v. Myriad Genetics, Inc.*,
   No. 2:18-cv-00336, 2019 WL 1330363 (D. Utah Mar. 25, 2019) ...........................................23

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   667 F.3d 1331 (10th Cir. 2012) ................................................................................7, 11, 21

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ................................................................................................23

*In re Loral Space & Commc'ns. Ltd. Sec. Litig.*,
   No. 01 Civ. 4388 (JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) .............................13, 17

*LoRusso v. Boulder Brands, Inc.*,
   Civil Action No. 15-cv-00679, 2017 U.S. Dist. LEXIS 45640 (D. Colo. Mar.
   1, 2017) ..........................................................................................................................13, 14

*In re Merck & Co. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005)..................................................................................................23

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ............................................................................................23

*Nardy v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01760-WYD-STV, 2019 WL 3297467 (D. Colo. Mar. 29, 2019) ..................22, 24

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................................12

*Okla. Police Pension & Ret. Sys. v. Boulder Brands, Inc.*,
   No. 15-cv-00679, 2017 WL 1148689 (D. Colo. Mar. 28, 2017) ..............................................8

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)...............................................................................10, 22, 24, 25

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..........................................................................................19, 20

*Rumbaugh v. USANA Health Sciences, Inc.*,
   No. 2:17-cv-106, 2018 WL 5044240 (D. Utah Oct. 17, 2018)................................................18

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992)..................................................................................................19

*Smallen v. W. Union Co.*,
   No. 17-cv-00474-KLM, 2019 WL 1382823 (D. Colo. Mar. 27, 2019)....................................14

*Sorkin, LLC v. Fischer Imaging Corp.*,
   No. 03-CV-00631, 2005 WL 1459735 (D. Colo. June 21, 2005)............................................10

*Stambaugh v. Corrpro Cos., Inc.*,
   116 F. App'x 592 (6th Cir. 2004) ....................................................................................18, 20

*In re Sturm, Ruger & Co. Sec. Litig.*,
   No. 3:09-cv-1293 (CFD), 2011 WL 494753 (D. Conn. Feb. 7, 2011) ....................................14

*Teachers' Ret. Sys. of La. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ...............................................................................................23

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................... *passim*

*Thor Power Tool Co. v. Comm'r Internal Revenue*,
   439 U.S. 522 (1979)..............................................................................................................12

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ......................................................................................10, 25

*Wolfe v. Aspenbio Pharma, Inc.*,
   587 F. App'x 493 (10th Cir. 2014) .........................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...........................................................................................18, 19

## STATUTES

15 U.S.C. § 78u–4(b)(1)(B) ...........................................................................................8, 11

15 U.S.C. § 78u–5(c)(1)(A) ................................................................................................13

## RULES

Fed. R. Civ. P. 9(b) ...........................................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

## OTHER AUTHORITIES

H.R. Conf. Rep. no. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...................................8

Pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b), Maxar Technologies, Inc. ("Maxar" or the "Company"), Howard L. Lance, and Anil Wirasekara (collectively, "Defendants") submit this Motion to Dismiss the Consolidated Complaint ("CC") (Dkt. 44) for failure to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.[1]

## PRELIMINARY STATEMENT

Plaintiff is attempting to manufacture a claim for a violation of the federal securities laws out of a series of routine (and fully disclosed) business and operational challenges.  However, this case is governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") which imposes heightened pleading standards specifically aimed at eliminating baseless shareholder litigation at the pleadings stage.  Plaintiff falls far short of alleging – with the factual particularity required under the PSLRA – multiple elements of its fraud claim in accordance with controlling Supreme Court and Tenth Circuit jurisprudence.

Plaintiff alleges three separate categories of purported misstatements:  (1) statements related to Spacecom's selection of Maxar to build a satellite, AMOS-8; (2) statements related to Maxar's decision to take an impairment charge of its GeoComm assets; and (3) statements regarding the WorldView-4 satellite.  Plaintiff has failed to plead, as an initial matter, that any of the alleged misstatements were materially false or misleading when made.

---

[1] In accordance with this Court's Practice Standards, Section III(D)(1), this Motion is made following a meet and confer between the parties on November 25, 2019.  Counsel for Defendants explained that the Consolidated Complaint failed to adequately plead the elements of falsity, scienter and loss causation.  Plaintiff represented that it had no additional facts to address the deficiencies identified by Defendants.  *See* Declaration of Kristin N. Murphy in Support of Defendants' Motion to Dismiss the Consolidated Complaint ("Murphy Decl."), Ex. 1.

- <u>AMOS-8</u>:  Defendants' statements regarding the contract to build AMOS-8 were indisputably true when made:  Maxar was indeed selected to build the AMOS-8 satellite, and due to subsequent events outside Maxar's control, the project ultimately did not materialize.  The fact that the contract later fell through does not render Maxar's earlier statements about its selection to build AMOS-8 false.

- <u>GeoComm</u>:  Plaintiff argues that Maxar's decision not to take an impairment of its GeoComm assets rendered prior financial statements false.  But Maxar contemporaneously disclosed the declining state of the GeoComm business (the very "indicators" upon which Plaintiff relies in making this fraud argument).  Most importantly, the decision of whether and when to take an impairment involves a complicated analysis and is a matter of accounting judgment.  That Plaintiff now (with the benefit of hindsight) disagrees with the timing of the impairment does not mean the Company's earlier financial statements were false.

- <u>WorldView-4</u>:  Plaintiff contends that on October 12, 2018, public tracking data showed that WorldView-4 became "erratic and volatile," and therefore, Defendants' subsequent statements about "opportunities" related to WorldView-4 were false and misleading.  Putting aside the fact that Defendants' statements about WorldView-4's future "opportunities" are inactionable forward-looking statements and corporate puffery, Plaintiff admits that the October 12 tracking data did not reveal the *component failure* that later rendered WorldView-4 inoperable (such that Defendants' statements in the interim were false).

