**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT [ECF NO. 51]**

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..............................................................................................1

II.     LEGAL STANDARD.........................................................................................5

III.    THE COMPLAINT PROPERLY ALLEGES DEFENDANTS' FALSE AND
        MISLEADING STATEMENTS...........................................................................5

        A.      Defendants' AMOS-8 Statements Were Misleading When Made .........6

        B.      Maxar's 1Q18 and 2Q18 Financial Statements Were False When Issued .............7

        C.      Defendants' WorldView-4 Statements Were Misleading When Made ..................9

IV.     THE COMPLAINT PROPERLY RAISES A STRONG INFERENCE OF
        DEFENDANTS' SCIENTER.............................................................................12

        A.      Defendants' Scienter – AMOS-8 Statements .........................................12

        B.      Defendants' Scienter – 1Q18 and 2Q18 Financial Statements .............14

        C.      Defendants' Scienter – WorldView-4 Statements .................................19

        D.      The Complaint's Additional Allegations Bolster the Strong Inference ................20

V.      THE COMPLAINT PROPERLY PLEADS LOSS CAUSATION .................22

        A.      Corrective Disclosures  – Maxar's Financial Statements ......................22

        B.      Corrective Disclosures – AMOS-8 ........................................................24

        C.      Corrective Disclosure – WorldView-4 ..................................................25

VI.     THE COMPLAINT PROPERLY ALLEGES A §20(a) CLAIM .....................25

VII.    CONCLUSION................................................................................................25

4830-4933-1888.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ..........................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................5

*Bauer v. Prudential Fin., Inc.*,
  No. 09-1120 (JLL), 2010 WL 2710443
  (D.N.J. June 29, 2010) ......................................................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................5

*Better v. YRC Worldwide Inc.*,
  No. 11-2072-KHV, 2012 WL 4433500
  (D. Kan. Sept. 25, 2012) ..............................................................................6, 10

*Brasher v. Broadwind Energy, Inc.*,
  No. 11 Civ. 991, 2012 WL 1357699
  (N.D. Ill. Apr. 19, 2012) ..................................................................................18

*City of Philadelphia v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) ..............................................................12, 18, 20

*Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*,
  No. 8:04CV2561T-24EAJ, 2006 WL 547989
  (M.D. Fla. Mar. 6, 2006) ..............................................................................9, 14

*Dudley v. Haub*,
  No. 2:11-cv-05196 (WJM), 2013 WL 1845519
  (D.N.J. Apr. 30, 2013) ..................................................................................9, 17

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................4, 22

*Harris v. AmTrust Fin. Servs.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015),
  *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ...................................................................23

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) .............................................................9, 14

**Page**

*In re Banc of Cal. Sec. Litig.*,
  No. SACV 17-00118 AG (DFMx), 2017 WL 3972456
  (C.D. Cal. Sept. 6, 2017)..........................................................................23

*In re Dura Pharm., Inc. Sec. Litig.*,
  548 F. Supp. 2d 1126 (S.D. Cal. 2008)......................................................10

*In re Gold Res. Corp. Sec. Litig.*,
  957 F. Supp. 2d 1284 (D. Colo. 2013),
  *aff'd*, 776 F.3d 1103 (10th Cir. 2015)......................................................10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12 Civ. 8557(CM), 2013 WL 6233561
  (S.D.N.Y. Dec. 2, 2013)..............................................................................6

*In re Leapfrog Enter. Sec. Litig.*,
  237 F. Supp. 3d 943 (N.D. Cal. 2017) .................................................9, 17

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
  No. 01 Civ.4388(JGK), 2004 WL 376442
  (S.D.N.Y. Feb. 27, 2004).............................................................18, 19, 20

*In re Medicis Pharm. Corp. Sec. Litig.*,
  No. CV-08-1821-PHX-GMS, 2010 WL 3154863
  (D. Ariz. Aug. 9, 2010)..............................................................................18

*In re Molycorp Inc. Sec. Litig.*,
  157 F. Supp. 3d 987 (D. Colo. 2016)......................................... 5, 13, 22

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  396 F. Supp. 2d 1178 (D. Colo. 2004)...............................................20, 21

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007).........................................................14

*In re SemGroup Energy Partners, L.P.*,
  729 F. Supp. 2d 1276 (N.D. Okla. 2010) .................................................11

*In re Williams Sec. Litig.-WCG Subclass*,
  558 F.3d 1130 (10th Cir. 2009) .................................................................22

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)........................................................................13

**Page**

*Lane v. Page*,
   581 F. Supp. 2d 1094 (D.N.M. 2008) ...................................................................5

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   No. 10-2847-IPJ, 2011 WL 2732544
   (N.D. Ala. June 7, 2011) .............................................................................18

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).......................................................................................6

*Medina v. Clovis Oncology, Inc.*,
   215 F. Supp. 3d 1094 (D. Colo. 2017)........................................................13

*Mishkin v. Zynex Inc.*,
   No. 09-cv-00780-REB-KLM, 2011 WL 1158715
   (D. Colo. Mar. 30, 2011)............................................................................10

*Nakkhumpun v. Taylor*,
   782 F.3d 1142 (10th Cir. 2015) .................................................................22

*Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*,
   877 F.3d 687 (6th Cir. 2017)
   *cert. denied*, __ U.S. __, 139 S. Ct. 310 (2018)......................................23

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................7

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
   372 F. Supp. 3d 1139 (D. Colo. 2019)..................................................5, 12, 13, 22

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) ..............................................................5, 20

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ....................................................................23

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) .............................................................15, 18

*Robbins v. Oklahoma ex rel. Dep't of Human Servs.*,
   519 F.3d 1242 (10th Cir. 2008) ................................................................5

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963)...................................................................................3

**Page**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................12, 20

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
    No. 18-cv-02104-DME-NYW, 2019 WL 2521834
    (D. Colo. June 18, 2019) .................................................................................23

*United States v. Gordon*,
    710 F.3d 1124 (10th Cir. 2013) .....................................................................6, 7

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
    No. 05-cv-01265-WDM-MEH, 2008 WL 4838671
    (D. Colo. Nov. 6, 2008) ...................................................................................25

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
    No. 05-cv-01265-WDM-MEH, 2008 WL 879023
    (D. Colo. Mar. 28, 2008)............................................................................10, 21

