# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA

      Defendants.

---

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

---

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT .....................................................................................................1

    A.    PLAINTIFF FAILS TO ALLEGE A MATERIAL
        MISREPRESENTATION OR OMISSION......................................................1

        1.    Defendants' Statements Related To AMOS-8 Were Not
             Misleading When Made ...............................................................1

        2.    Defendants' Financial Statements Were Not False When Reported ...........2

        3.    Defendants' Statements Regarding WorldView-4 Were Not False
             When Made ................................................................................4

    B.    PLAINTIFF FAILS TO ALLEGE SCIENTER ......................................................5

        1.    Plaintiff Fails To Allege A Strong Inference Of Scienter With
             Respect To Statements Related To AMOS-8 ..............................6

        2.    Plaintiff Fails To Allege A Strong Inference Of Scienter With
             Respect To The GeoComm Impairment ......................................7

        3.    Plaintiff Fails To Allege A Strong Inference Of Scienter With
             Respect To Statements Related To WorldView-4 .......................9

        4.    Plaintiff's "Additional Allegations" Fail .....................................9

        5.    The Non-Fraudulent Inference is Far More Compelling ...........................12

    C.    PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION.....................................13

        1.    The August 7 Spruce Point Capital Report...............................13

        2.    Maxar's August 24, 2018 Press Release...................................13

        3.    The Israeli Ministry of Science September 3, 2018 Press Release...........14

        4.    Spacecom's September 25, 2018 Tel Aviv Stock Exchange Filing ..........14

        5.    Maxar's October 31, 2018 Form 6-K .......................................15

        6.    Maxar's January 7, 2019 Press Release....................................15

III.    CONCLUSION................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Adams v. Kinder-Morgan, Inc.*,
   340 F.33 1083 (10th Cir. 2003) ...........................................................................11

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) .............................................................................6

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007)...................................................................11

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................3, 7

*Brasher v. Broadwind Energy, Inc.*,
   No. 11 Civ. 991, 2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ..............................8

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV-17-1490, 2018 WL 4802058 (C.D. Cal. June 7, 2018) ...........................10

*City of Phila. v. Fleming Cos. Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ......................................................................10, 11

*Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*,
   No. 8:04CV2561T-24EAJ, 2006 WL 547989 (M.D. Fla. Mar. 6, 2006) .............3, 7

*Dudley v. Haub*,
   No. 2:11-CV-05196 WJM, 2013 WL 1845519 (D.N.J. Apr. 30, 2013) ...................3

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................15

*In re Gold Corp. Sec. Litig.*,
   776 F.3d 1103 (10th Cir. 2015) ...........................................................................10

*In re Gold Res. Corp.*,
   957 F. Supp. 2d 1284 (D. Colo. 2013)...................................................................4

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) .............................................................................5

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ..............................................................11

*Hill v. Gozani*,
   638 F.3d 40 (1st Cir. 2011)...................................................................2

*In re Home Loan Servicing Solutions, Ltd. Sec. Litig.*,
   2016 WL 10592320 (S.D. Fla. June 6, 2016) ......................................12

*In re Leapfrog Enter. Sec. Litig.*,
   237 F. Supp. 3d 943 (N.D. Cal. 2017) ..................................................4

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   No. 10-2847-IPJ, 2011 U.S. Dist. Lexis 60761 (N.D. Ala. June 7, 2011).................9

*In re Loral Space & Commc'ns. Ltd. Sec. Litig.*,
   No. 01 Civ. 4388 (JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ................3, 8

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)................................................................................2

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) ............................................................6

*Mishkin v. Zynex Inc.*,
   2011 WL 1158715 (D. Colo. Mar. 30, 2011) ........................................4

*Morgensen v. Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014)..................................................12

*Nakkhumpun v. Taylor*,
   Civil Action No. 12-cv-01038-CMA-CBS, 2013 U.S. ...........................2

*Nardy v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01760, 2019 WL 3297467 (D. Colo. Mar. 29, 2019) ............14

*Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*,
   877 F.3d 687 (6th Cir. 2017) ..............................................................13

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)................................................................10

*Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ..............................................................13

*In Re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007).................................................................7

*In re SemGroup Energy Partners, L.P.*,
   729 F. Supp. 2d 1276 (N.D. Okla. 2010) .........................................................5

