# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

### JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER AND ESI PROTOCOL

---

Lead Plaintiff Oregon Laborers Employers Pension Trust Fund and Defendants Maxar Technologies, Inc., Howard L. Lance and Anil Wirasekara, respectfully request that the Court enter the Stipulation and Proposed Protective Order ("Protective Order," attached hereto as Exhibit A) and Proposed Stipulated Order and Protocol Regarding Discovery of Electronically Stored Information ("ESI Protocol," attached here to as Exhibit B). In support thereof, the parties state the following:

1.      On October 21, 2020, the parties filed a proposed scheduling order noting that they were working toward a protective order and ESI protocol in this action. ECF No. 75 at 8.

2.      During the October 28, 2020 Scheduling Conference, the Court ordered the parties to file, within 14 days, a joint motion for entry of a proposed protective order and ESI protocol.

3.      The parties seek entry of the Protective Order because they anticipate this action will entail the discovery of information that is confidential, or may otherwise negatively impact the parties' operations if disclosed. The Protective Order provides for the manner of designating confidential information, the process for challenging such designations and the treatment required of confidential discovery material during and following this action. The Protective Order does not contain an "Attorney's Eyes Only" designation.

4.      The parties seek entry of the ESI Protocol to facilitate the collection, review and production of electronically stored information, and thus promote the "just, speedy, and inexpensive determination" of this action. Federal Rules of Civil Procedure 1. The ESI Protocol establishes a structured and orderly process to identify and negotiate ESI sources, custodians, search terms and search methodologies. The ESI Protocol further incorporates standards and procedures for privilege logs, production formats and metadata fields.

- 1 -

**WHEREFORE**, the parties respectfully request that the Court enter the Proposed Protective

Order attached as Exhibit A and the ESI Protocol attached as Exhibit B.

DATED:  November 11, 2020                   Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
            & DOWD LLP
          SPENCER A. BURKHOLZ
          HENRY ROSEN (017965)
          TRIG R. SMITH
          DEBASHISH BAKSHI

                                              s/ DEBASHISH BAKSHI
                                            DEBASHISH BAKSHI

          655 West Broadway, Suite 1900
          San Diego, CA  92101
          Telephone:  619/231-1058
          619/231-7423 (fax)
          spenceb@rgrdlaw.com
          henryr@rgrdlaw.com
          trigs@rgrdlaw.com
          dbakshi@rgrdlaw.com

          *Lead Counsel for Lead Plaintiff*

DATED:  November 11, 2020                   SHERMAN & HOWARD L.L.C.
          JEROME H. STURHAHN
          MILTON L. SMITH
          PETER G. KOCLANES

                                              s/ JEROME H. STURHAHN
                                            JEROME H. STURHAHN

- 2 -

633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  302/297-2900
303/298-0940 (fax)
Email: msmith@shermanhoward.com
pkoclanes@shermanhoward.com
jsturhahn@shermanhoward.com

DATED:  November 11, 2020           LATHAM & WATKINS LLP
                                    BRIAN T. GLENNON
                                    ERIC C. PETTIS


                                    s/ BRIAN T. GLENNON
                                    BRIAN T. GLENNON

                                    355 S. Grand Ave., Suite 1000
                                    Los Angeles, CA 90071
                                    Telephone:  213/891-7593
                                    213/891-8763 (fax)
                                    Email: brian.glennon@lw.com
                                    eric.pettis@lw.com

                                    KRISTIN N. MURPHY
                                    650 Town Center Drive, 20th Floor
                                    Costa Mesa, CA 92626
                                    Telephone:  714/755-8287
                                    714/755-8290 (fax)
                                    Email: Kristin.murphy@lw.com

                                    *Attorneys for Defendants Maxar Technologies
                                    Inc., Howard L. Lance, and Anil Wirasekara*

- 3 -

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA

      Defendants.

---

**STIPULATION AND [PROPOSED] PROTECTIVE ORDER**

---

WHEREAS, Rule 26(c) of the Federal Rules of Civil Procedure provides for the issuance of protective orders limiting the disclosure of discovered information in appropriate circumstances, and good cause having been shown, IT IS STIPULATED AND AGREED THAT:

1.      This Stipulation and [Proposed] Protective Order ("Protective Order") governs the treatment of all documents, electronically stored information, testimony, tangible materials, interrogatory answers, responses to requests for admission and any other discovery authorized by the Federal Rules of Civil Procedure, as well as any other disclosed information (collectively "Discovery Material") produced by any party or non-party (each, a "Producing Party") in the above-captioned matter (collectively with any appeals, the "Action").

2.      Any Producing Party may designate as confidential any Discovery Material that it believes in good faith contains: (a) trade secret or other confidential research, development or commercial information; or (b) information the disclosure of which would, in the good faith

judgment of the Producing Party, negatively impact the business operations of the parties (collectively, "Confidential Information"), in accordance with Rule 26(c) of the Federal Rules of Civil Procedure.  Confidential Information shall be designated on a document-by-document basis. All Discovery Material so designated shall be referred to in this Protective Order as "Confidential Discovery Material" and shall be handled in strict accordance with the terms of this Protective Order.

