# EXHIBIT A

Case No. 1:19-cv-00124-WJM-SKC     Document 157-1     filed 05/10/22     USDC Colorado
pg 1 of 28

**EXHIBIT A    [REDACTED]**
**PLAINTIFF'S GOOD CAUSE FOR TAKING 26 DEPOSITIONS**

| Name | Plaintiff's Good Cause |
|---|---|
| Currier, Rich | Senior Vice President of SSL business development from 2013 to 2019.  He has direct knowledge regarding GeoCom's financial and competitive challenges, including presentation of these issues to defendant Lance.  He also prepared SSL's operating plans and discussed SSL's outlook and related industry trends with Maxar's Board.  Currier has intimate knowledge of SSL's and GeoCom's awards forecast for 2018, which Maxar claims was not revised downward until 3Q18.  He personally interacted with Bain & Co. ("Bain") in 2017 ███████ ███████████████████████  Further, Currier met with customers, trying to win business for Maxar, and documents show intimate knowledge of the AMOS-8 contract, one of the major issues in this case.<br><br>Some specific examples of documents showing Currier's knowledge of facts relevant to Plaintiff's claims include:<br><br>• An April 17, 2017 email from Currier stating: ████████████ ████████████████████████ ████  MAXAR_0018168;<br><br>• An April 20, 2017 email from Currier discussing the beginning of the Bain strategic engagement, stating: "███████████████████████ ██████████████████  MAXAR_0016120;<br><br>• An August 10, 2017 email from Currier stating: "█████████ ████████████████████████ ████████  MAXAR_0089842;<br><br>• A November 19, 2017 email from Currier stating: ███████ ██████████████████████  MAXAR_0089472; |

- 1 -

| Name | Plaintiff's Good Cause |
|---|---|
| | • A March 30, 2018 email from Currier stating: ██████████████████████████████ MAXAR_0149943; <br><br> • A June 25, 2018 email from Currier stating, ██████████████████████████████ MAXAR_0335912; and <br><br> • A December 26, 2018 email from Currier stating, ██████████████████████████████ MAXAR_0257929. <br><br> • |
| Cyprus, Nick | Chair of Maxar's Audit Committee.  He has knowledge of the Audit Committee's investigation into Spruce Point's allegations.  As the Audit Committee chair, he was involved in reviewing and approving Maxar's 1Q18 and 2Q18 quarterly financial statements alleged by Plaintiff to be materially misstated.  He is identified in Defendants' interrogatory responses as a person that was involved in the Audit Committee review and as a person that was involved in drafting, editing, reviewing or approving the impairment disclosure language in the Company's October 31, 2018 Form 6-K.  Further, Cyprus as a member of Maxar's Board of Directors, would have been part of the ██████████████████████████████ ██████ Plaintiff needs to ask Cyprus about that May 2018 decision by the Board, including if that decision was considered when Maxar publically disclosed in its 3Q18 financial statements that strategic alternatives for GeoCom were not assessed until August 2018.  On March 31, 2022, Plaintiff was notified that Cyprus (an agreed document custodian) deleted all of his personal emails that reference "Maxar" before the emails could be preserved, despite the fact Maxar began issuing document preservation notices *six days after* the August 7, 2018 Spruce Point report his Audit Committee was investigating. |

| Name | Plaintiff's Good Cause |
|---|---|
| | Some specific examples of documents showing Cyprus' knowledge of facts relevant to Plaintiff's claims include: <br><br> • A May 8, 2018 email from Cyprus to Maxar's Chief Accounting Officer (Jose Torres) giving instructions regarding Maxar's May 9, 2018 press release containing financials that Plaintiff alleges were misleading, saying: ██████████████████████████ MAXAR_0198444; <br><br> • An August 8, 2018 email from Cyprus to defendant Lance requesting time to discuss the Spruce Point report.  MAXAR_0073252; <br><br> • An August 14, 2018 email from Cyprus in response to defendant Lance stating: ███████████ ████████████████████████ ███████████████ instructing Lance to begin investigation into Spruce Point's allegations of accounting fraud.  MAXAR_0073238; <br><br> • An August 22, 2018 email from Cyprus to defendant Lance stating: ██████████████ ███████████████████████████████████████ FRA00000790; <br><br> •  Cyprus' line edits sent to consultant for an August 24, 2018 press release concerning Spruce Point report.  FRA00000865-866; and <br><br> • An October 25, 2018 email from Jose Torres to Nick Cyprus attaching the Audit Committee slides for 3Q18, including slides on the GeoCom impairment losses and "GeoComm CGU Triggering Event".  MAXAR_0274313-314. |
| Estey, Paul | Former Executive Director of SSL, and COO of SSL since July 17, 2017.  Estey has personal knowledge of the operations of SSL, including the status of GeoCom's satellite order backlog, completion of cost reduction projects and repeated reductions in the GeoCom workforce prior to and during the Class Period.  Estey was intricately involved in strategy and steering committee meetings, communicating and working directly with the Individual Defendants.  Estey was directly involved in strategizing how to sell SSL and personally interacted with Bain in 2017.  Estey had direct knowledge of the AMOS-8 award, including the issues and contingencies |