Most fundamentally, the Consolidated Complaint comes nowhere close to pleading that any of the individual Defendants acted with intent to defraud (*i.e.*, scienter).  Plaintiff has not pled, as it must, particularized facts showing that Defendants knew of, or were reckless with regard to, the falsity of any alleged misstatement.  Plaintiff's allegations that Defendants knew the AMOS-8 contract was "illusory" and "knew" WorldView-4 had "failed" by October 2018 are conclusory and unsupported by particularized facts.  With regard to the GeoComm impairment, Defendants repeatedly disclosed the declining state of the business, which is exactly the opposite of what one would expect from executives perpetrating a fraud.  The fact that the Company – with the assistance of accounting professionals and an independent auditor – later took an impairment on its GeoComm assets further undermines any inference of scienter.

Moreover, the U.S. Supreme Court has held that, in analyzing scienter, courts must weigh "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff." *Tellabs, Inc., v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 324 (2007). The inference of scienter must be "more than merely plausible or reasonable—it must be ***cogent*** and ***at least as compelling*** as any opposing inference of nonfraudulent intent." *Id*. at 314 (emphasis added). Here, there is nothing to suggest why any individual Defendant would engage in fraud. There are no allegations of insider stock sales. There are no confidential witnesses to offer first-hand accounts of Defendants' state of mind. In fact, Plaintiff concedes that Defendants launched (and disclosed) an internal investigation, which (again) is the exact opposite of what one would expect had Defendants intended to conceal anything. Stripped of the rhetoric, Plaintiff's allegations tell a far more credible and coherent story—one of a Company facing serious business challenges which it contemporaneously disclosed to investors. This "non-fraudulent" inference is not only the more "cogent" and "compelling" inference, it is the only rational one.

Finally, Plaintiff is required by law to do more than allege that a public disclosure was *followed by* a stock price decline. Rather, to adequately allege the element of loss causation, a plaintiff must show that new information was revealed that corrected prior misstatements, and that this revelation caused the drop in stock price. Plaintiff's loss causation allegations fail as a matter of law because the purported "corrective disclosures" do not relate to the earlier alleged false statements and/or they do not reveal anything new to the market.

Accordingly, as discussed below, the Consolidated Complaint fails as a matter of controlling Supreme Court and Tenth Circuit law, and should be dismissed in its entirety.

I.      **FACTUAL BACKGROUND**

A.      **Maxar And The Individual Defendants**

Maxar is a Colorado-headquartered space technology company consisting of four business units:  MacDonald, Dettwiler & Associates Ltd. ("MDA"), SSL, DigitalGlobe, and Radiant Solutions.  (CC ¶¶ 4, 22.)  MDA is involved in prominent government contracts; SSL is a satellite manufacturer.  (CC ¶ 22.)  DigitalGlobe, which MDA acquired in October 2017, operates a constellation of Earth observation satellites which provide space imaging services.  (CC ¶¶ 4, 22, 143.)  After the acquisition of DigitalGlobe, MDA rebranded itself as "Maxar Technologies."  (CC ¶ 22.)  Howard L. Lance served as Maxar's President and CEO from May 2016 to January 2019.  (CC ¶ 23.)  Anil Wirasekara served as the Company's CFO from 1996 to October 2017.  (CC ¶ 24.)[2]

B.      **The AMOS-8 Contract**

In 2018, Space Communication Ltd. ("Spacecom"), an Israeli-based company, selected SSL to build a satellite known as AMOS-8.  (CC ¶¶ 7, 113-14.)  On March 26, 2018, Maxar announced that it was "honored to be selected to manufacture [AMOS-8], which [would] enable access for underserved people in Europe, Africa, and the Middle East to high-speed, reliable data[.]"  (CC ¶ 114.)  Spacecom and its CEO announced that Spacecom was "eager to work together with SSL to develop this new satellite."  (CC ¶ 155; Murphy Decl., Ex. 2.)  SSL posted that "2018 is off to a great start for SSL with two contracts to build GEO satellites announced today.  Thank you B-SAT and Spacecom for placing your trust in SSL!"  (CC ¶ 156; Murphy

---

[2] Wirasekara served as Interim CFO from February 26, 2018 to August 15, 2018.  (CC ¶ 24.)

Decl., Ex. 3.)  However, on September 3, 2018, the Ministry of Science and Technology announced that the Israeli government would fund AMOS-8 and that it would be built in Israel. (CC ¶ 181; Murphy Decl., Ex. 4.)  On September 25, 2018, Spacecom announced that it would not make its down payment to Maxar for the AMOS-8 contract, which effectively voided the contract between Spacecom and Maxar.  (CC ¶¶ 183, 187; Murphy Decl., Ex. 5.)

### C.  The GeoComm Business

Maxar routinely disclosed the deteriorating financial health of the GeoComm business. On November 7, 2017, then CFO William McCombe stated that the GeoComm downturn was continuing to hurt the Company's top-line growth.  (CC ¶ 83.)  On February 22, 2018, Lance explained that the GeoComm market remains low and that revenue in 2018 is expected to be negatively impacted by lower booking rates.  (CC ¶ 90.)  McCombe noted that the GeoComm business "continues to feel the impact of the stepdown."  (CC ¶ 93.)  Then, on March 8, 2018, Lance noted that there was "negative growth in the GEO market." (CC ¶¶ 100, 101.)  Wirasekara disclosed that "the GeoComm market declined by about 45%" between 2016 and 2018.  (CC ¶ 102.)  On March 13, 2018, Lance stated that the GeoComm business "has been declining significantly over the past few years."  (CC ¶ 108.)