*Zwick Partners, LP v. Quorum Health Corp.*,
    No. 3:16-cv-2475, 2018 WL 2933406
    (M.D. Tenn. Apr. 19, 2018) ...........................................................................9, 17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)..........................................................................................................3, 4, 7, 25
    §78t(a)...................................................................................................................4, 25
    §78u-4(b)(1)..........................................................................................................5, 9
    §78u-4(b)(2)(A) .....................................................................................................12

17 C.F.R.
    §240.10b-5(b)...........................................................................................................7

Federal Rules of Civil Procedure
    Rule 8 ......................................................................................................................22
    Rule 8(a)..............................................................................................................5, 22
    Rule 9(b) ...................................................................................................................5
    Rule 10b-5.................................................................................................................7
    Rule 12(b)(6).............................................................................................................5

Lead Plaintiff Oregon Laborers Employers Pension Trust Fund ("Plaintiff") respectfully submits this opposition to Defendants' Motion to Dismiss the Consolidated Complaint (ECF No. 51) ("Motion" or "MTD").[1]

## I.   INTRODUCTION

This is a well-pled case of securities fraud.  Between March 26, 2018 and January 6, 2019 (the "Class Period"), Defendants issued a series of false and misleading statements regarding the operational and financial results of the Company and its subsidiary, Space Systems Loral, LLC ("SSL").  SSL's GeoComm business was responsible for the manufacturing of large geostationary communications satellites.  ¶¶4, 54.  In the wake of investors' long-standing concerns about a sustained, year-over-year slump in the number of actual and potential geosynchronous satellite awards, (¶¶57-111), on March 26, 2018, Defendants informed investors that Space Communications Ltd. ("Spacecom") had awarded SSL the contract to build the AMOS-8 satellite.  ¶¶155-158.  In May and July 2018, Defendants filed certified financial results for the Company and SSL, reporting specific carrying values (or book values) for intangible assets, property, plant and equipment ("PP&E") and inventory, and net earnings per share ("EPS").  ¶¶161-164, 166-169.  During the latter part of the Class Period, moreover, Defendants touted the capabilities of the fateful WorldView-4 satellite.  ¶¶171-173.  In response to Defendants' Class Period statements, Maxar's stock price traded at prices above $43.78 per share.  ¶176.

Each of Defendants' Class Period statements regarding AMOS-8, the book value of Maxar's

---

[1]   Defendants are Maxar Technologies, Inc. ("Maxar" or the "Company"), Howard L. Lance ("Lance") and Anil Wirasekara ("Wirasekara") (collectively, "Defendants").  All "¶__" references are to Plaintiff's Consolidated Complaint for Violations of the Federal Securities Laws (ECF No. 44) (the "Complaint").  Emphasis is added and citations are omitted unless otherwise stated.

assets and reported EPS, and the operational status of WorldView-4 were false and/or misleading when made. On March 26 and May 9, 2018 (¶¶155-158), Defendants failed to disclose to investors that AMOS-8 was not a definitive contract (to which Defendants admitted months later). ¶¶116, 160, 188. Defendants' AMOS-8 statements are critical as they also created the misleading impression that the GeoComm business might recover from rapid structural changes and years of disappointing financial results. ¶¶84-87, 117-121. On May 9 and July 31, 2018, Defendants issued false financial statements to securities regulators and investors. ¶¶161-164, 166-169.[2] These statements were false for a simple reason. Prior to and throughout the Class Period, Defendants failed to properly account for numerous known and unambiguous red-flags of the GeoComm impairment, including that AMOS-8 never was definitive. ¶¶54-140, 160, 165, 170. The accounting issue in this case is basic. If *any single* indicator of impairment existed during the Class Period, Defendants were required to conduct a formal valuation of GeoComm (an asset is impaired when its book value exceeds its fair value). ¶33. No valuation happened in 1Q18 and 2Q18 because Defendants outright ignored these indicators. When Defendants chose to speak of the capabilities of WorldView-4, they failed to inform investors that the satellite was already generating telemetry data indicating that it had experienced mission-critical failure. ¶¶146-148.

The investing public began to learn of Defendants' unlawful conduct when a securities analyst caught the Company cooking its books. ¶175. On August 7, 2018, Spruce Point Capital Management LLC ("Spruce Point") reported that SSL's GeoComm assets were likely impaired and that a significant charge to earnings was on the horizon. *Id*. Despite Defendants' immediate

---

[2] Defendants do not dispute that the Complaint adequately pleads the falsity of Lance's and Wirasekara's first quarter of 2018 ("1Q18") and second quarter of 2018 ("2Q18") financial statement certifications. ¶¶162, 167.

condemnation of the report for containing "inaccurate claims and misleading statements," the Company's stock price dropped by over 17%. ¶¶176-178.  What investors did not know, however, is that the Spruce Point report forced the Company to conduct a secretive audit committee investigation into the value of SSL's assets.  ¶177.  Three weeks later, on August 24, 2018, Defendants conceded for the first time that an impairment charge was possible.  ¶179.  The Company's stock price dropped again by 5.6%.  ¶180.  Then, on October 31, 2018, the Company recognized a $383.6 million impairment charge, verifying that Spruce Point had it right.  ¶188.  The Company's stock price dropped yet again by nearly 45%.  ¶194.  From August 6, 2018 through October 31, 2018, moreover, the Company's common stock was in a freefall from $43.78 to $14.91 per share.  ¶¶176, 194.

The disclosures of truth concerning the illusory AMOS-8 contract occurred in September 2018.  On September 3 and September 25, 2018, investors learned that AMOS-8 would likely be built in Israel and that Spacecom would not be making a down payment on the deal.  ¶¶181, 183. The market negatively reacted to these news reports and the Company's share price declined by around 5.0% on both September 4 and September 26, 2018.  ¶¶182, 184.  Then, between January 7 and 8, 2019, the Company's stock dropped over 25% after it revealed that WorldView-4 had malfunctioned and was not recoverable.  ¶¶198-200.

The primary purpose of the federal securities laws is "to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry."  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963). When corporate officers fail to provide full and accurate disclosure and violate §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), a plaintiff must plead:  (1) a material

- 3 -

misrepresentation or omission (falsity) (2) made with scienter (3) in connection with the purchase or sale of a security (4) relied upon by plaintiff, (5) a loss causally connected to the alleged fraud and (6) economic loss or damages. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). As demonstrated herein, the Complaint satisfies these standards.