*Smallen v. W. Union Co.*,
   No. 17-cv-00474-KLM, 2019 WL 1382823 (D. Colo. Mar. 27, 2019)....................5

*Sorkin, LLC v. Fischer Imaging Corp.*,
   No. Civ-A. 03-CV-00631-R, 2005 WL 1459735 (D. Colo. June 21, 2005)............6

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................5, 12

*Thor Power Tool Co. v. Comm'r Internal Revenue*,
   439 U.S. 522 (1979).............................................................................................3

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
   No. 18-CV-02104, 2019 WL 2521834 (D. Colo. June 18, 2019)..........................13

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
   2008 WL 4838671 (D. Colo. Nov. 6, 2008) ......................................................14

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
   2008 WL 879023 (D. Colo. Mar. 28, 2008) ......................................................11

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) .......................................................................15

*Yates v. Municipal Mortg. & Equity, LLC*,
   744 F.3d 874 (4th Cir. 2014) ...........................................................................10

*Zucco Partners LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...........................................................................10

*Zwick Partners, LP v. Quorum Health Corp.*,
   No. 3:16-CV-2475, 2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018)......................3

## I.      INTRODUCTION

Plaintiff is accusing Maxar Technologies, Inc. ("Maxar" or the "Company") and two individuals of *defrauding* investors.  Given the severe pecuniary and reputational ramifications of such an allegation, Congress enacted (and the Supreme Court has consistently enforced) exacting pleading standards on such claims in order to survive a motion to dismiss.  Here, Plaintiff falls far short of pleading securities fraud with the factual particularity required by controlling precedent.

The Consolidated Complaint fails as a matter of law to plead particularized facts necessary to establish the required elements of falsity, scienter, and loss causation – any one of which requires dismissal.  The Opposition ignores legal arguments advanced in the Motion to Dismiss, rests on meaningless rhetoric and unsupported legal conclusions (rather than particularized facts), and relies upon case law that is factually and legally distinguishable.  Most importantly, Plaintiff fails to articulate any coherent (or even rational) theory of fraud.  The far more cogent and compelling inference is that Maxar faced significant operational issues, those issues were timely disclosed to investors (as detailed in the Consolidated Complaint), and its officers worked diligently to address and resolve these challenges.  It was these operational challenges, and not any alleged fraud, that led to the decline in stock price.

## II.     ARGUMENT

### A.      Plaintiff Fails To Allege A Material Misrepresentation Or Omission

#### 1.      Defendants' Statements Related To AMOS-8 Were Not Misleading When Made

With the benefit of hindsight, Plaintiff contends that Defendants should have disclosed that the AMOS-8 contract was "speculative" (a phrase that appears nowhere in the Consolidated Complaint), and that "the contract:  (1) would only become effective upon first payment; (2) was

contingent upon Spacecom obtaining financing; and (3) had a penalty-free withdrawal period of 60 days allowing Spacecom to void the transaction."  (Pl. Opp., ECF No. 57 ("Opp.") at 6.)  In making this argument, however, Plaintiff attempts to impose disclosure obligations that have no support in the law.

Defendants are required to provide investors with enough information to ensure a disclosure is not misleading.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *see also Nakkhumpun v. Taylor*, Civil Action No. 12-cv-01038-CMA-CBS, 2013 U.S. WL 5446081, at *12 (D. Colo. Sep. 30, 2013) ("disclosure is required . . . when necessary to make . . . statements made, in light of the circumstances in which they were made, not misleading") (internal quotations omitted.)  Indeed, "the question is whether the omission of facts rendered 'what was revealed . . . so incomplete as to mislead.'"  *Nakkhumpun*, 2013 WL 5446081, at *12 (quoting *Hill v. Gozani*, 638 F.3d 40, 57 (1st Cir. 2011)).  Defendants satisfied their legal obligations by disclosing that Spacecom selected, and entered into contract with, Maxar to build AMOS-8.  That statement is, and was at the time it was made, indisputably true.  (*See* Opp. at 6-7.)[1]