3.    Confidential Discovery Material shall be designated as such by the Producing Party in one or more of the following ways: (a) information set forth in an answer to an interrogatory or response to a request for admission may be so designated by including the word "CONFIDENTIAL" in the answer or response; (b) information contained in any document or part thereof may be so designated by marking the word "CONFIDENTIAL" on the document or any copy of it delivered to the opposing party or its counsel or by giving written notice to opposing counsel, describing the document or part thereof either specifically or by category; or (c) information contained in an answer to any question asked during an oral deposition may be so designated by a statement made on the record during the course of the deposition, or sending written notice within 30 days of receiving the final version of the transcript of the deposition or testimony.  Any such designation shall subject the Confidential Discovery Material to this Protective Order without any further act on the part of the Producing Party.  For deposition testimony or other testimony, prior to the expiration of the 30 day period (or until a designation is made by counsel, if such a designation is made in a shorter period of time), all testimony shall be treated as Confidential Discovery Material.  In the case of electronically stored information produced in native format, the Producing Party shall include the word "CONFIDENTIAL" in the file or directory name, in a metadata field of a database load file or by affixing the legend

Cases\4818-5983-3297.v1-11/9/20

"CONFIDENTIAL" to the media containing the Confidential Discovery Material *(e.g.*, CD-ROM, floppy disk, DVD).

4.      The party to which Confidential Discovery Material is produced (the "Receiving Party") shall treat such Confidential Discovery Material as strictly confidential.  Confidential Discovery Material shall be used solely for the purpose of this Action, and not in any other litigation, and not for any business or other purpose whatsoever.  45 C.F.R. § 164.512(e)(1)(v)(A).  Nothing in this Protective Order shall be interpreted to prohibit or prevent the Producing Party from using or discussing its own Confidential Discovery Material in any way it sees fit or to so use or discuss that material for any reason.

5.      Confidential Discovery Material may be disclosed or made available without written consent from the Producing Party *only* to the following persons for the purpose of this Action:

(a)      The parties to this Action, including Lead Plaintiff Oregon Laborers Employers Pension Trust Fund ("Lead Plaintiff") and any Class Representatives;

(b)      Counsel of record for the respective parties to this Action, including attorneys consulting with or advising any party to the above-captioned litigation, in-house attorneys, paraprofessionals, employees and agents of such law firms;

(c)      Experts or consultants retained to assist counsel for the parties, *provided that* any such experts or consultants execute an undertaking to be bound by this Protective Order in the form attached hereto as Appendix A (the "Undertaking") prior to any disclosure to such expert(s) or consultant(s), and that a copy of such signed Undertaking is retained by counsel for the party making disclosure to such expert(s) or consultant(s), and further provided that any report created by such expert or consultant relying on or incorporating Confidential Discovery Material

3

in whole or in part shall be designated as "CONFIDENTIAL" by the party responsible for its creation;

(d)    Employees, officers, and directors of each party to the extent that such person(s) are assisting in the prosecution or defense of this Action;

(e)    Any witness or potential witness in preparation for any deposition, hearing or trial and at any deposition or hearing, if advised by counsel disclosing the Confidential Discovery Materials to such witnesses of the obligations herein;

(f)    The author or recipient of the document(s);

(g)    Stenographers or court reporters who record testimony taken at any time or place in the course of this Action or persons operating video recording equipment of and at such testimony;

(h)    Outside vendors retained by or for the parties to assist in pretrial discovery, trial and/or hearings in the Action, including, but not limited to, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, if advised by counsel disclosing the Confidential Discovery Materials to such outside vendors of the obligations herein, and further provided that any report created by such outside vendor relying on or incorporating Confidential Discovery Material in whole or in part shall be designated as "CONFIDENTIAL" by the party responsible for its creation;

(i)    The Court, Court personnel, and any other person designated by the Court in this Action in the interest of justice, upon such terms as the Court may deem proper; and;

(j)    Any person or entity who counsel for the parties agree, after conferring in good faith, should have access to such materials or who, upon motion with good cause shown,

4

the Court orders may have access, as long as such person or entity agrees to be bound by the terms of this Order by executing the Undertaking.

A party may designate Discovery Material "Highly Confidential" in the same manner as outlined in ¶3 if the producing party reasonably and in good faith believes disclosure could seriously harm the competitive position of the producing party or disclosure is otherwise limited by law, regulation or statute. Any information derived from Highly Confidential information also constitutes Highly Confidential information to the extent the derived information embodies, contains or discloses any Highly Confidential information.

7.      Highly Confidential Discovery Material may be not disclosed or made available without written consent from the Producing Party *except* to the following persons:

(a)      The Receiving Party's outside counsel of record in this action and employees of outside counsel of record to whom it is reasonably necessary to disclose the information;

(b)      The Court and its personnel;

(c)      During their depositions, witnesses, and attorneys for witnesses, in the action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the Undertaking; and (2) they will not be permitted to keep any Highly Confidential Discovery Material, unless otherwise agreed by the designator or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Highly Confidential Discovery Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order. Nothing herein shall waive the right of any party or non-party to move for a protective order prohibiting the disclosure of specified Highly Confidential Discovery Material to a witness;

5

(d)     Outside court reporters and their staff, professional jury or trial consultants, and professional vendors to whom disclosure is reasonably necessary, and who have signed the Undertaking; and

(e)     The author or recipient of a document containing the Highly Confidential Discovery Material, a custodian or other person who already possessed or knew the information.

8.     Counsel of record shall retain throughout this Action the Undertakings executed by any person or entity receiving Confidential and/or Highly Confidential Discovery Material.  If any party has good cause to believe that another party has improperly disclosed Confidential and/or Highly Confidential Discovery Material, it may move for an order allowing it to inspect the Undertakings before the conclusion of this Action.

9.     Confidential and/or Highly Confidential Discovery Material shall be used only for the prosecution or defense of this Action (including any appeals), and may be disclosed only under the circumstances and to the persons or entities specifically provided for herein or by order of the Court, or with the prior written consent of the Producing Party with respect to specifically identified Confidential and/or Highly Confidential Discovery Material.