- 3 -

| Name | Plaintiff's Good Cause |
|---|---|
|  | associated with the award.  Estey is also listed in Defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that Defendants may use in support of their defenses.<br><br>Some specific examples of documents showing Estey's knowledge of facts relevant to Plaintiff's claims include:<br><br>• An April 19, 2017 presentation by Estey informing other senior SSL executives that 279 employees will ██████ ████████████████ by July saving ██████████.  MAXAR_0170337;<br><br>• A June 2, 2017 email from Estey summarizing notes from the ComSat Strategy Steering Committee Meeting: ████████████████████████ ████████████████████████████████████ MAXAR_0018578;<br><br>• A June 23, 2017 email from Estey saying: ████████████████ ██  MAXAR_0052962;<br><br>• A June 23, 2017 email from Estey saying: ████████████████ ████████████████████████████████████████████ ████████████████████  MAXAR_0052963;<br><br>• A July 18, 2017 email from Estey saying: ████████████ ████████████████████████████████████████████ ██████████  MAXAR_0053005;<br><br>• A January 23, 2018 email from Estey saying: ████████ |

- 4 -

| Name | Plaintiff's Good Cause |
|---|---|
| | ███████████████████ MAXAR_0145309;<br><br>• A March 16, 2018 email from Estey saying: ████████████ ████████ MAXAR_0052499;<br><br>• A March 28, 2018 email from Estey saying: ████████ █████████ MAXAR_0145293;<br><br>• An April 9, 2018 email from Estey to Evan Schlossberg at Bain, explaining that in the February 20, 2018 Major Award Assumptions – for Resource Planning, ██████████ MAXAR_0052482; and<br><br>• A May 23, 2018 email from Estey approving response to pointed questions from employees that stated: ██████████████ MAXAR_0052252. |
| Gursky, Jason | Vice President of Investor Relations, and has served in this role since 2017, coming to Maxar from Citigroup where he was a U.S. aerospace and defense analyst.  Gursky was heavily involved in messages Maxar put out to the street, writing scripts and Q&A responses with Defendants.  Gursky's contact information is part of Maxar's August 24, 2018 press release regarding the Spruce Point report, which is alleged to be among the reasons why Defendants' misrepresentations regarding their accounting came to light.  In addition, Gursky has information about investor, analyst and media accounts related to other underlying allegations such as the AMOS-8 contract and the strategic alternatives for SSL.  Gursky communicated often to defendant Lance, including in the areas of investor messaging and concerns.  Gursky is also listed in Defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that Defendants may use in support of their defenses. |

- 5 -

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
|  | Some specific examples of documents showing Gursky's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A January 18, 2018 email from Gursky telling defendant Lance that friendly sell-side analysts were concerned about ███████ MAXAR_0044122;<br><br>• A February 27, 2018 email from Gursky to defendant Wirasekara saying: ███████ MAXAR_0044228;<br><br>• A March 15, 2018 email from Gursky to defendants Lance and Wirasekara (and others) commenting on the "Credit Suisse downgrade" after speaking with "the analyst at CS today": ███████ MAXAR_0263239;<br><br>• A May 4, 2018 email from Gursky stating: ███████ MAXAR_0044800;<br><br>• A June 8, 2018 email from Gursky regarding GeoCom's financial outlook and performance, noting: ███████ MAXAR_0045406;<br><br>• A July 31, 2018 email from Gursky stating: ███████ MAXAR_0040232;<br><br>• An August 3, 2018 email from Gursky to defendant Lance stating: ███████ |

- 6 -

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|------|------------------------|
| | [REDACTED] MAXAR_0045682; <br><br> • An August 24, 2018 email from Gursky to defendant Lance, forwarding comment received from a market participant: [REDACTED] MAXAR_0045627; and <br><br> • An October 18, 2018 email concerning Maxar's accounting treatment and explanation for the $383 million impairment charge from Gursky to new Maxar CFO Biggs Porter and new SSL CFO Mladen Brkic saying: [REDACTED] MAXAR_0043477. |
| Harrah, Theresa | SSL's assistant controller.  She has knowledge of SSL's accounting and internal controls, including any impairment procedures conducted at SSL.  Harrah had involvement in and made numerous statements in documents that are relevant to Plaintiff's claims, including key documents that pertain to whether or not Maxar complied with the relevant accounting standards applicable to this case.  Further, Harrah was a main contact at SSL for KPMG Canada and KPMG US, including her signing of auditor management representation letters on behalf of SSL management.  Harrah was terminated, in part, for her role in the GeoCom accounting deficiencies. Harrah's documents were also deleted by Maxar after this action was commenced and Plaintiffs will want to seek testimony from Harrah about this issue. <br><br> Some specific examples of documents showing Harrah's knowledge of facts relevant to Plaintiff's claims include: |