On May 9, 2018, the Company filed its 1Q18 financial results, reporting that the Company had $1.7 billion in intangible assets, $1.1 billion in property, plant, and equipment ("PP&E") and $100 million in inventory.  (CC ¶¶ 8; 161-164; Murphy Decl., Exs. 6-8.)  The Company's net earnings were $31 million.  (*Id*.)  Wirasekara reported "continued weakness in the [GeoComm] market since 2015" and it "continued to flow through as lower revenues in the current quarter."  (CC ¶ 111.)  On July 31, 2018, the Company filed its 2Q18 financial results

which reported that the Company had $1.7 billion in intangible assets, $1.1 billion in PP&E and $95 million in inventory.  (CC ¶¶ 9; 166-169; Murphy Decl., Exs. 9-11.)  The Company reported a net loss of $19 million.  (*Id*.)  Lance stated that the Company does "not believe, at this point, we'll see much in the way of a market recovery for GEO."  (CC ¶ 134.)  Lance further stated, "[c]learly, we're being held down today by the margins in the GEO business[.]"  (CC ¶ 136.)  Wirasekara repeated that GEO's decline "continues to flow through [the Company's] revenue line."  (CC ¶ 137.)

On August 7, 2018, Spruce Point Capital Management, LLC, an activist investment firm that owned Maxar stock, issued a report (the "Spruce Report") questioning Maxar's accounting practices based upon publicly available information.  (CC ¶ 11; *See* Murphy Decl., Ex. 12 at 2-3.[3])  The Spruce Report opined that Maxar's intangible assets likely were impaired.  (CC ¶ 11.)  Maxar's Audit Committee, outside experts, and a new auditor, investigated these issues.  Maxar issued a comprehensive response to the Spruce Report on August 24, 2018.  (CC ¶ 12; Murphy Decl., Ex. 13.)  The Company disclosed that it was possible that an impairment of the GeoComm assets would be recognized in 3Q18, but reported that it did not identify any other accounting issues.  (CC ¶¶ 12, 179; Murphy Decl., Ex. 13.)  On October 31, 2018, the Company reported its financial statements for 3Q18 which took a $383.6 million GeoComm-related impairment.  (CC ¶¶ 186, 187; Murphy Decl., Ex. 14.)

---

[3] The Court "may review indisputably authentic copies of documents referred to in the complaint that are central to a plaintiff's claim without converting the motion to one for summary judgment."  *Barrett v. Rumsfeld*, 158 F. App'x 89, 91, n1 (10th Cir. 2005); *see also* Murphy Decl.; Request for Judicial Notice (both filed contemporaneously with this Motion).

### D. WorldView-4

As part of the DigitalGlobe acquisition in 2017, Maxar acquired WorldView-4—DigitalGlobe's flagship imaging satellite which captures high resolution images of the Earth. (CC ¶¶ 4, 143.)  The United States Space Surveillance Network (the "Network") tracks commercial satellites like WorldView-4.  (CC ¶ 146.)  The Network records and updates information about the satellite's *orbit* which is recorded in the form of a two-line element ("TLE") dataset.  (CC ¶ 146.)  Critically, the "TLE dataset ***does not include the performance of individual components of a satellite***."  (CC ¶ 146 (emphasis added).)  On October 12, 2018, the TLE data used to track WorldView-4 became "erratic and volatile compared to that of its operational history."  (CC ¶ 148.)

Separately, a critical feature of WorldView-4 is a set of *individual components* called control moment gyroscopes ("CMG") which control the orientation (but not the orbit) of the satellite.  (CC ¶ 144.)  The CMGs are used to point WorldView-4 in "any direction with an extremely high degree of precision" to capture imagery.  (CC ¶ 144.)  Thus, a "CMG failure leads to a loss of the stability needed for capturing usable imagery."  (CC ¶ 144.)  On January 7, 2019, Maxar disclosed that WorldView-4 "experienced a failure in its [CMGs] preventing the satellite from collecting imagery due to the loss of an axis of stability."  Maxar "did not attribute the loss of WorldView-4 to anything other than CMG failure."  (CC ¶¶ 152, 198; Murphy Decl., Ex. 15.)

## II. LEGAL STANDARD

As the Tenth Circuit has recognized, "[a] plaintiff suing under Section 10(b) . . . bears a heavy burden at the pleading stage."  *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331,

1333 (10th Cir. 2012).  To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, a plaintiff must plead facts establishing "(1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter . . . ; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

A securities fraud claim arising under Section 10(b) must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  *Okla. Police Pension & Ret. Sys. v. Boulder Brands, Inc.*, No. 15-cv-00679, 2017 WL 1148689, at *3 (D. Colo. Mar. 28, 2017); *see also Tellabs*, 551 U.S. at 321.  Congress enacted the PSLRA to curb the proliferation of meritless securities class action lawsuits.  H.R. Conf. Rep. no. 104-369, at 41 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 740.  Congress sought to end the "routine filing of lawsuits . . . whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action."  *Id.* at 31.  Congress "implement[ed] needed procedural protections to discourage frivolous litigation," and in so doing, fundamentally altered how securities fraud claims are analyzed.  *Id.* at 31, 41.

*First*, the PSLRA imposes a stricter pleading standard for falsity than Fed R. Civ. P. 9(b). The PSLRA requires that a plaintiff "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" with factual particularity.  15 U.S.C. § 78u–4(b)(1)(B); *see also City of Phila. v. Fleming Cos. Inc.*, 264 F.3d 1245, 1260 (10th

Cir. 2001) (a plaintiff must plead with particularity "why the disputed statement was untrue or misleading *when made*.") (Emphasis in original); *id.* at 1258 (the PSLRA imposes a "more stringent pleading standard for securities fraud actions").