Defendants' Motion challenges the Complaint's allegations of falsity, scienter and loss causation. Setting aside that many of Defendants' arguments rely on improperly revising and disregarding numerous well-pled allegations of fact, Defendants' legal arguments are infirm. Here, the Complaint identifies each of Defendants' Class Period statements, and provides detailed allegations as to why each was false and/or misleading when made. *See* §III., *infra*. The Complaint raises a strong inference of scienter, presenting a wealth of allegations detailing Defendants' knowledge and/or reckless disregard of material adverse facts concerning the AMOS-8 and WorldView-4 satellites, and the Company's false reporting of financial results. *See* §IV.A.-C., *infra*. No inference – other than Defendants' intent to deceive the investing public – is warranted. The Complaint's detailed allegations of Defendants' statements concerning the satellites and long-known indicators of GeoComm impairment alone have bridged the scienter gap. Further, the Complaint's additional allegations of scienter only bolster that strong inference. *See* §IV.D., *infra*. The Complaint sufficiently alleges loss causation, regardless of Defendants' mechanical arguments concerning the August 7, 2018 Spruce Point report and invalid suggestion that all corrective disclosures must be a mirror image of the alleged undisclosed truth. *See* §V., *infra*. Defendants also move to dismiss Plaintiff's §20(a) claim based on the singular argument that the pleading does not adequately allege a §10(b) claim. MTD at 25. Defendants are incorrect and the Court should sustain Plaintiff's §20(a) claim. *See* §VI., *infra*.

Plaintiff's Complaint satisfies the pleading requirements of the Exchange Act, the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.  The Court should deny Defendants' Motion.

## II.    LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all of the pleadings' allegations as true, draws all reasonable inferences in the favor of the non-moving party and construes the pleading in a light most favorable to plaintiffs.  *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1148 (D. Colo. 2019).  A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (same).  And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    THE COMPLAINT PROPERLY ALLEGES DEFENDANTS' FALSE AND MISLEADING STATEMENTS

To satisfy the PSLRA's pleading requirement for falsity, a plaintiff must specify each statement alleged to be misleading and why the statement is misleading.  15 U.S.C. §78u-4(b)(1); *In re Molycorp Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1002 (D. Colo. 2016).  Alternatively, the Complaint must plead "'the "who, what, when, where and how" of the alleged fraud.'" *Lane v. Page*, 581 F. Supp. 2d 1094, 1100 (D.N.M. 2008).  If the Complaint alleges statements that a reasonable person "'would understand as inconsistent with the facts on the ground,'" the Court must

- 5 -

reject arguments to the contrary. *Better v. YRC Worldwide Inc.*, No. 11-2072-KHV, 2012 WL 4433500, at *8 (D. Kan. Sept. 25, 2012). Defendants only challenge "how" their Class Period statements were allegedly misleading. MTD at 11-15. Their arguments should be rejected.

### A. Defendants' AMOS-8 Statements Were Misleading When Made

On March 26 and May 9, 2018, Defendants made the decision to make statements about the AMOS-8 contract to the investing public. ¶¶155-158. Defendants could have remained silent, but they chose not to. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011) ("companies can control what they have to disclose under these provisions by controlling what they say to the market"). When Defendants touted the AMOS-8 deal in a press release, social media, and during an investor conference call, Defendants were under a legal duty to inform investors that AMOS-8 was – from the date of its announcement – a speculative deal. *See United States v. Gordon*, 710 F.3d 1124, 1142 (10th Cir. 2013) ("'where a party without a duty *elects* to disclose material facts, he must speak fully and truthfully, and provide complete and non-misleading information'") (emphasis in original); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557(CM), 2013 WL 6233561, at *13 (S.D.N.Y. Dec. 2, 2013) (same).

When Defendants spoke about the AMOS-8 deal, they failed to disclose that the contract was not definitive (as they admitted on October 31, 2018 in a Securities and Exchange Commission filing (¶187)) because the contract: (1) would only become effective upon first payment; (2) was contingent upon Spacecom obtaining financing; and (3) had a penalty-free withdrawal period of 60 days allowing Spacecom to void the transaction. ¶¶116, 160. These facts, all of which existed on March 26, 2018, rendered Defendants' March 26 and May 9, 2018 statements materially misleading. Defendants' Motion, however, fails to address those allegations directly.

4830-4933-1888.v1

Accordingly, Defendants are forced to argue by misdirection.  For instance, Defendants contend that the Complaint fails to point to any fact suggesting the AMOS-8 parties had any reservation about the deal in March 2018.  MTD at 11.  That has nothing to do with Plaintiff's theory of falsity (but ¶160 does).  Defendants argue that because the developments in Israeli domestic politics occurred after the March 26, 2018 AMOS-8 announcement, their statements on that day could not have been misleading.  MTD at 11.  But Plaintiff's allegations concerning the actions of the Israeli government and Spacecom's competitor are not pled in support of falsity (again, ¶160 does).

Defendants also argue that their May 9, 2018 announcement that Maxar had reached an agreement with Spacecom to build AMOS-8 is not actionable because it was "true."  MTD at 2, 11.  But literal truth is not a dispositive defense here given that, in addition to "untrue statement[s] of . . . material fact," Rule 10b-5 expressly prohibits omissions of "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. §240.10b-5(b).  *See also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 192 (2015) (holding "literal accuracy is not enough:  An issuer must as well desist from misleading investors by saying one thing and holding back another.");  *see also Gordon*, 710 F.3d at 1142.  Here, Defendants' statements about the contract, including Spacecom's selection of SSL, created the misleading impression that AMOS-8 was a done deal.  Each is actionable pursuant to §10(b).

## B.  Maxar's 1Q18 and 2Q18 Financial Statements Were False When Issued

Defendants argue that the Complaint does not allege the falsity of Maxar's Class Period financial statements because Plaintiff, with the benefit of hindsight, merely disagrees with the timing

of the Company's $383.6 million impairment charge.  MTD at 12-13.  Defendants are incorrect.