### 2.    Defendants' Financial Statements Were Not False When Reported

Next, Plaintiff conclusorily asserts that impairment accounting is "as simple as it gets[.]" (Opp. at 8.)  The problem with Plaintiff's argument is its premise; determining whether "any of th[e] indications [of impairment]" are present is *itself a nuanced exercise involving accounting judgment*.  The International Accounting Standards ("IAS") involve subjective, qualitative

---

[1] Plaintiff claims that because Defendants chose to speak about the AMOS-8 deal, they had a duty to disclose that the contract was contingent on financing.  *See* Opp. at 6-7.  But Defendants did not disclose *any* contract terms; Defendants stated only that Spacecom entered into a contract with Maxar to build AMOS-8—a statement that Plaintiff concedes was true.  (*See* Opp. at 7) (arguing "literal truth").)

indicators, such as whether the decline was "*more than would be expected*," whether "*significant changes* [had] an *adverse effect* on the entity," and whether losses were "*significantly worse* than those budgeted." (*See, e.g.,* CC ¶ 34 (citing IAS 36.12) (emphasis added); CC ¶ 36 (citing IAS 36.14) (emphasis added).) These standards require an understanding of the impacted asset, knowledge of the industry, as well as the exercise of judgment. *See In re Loral Space & Commc'ns. Ltd. Sec. Litig.*, No. 01 Civ. 4388 (JGK), 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) ("whether the requirements of the accounting principles were satisfied, necessarily involved issues of judgment"); *Thor Power Tool Co. v. Comm'r Internal Revenue*, 439 U.S. 522, 544 (1979) (matters of accounting "tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management."). Further undermining Plaintiff's argument, the Company conducted impairment testing annually (*see* CC ¶ 188), routinely updated investors on the declining state of the GeoComm business (*see generally* CC ¶¶ 77-140), and took an impairment in Q3 2018 shortly after conducting a publicly disclosed investigation with the assistance of subject-matter experts. (CC ¶ 187). None of this is not indicative of fraud.[2]

---

[2] Plaintiff's argument that "courts routinely reject Defendants' 'fraud by hindsight' argument" misses the mark. (Opp. at 8-9.) Defendants did not argue fraud by hindsight because the financial statements were never false. (*See* Mot. at 12 (arguing that a disagreement involving accounting judgment does not constitute fraud).) In any event, the cases Plaintiff cites are easily distinguishable. *See Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-CV-2475, 2018 WL 2933406, at *4-7 (M.D. Tenn. Apr. 19, 2018) (allegations regarding company's spin-off showed a clear motivation to improperly delay impairment); *Dudley v. Haub*, No. 2:11-CV-05196 WJM, 2013 WL 1845519, at *11 (D.N.J. Apr. 30, 2013) (delayed impairment of subsidiary was a misstatement where there had been "enormous, 'sustained operating losses,'" and where reported goodwill of that subsidiary "exceeded the market's valuation of the *entire Company*.") (Emphasis in original); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, No. 8:04CV2561T-24EAJ, 2006 WL 547989, at *3 (M.D. Fla. Mar. 6, 2006) (detailed confidential witness allegations regarding contemporaneous effects of terminated contract on business, including that it accounted for 50% of plant production and sales); *In re Atlas Air Worldwide*

### 3.     Defendants' Statements Regarding WorldView-4 Were Not False When Made

Plaintiff claims that "WorldView-4 malfunctioned no later than October 12, 2018," (Opp. at 9), because the TLE data "became erratic and volatile[.]" (CC ¶ 148.) But Plaintiff alleges that WorldView-4 became inoperable when it "experienced CMG failure"—something Plaintiff concedes *the TLE data does not show.* (*See* CC ¶ 146 (emphasis added).) Plaintiff contends that Defendants' statements about WorldView-4 were misleading "because they gave investors the impression that WorldView-4 was still a fully-functioning satellite." (Opp. at 9-10.) Neither the Consolidated Complaint nor Plaintiff's Opposition even attempts to describe *any connection* between the TLE data and CMG functionality.