10.     In the event any Receiving Party having possession, custody or control of any Confidential and/or Highly Confidential Discovery Material receives a subpoena, order or other request from a court, administrative or legislative body, or any other person or entity purporting to have authority to require the production of any Confidential and/or Highly Confidential Discovery Material (a "Third-Party Request"), the Receiving Party shall to the extent permissible by applicable law and the rules and requirements of any relevant governmental or regulatory authority promptly, and, in any event, within five business days of receipt of the Third-Party Request, give written notice to counsel for the Producing Party.  The Producing Party shall have the burden of objecting to the Third-Party Request.  The Receiving Party receiving the Third-Party Request shall

6

be entitled to comply with it except to the extent that the Producing Party is successful in obtaining an order modifying or quashing the Third-Party Request; provided, however, that the Receiving Party receiving the Third-Party Request shall await the later of 10 business days after notice of the request to the Producing Party or the disposition of any motion to quash or motion for a protective order filed by the Producing Party within such 10 business day period before producing any Confidential and/or Highly Confidential Discovery Material in response to the Third-Party Request, to the extent that doing so does not expose such Receiving Party to sanctions, an order of contempt or the like.  Nothing in this Order shall require any Receiving Party to disregard or violate any order or direction of any governmental or regulatory authority.

11.    The inadvertent failure to mark a document or testimony, or a portion thereof, with the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation in no way alters or waives the protected and confidential nature of the document otherwise deserving of such a designation and does not remove it from the scope of this Protective Order, provided that the Producing Party notifies the Receiving Party, in writing, within a reasonable time after becoming aware that the confidential material was not properly designated.  Such written notice shall identify with specificity the information or documents the Producing Party is then designating to be Confidential and/or Highly Confidential Discovery Material and shall promptly provide a replacement copy of such material with the appropriate "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation thereupon.  Such Confidential and/or Highly Confidential Discovery Material shall be subject to this Protective Order as if it had been initially so designated.  Treatment of inadvertently produced Confidential and/or Highly Confidential Discovery Material in a manner inconsistent with this Protective Order prior to notice of such inadvertent production is not a breach of this Protective Order.  If, prior to receiving such notice, the Receiving Party has disclosed the Confidential and/or Highly Confidential Discovery Material to persons or entities not authorized

7

to receive it hereunder, it shall make a reasonable effort to retrieve the Confidential and/or Highly Confidential Discovery Material or to otherwise assure that the recipient(s) maintain the confidentiality of the Confidential Discovery Material.

11.     Pursuant to Federal Rule of Evidence 502(b) & (d), the disclosure of any Discovery Material in this Action shall be without prejudice to any claim by a Producing Party that such material is subject to the attorney-client privilege, the work product doctrine and any other applicable privilege for withholding production.  Such disclosure shall not constitute or be deemed a waiver of any claim of attorney-client privilege, the work product doctrine, or any other privilege, immunity, or protection that the Producing Party would otherwise be entitled to assert with respect to the Discovery Material and its subject matter.  Any applicable privileges or protections shall only be waived on express written approval by the person or entity holding the privilege.  The non-waiver of such privileges or protections shall apply to the Action, as well as any other federal or state proceeding.

(a)     If a Producing Party informs the Receiving Party in writing that the Producing Party has disclosed privileged Discovery Material, Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26(b)(5)(B) shall apply.  The Receiving Party shall not use such Discovery Material for any purpose until further order of the Court. The Receiving Party shall have 30 days to: (1) return the Discovery Material and all copies thereof to the Producing Party or certify in writing to the Producing Party that it has destroyed all records and copies of such Discovery Material; or (2) notify the Producing Party in writing of an objection to the claim of privilege or protection, along with the grounds for the objection, and/or an assertion that any privilege or protection has been waived.  The parties shall meet and confer concerning the Receiving Party's objection within a reasonable time after the Producing Party receives written notice of such objection;

8

(b)    After it reasonably appears that good faith efforts to resolve the dispute through the meet and confer process have failed, either party may move for an order on the status of the Discovery Material.  Parties must provide notice to the opposing party and move for an order no later than 30 days after providing such notice.  Nothing in this Protective Order shall alter or waive the standards and burden applicable to any motion concerning the privilege or protection asserted, or any waiver thereof.  During the pendency of such a motion, each Receiving Party may retain the Discovery Material and all copies thereof, but shall make no further use of it other than is necessary in connection with the proceedings on the motion.  Any copy of such Discovery Material submitted to the Court in connection with the motion shall be filed as restricted, redacted, or submitted for *in camera review* in accordance with the terms of this Protective Order;

(c)    If the Receiving Party takes no action within 30 days of the notification of disclosed privileged or otherwise protected Discovery Material, the Receiving Party shall be deemed to have waived any objection to the claim of privilege or other protection; and

(d)    Upon a determination by the Court that the Discovery Material is privileged, protected work product or otherwise protected from disclosure, the Receiving Party shall promptly return the original and all copies of such Discovery Material to the Producing Party, or certify in writing to the Producing Party that it has destroyed all records, copies and derivative works of such Discovery Material.

12.    Absent agreement of the parties, any log prepared by a Producing Party of those documents that it has withheld or redacted on grounds of attorney-client privilege, the work product doctrine or some other applicable privilege, immunity or protection shall be done so in accordance with the Stipulated Order Regarding Discovery of Electronically Stored Information. Without waiving any rights otherwise available to them, the parties agree with respect to any such

9

logs, the Producing Party shall have no obligation to log documents or information generated after the time the Consolidated Complaint was filed.