- 7 -

| Name | Plaintiff's Good Cause |
|---|---|
|  | • On February 16, 2018, Harrah sent an email to Yasir Hanafy that attached a 2016 long-lived assets impairment memo, stating: ████████████ ████████████ MAXAR_0363560-565; <br><br> • A February 23, 2018 management representation letter signed by Harrah regarding KPMG Canada's 2017 audit. MAX0000889; <br><br> • A June 13, 2018 email from Harrah ████████████ ████ PwC001518; <br><br> • Harrah was asked by KPMG US on July 18, 2018 for management's consideration of whether SSL's RIF (reduction in force), taken in June 2018 was ████████████ ████████████ MAXAR_0358228; and <br><br> • August 22, 2018 Audit Committee presentation which stated, regarding SSL's accounting: ████████ ████████████████████████ ████████████ FRA00000814-816. |
| Hoegler, Darren | MDA's and Maxar's Assistant Controller, until he left at the end of March 2018. He has knowledge of MDA's impairment assessments prior to the DigitalGlobe acquisition. He was also involved in the goodwill impairment analysis conducted at year-end 2017 with the help of Duff & Phelps. Also, Hoegler has knowledge concerning proposed and actual changes to Maxar's change in reportable segments after the closing of its acquisition of DigitalGlobe. Hoegler has knowledge of Maxar's restructuring efforts in 2017 to reduce headcount at SSL's Palo Alto facility ████████████████████████. After the Spruce Point report was issued on August 7, 2018, Hoegler, no longer with Maxar, started corresponding via his personal email account and meeting with Maxar executives and accountants about the Spruce Point report. Additionally, on April 12, 2022, the Court granted (ECF No. 147) and issued the letters rogatory finding that Hoegler should be deposed (ECF No. 148 at 2). <br><br> Some specific examples of documents showing Hoegler's knowledge of facts relevant to Plaintiff's claims include: |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | • An October 24, 2017 email from Hoegler to William McCombe providing suggested wording for Maxar's public filing that stated ███████████████████████████████████████████████████ ███████████████ MAXAR_0424535; <br><br> • A December 15, 2017 email from Hoegler to Jose Torres and Jill Windrum attaching an MDA historical goodwill and intangible asset impairment memo. MAXAR_0065262; <br><br> • In a February 2018 memorandum written regarding the changes in Maxar's reportable segments, Hoegler inserted a "track changes" comment that stated: ██████████████████ ███████████████████ MAXAR_0001922; <br><br> • On February 18, 2018, Hoegler and his team received a draft goodwill impairment analysis from Duff & Phelps that stated the Communications segment (which included SSL): █████████████ ████████████████████ DP_MAXAR_006101; <br><br> • On August 14, 2018, Hoegler emailed defendant Wirasekara from his personal account about participating in management and Audit Committee meetings to discuss Maxar's response to the Spruce Point report, and defendant Wirasekara told Hoegler to ██████████████ MAXAR_0417625; and <br><br> • On August 15, 2018, Hoegler emailed from his personal account to defendant Wirasekara and others attaching his ████████████████ for ████████████████████ Hoegler's ████████████ are being withheld based on privilege even though no attorneys are included on Hoegler's email. MAXAR_0413275. |
| Lance, Howard | Named Individual Defendant. Maxar's CEO. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. Plaintiff needs to talk to defendant Lance about a myriad of documents he authored that are highly relevant to the impairment and AMOS-8 allegations and his related liability. Plaintiff also needs to ask defendant Lance about the profanity he used at a SSL business review meeting only six days before the Class Period started. |

- 9 -

| Name | Plaintiff's Good Cause |
|---|---|
| | • On December 30, 2017, Lance emailed a number of Maxar executives concerning ███████ ████████████████████████████ GeoCom. MAXAR_0424927-928; <br><br> • A May 3, 2018 email from defendant Lance apologizing for his use of profanity during SSL's business review meeting due to his ██████ ███████████████████ MAXAR_0257976; <br><br> • A May 14, 2018 email from defendant Lance to Dario Zamarian and Bruce Stephenson with the subject line, ████████████████ which stated: ████████████████████████ MAXAR_0072841; <br><br> • A May 27, 2018 email from defendant Lance which stated: ████████ ████████████████████████████████ MAXAR_0072759; and <br><br> • A June 15, 2018 email from defendant Lance to Doobi Yoffe with the subject line, "AMOS-8", which stated: █████████ ███████████████████████████ MAXAR_0072949. |
| Lau, Angela | Senior Vice President of Finance and Corporate Strategy. Lau had involvement in and made numerous statements in documents that are relevant to Plaintiff's claims. For example, Lau had a critical role in a March 2018 engagement where Duff & Phelps was hired to assist the Company in its initial tax planning requirements for its U.S. domestication. This is an important analysis for proving Plaintiff's claims because, as part of that engagement, ████████████████████████████████████████████████████ This Duff & Phelps' engagement from March 2018 will be a critical analysis for Plaintiffs to obtain deposition testimony on, given the ████████████████████ in only a span of three months, |