*Second*, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"—*i.e.*, scienter. *Tellabs*, 551 U.S. at 321 (citation omitted). Scienter is a "a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *Adams*, 340 F.3d at 1105 (internal quotations omitted). Negligence is not enough, and "[c]ourts have been cautious about imposing liability for securities fraud based on reckless conduct," which is defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *City of Phila.*, 264 F.3d at 1260; *see also Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014) (the PSLRA would be "eviscerate[d]" if a "mere possibility satisfies the requirement that a plaintiff 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'") (citations omitted). Accordingly, a plaintiff must state with particularity, *for each act or omission*, facts giving rise to a strong inference that the defendant acted with scienter. *Adams*, 340 F.3d at 1095.[4]

In its seminal decision in *Tellabs*, the U.S. Supreme Court established that – in order to plead a "strong inference" of scienter – the plaintiff must allege particularized facts that make the

---

[4] Scienter may only be imputed to the corporate defendant (*i.e.*, the Company) if the complaint sufficiently alleges scienter as to an individual defendant or senior officials acting within the scope of their apparent authority. *Id.* at 1105-06 (10th Cir. 2003) (collecting cases). Here, Plaintiff attempts to plead scienter only as to the individually named Defendants.

inference of scienter "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." 551 U.S. at 314. This requires courts to engage in a comparative analysis, *i.e.*, courts must weigh the "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff." *Id.*; *see also Sorkin, LLC v. Fischer Imaging Corp.*, No. 03-CV-00631, 2005 WL 1459735, at *3 (D. Colo. June 21, 2005) ("[I]n evaluating allegations of scienter . . . the court may consider negative inferences that may be drawn against the plaintiff.").

*Third*, Plaintiff must plead loss causation, *i.e.*, the causal connection between the alleged fraud and the losses sustained by the plaintiff. *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342 (2005). Loss causation is established "when a corrective disclosure reveals the fraud to the public and the price subsequently drops." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009). Corrective disclosures must reveal "new," undisclosed information to stockholders. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). The plaintiff must "show both that the corrective information was revealed and that this revelation caused the resulting decline in price." *In re Williams*, 558 F.3d at 1140 ("To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.").

## III.   ARGUMENT

As discussed below, Plaintiff fails as a matter of law to plead the required elements of falsity, scienter, and loss causation in support of its Section 10(b) claim; each such pleading failure is fatal, and therefore, each provides its own independent basis to dismiss the Consolidated Complaint.

**A.      Plaintiff Fails To Plead A Claim Under Section 10(b)**

**1.      Plaintiff Fails To Allege A Material False Or Misleading Statement**

Plaintiff must "specify each statement alleged to have been misleading," "the reason or reasons why the statement is misleading," and "why the disputed statement was untrue or misleading when made."  15 U.S.C. § 78u–4(b)(1)(B); *see also City of Phila.*, 264 F.3d at 1258.

**a.      Defendants' Statements Related To AMOS-8 Were Not False When Made**

Plaintiff argues that Defendants' statements related to the AMOS-8 contract (CC ¶¶ 155-158), "gave the investing public the misleading impression that AMOS-8 was a definitive award."  (CC ¶ 160.)  But Defendants never said that the AMOS-8 contract was a "definitive award," and Defendants' disclosure was entirely true:  Defendants had indeed reached an agreement with Spacecom to build the AMOS-8 satellite, and had every reason to believe that the deal would succeed.  Both parties expressed excitement about the contract.  (CC ¶¶ 113-14.)  Plaintiff does not and cannot point to a single fact to suggest that either party had any reservations about the success of the deal at the time it was announced.  (*See* CC ¶ 155 (March 26, 2018); Murphy Decl., Ex. 2; CC ¶ 156 (March 26, 2018); Murphy Decl., Ex. 3; CC ¶ 157 (May 9, 2018); Murphy Decl., Ex. 16; CC ¶ 158 (May 9, 2018); Murphy Decl., Exs. 6-8, 17.)  Absent such allegations, the *subsequent* fact that Spacecom's funding did not materialize and that the Israeli government decided to fund the project is nothing more than inactionable "fraud by hindsight."  *See Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229, 1247 (10th Cir. 2016) (that projects did not meet forecasts, without allegations that defendants knew they would, constitutes fraud by hindsight); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d  at

1347 (a "hindsight review" of Defendants' statements does not show that Defendants "spoke fraudulently during that time").[5]

> **b.    Defendants' Financial Statements Were Not False When Reported**

Plaintiff's *post hoc* disagreement over when the Company should have taken an impairment charge on its GeoComm assets does not amount to fraud.  *See City of Phila.*, 264 F.3d  at 1261 ("allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim") (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)); *see also Thor Power Tool Co. v. Comm'r Internal Revenue*, 439 U.S. 522, 544 (1979) ("Generally accepted accounting principles . . . tolerate a range of reasonable treatments, leaving the choice among alternatives to management.") (Internal quotations omitted).

The fact that Maxar later took an impairment charge on its GeoComm assets does not mean that its earlier financial statements, where no impairment was taken (and when the business challenges were fully disclosed), were fraudulent.  (CC ¶¶ 161-64; 166-69; Murphy Decl., Exs. 6, 9.)  *See Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1549 (9th Cir. 1994) ("The fact that an allegedly fraudulent [financial] statement and a later [financial] statement are *different* does not necessarily amount to an explanation as to why the earlier [financial] statement was false . . . .  In

---

[5] Plaintiff also does not explain how the AMOS-8 contract was "illusory."  (*See* CC ¶ 160.)  The statements Plaintiff challenges were made *prior* to May 25, 2018—the first day that Plaintiff claims the contract should have been voided.  (*See* CC ¶ 123.)  *After* May 25, 2018, the market was well aware of the delays in the AMOS-8 contract.  (*See id.* (May 27, 2018 (*Calcalist* article entitled "Spacecom Postpones Deal With California-Based Satellite Manufacturer Loral")); CC ¶ 125 (June 19, 2018 (*Haaretz* article discussing satellite that would "displace and foreclose the Spacecom-SSL contract")); CC ¶ 126 (June 25, 2018 (*Calcalist* article "reported that Spacecom had yet again missed its payment deadline")).)

order to allege the circumstances constituting fraud, plaintiffs must set forth facts explaining why the difference between the earlier and the later [financial] statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.") (Emphasis in original).