The Complaint alleges that specific reported dollar values of intangible assets, PP&E, inventory, and EPS were false when issued in the Company's 1Q18 and 2Q18 financial statements because Maxar had overstated the value of the GeoComm business line by failing to take a timely impairment charge.  ¶¶161, 163-164, 166, 168-169.  The Complaint not only specifies which statements are alleged to be false, but also the reasons why: alleging in detail numerous contemporaneous indicators of asset impairment known to Defendants at the time Maxar filed its financial statements.  ¶¶161, 163-164, 166, 168-169; *see also* ¶¶54-140, 165, 170.  The indicators included: a structural market collapse; alarmingly low GeoComm orders and continued downward revisions to GeoComm's financial outlook; downsizing GeoComm operations; unprecedented mass layoffs; and, a secret plan to sell off the GeoComm business.  Defendants ignored these unambiguous red-flags of impairment (¶¶54-140) during the Class Period, and Defendants now ignore them in their Motion.  MTD at 13 (sloughing off highly detailed allegations of admittedly known contemporaneous indicators of impairment as now somehow "lack[ing] . . . substance").  The accounting standard Defendants violated, rendering the Company's 1Q18 and 2Q18 financial statements false when made, is as simple as it gets:  "If *any of those indications* [of impairment] is present, an *entity is required* to make a formal estimate of [the] recoverable amount."  ¶33.  Defendants never conducted that valuation in 1Q18 or 2Q18.  Rather, they chose to disregard the applicable accounting standard, as well as indicator-after-indicator demonstrating that GeoComm had long been materially impaired.

Courts routinely reject Defendants' "'fraud by hindsight'" argument (MTD at 11) where, as here, the allegations set forth specific indicators of impairment that existed during the relevant

reporting period.  ¶¶54-140.  *See Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 WL 2933406, at *7 (M.D. Tenn. Apr. 19, 2018) ("the underlying financial conditions, industry trends, stock prices and other 'red flags' . . . sufficiently state a claim that Defendants' statements concerning impairments were false when made, rather than merely erroneous in hindsight"); *Dudley v. Haub*, No. 2:11-cv-05196 (WJM), 2013 WL 1845519, at *12 (D.N.J. Apr. 30, 2013) (rejecting defendants' fraud-by-hindsight argument because "[t]he Amended Complaint describes contemporaneous circumstances in each relevant quarter showing that Pathmark's goodwill was impaired"); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, No. 8:04CV2561T-24EAJ, 2006 WL 547989, at *17 (M.D. Fla. Mar. 6, 2006) (same); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491-92 (S.D.N.Y. 2004) (same); *see also In re Leapfrog Enter. Sec. Litig.*, 237 F. Supp. 3d 943, 954 (N.D. Cal. 2017) (falsity adequately alleged where complaint identified a single indicator of impairment that was obvious to defendants – *i.e.*, a drop in the company's stock price – when they issued financial statements).

In this action, the pleading identifies the specific balance sheet and income statement figures alleged to be false and misleading (¶¶163-164, 168-169), and the Complaint states precisely why those statements were false and misleading at the time they were made (¶¶54-140, 165, 170).  *See* 15 U.S.C. §78u-4(b)(1).

### C.    Defendants' WorldView-4 Statements Were Misleading When Made

The Complaint alleges that WorldView-4 malfunctioned no later than October 12, 2018. ¶148.  As a result, Defendants' statements between October 31, 2018 to November 28, 2018 concerning the operational status and capabilities of WorldView-4 were misleading.  ¶¶171-173. Defendants' statements were misleading because they gave investors the impression that

WorldView-4 was still a fully-functioning satellite capable of supplying high-resolution imagery to customers on demand. ¶174. *See Better*, 2012 WL 4433500, at *8 (falsity adequately alleged where defendants "made statements 'that a reasonable person would understand as inconsistent with the facts on the ground'"); *In re Dura Pharm., Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1136-37 (S.D. Cal. 2008) (misleading nature of statements concerning the commercial outlook of a medical device adequately alleged where the device had already "demonstrated electro-mechanical malfunctions during trials").

In November 2018, Lance made multiple, specific statements representing that Maxar could expand revenue-generating capacity on WorldView-4. ¶¶172-173. Defendants object that these statements are not actionable because they qualify as forward-looking statements. MTD at 13-14. "'The mere fact that a statement contains some reference to a projection of future events,'" however, "'cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement.'" *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015); *see also W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 WL 879023, at *17 (D. Colo. Mar. 28, 2008) (rejecting defendants' argument that "statements about future demand and future business . . . in the sales pipeline" were protected given defendants' failure to disclose multiple contract losses and other failures that existed at the time the statements were made); *Mishkin v. Zynex Inc.*, No. 09-cv-00780-REB-KLM, 2011 WL 1158715, at *5 (D. Colo. Mar. 30, 2011) ("The safe harbor provision does not apply to statements of current or historical fact."). Here, Lance had not only failed to disclose the mission-ending problems with WorldView-4, but he also displayed a slide affirmatively showing that the satellite was currently operational in orbit and would

- 10 -

continue to be until 2027.  ¶173.  In that context, Lance's further statements concerning expanding capacity on WorldView-4 maintained the misleading impression it was fully-functional.  Contrary to Defendants' arguments (MTD at 15), they knew of or recklessly disregarded the failure at the component level in October 2018, given the Company's continuous monitoring of WorldView-4. ¶¶145-148, 174.

Even if the statements were purely forward-looking, which they were not, Defendants' boilerplate cautionary statements were meaningless and insufficient to raise a safe harbor defense under the PSLRA.  *See In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1293 (N.D. Okla. 2010), *on reconsideration in part* (July 30, 2010) ("'Cautionary language is meaningful when it warns investors of risks of a significance similar to that actually realized.'").  Defendants rely on their cautionary language that "'management of the Company believes that the expectations and assumptions on which such forward-looking statements are based are reasonable'" (MTD at 14 n.6), but that statement was itself misleading (and did not warn investors of the actual risks involved) because Defendants already knew WorldView-4 had malfunctioned. ¶174.  Defendants' statements concerning the possibility of expanding WorldView-4's capacity are, therefore, not protected as forward-looking.

Defendants' puffery arguments are similarly infirm.  MTD at 14.  "[O]ptimistic statements may be actionable where material, nondisclosed information undermines the truth of those statements," *SemGroup*, 729 F. Supp. 2d at 1294, and here chief executive officer ("CEO") Lance's references to "opportunities" regarding WorldView-4 were not vague expressions of hope, but rather affirmative misrepresentations bearing on the existing functionality of the satellite.