Plaintiff argues that Defendants' statements are not protected by the PSLRA "safe harbor" because they represent a "present falsehood." (*See* Opp. at 9-11.) Again, Plaintiff fails to plead any particularized facts to suggest that the operational issues relating to WorldView-4 occurred *prior to* the alleged misstatements at issue. The analysis can and should end here. Unlike the cases on which Plaintiff relies, the challenged statements do not "relate[ ] to non-forward looking aspects of the statement" and are not "statements of current or historical fact." (*See* Opp. at 10 (citing *In re Gold Res. Corp.,* 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013); *Mishkin v. Zynex Inc.,* 2011 WL 1158715, at *5 (D. Colo. Mar. 30, 2011).)

---

*Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) (company issued restatement, which is "sufficient basis for pleading that those statements were false when made"); *In re Leapfrog Enter. Sec. Litig.*, 237 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("Defendants justified the long-lived impairment write-off in 4Q based on an obvious stock decline, but that stock decline was obvious as of 3Q").

Plaintiff also argues that Defendants' statements relating to "opportunities" are not "expressions of hope, but rather affirmative misrepresentations bearing on the existing functionality of the satellite." (*See* Opp. at 11.) But again, Plaintiff has not pled (or even argued) that the TLE data showed that WorldView-4 was inoperable; in other words, the Consolidated Complaint does not plead that any public statements were "undermine[d]" by contemporaneous "material, nondisclosed information." (*See* Opp. at 11 (citing *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1294 (N.D. Okla. 2010)).) To the contrary, Defendants' statements are precisely the type of disclosures that are consistently protected under the federal securities laws. *See Grossman v. Novell, Inc.,* 120 F.3d 1112, 1120-21 (10th Cir. 1997) (collecting cases and noting that statements that the company was "poised to carry the growth and success of 1991 well into the future" are statements of puffery); *Smallen v. W. Union Co.,* No. 17-cv-00474-KLM, 2019 WL 1382823, at *7 (D. Colo. Mar. 27, 2019) (holding that statements about the company's commitments were inactionable puffery).

## B.      Plaintiff Fails To Allege Scienter

The element of scienter is a critical component of this case. Publicly-traded companies can – and sometimes do – issue disclosures that later turn out to be incorrect. Those disclosures may result in a decline in stock price. But it is *scienter* – the intent to defraud (or deliberate recklessness as to the truth or falsity of a disclosure) – that transforms an innocent misstatement into securities fraud. As a matter of federal law and established Supreme Court precedent, scienter must be pled with factual particularity; the required "strong inference" of scienter must be at least as "cogent" and "compelling" as the competing non-fraud inference. *Tellabs, Inc., v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 324 (2007).  Plaintiff comes nowhere close to satisfying that burden in this case.

### 1.    Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To Statements Related To AMOS-8

Plaintiff argues that the Consolidated Complaint establishes that Lance and Wirasekara knew that the AMOS-8 contract was "not definitive" in March and May 2018, based on their "intimate knowledge" about the terms of the AMOS-8 contract, the fact that they "monitored" the financial performance of SSL and the GeoComm business, and the decrease in GeoComm awards. (Opp. at 12-13.)  None of these arguments is supported by particularized facts.

Even if Lance and Wirasekara had "intimate knowledge" (a meaningless and conclusory phrase) about the downturn in the GeoComm business and the market decline (CC ¶¶ 90, 97), that does not create a "strong inference" of scienter.  Simply stated, there are no well-pled facts that give rise to a strong inference that Defendants knew that the Company's statements about it being selected to build the AMOS-8 satellite were false when made.  *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016) (knowledge of company's core operations and ability to achieve forecasted schedules and cost reductions insufficient to establish that defendants knew that the projects were unlikely to meet forecasts); *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1122 (10th Cir. 2014) (allegation that defendants attended meetings where market conditions and disclosures were discussed does not suggest cogent inference of scienter); *Sorkin, LLC v. Fischer Imaging Corp.*, No. Civ-A. 03-CV-00631-R, 2005 WL 1459735, at *10 (D. Colo. June 21, 2005) (same).

Plaintiff's argument that Defendants "quietly deleted the AMOS-8 contract from its website listing definitive GeoComm awards" fares no better.  (Opp. at 12-13.)  Foundationally,

there are no particularized facts suggesting that either Lance or Wirasekara had any knowledge of, much less any involvement in, posting (or for that matter, "quietly delet[ing]" posts) on the Company's website.  Plaintiff is thus asking the Court to infer the very facts it is required by law to plead with factual particularity.  In the end, this argument does not create any inference – much less the required "strong inference" – that Defendants acted with scienter at the time they informed investors that the Company had entered into a contract with Spacecom.  Plaintiff does not and cannot allege that Defendants told investors that AMOS-8 was a definitive contract, and the fact that it ultimately fell through (because of Spacecom's actions, not Defendants' conduct), does not mean that Defendants intended to defraud investors.