13.    In the event that any Confidential and/or Highly Confidential Discovery Material is used in any Court proceeding in this Action or any appeal therefrom, such Confidential Discovery Material shall not lose its status as Confidential and/or Highly Confidential Discovery Material through such use.    Absent agreement of the parties, Confidential and/or Highly Confidential Discovery Material submitted to the Court shall be filed as a restricted document pursuant to D.C.COLO.LCivR 7.2(e), at the "Level 1" level of restriction limiting access to the parties and the Court.    D.C.COLO.LCivR 7.2(b).    Any party shall then have up to 14 days to file a motion to restrict public access to that document. D.C.COLO.LCivR 7.2(e).    Any motion to restrict shall comply with D.C.COLO.LCivR 7.2(c).    The Confidential and/or Highly Confidential Discovery Material shall remain restricted until the Court rules upon the motion, or until 14 days have passed without any motion to restrict filed.    D.C.COLO.LCivR 7.2(e).    Nothing in this Protective Order shall affect the right of any party to oppose motions to restrict, or to seek greater protection than that provided for herein for any information.

14.    This Protective Order shall not apply at trial.    To the extent a protective order is necessary at trial, the parties will separately negotiate such protective order and submit it to the Court for approval.

15.    This Protective Order shall not enlarge or affect the proper scope of discovery in this Action, nor shall this Protective Order imply that Discovery Material designated as confidential under the terms of this Protective Order is properly discoverable, relevant or admissible in this Action or in any other litigation.    Discovery Material produced in this Action can only be used in conjunction with this Action, including any appeals.    Nothing in this Protective Order shall be interpreted to require disclosure of materials which a party contends are protected

10

from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity or protection.

16.     If a party objects to another party's designation of information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," it shall advise the Producing Party in writing of the reasons for the objection, and the parties shall meet and confer within 14 days in a good-faith effort to resolve the objection.  All items objected to shall continue to be treated as Confidential and/or Highly Confidential pending resolution of the parties' dispute.  If the parties are unable to reach an agreement as to the disputed designation with 21 days, the objecting party may invoke the Court's rules and procedures for raising discovery disputes.  The Producing Party bears the burden of persuading the Court that the information is in fact Confidential and/or Highly Confidential within the definitions set forth above.  For good cause shown, the objecting party may ask the Court to shorten the time periods allowed by this paragraph.

17.     Each document, testimony, material, or other thing, or portion thereof designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall retain that designation and shall remain subject to the terms of this Protective Order until such time as the Producing Party agrees to the contrary or the Court renders a decision that a particular document, testimony, material, or other thing, or portion thereof is not "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as defined under this Protective Order, and any and all proceedings or interlocutory appeals challenging such decision have been concluded.

18.     The recipient of any Confidential and/or Highly Confidential Discovery Material shall maintain such material in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such material as is exercised by the recipient with respect to its own confidential material.  Confidential and/or Highly Confidential Discovery Material shall not be copied, reproduced, summarized, extracted

Cases\4818-5983-3297.v1-11/9/20

or abstracted, except to the extent that such copying, reproduction, summaries, extraction or abstraction is reasonably necessary for the conduct of the Action. All such copies, reproductions, summaries, extractions and abstractions shall be subject to the terms of this Protective Order and labeled in the same manner as the designated material on which they are based.

19.     Within 30 days of the conclusion of this Action (meaning final judgment and exhaustion of all appeals or a final settlement of all claims), all parties in receipt of Confidential and/or Highly Confidential Discovery Materials shall use commercially reasonable efforts to either return such materials and copies thereof to the Producing Party or destroy such Confidential and/or Highly Confidential Material and certify that fact. The Receiving Party's commercially reasonable efforts shall not require the return or destruction of Confidential and/or Highly Confidential Discovery Material that: (a) is stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes; (b) is located in the email archive system or archived electronic files of departed employees; or (c) is subject to legal hold obligations. Backup storage media will not be restored for purposes of returning or certifying destruction of Confidential and/or Highly Confidential Discovery Material but such retained information shall continue to be treated in accordance with this Protective Order. Counsel of record shall also be permitted to keep a copy of Confidential and/or Highly Confidential Discovery Material to the extent that it is incorporated into any pleadings, motions or other attorney work product. In that case, counsel of record shall continue to treat the Confidential and/or Highly Confidential Discovery Material in accordance with this Protective Order. Upon request, counsel of record shall certify in writing that they have complied with this paragraph.

20.     Upon execution by the parties, this Protective Order shall become effective among such parties who have executed this agreement immediately upon such execution, whether or not it has yet been approved by the Court.

12

21.    Nothing in this Protective Order shall be construed as prejudicing any Producing Party's right to seek an agreement or Court order providing additional confidentiality or other protections to any Confidential and/or Highly Confidential Discovery Material produced in this Action.  Until such agreement or order is obtained, however, this Protective Order shall constitute the entire agreement of the parties with respect to the matters covered herein.

22.    This Protective Order shall be binding on any future party to this Action.

23.    Any non-party may agree to be subject to and governed by the terms of this Protective Order.

24.    This Protective Order shall continue in force after the completion of this Action.

25.    In entering into this Protective Order, the parties preserve all rights and objections they may have to the use in this Action of Confidential and/or Highly Confidential Discovery Material, including, but not limited to, the rights of any party to object to the admissibility of any materials into evidence at the trial of this Action.

26.    This Court shall retain jurisdiction over all persons and entities subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

27.    This Protective Order may be changed only by agreement of the parties or by an order of this Court, and is entered into without prejudice to the right of any party or non-party to seek relief from, or modification of, this Protective Order or any provisions thereof by motion to the Court on notice to the other parties hereto.

28.    This stipulation may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same document.

Respectfully submitted this 11th day of November 2020.

13

LATHAM & WATKINS LLP

*/s/ Brian T. Glennon*
Brian T. Glennon
Eric C. Pettis
355 S. Grand Ave., Suite 1000
Los Angeles, CA 90071
Telephone: 213/891-7593
Email: brian.glennon@lw.com
eric.pettis@lw.com

Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: 714/755-8287
Facsimile: 714/755-8290
Email: kristin.murphy@lw.com


SHERMAN & HOWARD L.L.C.