| Name | Plaintiff's Good Cause |
|---|---|
|  | ██████████████████████████████ On December 21, 2021, Plaintiff served supplemental document requests on Defendants seeking discovery on this matter. Notably, the March 31, 2018 SSL valuation was produced by Duff & Phelps pursuant to subpoena, ████████████████████ ████████████████. Additionally, on April 12, 2022, the Court granted (ECF No. 147) and issued the letters rogatory finding that Lau should be deposed (ECF No. 148 at 3).<br><br>Some specific examples of documents showing Lau's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A March 27, 2018 email from Lau to Judd Schneider of Duff & Phelps attaching the signed engagement letter for the Duff & Phelps' engagement that included estimating ██████████ █████████████████████████████████████ DP_MAXAR_005593-606 at 597;<br><br>• An April 30, 2018 email from Lau to Judd Schneider asking if Duff & Phelps would ██████ █████████████████████████████████████ DP_MAXAR_005695-724 at 698, 718; and<br><br>• A May 4, 2018 email from Will Benway to Lau providing questions about ███████ █████████████████████████████████████ DP_MAXAR_005728. |
| McCombe, William | Former CFO of Maxar from October 2017 until February 2018, and Senior Vice President and CFO of SSL MDA Holdings from 2016 to October 2017.  McCombe has personal knowledge of issues regarding GeoCom's financial performance, impairment testing procedures and new reporting segment structure during 2017 and early 2018.  McCombe attended and presented at Maxar's Board meetings and investor conference calls.  He |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
|  | was responsible for budgets and providing financial updates to defendant Lance.  He also discussed SSL's financials, the satellite market and the DigitalGlobe acquisition with consultants, analysts and investors.  McCombe left Maxar only months after becoming the new CFO and before he would have been required to certify Maxar's 2017 Annual Report.  Plaintiff needs to ask McCombe why he left Maxar after just receiving a promotion to be the new CFO of the Company.<br><br>Some specific examples of documents showing McCombe's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A May 24, 2017 email from McCombe to defendant Lance and discussed with defendant Wirasekara, giving SSL executives the ██████████ MAXAR_0017492;<br><br>• A July 7, 2017 email from McCombe to defendant Lance that attached a PowerPoint presentation titled ██████████ MAXAR_0237073, 075;<br><br>• A November 13, 2017 email from McCombe to defendant Lance attaching a proposed new segment structure for Maxar that included ████ being identified as its own reportable segment. MAXAR_0424911-913;<br><br>• A December 14, 2017 email from McCombe in response to defendant Lance's email that he wanted analysis of SSL's quarterly financials because: ██████████ MAXAR_0077903;<br><br>• A February 2, 2018 email from McCombe to defendant Lance attaching quarterly revenue and earnings of Maxar's 2018 annual operating plan ("AOP") vs. consensus and stating: ████ |

- 12 -

| Name | Plaintiff's Good Cause |
|------|------------------------|
| | ███████ ███ MAXAR_0073355.  The attachment shows that GeoCom's 2018 revenues and EBITDA compared to 2017 were projected ████████████████████████████████████. MAXAR_0073356-358; <br><br> • A February 5, 2018 email and presentation from McCombe to defendant Lance regarding proposed segment reporting after the DigitalGlobe acquisition.  MAXAR_0073339-340; and <br><br> • A KPMG Canada workpaper dated April 11, 2018 included a note from Phil Dowad, KPMG Canada's audit partner, that stated, ████████████████████████████████████████████████████████ ████████████████████████████ MAX0001919-1920. |
| Stephenson, Bruce | Maxar Chief Strategy Officer until he left the Company in 2019.  Stephenson has personal knowledge regarding the Company's GeoCom business, including tactics, strategies and competitive position throughout the relevant time period.  He regularly interacted with the Maxar executive team, including defendant Lance and Dario Zamarian, regarding GeoCom's performance, outlook and internal forecasting.  Stephenson also has direct knowledge of several indicators of impairment that arose in 2017 and the first two quarters of 2018, ███████ ████████████████████████████████████████████ He also reviewed and presented to Maxar's Board, ████████████████████████████████. <br><br> Some specific examples of documents showing Stephenson's knowledge of facts relevant to Plaintiff's claims include: <br><br> • A May 2, 2017 Strategic Planning Update presentation for SSL by Stephenson that states: ████ ██████████████████████████████████████ MAXAR_0004120; <br><br> • A November 1, 2017 Strategic Growth Plan Overview presentation by Stephenson that states: ████ ████████████████████████████████████████████████ MAXAR_0001243; |