In an effort to bolster its facially deficient allegations, Plaintiff cites a laundry list of purported "external and internal indicators of impairment," spanning *86 paragraphs* of the Consolidated Complaint.  But this sheer bulk does not mask the lack of substance.  If anything, Plaintiff's allegations not only illustrate the transparency with which the Company dealt with investors, it reflects the complexity of the accounting at issue.  Perhaps most importantly, it supports the underlying point that, "whether the requirements of the accounting principles were satisfied, necessarily involved issues of judgment."  *See In re Loral Space & Commc'ns. Ltd. Sec. Litig.*, No. 01 Civ. 4388 (JGK), 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) (dismissing 10(b) claim against satellite company alleging failure to take impairment was fraud).

### c.    Defendants' Statements Regarding WorldView-4 Were Not False When Made

The statements related to WorldView-4 (CC ¶¶ 172-73) are inactionable forward-looking statements protected by the PSLRA safe harbor.  The safe harbor shields from liability both (1) forward-looking statements accompanied by meaningful cautionary language, and (2) forward-looking statements made without actual knowledge of falsity.  *See In re Gold Res. Corp.*, 957 F. Supp. 2d 1284, 1293 (D. Colo. 2013); *LoRusso v. Boulder Brands, Inc.,* Civil Action No. 15-cv-00679, 2017 U.S. Dist. LEXIS 45640, at *25 n.7 (D. Colo. Mar. 1, 2017); *see also* 15 U.S.C. §§ 78u–5(c)(1)(A).  Defendants' statements regarding WorldView-4 on November 6 and 28, 2018, are classic forward-looking statements.  (*See* CC ¶ 172 ("There *will* be opportunities for us to

negotiate and agree to pricing for additional capacity *in the future*" and "we think there are

multiple *opportunities over time*") (emphasis added); Murphy Decl., Ex. 18; CC ¶ 173

("Opportunity for additional capacity to be supplied *in the future*") (emphasis added); Murphy

Decl., Ex. 19).)  Each statement was accompanied by meaningful cautionary language.[6]

      Defendants' statements related to WorldView-4 are also immaterial puffery.  That "there

will be opportunities for us to negotiate," (CC ¶ 172(a)), that they "think there are multiple

opportunities over time," (CC ¶ 172(b)), and that there will be "[o]pportunity for additional

capacity," (CC ¶ 173), are insufficient as a matter of law.  *Grossman v. Novell, Inc.*, 120 F.3d

1112, 1120-21 (10th Cir. 1997) (collecting cases and dismissing statement that a "merger

presented a 'compelling set of opportunities'" as inactionable puffery); *Smallen v. W. Union Co.*,

No. 17-cv-00474-KLM, 2019 WL 1382823, at *7 (D. Colo. Mar. 27, 2019) (agreeing that

statement that "[e]mployees are fully engaged, and we see nothing but opportunities ahead of us"

was corporate puffery) (citing *In re Sturm, Ruger & Co. Sec. Litig.*, No. 3:09-cv-1293 (CFD),

2011 WL 494753, at *5 (D. Conn. Feb. 7, 2011)).

---

[6] Defendants' cautionary language is consistent with what this Court has held to be
"meaningful."  *Compare LoRusso*, 2017 U.S. Dist. LEXIS 45640, at *32-33 (D. Colo. Mar. 1,
2017) (holding defendants' statements that "[a]ctual results may differ materially from such
forward-looking statements for a number of reasons" including "risks related to the Company's
ability to implement its growth strategy" were meaningful) *with* Murphy Decl., Ex. 18, p. 4
(Company discussion "may contain forward-looking statements, which represent the company's
estimates, future plans, objectives and expected performance to date" and are "subject to a wide
range of uncertainties and risks that could cause the actual results to differ materially from the
forward-looking information") *and* Murphy Decl., Ex. 19, p. 2 ("This slide presentation contains
certain 'forward-looking statements'" and "[a]lthough management of the Company believes that
the expectations and assumptions on which such forward-looking statements are based are
reasonable, undue reliance should not be placed on the forward-looking statements because the
Company can give no assurance that they will prove to be correct.").

More to the point, however, Defendants' statements about WorldView-4 (again) were not false or misleading.  Plaintiff contends that "despite knowing that WorldView-4 had lost stability beginning no later than October 12, 2018, Defendants gave investors the impression that WorldView-4 was still a fully-functioning satellite[.]"  (CC ¶ 174.)  Critically, the fact that the TLE data "became erratic and volatile" (CC ¶ 148) – on October 12, 2018 – does not mean that Defendants' statement that "WorldView-4 was still operational" was false and misleading given that the component failure did not manifest until months later, and it was *this* component failure that rendered WorldView-4 inoperable.  Plaintiff contends that the "truth emerge[d]" when Maxar disclosed that "WorldView-4 experienced CMG failure" (CC ¶ 198), but that is a fact that, as Plaintiff readily concedes, the earlier TLE data did not reveal.  (*See* CC ¶ 146 ("TLE data does not include the performance of *individual components* of a satellite.") (Emphasis added); CC ¶ 144 (explaining that CMGs are a "key *component* of WorldView-4") (emphasis added).)

### 2.        Plaintiff Fails To Allege Scienter

Plaintiff accuses two individual Defendants of acting with intent to defraud shareholders, or acting so recklessly that their conduct was tantamount to fraud.  Given the severe financial, personal, and reputational implications of such an accusation, Congress, the U.S. Supreme Court, and the Tenth Circuit have imposed and apply rigorous pleading standards for alleging scienter.

### a.        Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To Statements Related To AMOS-8

Plaintiff's argument that "Defendants *knew of* and failed to disclose" that the AMOS-8 contract was not "definitive" is conclusory.  (CC ¶ 160 (emphasis added).)  Succinctly stated, there is nothing suggesting that either Lance or Wirasekara *knew* that the AMOS-8 contract was "illusory" at the time of the disclosures at issue (CC ¶ 160), that they *knew* that Spacecom would

not obtain the necessary financing (CC ¶183), or that they *knew* the Israeli government would later decide to fund the project (CC ¶181).  Plaintiff's entire theory rests on the fact that "the Company admitted in a filing" on October 31, 2018 that the AMOS-8 contract was not a definitive award.  (CC ¶ 160.)  But Defendants never said it was "definitive" at the time it was executed, and the October 31 filing occurred long after the alleged false statements were made, with the benefit of subsequently acquired information.  Moreover, what the Company actually "admitted" was that in "September 2018, [the AMOS-8] contract became void when the customer did not make the initial payment and it became evident that Spacecom would not achieve financing on the project."  *See* Murphy Decl., Ex. 14 at 5.  That does not mean that Lance or Wirasekara knew (or were reckless in not knowing) that their earlier statements about the agreement at the time it was executed were false or misleading.  (CC ¶ 160.)