- 11 -

IV.     **THE COMPLAINT PROPERLY RAISES A STRONG INFERENCE OF DEFENDANTS' SCIENTER**

To adequately plead scienter, the Complaint must "state with particularity facts giving rise to a strong inference" that Defendants intended to deceive, or were otherwise reckless in making misleading statements to investors.  15 U.S.C. §78u-4(b)(2)(A); *see also Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  Recklessness is defined as "'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers [of stock] . . . that is either known to the defendant or is so obvious that the [defendant] must have been aware of it.'"  *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001).  This Court must consider whether all the facts alleged in the Complaint collectively raise a strong inference of scienter and entertain only plausible opposing inferences offered by Defendants. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *see also DaVita*, 372 F. Supp. 3d at 1153.

A.     **Defendants' Scienter – AMOS-8 Statements**

Defendants assert the Complaint is bereft of any allegation "suggesting" what their state of mind was in March and May 2018 when they made misleading statements concerning AMOS-8. MTD at 15-16.  They are incorrect.

Defendants do not really dispute the Complaint alleges that Lance and Wirasekara knew the AMOS-8 contract was not definitive when announced on March 26, 2018.  ¶160.  Rather, Defendants contend their October 31, 2018 admission that AMOS-8 never was definitive (¶188) is irrelevant because they never said it was definitive, and they waited eight months to disclose that fact to investors.  MTD at 16.  Not only is that argument implausible on its face, but it is rendered more so because, in June 2018, the Company quietly deleted the AMOS-8 contract from its website listing

- 12 -

all definitive GeoComm awards.  ¶¶115, 127.  Rather than address that allegation, Defendants mischaracterize the pleading.  *See, e.g.*, MTD at 15-16 (claiming the Complaint fails to allege Lance and Wirasekara knew Spacecom would fail to obtain financing at some future date, or that the Israeli government would fund the deal at some future date).  Those arguments, moreover, have no bearing on what Defendants knew about AMOS-8 contractual terms on March 26, 2018.

Lance and Wirasekara had long monitored the financial performance of SSL closely – including the number of GeoComm awards the Company could or purportedly won – due to investor concerns regarding the persistent structural downturn in the number and economic value of the awards.  ¶¶77-78, 80-82, 90, 97-102.  During the Company's March 8, 2018 Investor Day, Lance assured investors:  "I'm not going to allow the [GeoComm] product line to be a drag on the company going forward."  ¶103.  The same day, Lance and Wirasekara made detail-laden statements to investors regarding SSL's dismal financial status, the ever-shrinking number of GeoComm awards SSL could win in 2018 and Maxar's strategic efforts to cut overhead costs at SSL.  ¶¶97-107.  *See Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1127 (D. Colo. 2017) (the nature of defendants' statements raises a strong inference of scienter); *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) (noting "the most powerful evidence of scienter is the content and context of [defendants'] statements themselves").

Here, the Complaint raises a strong inference that Lance and Wirasekara had intimate knowledge of all material financial risks, rewards and contingencies associated with the AMOS-8 contract – particularly given their close monitoring of 2018 GeoComm awards and remarks about the "step-down" in their profitability.  *See DaVita*, 372 F. Supp. 3d at 1154 (strong inference of scienter supported by personal involvement in monitoring key business metrics); *Molycorp*, 157 F.

- 13 -

Supp. 3d at 1010 (same).  *See also* ¶154 (Lance and Wirasekara had ultimate authority over the AMOS-8 statements).

## B.    Defendants' Scienter – 1Q18 and 2Q18 Financial Statements

Defendants argue that the Complaint does not support an inference of scienter as to the GeoComm asset impairment.  MTD at 16-17.  They are mistaken.  Scienter is properly alleged where Defendants knew of the indicators of impairment when issuing false financial statements.  *See In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) (defendants' awareness of "contemporaneous circumstances" leading to write-down "made their failure to take an earlier valuation allowance tantamount to conscious misbehavior sufficient to support a strong and cogent inference of scienter"); *Davidco*, 2006 WL 547989, at *16 ("the need to write-down the assets . . . was so apparent to the defendants prior to the closing of the plant that the failure to take earlier write-downs amounted to fraud"); *Atlas*, 324 F. Supp. 2d at 491-92 ("high-level company officers in the company" who signed off on financial statements "knew or should have known the planes were losing substantial value throughout the class period").  As the Complaint makes clear, during the first two quarters of 2018, Defendants knew of and ignored countless indicators of impairment.

Defendants' public statements, as well as numerous facts not disclosed to investors, raise a strong inference of scienter regarding the failure to take a timely impairment charge in 1Q18 and 2Q18.[3]  On October 31, 2018, Defendants admitted that "[t]he Company [had] consider[ed] whether *any* indicators of impairment exist[ed]" as of March 31, 2018 and June 30, 2018.  ¶¶14, 188.  *See,*

---

[3]    Defendants contend that the Complaint's scienter allegations regarding GeoComm impairment are insufficient because they do not reference confidential witnesses who could attest to Lance's and Wirasekara's states of mind.  MTD at 3.  Here, the Complaint relies on undisputed statements from the most important witnesses in the case – Lance and Wirasekara themselves.

4830-4933-1888.v1

*e.g.*, *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (holding defendants "'bridge[d] the [scienter] gap' . . . by referencing the data directly"). The same day, in order to explain why a $383.6 million impairment charge was not taken in prior periods, Defendants described a number of indicators they claimed suddenly sprung into existence in August 2018. ¶¶14, 188. Those indicators and others, however, were known to Defendants prior to and during 1Q18 and 2Q18. ¶¶88-141.

For instance, Defendants claimed that in August 2018, "industry and macroeconomic factors had declined substantially from earlier forecasts," and the Company did "not expect the long-term outlook for the GeoComm business to rebound significantly from current year award levels." ¶¶14, 188. But Defendants were fully aware of those factors long before August 2018. *See, e.g.*, ¶90 (Lance observing in February 2018 that the GeoComm industry "is expected to be negatively impacted by the lower booking rates the industry has endured across the past several years as the markets and technologies continue in transition"); ¶93 (Maxar admitting in February 2018 that SSL revenues would continue to drop significantly due to "the impact of the stepdown in [GeoComm satellite] award values that began in 2015"); ¶¶98-99 (Lance admitting in March 2018 that GeoComm revenues had decreased by 20% over the prior two years, that Maxar anticipated a 21% negative growth rate for 2018 and that Maxar predicted no recovery through 2020); ¶102 (Wirasekara admitting in March 2018 that SSL faced "very strong headwinds" and "[w]hen you look at 2016 to 2018, the GeoComm market declined by about 45%"); ¶108 (Lance admitting in March 2018 the GeoComm market "is about 40% of where it was 3 years ago. . . . [A]nd we're not counting on it improving over time"). *See also* ¶111 (in March 2018, Wirasekara referencing the industry "step down in award [profitability of GeoComm awards]").