### 2. Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To The GeoComm Impairment

Plaintiff aggressively argues that Defendants knew the 1Q18 and 2Q18 financial statements were false because of the alleged "indictors of impairment" that existed at the time those financial statements were issued.  (Opp. at 14.)  But the authorities on which Plaintiff relies involve concealed facts that had very obvious and far more profound accounting implications—unlike the alleged "indicators" here.  *See In Re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 378 (S.D.N.Y. 2007) (complaint adequately alleged scienter where defendants knew of and failed to disclose negative tax consequences of securitization transaction); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *20 (M.D. Fla. Mar. 6, 2006) (complaint adequately alleged scienter where it included detailed confidential witness allegations regarding impact of terminated contract); *In Re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489-90 (S.D.N.Y. 2004) (complaint adequately alleged scienter where failure to take impairment

resulted in restatement of such magnitude that it transformed company's *earnings* of $185 million to a *deficit* of $178 million).

It is beyond dispute that Defendants regularly informed the investing public of the challenges facing the GeoComm business; indeed, the Consolidated Complaint extensively details these very disclosures.  (*See* CC ¶¶ 90, 93, 100-102, 108, 111, 134, 136, 137.)  Plaintiff argues that these (repeated) disclosures are insufficient to rebut its scienter allegations.  (Opp. at 17.)  In making this argument, however, Plaintiff ignores not only the applicable case law, but common sense.  For instance, Plaintiff attempts to distinguish *In re Loral Space & Commc'ns. Ltd. Sec. Litig.*, where the Court rejected the assertion that failing to take an impairment charge was indicative of scienter because the company disclosed the "evolving poor performance" of the business.  2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004).  But the *Loral* case is directly on point.  In that case, the Court held that the allegations did not give rise to scienter "particularly in view of the disclosures of the ongoing poor performance."  *Id.*  That holding applies with equal force here.  Defendants consistently updated the investing public on the declining state of the business, which is entirely inconsistent with what one would expect from someone perpetrating a fraud.  (*See* CC ¶¶ 90, 93, 100-102, 108, 111, 134, 136, 137.)

Finally, Plaintiff claims that the sheer size of the impairment is indicative of scienter.  That argument is inconsistent with the allegations in the Consolidated Complaint and unsupported by the law.  (Opp. at 18.)  As alleged, the Company's $383.6 million impairment charge to property, plant and equipment, intangible assets and inventory in 3Q18 was 13% of the Company's value for those assets in 2Q18.  (CC ¶¶ 9, 187.)  The cases upon which Plaintiff relies are (again) easily distinguishable.  *See Brasher v. Broadwind Energy, Inc.*, No. 11 Civ. 991, 2012 WL 1357699, at

*23 (N.D. Ill. Apr. 19, 2012) (impairment constituted 63% of goodwill and intangible assets); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 10-2847-IPJ, 2011 U.S. Dist. Lexis 60761, at *29 (N.D. Ala. June 7, 2011) ($6 billion goodwill write-down after the purchase of stock where $6 billion of the purchase price was attributed to goodwill).

### 3.   Plaintiff Fails To Allege A Strong Inference Of Scienter With Respect To Statements Related To WorldView-4

Plaintiff argues that "around-the-clock monitoring" of WorldView-4 "must have revealed that WorldView-4 . . . had lost stability." (Opp. at 20.)  This sheer speculation is not supported by particularized facts.  But even if Plaintiff's assertion had factual support (it does not), it is still fundamentally flawed: the *only* alleged indication of instability (not inoperability) occurred on October 12, 2018, when the TLE data became erratic and volatile.  Plaintiff concedes that the TLE data does not provide information about the components of a satellite, including the CMGs, which ultimately led to the satellite's inoperability.  (*See* CC ¶¶ 144, 146, 198.)  The Opposition offers no response to this obvious disconnect in Plaintiff's fraud theory.