*/s/ Jerome H. Sturhahn*
Milton L. Smith
Peter G. Koclanes
Jerome H. Sturhahn
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: 302/297-2900
Email: msmith@shermanhoward.com
pkoclanes@shermanhoward.com
jsturhahn@shermanhoward.com

*Attorneys for Defendants Maxar*
*Technologies Inc., Howard L. Lance, and*
*Anil Wirasekara*

ROBBINS GELLER RUDMAN &
DOWD LLP

*s/ Debashish Bakshi*
Spencer A. Burkholz
Henry Rosen
Trig R. Smith
Debashish Bakshi
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058

14

Email: spenceb@rgrdlaw.com
henryr@rgrdlaw.com
tsmith@rgrdlaw.com
dbakshi@rgrdlaw.com

*Attorneys for Plaintiff*

15

IT IS SO ORDERED.

ENTERED this ___ day of November 2020.

_____
THE HONORABLE S. KATO CREWS
UNITED STATES MAGISTRATE JUDGE

16

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*


OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA

      Defendants.

## UNDERTAKING

The undersigned hereby certifies that they have received a copy of the Stipulated

Protective Order (the "Protective Order") in the above-captioned case, read the Protective Order,

understands its terms, agrees to be bound by all of the provisions thereof, and agrees to submit

to the jurisdiction of the United States District Court for the District of Colorado, for the

enforcement thereof, even if such enforcement proceedings occur after the termination of the

above-captioned case.  The undersigned understands that violation of the Protective Order is

punishable by contempt of court.


Dated: _____        Name: _____

 

                                     Title: _____

 

                              Signed: _____

Cases\4818-5983-3297.v1-11/9/20

# EXHIBIT B

Case No. 1:19-cv-00124-WJM-SKC    Document 78    filed 11/11/20    USDC Colorado
pg 24 of 45

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA

      Defendants.

---

**[PROPOSED] STIPULATED ORDER AND PROTOCOL REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION**

---

Maxar Technologies, Inc., Howard L. Lance, and Anil Wirasekara ("Defendants") and Lead Plaintiff Oregon Laborers Employers Pension Trust Fund ("Lead Plaintiff") agree that the following procedures shall govern the discovery of electronically stored information ("ESI") and production of documents in this matter.

1.      The Stipulated Order and Protocol Regarding Discovery of Electronically Stored Information (the "Protocol") streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.      This Protocol may be modified for good cause.

3.      To the extent this Protocol is silent on a discovery procedure or remedy, and absent agreement by the parties, the parties intend for the Federal Rules of Civil Procedure to apply.

4.      The parties shall take reasonable steps to preserve all potentially discoverable ESI in their possession, custody or control. The parties agree that Rule 37(e) of the of the Federal Rules of Civil Procedure shall govern a party's failure to take such reasonable steps.

Cases\4814-9289-7233.v1-11/11/20

5.      The parties shall meet and confer regarding any proposed sources, custodians and search terms and methodologies.  No party shall seek Court intervention without first attempting to resolve any disagreements in good faith, as required by D.C.COLO.LCivR 7.1 and the Court's Practice Standards for Civil Cases, Hon. S. Kato Crews, §§E(1), E(3)(c).

6.      The parties shall collect, review and produce documents responsive to discovery requests without the use of search terms or other advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review), to the extent that such documents are regularly maintained at a source that is known or knowable upon reasonable inquiry.  The producing party shall indicate which categories of documents will be produced under this paragraph.  The parties shall not delay production of such documents on account of the procedures described in ¶¶7-10.

7.      The parties shall meet and confer in good faith to exchange:

(a)      any custodial and non-custodial data sources likely to contain responsive information, including any relevant electronic systems, shared drives and storage locations;

(b)      any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits), or other practices likely to impact the existence or accessibility of responsive documents or ESI; and

(c)      any sources likely to contain responsive information that a party asserts should not be searched or are not reasonably accessible, including reasons for such assertions.

8.      The parties retain the right to request that files from additional custodial or non-custodial sources be searched.  The parties shall meet and confer regarding such requests.

9.      The parties shall meet and confer in good faith to exchange all proposed custodians, including a description of the proposed custodians' job title and the dates of the proposed custodians' employment by the applicable party.  The parties retain the right to request that files from additional custodians be searched.  The parties shall meet and confer regarding such requests.

10.     Where the parties agree that ESI will be searched through the use of search terms, the parties shall use the process identified below and shall meet and confer regarding any proposed deviation.

(a)     Within a reasonable time after the parties have agreed that ESI will be searched through the use of search terms, the producing party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant documents.   The producing party shall endeavor to craft search terms with input from the custodians to identify appropriate nomenclature, terms of art, code words, etc.

(b)     Within 7 days of receipt of the proposed search terms, the receiving party shall provide any additional search terms that it believes are necessary to identify responsive documents.

(c)     Within 14 days of receiving the additional search terms, the producing party will provide a search term hit report after global de-duplication.[1]

(d)     Within 7 days of the exchange of the search term hit report, the parties shall meet and confer regarding the proposed search terms.

(e)     If disputed terms still exist at the end of the meet-and-confer process, the parties shall jointly submit their respective search terms and hit report to the Court with a discussion of the relevance and/or burden associated with those search terms.

11.     No party shall use predictive coding or technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to

---

[1]     The hit report shall include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, both with and without families.

use, and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

12.     Any agreement under ¶¶5-11 shall not: (i) affect a producing party's obligation (in supplementing its disclosures or responding to discovery requests) to produce responsive ESI of which it is aware; (ii) affect a requesting party's right to seek discoverable ESI based on later discovery of additional facts indicating that agreed-upon search parameters were not sufficient to capture relevant ESI that is proportional to the needs of the case; and/or (iii) limit a requesting party's right to request that a producing party undertake targeted pulls for specific ESI that are proportional to the needs of the case.  Notwithstanding the foregoing, the producing party reserves its right to object to any such additional requests.