- 13 -

| Name | Plaintiff's Good Cause |
|---|---|
| | <ul><li>A November 13, 2017 email from Stephenson to Dario Zamarian stating: ███████████████ ███████████ MAXAR_0077977;</li><li>A May 17, 2018 email from Stephenson to Bain providing points to ███████ ███████████ MAXAR_0074830;</li><li>A May 29, 2018 email confirming Stephenson's discussions with ██████ about SSL's strategic alternatives, noting: ████████ MAXAR_0075151;</li><li>A May 30, 2018 email from Stephenson to defendant Lance stating: ████████ MAXAR_0324445;</li><li>A June 7, 2018 email from Stephenson stating: ████████ MAXAR_0075475; and</li><li>A June 30, 2018 email from Stephenson instructing employees on what to do for review of the Annual Operating Plan with the Board, including: ████████ MAXAR_0100950.</li></ul> |

- 14 -

| Name | Plaintiff's Good Cause |
|------|------------------------|
| Torres, Jose | DigitalGlobe's Chief Accounting Officer ("CAO") and Maxar's CAO after the DigitalGlobe acquisition. Torres had involvement in and made numerous statements in documents that are relevant to Plaintiff's claims. He has direct knowledge of accounting and factual issues, including Maxar's goodwill impairment analyses for year-end 2017 and each quarter for 2018.  Torres as CAO was involved in preparing Maxar's SEC filings for its quarterly financial statements and was part of Maxar's Disclosure Committee.  Torres was also directly involved in Maxar's responses to the Spruce Point report, as well as Maxar's accounting treatment for the GeoCom impaired assets and obsolete inventory write down.<br><br>Some specific examples of documents showing Torres' knowledge of facts relevant to Plaintiff's claims include:<br><br>• On December 15, 2017, Torres commented to Jill Windrum regarding a historical impairment memo MDA had prepared: ███████ MAXAR_0065262;<br><br>• During 2018, Torres as CAO reviewed the ███████ KPMG-MAXAR-0002774-779;<br><br>• Torres reviewed the 1Q18 and 2Q18 impairment checklists that were prepared by Jill Windrum. MAXAR_0001788; MAXAR_0001789;<br><br>• On May 2, 2018, Torres responded to defendant Lance's email where he communicated concerns about ███████ MAXAR_0043178;<br><br>• A July 1, 2018 email from Torres to Dario Zamarian attaching a June 2018 PwC presentation titled ███████ where Torres stated: ███████ MAXAR_0271493; |

- 15 -

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | • A July 16, 2018 email from Torres regarding Maxar's year-end 2017 goodwill impairment analysis, saying: ███████████████████████████████████████████████████████████ MAXAR_0275766; <br><br>• On August 1, 2018, only days before the Spruce Point report was issued, Torres received an email from Dan Long stating: ████████████████████████████████ MAXAR_0219791; and <br><br>• On August 9, 2018, only two days after the Spruce Point report, Lance Weber of PwC wrote about his conversation with Torres: █████████████████████████████████ PwC015115. |
| Weber, Lance | Worked in PwC's Transaction Services group on engagements for Maxar and was later hired as the Segment Controller at Maxar immediately after Maxar publically disclosed the $383 million GeoCom impairment charge on October 31, 2018. Weber will be a critical witness that worked both as a consultant for Maxar when he was at PwC and then was later hired as a new accountant for Maxar. Despite Weber at the time being a consultant at PwC, ██████████████████████████████████████████████████████████████ ███████████ Consequently, Weber is an important witness for Plaintiffs to depose to understand where and who he received the information ████████████████████ ███████████████████████████████████████████████ He had frequent interactions with Maxar's top corporate accountants, Jill Windrum and Jose Torres. Also, Weber led the PwC team in helping Maxar ██████████ <br><br>Weber has been identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. <br><br>Some specific examples of documents showing Weber's knowledge of facts relevant to Plaintiff's claims include: <br><br>• Weber was involved in preparing a June 2018 PwC presentation titled ████████████ which stated: ███████████████████████████ |