> **b.   Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To The GeoComm Impairment**

As noted, it is well established that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim."  *See City of Phila.*, 264 F.3d at 1261.  "Only where such allegations are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim."  *Id.*  Here, there were no accounting irregularities to begin with.  To the contrary, Defendants were transparent – and consistent in their disclosures – about the deteriorating value of the GeoComm assets throughout the class period.  (*See* CC ¶¶ 90, 93, 100-102, 108, 111, 134, 136, 137.)

Attempting to create an issue where none exists, Plaintiff spends nearly 40 pages reciting International Financial Reporting Standards and summarizing public data as "indicators of

impairment."  (*See* CC ¶¶ 25-142.)  But these so-called indicators, which consist of business challenges that were contemporaneously disclosed (and considered by Defendants' accountants and auditors in preparing financial statements), undercut Plaintiff's fraud theory.  The *In re Loral Space* case is on point.  There, plaintiffs alleged that Loral failed to take an impairment charge in previous filings, that (as plaintiffs alleged) was required.  The Court rejected the assertion that this amounted to fraud, noting that the public filings disclosed the "evolving poor performance," and thus declined to find scienter.  *In re Loral Space & Commc'ns. Ltd. Sec. Litig.*, 2004 WL 376442, at *17.  The same is true here.  The far more cogent and compelling inference is that the Company recorded an impairment when it did (after continually informing investors of the declining state of the GeoComm business) as a matter of informed accounting judgment.

### c.  Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To Statements Related To WorldView-4

Plaintiff alleges that in October 2018, the "TLE data abruptly became erratic and volatile compared to that of its operational history."  (CC ¶ 148.)  But Plaintiff concedes, as it must, there is nothing to suggest that the October 12, 2018 TLE dataset conveyed to Defendants that WorldView-4 was inoperable.  Stated differently, Plaintiff has not alleged any facts – particular or otherwise – suggesting that the October 12, 2018 TLE data alerted Defendants, or even should have alerted Defendants, about the subsequent (and separate) CMG component failure that ultimately rendered WorldView-4 inoperable.  (CC ¶ 146 ("TLE data ***does not include the performance of individual components of a satellite.***") (Emphasis added), *see also id.* at ¶¶ 144, 152.)  Plaintiff cannot plead – consistent with the PSLRA and controlling precedent – "a mental state embracing intent to deceive, manipulate, or defraud"—based upon two separate sets of facts

for which Plaintiff plainly has failed to plead any particularized factual, causal, or logical connection.  *Adams*, 340 F.3d at 1105.

> **d.**     **Plaintiff's "Additional Allegations" Add Nothing To The Scienter Analysis**

Plaintiff's scattershot of "additional allegations" is meaningless makeweight.  Plaintiff resorts to the following tried (and routinely rejected) theories:  (1) the resignation of Maxar's CFO and auditor (CC ¶¶ 220-23); (2) the Audit Committee's investigation into the Spruce Report allegations and subsequent disclosure of a material weakness (CC ¶¶ 225-30); (3) the terms of the DigitalGlobe credit facility and debt covenants (CC ¶¶ 231-36); and (4) Lance and Wirasekara's compensation packages.  (CC ¶¶ 237-41.)  All of these allegations fail.

The fact that former CFO McCombe reported twice on GeoComm's declining business (CC ¶¶ 83, 92-93), and then "abruptly" resigned one week prior to the Company's Investor Day (CC ¶ 95), means nothing.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) ("For [ ] resignations occurring during the relevant time period, a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one.").  "Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Id.*[7]; *see also* CC ¶ 95; *Stambaugh v. Corrpro Cos., Inc.*, 116 F. App'x 592, 598 (6th Cir. 2004) (resignations of a number of chief financial officers most likely

---

[7] Courts in the Tenth Circuit  have relied on *Zucco Partners* when analyzing resignations and terminations.  *See Rumbaugh v. USANA Health Sciences, Inc.*, No. 2:17-cv-106, 2018 WL 5044240, at *9 (D. Utah Oct. 17, 2018).

were caused by poor performance, not by fraud); *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 867 (5th Cir. 2003) (same).

Plaintiff next attempts to plead scienter based on the resignation of KPMG Canada (CC ¶¶ 225-27), after the August 7, 2018 Spruce Report.  But the KPMG Canada resignation was effective July 29, 2018—*before* the August 7, 2018 Spruce Report was published.  (CC ¶ 226; *see* Murphy Decl., Ex. 20.)  Regardless, the resignation of an auditor does not support an inference of scienter.  *See Cheng Jiangchen v. Rentech, Inc.*, No. CV-17-1490, 2018 WL 4802058, at *10 (C.D. Cal. June 7, 2018); *Zucco Partners*, 552 F.3d at 1002 (same).  The far more cogent and compelling inference is that Maxar decided to switch to a U.S. auditor in preparation for the Company' incorporation in Delaware as of January 2019.  (CC ¶ 22.)

Contrary to Plaintiff's accusation, the Company's decision to investigate the Spruce Report reflects a search for the truth, not evidence of an intent to defraud.  *See Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 678-79 (D. Colo. 2007) (the company's voluntary investigation counters an inference that it was trying to conceal fraud); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) (decision to conduct an investigation "demonstrate[d] a pursuit of truth rather than reckless indifference to the truth"); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) ("[T]he mere existence of [an] investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of [a] company or its senior management.").  That Maxar's Audit Committee later reported (in March 2019) a material weakness in the Company's internal controls does not change the analysis.  (CC ¶ 203.)  *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992) ("[I]t is not violation of the securities laws to simply fail to . . . provide sufficient internal controls[.]").