Defendants also claimed that in August 2018 "[l]ower award volumes also contribute[d] to

- 15 -

reduced profitability from under-absorbed fixed indirect overhead costs." ¶¶14, 188. But Defendants had long known about that indicator. *See* ¶89 (unknown to investors, prior to 2018 Maxar had repeatedly slashed funds to be spent on GeoComm satellite proposals); ¶103 (in March 2018, Lance admitting to downsizing GeoComm operations at the Palo Alto GeoComm facility to address decreased demand); ¶¶106, 108, 110 (in March and May 2018, Lance admitting to taking out large chunks of fixed costs from the GeoComm manufacturing process); ¶¶131-132 (unknown to investors, in June 2018 the Company executed a mass layoff at SSL, including five SSL employees who held the title of Vice President and, for the first time in 10 years, terminated key GeoComm business development managers).

Defendants also claimed that in August 2018 it "became apparent" the Israeli government would replace SSL on the AMOS-8 contract with an Israeli manufacturer. ¶¶14, 188. But Defendants learned almost immediately after March 2018 that the deal was in jeopardy. In April 2018, the Israeli government-owned company, Israeli Aerospace Industries ("IAI"), announced it would seek to cut Maxar out of the deal. ¶118. In April and May, 2018, the Israeli government confirmed that it was open to IAI's proposal, which would displace SSL from the deal. ¶¶120, 122. Unknown to investors, moreover, in May 2018 Maxar prohibited an SSL program manager responsible for AMOS-8 from proceeding with the project and purchasing necessary parts. ¶124. Also unknown to investors, in June 2018 the Company quietly deleted the AMOS-8 deal from its website listing definitive GeoComm awards. ¶127.

Defendants next claimed that in August 2018, they were no longer "confident in [the] prediction of three to four [GeoComm] satellite builds" for the year. ¶¶14, 188. But Defendants' conduct indicates otherwise. In June 2018, Lance privately informed a securities analyst that Maxar

- 16 -

had been actively pursuing, *inter alia*, an exit from the GeoComm business.   ¶128.   Then, the

Company conceded that Lance's June 2018 statement was a self-fulfilling prophecy, almost certain

to result in no additional GeoComm awards beyond the March 2018 AMOS-8 and B-SAT contracts.

¶130.   *See also* ¶¶133-134 (Lance confirming in July 2018 that the SSL "strategic alternative[]"

initiative, which included an exit from the GeoComm business, was "actively in progress now.   It

has been for a while.").

Defendants contend that these allegations do not suggest fraudulent intent because, if

anything, they only show Defendants disclosed the declining performance of the GeoComm

business.   MTD at 2, 16.   But, "if that were true, then companies would never have to record an

impairment." *Dudley*, 2013 WL 1845519, at *13.   The fact that Defendants met other disclosure

obligations "does not absolve" them from complying with accounting standards. *Id. See also Zwick*,

2018 WL 2933406, at *10 ("the Court cannot conclude, at this time, that the information known

publicly to the investors dispelled the false impressions created by Defendants' alleged

misrepresentations"); *Bauer v. Prudential Fin., Inc.*, No. 09-1120 (JLL), 2010 WL 2710443, at *11

(D.N.J. June 29, 2010) ("warnings do not insulate Defendants from allegations that assets were

already impaired").   In addition, Defendants' Motion side-steps the Complaint's allegations of

impairment that Defendants were aware of, but did not make public. *See, e.g.*, ¶¶89, 124, 127, 131-

132.

Defendants' assertion that they identified no indicators as of March 31 and June 30, 2018,

when they had personal knowledge of them prior to and during those periods, is strong evidence of

their intent to deceive. *See Leapfrog*, 237 F. Supp. 3d at 955 (strong inference pled because of "the

lack of any explanation as to why . . . Defendants recognized an impairment of the size claimed

- 17 -

despite the absence of a significant intervening change in circumstances"). And, Defendants' claim that GeoComm assets became impaired by hundreds-of-millions of dollars in just a few short weeks (between the July 31, 2018 certification of 2Q18 financials (¶167) and August 24, 2018), after they claimed to have looked for but found not one indicator, makes little sense. *See Brasher v. Broadwind Energy, Inc.*, No. 11 Civ. 991, 2012 WL 1357699, at *23 (N.D. Ill. Apr. 19, 2012) ("Losses of this size do not fall out of the sky."); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 10-2847-IPJ, 2011 WL 2732544, at *8 (N.D. Ala. June 7, 2011) ("Defendants' significant and sudden . . . write-down, considered collectively . . . supports a strong inference of scienter.").

Because International Financial Reporting Standards ("IFRS") required Defendants to consider known facts indicating GeoComm was impaired in prior periods, the only permissible inference here is that they either considered the information on March 31 and June 30, 2018, or recklessly disregarded all of it. *Reese*, 747 F.3d at 575, 577. In addition, the accounting rule governing Maxar's identification of impairment – IAS 36.9 – is simple. *See* §III.B., 8. ¶33. *See In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX-GMS, 2010 WL 3154863, at *5-*7 (D. Ariz. Aug. 9, 2010) (simplicity and obviousness of violation of relevant accounting standard supports a strong inference of scienter).

As demonstrated above, the Complaint's allegations of accounting violations are "coupled with evidence" of Defendants' intent to deceive and, thus, raise a strong inference of scienter. *Fleming*, 264 F.3d at 1261. For the same reason, Defendants' reliance on *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01 Civ.4388(JGK), 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004), is misplaced. MTD at 16-17. In that case, it was not alleged that the defendants spoke of

- 18 -

numerous indicators of impairment during prior reporting periods and then falsely claimed the indicators magically appeared immediately before taking a $383.6 million charge. *Id*. The governing accounting standard in *Loral*, moreover, is found in Generally Accepted Accounting Principles ("GAAP"). *Id*. Here, IFRS provides the rules for asset impairment, which are different than those in GAAP.[4] Taking an impairment charge in earlier periods was clearly required of Maxar because the identification of "any" single indicator of impairment "required" a formal valuation of GeoComm. ¶¶33-34. That valuation did not happen in 1Q18 or 2Q18 because Defendants stuck their heads in the sand and ignored not only one indicator, but swaths of them. ¶¶14, 88-141.