### 4.   Plaintiff's "Additional Allegations" Fail

Plaintiff's "additional" scienter arguments do not (and cannot) remedy the fatal deficiencies in the Consolidated Complaint.  Plaintiff argues that Lance and Wirasekara were motivated to commit fraud because not taking the impairment would result in long term compensation that was "directly tied to the Company's stock price." (Opp. at 20.)  However, even Plaintiff concedes that to plead scienter through "motive and opportunity," it must plead "that defendants benefitted in some concrete and personal way from the purported fraud." (Opp. at 21.)  The desire to protect the value of the Company's stock – a motivation that can be attributed to any corporate officer and which enhances shareholder value – does not establish that Lance and

Wirasekara benefitted in some "concrete and personal way." *See City of Phila. v. Fleming Cos. Inc.*, 264 F.3d 1245, 1269 (10th Cir. 2001) (desire to protect value of stock is insufficient to establish motive for fraud because it is a motive shared by all company executives); *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (allegations of motive insufficient where plaintiff pled that defendants "desire[d] to maintain a high stock price in order to increase executive compensation or prolong the benefits of holding corporate office").

Moreover, the Company's decision to replace its auditor and hire another to conduct an internal investigation is no more indicative of fraud than it is good corporate governance. Plaintiff contends that the resignation "one week after Defendants were caught cooking the books" is indicative of scienter. (Opp. at 21.) But Lance signed the "Notice of Change of Auditor" on August 1, 2018—one week before the publication of the Spruce Report. (RJN, Ex. 20.) Further, the Spruce Report did not "catch" Defendants doing anything, much less "cooking the books"—a factually baseless and inflammatory phrase Plaintiff utters throughout the Opposition. (*See* Opp. at 2, 21, 22.) The Company never restated its financial statements, and even if it had, that still would not establish scienter. *See Cheng Jiangchen v. Rentech, Inc.*, No. CV-17-1490, 2018 WL 4802058, at *10 (C.D. Cal. June 7, 2018); *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 889 (4th Cir. 2014) ("The dismissal of an accounting firm around the time of a restatement is not surprising"); *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) (same).

The launch of a so-called "secret investigation" (Opp. at 21 n.6) – which was fully disclosed and, thus, not "secret" – further undermines Plaintiff's fraud theory. *See In re Gold Corp. Sec. Litig.*, 776 F.3d 1103, 1115 (10th Cir. 2015) ("It is certainly plausible that a prudent

executive would want to investigate and confirm a claimed discrepancy before disclosing it publicly.") (citing *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 755 (7th Cir. 2007) (delaying the disclosure of an investigation by two months was not indicative of fraud but instead demonstrated a "pursuit of truth"). It is beyond dispute that the Company disclosed its comprehensive investigation (and its results) on August 24—less than three weeks after the release of the Spruce Report. (CC ¶ 179 ("[I]t is possible that an impairment or write-down will be recognized in the third quarter of 2018.").) Far from supporting a fraud claim, this reflects a desire to search for and disclose the truth. *See Andropolis v. Red Robin Gourmet Burgers, Inc*., 505 F. Supp. 2d 662, 678-79 (D. Colo. 2007); *Higginbotham*, 495 F.3d at 758.

Plaintiff next contends that the Company's $3.2 billion loan supports an inference of scienter because Defendants were aware that a material adverse event relating to impaired assets could result in the event of a default. (Opp. at 21.) Courts routinely reject allegations of such "business motives" as indicia of scienter. *See, e.g., City of Phila.*, 264 F.3d at 1269 (desire to maintain high bond or credit ratings, desire to raise capital, or protect company assets insufficient to raise an inference of scienter, otherwise "virtually every company in the United States" could be forced to defend securities fraud actions).