13.     Absent a showing of good cause by the requesting party, the following categories of ESI need not searched for purposes of production:

(a)     Deleted, slack, fragmented or other data accessible only by forensics.

(b)     Random access memory (RAM), temporary files or other ephemeral data that are difficult to preserve without disabling the operating system.

(c)     On-line access data such as temporary internet files, history, cache, cookies and the like.

(d)     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

(e)     Back-up and archival data that are substantially duplicative of data that are more accessible elsewhere.

(f)     Server, system or network logs.

(g)     Data remaining from systems no longer in use that is unintelligible on the systems in use.

14.     The parties agree that the Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure governs the discovery and protection of communications between a party's counsel and expert witnesses required to provide a report under Rule 26(a)(2)(B).

15.     All productions are subject to the Stipulated Protective Order in this action. Nothing in this Protocol shall: (1) modify the parties' agreement in their Stipulated Protective Order; (2) be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege or work product doctrine; or (3) waive any party's objections as to the production, discoverability, admissibility or confidentiality of documents and ESI.

16.     The protocol for logging privileged information in this action are attached hereto as Appendix A.  The production format and metadata fields for information produced in this action are set forth in Appendix B and Appendix C, attached hereto.  Absent special circumstances, the parties will make best efforts to prepare their production of documents in accordance with the agreed-upon specifications set forth in the appendices to this Protocol.  If special circumstances require a party to deviate from the specifications set forth in this Protocol, that party shall provide notice of the deviation at or promptly after the time of production.  The parties will, in such circumstances, meet and confer in good faith to resolve any issues that arise.[2]

17.     Documents in paper format that exist only in hard copy format and are therefore unavailable electronically should be produced as kept in the usual course of business (including any original folders, binders, covers or containers) with the specifications contained in the appendices to this Protocol.

18.     A party that issues a non-party subpoena is responsible for reproducing to all other parties all documents obtained pursuant to that subpoena.  The issuing party shall endeavor to reproduce such documents within five business days of the non-party's production.  Such documents may be reproduced in the electronic format as originally produced or received from the non-party, and need not otherwise be produced in accordance with the terms of this Protocol.  If a non-party produces documents to the issuing party without Bates numbers, the issuing party shall reproduce such documents with Bates numbers identifying the non-party.  The issuing party shall

---

[2]     The parties reserve their rights to discuss additional technical issues relating to the form of production with the requesting party before making any such production.

communicate the original confidentiality designation of the non-party, if any, concurrently with the reproduction.

19.    Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding or otherwise affecting the rights of the parties or non-parties to object to a subpoena, or document request, of any kind.

20.    The parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this Protocol.  If a producing party, notwithstanding its good-faith efforts, cannot substantially comply with any material aspect of this Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the receiving party in writing as to why compliance with the Protocol is impossible or unreasonable as soon as reasonably practicable.  No party may seek relief from the Court concerning a dispute over compliance with the Protocol unless it has conferred with the other parties to the litigation that are directly involved in such dispute.

21.    The parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  The parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.  Production in the litigation is anticipated to be conducted on a rolling basis with parties making reasonable efforts to expedite the process.  If either party feels production has been unreasonably delayed, the parties agree to confer via telephone, video or in person to reach a mutually agreeable consensus prior to court involvement.  Nothing in this section shall excuse a party's failure to comply with Court ordered deadlines, including the scheduling order.

22.    Nothing in this stipulation shall affect, in any way, a producing party's rights under any rule of law.

23.    Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and D.C.COLO.LCivR 5.3, the parties agree to service by e-mail through their undersigned counsel instead of personal service or service by U.S. Mail, including for the exchange of written discovery requests and responses.

Respectfully submitted this 11th day of November 2020.

LATHAM & WATKINS LLP

*/s/ Brian T. Glennon*
Brian T. Glennon
Eric C. Pettis
355 S. Grand Ave., Suite 1000
Los Angeles, CA 90071
Telephone: 213/891-7593
Email: brian.glennon@lw.com
eric.pettis@lw.com

Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: 714/755-8287
Facsimile:  714/755-8290
Email: kristin.murphy@lw.com

SHERMAN & HOWARD L.L.C.
*/s/ Jerome H. Sturhahn*
Milton L. Smith
Peter G. Koclanes
Jerome H. Sturhahn
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  302/297-2900
Email: msmith@shermanhoward.com
pkoclanes@shermanhoward.com
jsturhahn@shermanhoward.com

*Attorneys for Defendants Maxar
Technologies Inc., Howard L. Lance, and
Anil Wirasekara*

ROBBINS GELLER RUDMAN &
DOWD LLP

*s/ Debashish Bakshi*
Spencer A. Burkholz
Henry Rosen
Trig R. Smith
Debashish Bakshi
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058

Email:  spenceb@rgrdlaw.com
henryr@rgrdlaw.com
tsmith@rgrdlaw.com
dbakshi@rgrdlaw.com

*Attorneys for Plaintiff*

### APPENDIX A:

### PROTOCOL FOR PRIVILEGE LOGS

1.    **Privilege Log Contents**.  For each document withheld or redacted, the privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the Bates numbers corresponding to the first and last page of any document redacted.  For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (*e.g.*, an asterisk next to each attorney's name).

2.    **Protocol for Logging Families**.  Each member of a family (*e.g.*, e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.  If a family contains both privileged information and non-privileged information that is discoverable under Federal Rule of Civil Procedure 26(b)(1), only the privileged information shall be logged and withheld and/or redacted as privileged; any non-privileged, discoverable information in the family shall be produced.