- 16 -

| Name | Plaintiff's Good Cause |
|---|---|
| | ██████████████████████████████████████ PwC001563-626 at 611;<br><br>• The same June 2018 PwC presentation discussing SSL's ███████████ ███████████████████ wC001563-626 at 605;<br><br>• On August 29, 2018 Weber wrote: ████████████████████ ██████████████████████████████ PwC013930;<br><br>• On October 22, 2018, Weber drafted ████████████████ for Maxar's 3Q18 draft financial statements.  PwC012314; and<br><br>• An October 24, 2018 email from Weber in response to concerns that uncertain funding ████ ██████████████████████████ PwC011805. |
| Wilkinson, Paul | SSL consultant and former SSL employee.  Wilkinson has personal knowledge of most accounting and factual issues in the case.  He has knowledge of segment reporting realignment issues after the acquisition of DigitalGlobe.  Wilkinson received and commented on ███████ analyses sent to him concerning Maxar's year-end 2017 goodwill impairment testing.  Wilkinson has knowledge of SSL's █████████ █████████████████████████████ Wilkinson was also involved in responding to analyst questions regarding accounting changes and has insight into investor reactions and communications.  On February 22, 2022, the Court granted (ECF No. 135) and issued the letters rogatory finding that Wilkinson should be deposed (ECF No. 136 at 2).<br><br>Some specific examples of documents showing Wilkinson's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A January 19, 2018 email from Wilkinson discussing Maxar's realignment of segments and related impairment testing of goodwill, stating: ████████████████ |

- 17 -

| Name | Plaintiff's Good Cause |
|---|---|
| | ███████████████████████████████████████████████████<br><br>MAXAR_0065596;<br><br>• A February 17, 2018 email from Wilkinson to Duff & Phelps saying: ███████<br>████████████████████████████████<br><br>█████████ DP_Maxar_006055;<br><br>• A July 12, 2018 email from Wilkinson to Jose Torres and Jill Windrum stating: █████<br>█████████████████████████████████████████<br>MAXAR_0200678; and<br><br>• An October 31, 2018 email from Wilkinson, after being forwarded an angry communication that ███████████████████████████████████████<br>████████████████████████████████████<br>████████████████████████████████████<br>████████████████████████████████████<br>███████████████████████████ *Id.* |
| Windrum, Jill | One of Maxar's technical accountants along with Jose Torres.  Windrum made numerous statements in documents and was involved in issues that are relevant to Plaintiff's claims.  For example, Windrum prepared the 1Q18 and 2Q18 quarterly impairment checklists that were then reviewed by Jose Torres.  Windrum was heavily involved in the year-end 2017 goodwill impairment testing, including the review of the Duff & Phelps' work.  Windrum was a main contact for Maxar's external auditor KPMG Canada and KPMG US, as well as consultants Duff & Phelps and PwC.  Plaintiff believes Maxar will be relying on these firms to support their defense of reliance on the advice of accounting and financial professionals.  Also, Windrum has knowledge concerning proposed and actual changes to Maxar's change in reportable segments after its closing of the acquisition of DigitalGlobe.  Windrum was also involved in the preparation of Maxar's SEC filings, including the 3Q18 impairment disclosure made on October 31, 2018.  Further, in the process of drafting the October 31, 2018 GeoCom impairment disclosure, ████████████████████████████████████<br>████████████████████████████████████ Finally, Windrum has been identified |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
|  | by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses.<br><br>Some specific examples of documents showing Windrum's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A December 18, 2017 email from Windrum to Jose Torres and Darren Hoegler regarding Maxar's segment reporting stating: ███████████████████████████████████████████████████████████████████████████████ MAXAR_0065276;<br><br>• A January 11, 2018 email from Windrum to Jose Torres stating about Maxar's ability ██████████ ████████████████████████████████████████████████████████████ MAXAR_0064223;<br><br>• A February 27, 2018 email from Windrum where she attached ███████████████ ██████████████████████████████ MAXAR _0200602-603;<br><br>• An April 23, 2018 email where Windrum is commenting to Jose Torres that Maxar's press release to investors announcing the AMOS-8 award ███████████████ MAXAR_0043164;<br><br>• 1Q18 and 2Q18 quarterly impairment checklists prepared by Windrum.  MAXAR _0001788; MAXAR _0001789;<br><br>• An October 12, 2018 email from Windrum stating that in her review of the draft 3Q18 GeoCom impairment disclosure, she was concerned ███████████████████████ MAXAR_0065394. Similarly, on the same day, ███████████████████████████████ |