KPMG Denver's finding, which was based on an "unexpected high turnover of critical accounting and finance roles" (CC ¶ 230), is no more indicative of fraud as it is reflective of personnel changes at a Company in turmoil (or one undergoing U.S. domestication, for that matter).  Courts routinely reject such allegations as evidence of fraud.  *See Stambaugh*, 116 F. App'x at 598 (resignations of a number of chief financial officers most likely were caused by poor performance, not by fraud); *Rosenzweig*, 332 F.3d at 867 (successive resignation of key officials did not create an inference of scienter because it was more likely probative of poor business performance).

Undeterred, Plaintiff continues that Lance and Wirasekara were motivated to commit fraud because the terms of the Company's $3.2 billion syndicated loan required that the Company notify the banking syndicate if a "material adverse event" condition was triggered. (CC ¶¶ 231-35.)  In essence, Plaintiff contends that Defendants were so motivated to avoid the non-cash impairment charge *so that the Company could maintain its financing terms* they were willing to violate the federal securities laws, and thus risk their own personal, professional, reputational and financial well-being.  Courts routinely reject such allegations of "business motives" as supporting an inference of scienter.  *See, e.g., City of Phila.*, 264 F.3d at 1269 (the desire to maintain high bond or credit ratings, desire to raise capital, or protect company assets insufficient to raise an inference of scienter, otherwise "virtually every company in the United States" could be forced to defend securities fraud actions).

Finally, Plaintiff's allegation that Lance and Wirasekara were motivated to maintain their positions and pay packages (CC ¶¶ 237-41) can be laid to rest in short order.  Simply put, this allegation can be alleged against any corporate executive in the country; it is not tied to any of

the false statements alleged here, and as such, adds nothing to the scienter analysis.  *See City of Phila.*, 264 F.3d at 1269 ("Defendants desired to protect their own positions with the company and the value of their own [ ] stock, are also insufficient, as again they are motives shared by all company executives."); *see also In re Level 3 Commc'ns*, 667 F.3d at 1346 ("This type of incentive-based compensation [ ] is common among executives at publicly traded companies and does not ordinarily indicate scienter.") (Internal citations omitted).[8]

### e.    The Non-Fraudulent Inference Is Far More Cogent And Compelling

The Supreme Court's directive in *Tellabs* is clear:  the Court must consider non-fraudulent inferences when determining whether the inference of scienter is more "cogent" and "compelling" than the alternative.  *Tellabs,* 551 U.S. at 314.  Here, this comparative analysis is not a close call.

There is nothing to explain why Lance or Wirasekara would be motivated to commit fraud.  There are no particularized factual allegations that either engaged in any insider stock sales, nor that they had any financial incentive to defraud investors.  *See Andropolis*, 505 F. Supp. 2d at 678 (granting motion to dismiss; "plaintiff does not allege inside stock sales intended to take advantage of Red Robbin's purportedly intentional inflation of earnings . . . .  It is just such stock sales which courts most often rely upon in finding a strong inference of scienter.").  The fact that the individual Defendants were motivated to succeed – *by helping the Company succeed* – is true of any corporate executive (and entirely consistent with the expectations of a

---

[8]  Plaintiff's suggestion that Wirasekara was "reckless" given his experience with IFRS and Maxar's accounting (CC ¶¶ 242-47) is frivolous.  This argument would effectively create an inference of scienter for anyone with accounting expertise—simply by virtue of that expertise.

public company investor).  *See supra* at 20-21.  But Defendants' reaction to the Spruce Report is

most telling.  Rather than simply denying the allegations of an activist investment firm with an

admitted short interest in the stock, Defendants – with the assistance of outside advisors –

launched an internal investigation, the results of which were comprehensively disclosed.[9]  Far

from supporting an inference of fraud, this is powerful evidence of responsible corporate

governance.  *See Andropolis*, 505 F. Supp. 2d at 678-79; *Higginbotham*, 495 F.3d at 758.

### 3.  Plaintiff Fails To Allege Loss Causation

The Consolidated Complaint fails for the separate and independent reason that Plaintiff

does not and cannot adequately plead "a causal connection between the revelation of truth to the

marketplace and losses sustained by the plaintiff."  *Nardy*, 2019 WL 3297467, at *8; *see also*

*Dura,* 544 U.S. at 342.  Plaintiff pleads six alleged corrective disclosures; as described below,

each fails as a matter of law.  (CC ¶¶ 175, 179, 181, 183, 186, 198.)

### a.  The August 7 Spruce Point Capital Report

Plaintiff's argument that the Spruce Report was "corrective" is belied by the text of the

report itself, which plainly states:  "[t]his research presentation expresses our research opinions,

which we have based upon interpretation of certain facts and observations, ***all of which are***

***based upon publicly available information***[.]"  (*See* Murphy Decl., Ex. 12 at 2 (emphasis

added); CC ¶¶ 175, 209; *see also* CC ¶ 252 (alleging "[t]he market for Maxar securities is

efficient").)  This is legally insufficient to plead a corrective disclosure.  *See In re Omnicom*

---

[9] The Spruce Report makes clear the author's bias in presenting a negative spin on public
information:  "You should assume that . . . Spruce Point Capital Management LLC . . . has a
short position in all stocks [] covered herein, including without limitation Maxar Technologies
Ltd."  (Murphy Decl., Ex. 12 at 2.)

*Grp.*, 597 F.3d at 512 ("negative characterization of already-public information" is not corrective disclosure); *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187-88 (4th Cir. 2007) (same); *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 269-70 (3d Cir. 2005) (same); *see also In re BofI Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1141 (S.D. Cal. 2018) (rejecting Seeking Alpha analyst report as "corrective disclosure" because plaintiff offered no "plausible reason why the market would not have understood the implications of already public information").