Lastly, Defendants argue that Plaintiff's fraud theory is undercut because the "so-called indicators" were "considered by Defendants' accountants and auditors in preparing [the 1Q18 and 2Q18] financial statements." MTD at 17. That argument is nonsensical because, on October 31, 2018, Defendants informed investors that those indicators were not apparent until the third quarter of 2018. ¶¶14, 188. Further, any reliance on Maxar's auditors is inappropriate at this stage because the Defendants do not, and cannot, establish that the Company's 1Q18 and 2Q18 financial statements were audited by KPMG Canada (in any event, auditors generally do not provide audit opinions certifying interim financial reports).

## C.    Defendants' Scienter – WorldView-4 Statements

Defendants assert that the Complaint contains not a single allegation of fact indicating that they were – or should have been – alerted to the pending failure of the WorldView-4 satellite. MTD at 17-18. Again, they are wrong. The Company assured investors that Maxar maintained

---

[4]    *See US GAAP versus IFRS: The Basics*, Ernst & Young LLP 25-27 (February 2018), https://www.ey.com/Publication/vwLUAssets/IFRSBasics_00901-181US_23February2018 /$FILE/IFRSBasics_00901-181US_23February2018.pdf.

"24/7/365" monitoring of WorldView-4, a satellite that cost Maxar over $800 million to build. ¶¶143, 145. This around-the-clock monitoring included analysis and reporting of anomalous spacecraft conditions. ¶145. If those anomalous conditions could not be resolved, they were reported up the chain-of-command at Maxar. *Id*. Defendants do not dispute that the Complaint accurately identifies that in early October 2018, the Company's own continuous program monitoring must have revealed that WorldView-4, the crown jewel of the WorldView Constellation, had lost stability as shown by the orbital data. ¶¶145, 147-148. Further, the Complaint alleges the Company never restored WorldView-4 to a stable condition after October 12, 2018. ¶148. The Complaint raises a strong inference that Defendants were aware, in real time, of mission-critical failure of an $800 million asset.

### D.    The Complaint's Additional Allegations Bolster the Strong Inference

While the above allegations of fact are more than enough to raise a strong inference of scienter, and "the absence of a motive allegation is not fatal," *Tellabs*, 551 U.S. at 325, the Complaint also identifies Defendants' motive to mislead investors.[5] *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1194 (D. Colo. 2004) (citing *Fleming*, 264 F.3d at 1263) (allegations of motive and opportunity may be considered to determine whether the pleading's allegations as a whole give rise to a strong inference).

The Complaint alleges that Lance and Wirasekara were motivated to ignore innumerable red-flags of impairment in order to earn millions in long-term incentive compensation during 2018. ¶¶237-241. Any award of these benefits was directly tied to the Company's stock price and, when

---

[5]    Defendants' argument that the Complaint does not allege insider stock sales should be rejected. MTD at 21. *See Pirraglia*, 339 F.3d at 1191 n.12 ("We will not, as defendants request, infer from the fact that they did not sell [stock] that they lacked motivation to defraud investors.").

- 20 -

Defendants' fraud was fully disclosed, Maxar's stock price cratered by over 86%. ¶241. *Qwest*, 396 F. Supp. 2d at 1194 (the pleading must allege an opportunity to benefit from the fraud in "some concrete and personal way"). Following that collapse, the Company denied long-term financial awards to Lance and Wirasekara, and terminated Lance's employment. ¶¶201, 241. The fact that Lance (CEO, ¶23) and Wirasekara (interim chief financial officer, ¶24) were the two highest-ranking executives at Maxar also supports a strong inrference. *See Startek*, 2008 WL 879023, at *16.

On August 15, 2018, one week after Defendants were caught cooking the books, the Company terminated its auditor and hired a new one to assist in a secretive internal investigation of Spruce Point's allegations.[6] ¶¶225-227. Defendants claim the only compelling and cogent inference to be drawn from those facts is that the Company fired its auditor due to Maxar being incorporated in the United States in January 2019. MTD at 19. That inference is implausible because the Company did not announce it was considering acceleration of U.S. domestication until October 2018, and that proposal remained subject to a shareholder vote in November 2018. ¶185.

Defendants argue the Complaint's allegations regarding the motivation to delay potential default on the Company's $3.2 billion loan do not support a strong inference of scienter. MTD at 20. During the Class Period, however, Defendants were desperate to reduce the Company's $3.2 billion debt-load and had already begun the process of seeking a buyer of GeoComm assets to reduce that crushing debt. ¶¶134, 195-196, 235. Defendants were also fully aware that a material adverse event relating to impaired assets could result in default and the accelerated payment of $3.2 billion. ¶232.

---

[6]   Defendants' "Non-Fraudulent Inference" derived from the investigation is neither cogent nor compelling because it ignores the facts. *See* MTD 21-22. Defendants immediately denounced the report on August 7, 2018 (¶177), conducted and completed a secret investigation and, on August 24, 2018, were forced to acknowledge Spruce Point's position regarding impairment. ¶179.

- 21 -

Here, the cogent and compelling inference is Defendants deliberately violated IFRS and delayed taking an impairment charge, hoping that stronger performance from other parts of SSL (such as smaller, low-earth orbit satellites) would make-up for the failing GeoComm business (and obviate a reckoning with a $3.2 billion creditor).  ¶¶103, 108.  That improvement did not happen.  On October 31, 2018, the Company reported a staggering $432.5 million net loss, primarily due to the $383.6 million impairment charge, and was forced to renegotiate the terms of the $3.2 billion credit facility.  ¶234.

## V.   THE COMPLAINT PROPERLY PLEADS LOSS CAUSATION

Loss causation is simply the "causal connection between the material misrepresentation and the loss."  *Dura*, 544 U.S. at 342; *see also Nakhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015).  The pleading must only provide a short and plain statement of loss causation pursuant to Federal Rule of Civil Procedure 8 that gives the defendant fair notice of the claim.  *DaVita*, 372 F. Supp. 3d at 1155 (citing *Dura*, 544 U.S. at 346; Fed. R. Civ. P. 8(a)).  And, a corrective disclosure need not be the mirror-image of the alleged misrepresentation.  *Molycorp*, 157 F. Supp. 3d at 1012 (citing *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)).  The Complaint satisfies these standards.