Finally, Plaintiff's allegations about Lance and Wirasekara's high-ranking positions are not particularized, and can be alleged against any executive in the country. (Opp. at 21.) The sole case on which Plaintiff relies states that a defendant's position is "a factor" that could be weighed in the "totality of the allegations regarding [ ] scienter." *W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 WL 879023, at *16 (D. Colo. Mar. 28, 2008). But that case cites the Tenth Circuit's decision in *Adams v. Kinder-Morgan, Inc.*, which unequivocally holds that

"standing alone, the fact that a defendant was as senior executive in a company cannot give rise to a strong inference of scienter[.]"  340 F.33 1083, 1106 (10th Cir. 2003).  Given the totality of the allegations here, Lance and Wirasekara's positions at the Company add nothing to the scienter analysis.  *See e.g.*, *In re Home Loan Servicing Solutions, Ltd. Sec. Litig.*, 2016 WL 10592320, at *5 (S.D. Fla. June 6, 2016) ("Merely holding a high level position is not a compelling indicia of scienter."); *See also Morgensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1224 (M.D. Fla. 2014) (same).

## 5. The Non-Fraudulent Inference is Far More Compelling

The Court must consider competing non-fraudulent inferences as a matter of controlling Supreme Court precedent.  *Tellabs,* 551 U.S. at 314.  As noted, to adequately plead securities fraud, the strong inference of scienter must be "cogent" and "at least as compelling" as the non-fraudulent inference.  *Id.*  But weighing the inferences in this case raises more questions than the Consolidated Complaint can possibly answer.  There are no allegations that either Defendant engaged in insider trading, or stood to personally benefit from any alleged fraud.  Far from concealing the impaired asset, the Consolidated Complaint devotes 10 paragraphs to describing the contemporaneous disclosures Defendants made about the declining state of the GeoComm business.  When the Spruce Report was published, Defendants engaged outside experts, conducted a thorough investigation, and issued a Comprehensive Response.  Notwithstanding the fact that Maxar suffered a stock price decline during the alleged class period, these facts powerfully demonstrate that there was no fraud.  Under the Supreme Court's seminal decision in *Tellabs*, the Court must consider these competing inferences when assessing scienter.

### C.       Plaintiff Fails To Allege Loss Causation

#### 1.       The August 7 Spruce Point Capital Report

Plaintiff argues that the August 7, 2018 Spruce Report is "corrective" notwithstanding the fact that it consisted solely of public information.  (Opp. at 23.)  This argument flatly ignores the "efficient market" theory upon which Plaintiff pleads its case.  (CC ¶ 252.)  Indeed, in the cases Plaintiff cites, the reports revealed key information that was *not* publicly available, or required expert analysis that was "beyond the ken of most investors."  *See Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, No. 18-CV-02104, 2019 WL 2521834, at *7 (D. Colo. June 18, 2019) (analyst report revealed "the identity of the borrowers" where plaintiff alleged misstatements regarding loans provided by the defendant company); *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys.*, 877 F.3d 687, 697 (6th Cir. 2017) (analyst reports were "beyond the ken of most investors" because they "compared Community's inpatient admissions to those of other hospitals, and separately concluded [ ] Community systematically admitted [ ] inpatients . . . in a manner that was clinically improper"); *see also Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014) ("it is plausible that, as the Appellants allege, the efficient market was not aware of the hidden meaning of the Medicare data that required expert analysis, especially where the data itself is only available to a narrow segment of the public and not the public at large").

#### 2.       Maxar's August 24, 2018 Press Release

With regard to the Company's August 24, 2018 Comprehensive Response to the Spruce Report, Plaintiff's argument rests (again) on a faulty premise: specifically, that "Maxar's comprehensive report confirmed Spruce Point's conclusion that a material SSL impairment was possible."  (Opp. at 24.)  Plaintiff mischaracterizes the record and misstates its own allegations.

The investigation found "no material errors in the previously issued financial statements and disclosures under IFRS." (Murphy Decl. Ex. 13, p. 1.)  The language cited in the Consolidated Complaint, which Plaintiff aggressively argues in the Opposition "confirmed Spruce Point's conclusion," was pulled from a section of the report that was *not discussing the investigation*, but instead, strategic alternatives the Company was considering at the time.  (*See* Murphy Decl. Ex. 13, p.3 (discussing various "strategic alternatives" and that "the Company expects that under certain scenarios, non-cash write-downs or an impairment of assets could occur").)