## APPENDIX B:

## PRODUCTION FORMAT

1.    **TIFFs and JPEGs.**  Documents should be produced in the form of single page, Group IV TIFFs at 300 dpi.  Insofar as practicable, original documents containing color can be produced as single page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  Each TIFF or JPG image should be named as its corresponding Bates number.  Absent special circumstances or undue burden, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  To the extent technically feasible, TIFFs or JPGs will show all text and images which would be visible to the reader using the native software that created the document.  For example, TIFFs of e-mail messages should include the BCC line. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and show both the slide and the speaker's notes on the image. Word documents shall be processed to show tracked changes.  TIFF and JPG image files should be provided in a self-identified "Images" folder.

2.    **Metadata and Fielded Information.**  Each of the metadata and coding fields set forth in Appendix B which can be extracted from a document shall be produced for that document.

3.    **OCR Text Files.**  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by ".txt." OCR text files should be provided in a self-identified "Text" directory.  To the extent that a document is redacted, OCR text files for such a document shall not contain text for redacted portions.  The OCR software shall maximize text quality over process speed.  For example, if available, settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

4.    **Extracted Text Files.**  For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed

by ".txt." File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

       5.        **Database Load Files / Cross-Reference Files.** Unless otherwise agreed to by the parties, documents should be provided with Concordance-style image and data load files (*i.e.*, .OPT and DAT files) using standard Eclipse delimiters. Eclipse-compatible image and data load files (*i.e.*, .OPT and DAT files) should be provided in a self-identified "Data" folder.

       6.        **System / Program Files.** Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

       7.        **Native Files.**

           a.      Absent special circumstances, Excel files, PowerPoint, .csv files, word documents with tracked changes in the metadata (to the extent that tracked changes are not properly reflected by TIFF images), audio or video files and/or all document which are not reasonably usable produced in image format shall be produced in native format ("Native Files").

           b.      Native Files should be provided in a self-identified "Native" directory. Each Native File should be produced with a corresponding single page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File and include the assigned Bates number and confidentiality designation, if any. Native Files should be named with the beginning Bates number assigned to that specific record in the production and the applicable confidentiality designation, if any (*e.g.*, "Bates Number__Confidential.xls"). A "NativeLink" entry for each Native File should be included in the DAT load file indicating the relative file path to each Native File on the production media. Native Files should be

produced with extracted text and applicable metadata fields as set forth in Appendix B.

c.  For native documents that require redactions, the parties may use a native redaction tool in order to apply the redactions directly on the native file itself.  If TIFF image files were also produced, then the TIFF image files shall also include redactions as set forth in ¶11 below.

d.  If a party converts a Native File to hard copy (*e.g.*, for use at a deposition or hearing), it shall attach that document's Bates-stamped placeholder TIFF image in order to facilitate tracking and authentication thereof.

e.  A party may request in writing that the producing party produce specific documents in their native format.  The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the DAT load file indicating the relative file path to each Native File on the production media and all extracted text and applicable metadata fields set forth in Appendix B.

**8.     Structured Data.**  To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may query the database for discoverable information.  The parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

**9.     Metadata Fields.**  Absent special circumstances, documents should be produced with at least the following searchable information as described in Appendix C.

**10.     Redactions.**  To the extent a producing party redacts any document, such redaction shall be clearly marked on the TIFF (or JPEG) image of the document, and in a metadata field populated for each redacted document (*see* Appendix B).  Spreadsheets may be redacted natively, provided that any such redactions are clearly marked.

11.     **Bates Numbers and Confidentiality Designations.**

a.     Each page produced shall contain a legible Bates number that is unique across the document production, has a constant length across the production, and is sequential within a given document.

b.     If a Bates number or set of Bates numbers is skipped in production, the producing party will notify the receiving party in its cover letter to the production that the production contains skipped Bates numbers.

c.     If applicable, each page produced shall contain a confidentiality designation in accordance with the Protective Order entered in this case, and the document's confidentiality branding will be indicated in a "Confidential" metadata field (as described in Appendix C).

d.     The producing party shall make reasonable efforts to ensure that the Bates number and confidentiality designation (if any) are placed on the page image in a manner that does not conceal or interfere with the information on the page.

e.     No other stamp or information will be placed on a document other than the Bates number, confidentiality designation, and any redactions.

13.     **Folders.**  If a hard-copy folder with documents is produced, the label of that folder should be scanned and produced along with the documents in the folder.

14.     **Unitization of Documents.**  In general, the producing party shall make best efforts to ensure that scanned, hard copy documents are logically unitized.  If the documents are not logically unitized, documents should be unitized based on physical boundaries (staples, clips, etc.).

15.     **De-Duplication.** A party is only required to produce a single copy of a responsive document, and a producing party will de-duplicate responsive ESI across custodians using commercially acceptable e-Discovery software that utilizes either MD5 or SHA1 cryptographic hash values to de-duplicate ESI (at the family level).  All custodians who were in possession of a de-duplicated document must be identified in the OTHER CUSTODIANS metadata field specified

in Appendix C.  Additionally: (i) attachments to e-mails shall not be eliminated from their parent e-mails; (ii) attachments to e-mails shall not be eliminated as duplicates of responsive non-e-mail ESI; and (iii) hard copy documents shall not be eliminated as duplicates of responsive ESI. Removal of near-duplicate documents and e-mail thread suppression is not acceptable.

16.    **Color.**  Documents containing color, except for the Native Files referenced above, need not be produced in color in the first instance.  A Party may reasonably request in writing that the producing party produce specific documents in color. The producing party shall not unreasonably deny such requests.