- 19 -

| Name | Plaintiff's Good Cause |
|---|---|
| | ▮▮▮▮ MAXAR_0065399;<br><br>• An October 23, 2018 email from Windrum to PwC removing all reference ▮▮▮▮ ▮▮▮▮ PwC011805; and<br><br>• A December 17, 2018 email from Windrum to PwC stating: ▮▮▮▮ ▮▮▮▮ MAXAR_0064187. |
| Wirasekara, Anil | Named Individual Defendant. Interim CFO of Maxar. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. Plaintiff needs to talk to defendant Wirasekara about a myriad of documents he authored that are highly relevant to the case allegations and his related liability. For example, Plaintiff needs to ask defendant Wirasekara about the conversation he had with former CFO William McCombe ▮▮▮▮ ▮▮▮▮ .<br><br>• An April 25, 2018 email discussion between defendant Wirasekara and Maxar's Chief Accounting Officer (Jose Torres) concerning ▮▮▮▮ ▮▮▮▮ MAXAR_0100798;<br><br>• A July 5, 2018 email from defendant Wirasekara forwarding to Paul Wilkinson a ▮▮▮▮ ▮▮▮▮ MAXAR_0267110-174;<br><br>• A July 13, 2018 email from defendant Wirasekara to defendant Lance stating: ▮▮▮▮ ▮▮▮▮ MAXAR_0146396; and |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | • ███████████████████████████████████████████████████████████████████ ███████████████████████████ MAXAR_0143317; ████████████████████████████████ |
| Zamarian, Dario | SSL President from June 2017 to April 2019.  Author of numerous relevant documents regarding GeoCom's challenges and assessment of strategic alternatives for GeoCom.  Was personally involved in ████████ █████████████████████████████ of various indicators of impairment for GeoCom.  Also, has knowledge of the AMOS-8 award, including the issues and contingencies associated with the award. Zamarian often directly communicated these facts to defendant Lance.<br><br>Some specific examples of documents showing Zamarian's knowledge of facts relevant to Plaintiff's claims include:<br><br>• A November 13, 2017 email from Zamarian saying: "We should definitely spend more time on this topic [(*i.e.*, does it make sense to keep SSL)].  Very ████████████████████████ ██████ MAXAR_0077977;<br><br>• A December 3, 2017 email from Zamarian saying: ███████████████████████████ ████████████████████████████ MAXAR_0242340;<br><br>• A March 18, 2018 email from Zamarian responding to the suggestion to ████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████ MAXAR_0049851; |

- 21 -

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | <ul><li>A March 22, 2018 email from Zamarian to defendant Lance saying: ███████████████ MAXAR_0072678;</li><li>An April 4, 2018 email from Zamarian saying: ███████████████ MAXAR_0146751;</li><li>An April 30, 2018 email from Zamarian to defendant Lance saying: ███████████████ MAXAR_0146432;</li><li>A May 4, 2018 email from Zamarian, following an apology sent by defendant Lance for his ███████████████ AXAR_0242659;</li><li>A May 29, 2018 email from Zamarian to Rich Currier stating: ███████████████ MAXAR_0078540; and</li><li>A December 26, 2018 email from Zamarian to Jason Gursky discussing the significant drop in Maxar's stock price stating: ███████████████ MAXAR_0294215.</li></ul> |
| KPMG Canada (witness: Phil Dowad) | KPMG Canada was Maxar's auditor during the 2017 audit, 1Q18 quarterly review and part of the 2Q18 quarterly review. On July 29, 2018, only two days before Maxar issued its 2Q18 financial statements, KPMG Canada was replaced by KPMG US as Maxar's auditor. Dowad was the lead audit partner working on the Maxar engagement for KPMG Canada. ███████████████ Also, Dowad was involved in the investigation of Spruce Point's allegations of accounting fraud in August 2018, as well as the Company's |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | disclosure of the $383 million GeoCom impairment charge.  Dowad is also listed in Defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that Defendants may use in support of their defenses.  Additionally, on February 22, 2022, the Court granted (ECF No. 135) and issued the letters rogatory finding that Dowad should be deposed (ECF No. 136 at 2). <br><br> Some specific examples of documents showing Dowad's and KPMG Canada's knowledge of facts relevant to Plaintiff's claims include: <br><br> • KPMG Canada's 2017 workpapers show that it used its ██████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ *Id.*; <br><br> • An August 21, 2018 email from Dowad providing comments to a draft press release of Maxar's Comprehensive Response to the Spruce Point report.  FRA00000749; and <br><br> • An October 24, 2018 email from Dowad to KPMG US partner Michael Kraehnke commenting on Maxar's ██████████████████████████████████████ ████████████████████████████████████████ KPMG-MAXAR-0008378. <br><br> Importantly, Defendants have asserted a reliance on the professional advice of KPMG Canada to defend this action.  *See* Defendants' Amended Answer to the Plaintiff's Consolidated Complaint which states: "The financial statements at issue here were audited by a 'Big Four' accounting firm, and to date, have never been restated."  ECF No. 83 at 3. |
| KPMG US (witness: Michael Kraehnke) | KPMG US was Maxar's auditor during portions of the 2Q18 quarterly review, 3Q18 quarterly review and 2018 audit of Maxar's financial statements.  Kraehnke was the lead audit partner working on the Maxar engagement for KPMG US.  Kraehnke had involvement in and made numerous statements in documents that are relevant to Plaintiff's claims.  For example, Kraehnke and his KPMG US team were involved in the investigation of |