### b.     Maxar's August 24, 2018 Press Release

This press release disclosed that the Audit Committee was conducting a "thorough and independent review that addressed claims made by the hedge fund's report," and concluded that "non-cash write-downs or impairment of assets ***could*** occur as a result of . . . [the] overall valuation of the GEO communications satellite line of business."  (*See* Murphy Decl., Ex. 13 at 1; CC ¶¶ 179, 211.)  But a Company's investigation into allegations of fraud is in no way tantamount to an admission of fraud.  *Kessman v. Myriad Genetics, Inc.*, No. 2:18-cv-00336, 2019 WL 1330363, *10 (D. Utah Mar. 25, 2019) (investigation subpoena "insufficient to reveal fraud to the market for purposes of showing loss causation") (citing *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014)); *cf. Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013) ("[T]he commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b) . . . .  That does not mean that the investigations, in and of themselves, reveal to the market that the company's previous statements were false or fraudulent.").

   **c.**  **The Israeli Ministry of Science September 3, 2018 Press Release**

Plaintiff alleges that on September 3, 2018, the Israeli government announced that it would be financing the construction of AMOS-8 and that it would be built in Israel.  (CC ¶ 181; Murphy Decl., Ex. 4.)  This disclosure, however, did not correct any prior misstatements.  *See Nardy v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01760-WYD-STV, 2019 WL 3297467, at *13 (D. Colo. Mar. 29, 2019) (dismissing partial corrective disclosures because they did not actually reveal the alleged fraud).  Plaintiff does not and cannot dispute that Maxar was indeed *selected* to build the satellite and the Company's statements to that effect were, in fact, demonstrably true when they were made.  (CC ¶¶ 7, 13, 116-18, 120.)

   **d.**  **Spacecom's September 25, 2018 Tel Aviv Stock Exchange Filing**

Plaintiff claims that Maxar's stock price purportedly dropped as a result of the September 25 Spacecom filing with the Tel Aviv Stock Exchange, stating that "it would not be making its down payment to Maxar for the AMOS-8 contract."  (CC ¶ 183; Murphy Decl., Ex. 5.)  But on September 3, the Israeli Ministry of Science and Technology had already disclosed that "AMOS-8 would be built by an Israeli organization, not Maxar."  (CC ¶¶ 181-82, 213.)  In other words, by September 3, the public *already knew* that Maxar would not be building AMOS-8, so the stock price drop could not have been caused by information disclosed three weeks later.  *In re Omnicom*, 597 F.3d at 512.

   **e.**  **Maxar's October 31, 2018 Form 6-K**

 Maxar disclosed that it had taken a $383.6 million impairment charge related to its GeoComm assets.  (CC ¶ 187; Murphy Decl., Ex. 14.)  That disclosure, importantly, did *not*

reveal that the Company's accounting treatment for its GeoComm assets was incorrect in prior quarters (for which there were no restatements), just that impairment had become appropriate at that point in time.  Thus, this did not reveal the truth of any earlier false statement.  *In re Williams*, 558 F.3d at 1140.

### f.       Maxar's January 7, 2019 Press Release

Finally, Plaintiff cannot articulate any theory that would explain how the disclosure of the component failure of WorldView-4 "corrected" any prior misstatements and therefore "caused the resulting decline in price."  *In re Williams*, 558 F.3d at 1140; CC ¶ 198; Murphy Decl., Ex. 15.  Plaintiff's allegation that the satellite failed due to a "CMG failure," which is unrelated to the TLE data that allegedly became "volatile" three months earlier, dooms Plaintiff's fraud theory.  (CC ¶¶ 148, 152.)

In sum, all of Plaintiff's alleged corrective disclosures fail either because they did not "relate" to the earlier misstatement, *In re Williams Sec*, 558 F.3d at 1140, or did not reveal "new" information for which an efficient market responded, *In re Omnicom Grp.*, 597 F.3d at 512-513.  As such, Plaintiff's defective loss causation allegations provide a separate and independent basis to dismiss the Consolidated Complaint.

### B.       Plaintiff Fails To Plead A Claim Under Section 20(a)

Because Plaintiff's Section 10(b) claim fails for the reasons set forth above, its Section 20(a) claim necessarily fails as a matter of law.  *See City of Phila.*, 264 F.3d at 1271.

### <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss the Consolidated Complaint in its entirety.

Dated:  December 6, 2019

Respectfully Submitted,

SHERMAN & HOWARD L.L.C.

*/s/ Jerome H. Sturhahn*
Jerome H. Sturhahn
Milton L. Smith
Peter G. Koclanes
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: (302) 297-2900
Facsimile:  (303) 298-0940
Email: msmith@shermanhoward.com
pkoclanes@shermanhoward.com
jsturhahn@shermanhoward.com


LATHAM & WATKINS LLP

*/s/ Brian T. Glennon*
Brian T. Glennon
Eric C. Pettis
355 S. Grand Ave., Suite 1000
Los Angeles, CA 90071
Telephone: (213) 891-7593
Facsimile:  (213) 891-8763
Email: brian.glennon@lw.com
eric.pettis@lw.com

Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 755-8287
Facsimile:  (714) 755-8290
Email: Kristin.murphy@lw.com

*Attorneys for Defendants Maxar Technologies*
*Inc., Howard L. Lance, and Anil Wirasekara*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies on this 6th day of December 2019, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following addresses:

| ROBBINS GELLER RUDMAN & DOWD LLP |
| :---: |
| SPENCER A. BURKHOLZ |
| HENRY ROSEN |
| TRIG R. SMITH |
| DEBASHISH BAKSHI |
| TRIG R. SMITH |
| 655 West Broadway, Suite 1900 |
| San Diego, CA 92101 |
| Telephone: 619/231-1058 |
| 619/231-7423 (fax) |
| spenceb@rgrdlaw.com |
| henryr@rgrdlaw.com |
| tsmith@rgrdlaw.com |
| dbakshi@rgrdlaw.com |

*/s/ Judith J. Bulanowski*
Judith J. Bulanowski, Legal Secretary