### A.   Corrective Disclosures – Maxar's Financial Statements

The Complaint alleges that the market learned the truth about the Company's false financial statements on August 7, 2018 (¶¶175-178), August 24, 2018 (¶¶179-180), and October 31, 2018 (¶¶186-194).  On August 7, 2018, Spruce Point caught Defendants cooking Maxar's books and informing investors that the Company's intangible assets were overstated and a material impairment charge was looming.  While the Company's stock price dropped 13.4% on August 7, Defendants

immediately condemned the report as inaccurate. However, after completing a secretive investigation into the report, on August 24 and October 31, 2018, Defendants conceded that Spruce Point's August 7, 2018 conclusions concerning GeoComm's impairment were both reasonable and correct and, in response to each disclosure, Maxar's stock price dropped again.  ¶¶179, 187-188.

Courts have held that similar allegations – *i.e.*, where corrective information derived solely from public information is disclosed to investors (including by securities analysts) – adequately plead loss causation. *See Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*, 877 F.3d 687, 695-97 (6th Cir. 2017) (reversing dismissal and holding that alleged partial disclosure based on public information and defendants' subsequent admission to the truth and accuracy of the disclosure, viewed collectively, are both properly pled partial disclosures) *cert. denied*, __ U.S. __, 139 S. Ct. 310 (2018); *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014) (reversing dismissal and observing that loss causation allegations – including those attributable to a non-party's report based on public information – should be viewed collectively); *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2019 WL 2521834, at *7 (D. Colo. June 18, 2019) (analyst report revealed new information not reasonably available to ordinary market participants despite relying on public information); *Harris v. AmTrust Fin. Servs.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (analyst report can serve as corrective disclosure if it accurately reveals misleading statements made by a defendant). *See also In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2017 WL 3972456, at *10 (C.D. Cal. Sept. 6, 2017) (the courthouse should not be closed to investors simply because defendants' scheme was "revealed by a short-seller – no matter how thorough . . . the research or how compelling the short-seller's conclusions").

With regard to the Company's August 24, 2018 "'Comprehensive Response'" to the Spruce Point report, Defendants' insist that a company's mere disclosure of the start of an investigation of accounting fraud is not corrective.   MTD at 3, 23.   But once again, Defendants have mischaracterized the Complaint's allegations.   On August 24, 2018, Maxar had already completed and announced the results of its investigation and, more importantly, Maxar's comprehensive response confirmed one of Spruce Point's conclusions:   that a material SSL impairment was possible.  ¶179.   Defendants make no meaningful attempt to rebut the loss causation allegations regarding the October 31, 2018 corrective disclosure.   Nor could they.   When Maxar finally recognized a $383.6 million impairment charge on October 31, 2018, the market responded negatively to this adverse news and its stock price dropped significantly.  ¶¶187-188, 194.

### B.     Corrective Disclosures – AMOS-8

Defendants claim the Israeli Ministry of Science and Technology's September 3, 2018 announcement that the Israeli government intended to fund the development and construction of AMOS-8 in Israel (¶¶181-182, 212) is not corrective because it "did not correct any prior misstatements."  MTD at 24.  As discussed in §III.A., Defendants gave investors the misleading impression that AMOS-8 was a definitive contract when they failed to disclose key contractual provisions, including that Spacecom could back out of the deal penalty-free by not making a down payment.  The fact that the Israeli government intended to both build AMOS-8 in Israel and fund the project signaled that Maxar's receipt of Spacecom's long-awaited down payment (¶¶123, 126) was at further risk.

Defendants also argue that Spacecom's September 25, 2018 filing with the Tel Aviv Stock Exchange could not have been corrective because "by September 3, the public *already knew* that

Maxar would not be building AMOS-8."   MTD at 24 (emphasis in original).   But when the September 25, 2018 deadline came and went without Maxar receiving a down payment, it was Spacecom who informed Israeli regulators for the first time that it did not intend to proceed with the contract.   The market reacted negatively to that disclosure.   ¶¶183-184, 213.   *See W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 WL 4838671, at *7 (D. Colo. Nov. 6, 2008) ("'[L]oss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements.'").

### C.   Corrective Disclosure – WorldView-4

On January 7, 2019, Defendants announced that WorldView-4 could no longer produce usable imagery due to instability caused by control moment gyroscope component malfunction. ¶198.  The Complaint alleges Defendants were fully aware of that mission-critical instability when they made bullish statements about the WorldView-4 satellite and its capabilities.  ¶174.  As a result of Defendants' January 7, 2019 disclosure that the satellite had suffered failure, the market reacted negatively and the price of Maxar's common stock dropped significantly.   ¶¶199-200, 215-216. Nothing else is required of the pleading.

## VI.   THE COMPLAINT PROPERLY ALLEGES A §20(a) CLAIM

Because the Complaint's §10(b) claim is adequately pled, the Court should sustain Plaintiff's §20(a) claim.

## VII.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be denied in its entirety.

DATED:  January 21, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP
SPENCER A. BURKHOLZ
HENRY ROSEN
TRIG R. SMITH
DEBASHISH BAKSHI

s/ TRIG R. SMITH

TRIG R. SMITH

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
henryr@rgrdlaw.com
trigs@rgrdlaw.com
dbakshi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ANDRUS WAGSTAFF, PC
VANCE R. ANDRUS
AIMEE H. WAGSTAFF
7171 W. Alaska Drive
Lakewood, CO 80226
Telephone:  303/376-6360
303/376-6361 (fax)
vance.andrus@andruswagstaff.com
aimee.wagstaff@ andruswagstaff.com

Local Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on January 21, 2020, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

non-CM/ECF participants indicated on the attached Manual Notice List.

s/ TRIG R. SMITH
TRIG R. SMITH

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  trigs@rgrdlaw.com

4830-4933-1888.v1

# Mailing Information for a Case 1:19-cv-00124-WJM-SKC Oregon Laborers Employers Pension Trust Fund et al v. Maxar Technologies Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Debashish Bakshi**
  DBakshi@rgrdlaw.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **Brian Thomas Glennon**
  brian.glennon@lw.com,brian-glennon-0505@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,sf_filings@hbsslaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Kristin Nicole Murphy**
  kristin.murphy@lw.com,kristin-murphy-2919@ecf.pacerpro.com,#ocecf@lw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric C. Pettis**
  eric.pettis@lw.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,ChristC@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **Jerome H. Sturhahn**
  jsturhahn@shermanhoward.com,efiling@shermanhoward.com,jbulanow@shermanhoward.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)