### 3.     The Israeli Ministry of Science September 3, 2018 Press Release

On this issue, the Opposition relies on Plaintiff's own mischaracterization of the alleged misstatements.  None of the challenged statements disclosed *any* details of the agreement between Maxar and Spacecom; Plaintiff's contention that the September 3, 2018 announcement by the Israeli Ministry of Science and Technology was corrective because it "signaled that Maxar's receipt of Spacecom's long-awaited down payment" therefore fails.  (Opp. at 24.)  *See Nardy v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01760, 2019 WL 3297467, at *13 (D. Colo. Mar. 29, 2019) (dismissing corrective disclosures because they did not reveal the alleged fraud).

### 4.     Spacecom's September 25, 2018 Tel Aviv Stock Exchange Filing

Plaintiff argues that the September 25, 2018 Tel Aviv Stock Exchange filing is corrective because "loss causation may be premised on partial revelations." (*See* Opp. at 25 (citing *See W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 WL 4838671, at *7 (D. Colo. Nov. 6, 2008).)  But according to Plaintiff, there was nothing left to reveal on the date of this disclosure. Plaintiff argues that the September 3 "corrective disclosure" revealed that "the Israeli government [and not SSL] intended to both build AMOS-8 in Israel and fund the project[.]"  (Opp. at. 24.)

14

That is the same "revelation" as the September 25 statement that Plaintiff says revealed that "[Spacecom] did not intend to proceed with the contract." (Opp. at 25.)

### 5.      Maxar's October 31, 2018 Form 6-K

Plaintiff contends that "Defendants make no meaningful attempt to rebut the loss causation allegations regarding the October 31, 2018 corrective disclosure." (Opp. at 24.) But it is Plaintiff who has failed to plead facts showing that the October 31 disclosure revealed the truth of any false statement. (*See* Mot. at 25 (citing *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009).) The Opposition does no more than cite a disclosure and a subsequent stock drop; that is insufficient as a matter of controlling Supreme Court precedent. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

### 6.      Maxar's January 7, 2019 Press Release

Finally, Plaintiff contends that the January 7, 2019 announcement that WorldView-4 could no longer produce usable imagery led to a stock drop. As noted above, Plaintiff's theory regarding WorldView-4's component issue fails because neither the Consolidated Complaint nor Plaintiff's Opposition describe *any connection* between TLE data that became erratic in October 2018 and CMG functionality that ultimately caused the inoperability of WorldView-4. Accordingly, Plaintiff's loss causation allegations regarding WorldView-4 do not establish that the January 7, 2019 Press Release "corrected" any prior misstatements and "caused the resulting decline in price." *In re Williams*, 558 F.3d at 1140.

## III.      CONCLUSION

For the reasons set forth above and the Motion to Dismiss, Defendants respectfully request that the Court dismiss the Consolidated Complaint in its entirety.

15

Dated:  February 20, 2020                     Respectfully Submitted,

SHERMAN & HOWARD L.L.C.

*/s/ Jerome H Sturhahn*
Jerome H. Sturhahn
Milton L. Smith
Peter G. Koclanes
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: (302) 297-2900
Facsimile:  (303) 298-0940
Email: msmith@shermanhoward.com
pkoclanes@shermanhoward.com
jsturhahn@shermanhoward.com

LATHAM & WATKINS LLP

*/s/ Brian T. Glennon*
Brian T. Glennon
Eric C. Pettis
355 S. Grand Ave., Suite 1000
Los Angeles, CA 90071
Telephone: (213) 891-7593
Facsimile:  (213) 891-8763
Email: brian.glennon@lw.com
eric.pettis@lw.com

Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 755-8287
Facsimile:  (714) 755-8290
Email: Kristin.murphy@lw.com

*Attorneys for Defendants Maxar Technologies*
*Inc., Howard L. Lance, and Anil Wirasekara*

## CERTIFICATE OF SERVICE

The undersigned certifies on this 20th day of February 2020, a true and correct copy of the foregoing) **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following addresses:

ROBBINS GELLER RUDMAN & DOWD LLP
SPENCER A. BURKHOLZ
HENRY ROSEN
TRIG R. SMITH
DEBASHISH BAKSHI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
henryr@rgrdlaw.com
tsmith@rgrdlaw.com
dbakshi@rgrdlaw.com

Attorneys for **Plaintiffs**

*s/ Judith J. Bulanowski*
Judith J. Bulanowski, Legal Secretary