17.    **Encryption.**  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party.  In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

18.    **Password Protected Files.**  The producing party shall make best efforts either to: (i) produce to the receiving party passwords or any other security protection for locked ESI documents; or (ii) remove security protections from the ESI documents and produce a copy without the security protections.

18.    **Image Cross-Reference File (Opticon Load File)**:  The Opticon cross-reference file is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows: ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

- ImageID: The unique designation that Eclipse and Opticon use to identify an image. This should be the Bates number of the document.
- VolumeLabel: The name of the volume.
- ImageFilePath: The full path to the image file.
- DocumentBreak: If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document.
- FolderBreak: Leave empty.

- BoxBreak: Leave empty.

- PageCount: Number of pages in the document.

Sample Data

MT 00000001,BOX100,E:\100\ MT00000001.TIF,Y,,5

MT 00000002, BOX100,E:\100\ MT00000002.TIF,,,,

MT 00000003, BOX100,E:\100\ MT00000003.TIF,,,,

MT 00000004, BOX100,E:\100\ MT00000004.TIF,,,,

MT 00000005, BOX100,E:\100\ MT00000005.TIF,,,,

MT 00000006, BOX100,E:\100\ MT00000006.TIF,Y,,1

**APPENDIX C**

**METADATA FIELDS**

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **BEGBATES** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDBATES** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| **PGCOUNT** | 3 (Numeric) | The number of pages for a document. |
| **ATTACH COUNT** | 10 (Numeric) | The number of attachments to a document. |
| **VOLUME** | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| **CONFIDENTIALITY** | CONFIDENTIAL | Whether the document should be treated as confidential according to the Stipulated Protective Order. |
| **SENT DATE / TIME** | MM/DD/YYYY / HH:MM:SS | The date and time the e-mail was sent. For attachments to e-mails, this field should be populated with the date / time sent of the e-mail transmitting the attachment. |
| **RECEIVED DATE / TIME** | MM/DD/YYYY / HH:MM | The date and time the e-mail was sent. For attachments to e-mails, this field should be populated with the date / time sent of the e-mail transmitting the attachment. |
| **CREATE DATE / TIME** | MM/DD/YYYY / HH:MM | The date and time the document was created. |
| **LAST MODIFIED DATE / TIME** | MM/DD/YYYY / HH:MM | The date and time the document was last modified. |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **MEETING START DATE** | MM/DD/YYYY | Start date of calendar entry. |
| **MEETING START TIME** | HH:MM | Start time of calendar entry. |
| **MEETING END DATE** | MM/DD/YYYY | End date of calendar entry. |
| **MEETING END TIME** | HH:MM | End time of calendar entry. |
| **TIME ZONE PROCESSED** | PST, CST, EST, etc. | The time zone the document was processed in. Parties may process all data under a single time zone. |
| **AUTHOR** | jsmith | The author of a document from entered metadata. |
| **LAST EDITED BY** | jsmith | The name of the last person to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and/or e-mail address of the author of an e-mail in the format that is readily available and recorded in the e-mail system environment. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com; Brown, Mike | The display name and/or e-mail address of the recipient(s) of an e-mail in the format that is readily available and recorded in the e-mail system environment. Multiple entries should be separated by semi-colons. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com; Brown, Mike | The display name and/or e-mail address of the copyee(s) of an e-mail in the format that is readily available and recorded in the e-mail system environment. Multiple entries should be separated by semi-colons. |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com; Brown, Mike | The display name and/or e-mail address of the blind copyee(s) of an e-mail in the format that is readily available and recorded in the e-mail system environment. Multiple entries should be separated by semi-colons. |
| CUSTODIAN | Joe Smith | The custodian / source of a document. |
| ALL CUSTODIANS | Mike Brown | All custodians who were in possession of a de-duplicated document. |
| APPLICATION | MS Word, MS Excel, etc. | Type of document by application. |
| REDACTION | Y/blank | Whether the document has been redacted |
| FILEEXT | XLS | The file extension of a document. |
| FILE NAME | Document Name.xls | The file name of a document. |
| DOCTITLE | Document Title | The extracted document title of a document. |
| FILE SIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or no | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or no | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA Hash value or "de-duplication key" assigned to a document. |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| **FILE PATH** | *e.g.*, Joe Smith/E-mail/Inbox<br><br>Joe Smith/E-mail/Deleted Items<br><br>Joe Smith/Loose Files/Accounting/...<br><br>Joe Smith/Loose Files/Documents and Settings/... | Location of the original document. The source should be the start of the full path. |
| **FILE PATH ALL** | *e.g.*, Joe Smith/E-mail/Deleted Items | If the documents were globally de-duplicated, this field will contain the name of each FILE PATH preceded by the duplicate Custodian value (LastName, Firstname) from which the document including the parent duplicate value originated. This field should be populated separated by semicolons for each additional FILE PATH. |
| **NATIVE LINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **TEXT LINK** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate Unicode text file per document.  These text files should be named with their bates numbers. **Note**: e-mails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 11, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DEBASHISH BAKSHI
DEBASHISH BAKSHI

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dbakshi@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-00124-WJM-SKC Oregon Laborers Employers Pension Trust Fund et al v. Maxar Technologies Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Debashish Bakshi**
  DBakshi@rgrdlaw.com,DBakshi@ecf.courtdrive.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **Brian Thomas Glennon**
  brian.glennon@lw.com,brian-glennon-0505@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Kristin Nicole Murphy**
  kristin.murphy@lw.com,kristin-murphy-2919@ecf.pacerpro.com,#ocecf@lw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Eric C. Pettis**
  eric.pettis@lw.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,ChristC@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **Jerome H. Sturhahn**
  jsturhahn@shermanhoward.com,efiling@shermanhoward.com,jbulanow@shermanhoward.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`