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|---|---|
| | Spruce Point's allegations of accounting fraud in August 2018, as well as the Company's accounting treatment of the GeoCom impairment and inventory obsolescence issues disclosed to investors on October 31, 2018. Further, KPMG US was Maxar's auditor at the time Maxar issued its 2Q18 financial statements, which Plaintiff alleges were materially misstated in violation of accounting standards. Kraehnke is also listed in Defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that Defendants may use in support of their defenses.<br><br>Some specific examples of documents showing Kraehnke's and KPMG US's knowledge of facts relevant to Plaintiff's claims include:<br><br>• On August 21, 2018, Kraehnke provided comments on a draft press release regarding Maxar's Comprehensive Response to the Spruce Point report. Specifically, Kraehnke commented on the press release regarding ███████ FRA00000759-766 at 761;<br><br>• Regarding the 3Q18 GeoCom impairment disclosure where Maxar disclosed that it was not until August 2018 that Maxar began assessing strategic alternatives for GeoCom, Kraehnke in a ███████ KPMG-MAXAR-0011874;<br><br>• In addition, Kraehnke was involved in discussions around Maxar's ███████. KPMG-MAXAR-0011847-852; and<br><br>• KPMG US also noted in its 2018 audit a ███████ KPMG-MAXAR-0017080.<br><br>Importantly, Defendants have asserted the defense of reliance on the professional advice of KPMG US to defend this action.<br><br>• *See* Defendants' Amended Answer to Plaintiff's Consolidated Complaint which states: "Moreover, when a well-known short seller issued a report suggesting that an impairment of the GeoComm business |

- 24 -

| Name | Plaintiff's Good Cause |
|---|---|
| | was imminent (one of the alleged 'corrective disclosures' pled in this case), the Audit Committee – aided by the Company's independent auditor and outside subject matter experts – undertook a comprehensive review.  At the conclusion of this review, the Company and its outside advisors determined, and Maxar publicly announced, that there were no material errors in the Company's financial statements and public disclosures." ECF No. 83 at 2. |
| Bain & Co. (witness: Tina Radabaugh) | Bain consulted Defendants and other key executives regarding the need to ███████████████ ███████████████████████████████████████████████████████████████ ██████████  Also, the Complaint filed in this case contained allegations related to Bain's review into GeoCom's challenges.  ¶70.  Radabaugh is a partner at Bain that was working with Maxar prior to and during the Class Period. <br><br> Some specific examples of documents showing Radabaugh's and Bain's knowledge of facts relevant to Plaintiff's claims include: <br><br> • A July 27, 2017 Bain presentation for SSL, which slide 12 stated: ███████████ ████████████████████████████████████████████ ████████████████████████████ *Id.*; <br><br> • An October 16, 2017 Bain presentation at slide 4 states: ████████████████ ██████████████████████████████████ BAIN-MAXAR_00001324; <br><br> • An October 2017 Bain presentation for SSL which slide 2 states: ████████ ██████████████████████████████████████████████████ BAIN-MAXAR_00001039; and <br><br> • A May 14, 2018 email from Radabaugh responding to defendant Lance's █████████ █████████████████████████ |

- 25 -

4876-9448-5009.v1

| ███████ | **Plaintiff's Good Cause** |
|---|---|
| | Radabaugh stated: ████████████████████████████████ MAXAR_0078563. |
| Duff & Phelps (witness: Judd Schneider) | Duff & Phelps is a key third-party in this litigation and Scheider is a Managing Director from Duff & Phelps that was leading the Maxar engagements.  Duff & Phelps performed several fair market valuations in 2017 and 2018 for Maxar that are important to Plaintiff's impairment allegations of this case. ██████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████  Plaintiff seeks to take the deposition of Schneider to understand Duff & Phelps' analysis, including the assumptions that were provided by Maxar's management to facilitate Duff & Phelps' valuations.  Further, Plaintiff also anticipates Defendants will be asserting the defense of reliance on the professional advice of Duff & Phelps.  Schneider is also listed in Defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that Defendants may use in support of their defenses.<br><br>Some specific examples of documents showing Schneider's and Duff & Phelps' knowledge of facts relevant to Plaintiff's claims include:<br><br>• A February 18, 2018 email from Schneider stating: ████████████████████ ████████████████████████████████ DP_MAXAR_006047;<br><br>• A February 19, 2018 email from Schneider stating: ████████████████ ████████  ████████  ████████████ ██ ██ ██  ██ ██ ██ DP_MAXAR_006068;<br><br>• Duff & Phelps issued an April 2, 2018 report titled ████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ MAXAR_0067664;<br><br>• An April 24, 2018 email from Alexandra Levy to Schneider stating: ████████ ████████████████████████████████ |

- 26 -

4876-9448-5009.v1

| Name | Plaintiff's Good Cause |
|------|------------------------|
|      | ██████████████████████████████████████████████████████████████ ██████████████████████████████████ DP_Maxar_005898; and<br><br>• On April 30, 2018, Duff & Phelps emailed a valuation report to Angela Lau and others that █████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ *Id.* |

- 27 -