**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-0124-WJM-SKC
*Consolidated with Civil Action No. 19-cv-0758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO TAKE TWENTY
DEPOSITIONS**

---

**[REDACTED]**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

SUMMARY OF THE ACTION ............................................................................................... 4

ARGUMENT ........................................................................................................................... 6

    I.     Plaintiff Has Not Exhausted Its 10 Deposition Limit. ............................................ 6

    II.    Depositions Taken to Date Confirm That Plaintiff Does Not Need More. ........... 8

    III.   Plaintiff Has Not Made a Particularized Showing That It Needs to Double
         Its Deposition Limit. ............................................................................................. 10

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Sw. Fuel Mgmt., Inc.*,
2017 WL 8941165 (C.D. Cal. Sept. 19, 2017) .............................................................. 6

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2006 WL 6487632 (D.N.J. Aug. 22, 2006) ......................................................... 6, 7, 8

*Atkinson v. Goord*,
2009 WL 890682 (S.D.N.Y. Apr. 2, 2009) .............................................................. 9

*Barrow v. Greenville Indep. Sch. Dist.*,
202 F.R.D. 480 (N.D. Tex. 2001) ................................................................... 13, 14

*Bettis v. Envision Healthcare Corp., et al.*,
No. 3:17-CV-01112 (M.D. Tenn. July 14, 2021) ...................................................... 7

*Buettgen v. Harless*,
No. 3:09-cv-00791-K (N.D. Tex. Oct. 7, 2011) ........................................................ 7

*Chabot v. Walgreens Boots All., Inc.*,
2021 WL 949443 (M.D. Pa. Mar. 12, 2021) ............................................................ 1

*In re Weatherford Int'l Sec. Litig.*,
2013 WL 5762923 (S.D.N.Y. Oct. 24, 2013) .......................................................... 7

*In Re: Lehman Bros. Sec. and ERISA Litig.*,
No. 09-md-02017 (S.D.N.Y. Jan. 23, 2013) ............................................................ 7

*Lawson v. Spirit AeroSystems, Inc.*,
2020 WL 1285359 (D. Kan. Mar. 18, 2020) ........................................................ 9, 10

*Maxtak Cap. Advisors, LLC v. Parker Vision, Inc.*,
2013 WL 12161858 (M.D. Fla. Mar. 7, 2013) ...................................................... 1, 6

*Newell v. State of Wisc. Teamsters Joint Council No. 39*,
2007 WL 3166757 (E.D. Wisc. Oct. 25, 2007) .................................................... 3, 14

*Raba v. Suozzi*,
2006 WL 8435603 (E.D.N.Y. Nov. 17, 2006) ...................................................... 13

*SEC v. Zachariah*,
2009 WL 10669546 (S.D. Fla. May 21, 2009) ....................................................... 8

*Smith v. Ardew Wood Prod., Ltd.*,
2008 WL 4837216 (W.D. Wash. Nov. 6, 2008) .................................................... 7, 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Thykkuttathil v. Keese*,
    294 F.R.D. 597 (W.D. Wash. 2013) ............................................................................................ 6

**Rules**

Fed. R. Civ. P. 30(a)(2)(A) ............................................................................................................ 6

iii

**INTRODUCTION**

On two separate occasions, the Court has ordered that Plaintiff is limited to 10 depositions as provided in the Federal Rules. *See* October 28, 2020 Scheduling Order (Dkt. 77) at 7 ("Each side is limited to 10 depositions."); March 8, 2022 Order Re Joint Discovery Dispute Report (Dkt. 138) at 3 (rejecting Plaintiff's request to increase limit beyond 10 depositions). So when Plaintiff threatened to file a motion for more depositions "immediately" on March 8, 2022—less than 20 minutes after the Court's last ruling on the issue—Defendants offered a reasonable compromise to spare the Court and the parties additional motion practice. Without conceding that Plaintiff had good cause to exceed its deposition limit, Defendants offered to increase the limit to 13, on the condition that Plaintiff heed the guidance of numerous courts that have decided similar motions, and wait until taking most of its allotted depositions before filing again. Plaintiff's counsel agreed in writing, but weeks later broke the agreement and filed its Motion to Take Twenty Depositions (the "Motion") after taking only three depositions. Given Plaintiff's regrettable breach of the parties' agreement, Defendants' offer no longer stands.

Plaintiff's latest request to double its deposition limit is unwarranted for several reasons. First, Plaintiff's failure to exhaust its deposition limit before seeking relief is reason alone for the Court to deny the Motion. It is "difficult, if not impossible, for a party to make the appropriate showing prior to exhausting the number of depositions . . . provided for in the Rules." *Maxtak Cap. Advisors, LLC v. Parker Vision, Inc.*, 2013 WL 12161858, at \*2 (M.D. Fla. Mar. 7, 2013); *see also Chabot v. Walgreens Boots All., Inc.*, 2021 WL 949443, at \*2 (M.D. Pa. Mar. 12, 2021) ("Parties should ordinarily exhaust their allowed number of depositions before making a request for additional depositions."). In part, this is because the need for ***additional*** testimony can only be properly evaluated once Plaintiff has selected and taken the depositions it is entitled to under

the Rules.  Plaintiff has not reached its existing limit, and it is unclear who else Plaintiff will elect to depose if the Court does not grant the requested relief.[1]

Second, the depositions taken to date confirm that Plaintiff does not have good cause to take more than 10 depositions, let alone twice that number.  Plaintiff is obviously not prioritizing key depositions in order to build its case.  Despite knowing from produced documents that impairment assessments were conducted at the corporate level, for example, Plaintiff insisted on deposing a subsidiary's assistant controller, asking her hours of repetitive questions about which she had no direct information.  *See, e.g.*, Exhibit ("Ex.") I,[2] April 21, 2022 Harrah Depo. at 163:10–11 ("I do not know as I am not [the] one responsible for coordinating these packages"); 170:15–18 ("I don't remember, and I do not have any additional paperwork or anything in front of me.  So anything would just be, kind of, speculating as to what was included in there.").[3] And, while Plaintiff argues that it needs to depose all potentially relevant witnesses "about their own emails and documents," (Mot. at 6)—an argument that any party could make in any case involving documents—less than half the emails that Plaintiff showed to the first deponent even included him.  *See* Ex. J, April 11, 2022 Weber Depo. (only eight out of 23 emails included Mr. Weber).

Third, Plaintiff has not demonstrated a particularized need to depose each of the 20 witnesses referenced in its Motion.  Plaintiff continues to identify witnesses who had overlapping

---

[1] Plaintiff asserts incorrectly that the parties have agreed that 13 depositions "may proceed without a Court order."  Mot. at 4–5, 4 n.4.  There is no agreement because Plaintiff breached it. As a result, it is unclear which 10 depositions (aside from those that have occurred) Plaintiff will pick out of the list of 13 purportedly scheduled depositions.  *See id*. at 4–5.

[2] Unless otherwise stated, all exhibits referenced herein are attached to the May 31, 2022 Omnibus Declaration of Brittany Rogers in Support of Defendants' Response to Plaintiff's Motion to Modify the October 1, 2021 Scheduling Order and Defendants' Response to Plaintiff's Motion to Take Twenty Depositions.

[3] *See, e.g*., Ex. P, MAXAR_0001855 (3Q2017 2017 annual quantitative impairment analysis memo performed by "MDA Corporate Accounting") (produced in March 2021); Ex. Q, MAXAR_0320923 (2Q2018 Impairment checklist performed by corporate accounting (Jill Windrum) (produced in December 2021).

roles and responsibilities, and Plaintiff fails to link each specific witness to *unique* knowledge about the claims in this case.  Plaintiff's proposed list, for example, includes four different individuals from Maxar's accounting team, including one witness, Jill Windrum, who reported to another, Jose Torres.  *See* Plaintiff's Ex. A (including the following accounting witnesses: Theresa Harrah, Maxar subsidiary, SSL's, "Assistant Controller"; Darren Hoegler, another "Assistant Controller" at Maxar; Jose Torres, Maxar's Chief Accounting Officer; and Jill Windrum, Maxar's Senior Director of Technical Accounting).  Plaintiff also wants to depose several external consultants *in addition to* the Maxar employees who managed their work.  *See* Mot. at 5–6.

Plaintiff has inexplicably chosen to prioritize these witnesses over the individual defendants and others disclosed by both parties in their initial disclosures.  As illustrated in the timeline in Defendants' contemporaneously filed Response to Plaintiff's Motion to Modify the October 1, 2021 Scheduling Order ("Motion to Modify"), Plaintiff's counsel circulated a list of eight individuals that Plaintiff sought to "prioritize" for depositions on March 14, 2022.  *See* Defendants' Response to Plaintiff's Motion to Modify at 6.  That list did not include either individual defendant—Maxar's former CEO and former CFO.  Nor did it include Maxar's Audit Committee Chair, or either of its auditors.  And it included just three of the 13 individuals listed in Defendants' January 2022 Amended Initial Disclosures.  Caselaw is clear that a party cannot "circumvent the cap by taking ten depositions of questionable relevance first and leav[ing] the most crucial depositions for the end, confident in the belief that leave of the court shall not be denied."  *Newell v. State of Wisc. Teamsters Joint Council No. 39*, 2007 WL 3166757, at *1 (E.D. Wisc. Oct. 25, 2007).  Yet that is precisely Plaintiff's approach here.

Plaintiff has not shown that it is necessary or proportional to take more than 10 depositions to prosecute its narrow claims.

3

## SUMMARY OF THE ACTION

Plaintiff alleges that Maxar, a company with $1.8 billion in revenue in 2018, was required by applicable accounting rules to impair approximately $380 million of intangibles, inventory, and plant, property and equipment ("PP&E") in its geostationary communications ("GeoComm") business during the first or second quarter of 2018, instead of during the third quarter. *See* Mot. at 1. Plaintiff also alleges that Defendants misled investors in May of 2018 about the terms of an award to build a satellite called AMOS-8. *See id*. Deposition testimony to date confirms what Defendants have argued all along: Plaintiff's case lacks merit.

*Representative GeoComm Testimony.* Plaintiff's accounting claim is based on the unsupported theory that Maxar knew with sufficient certainty in 2017 and early 2018 that the GeoComm market was struggling to the point that it would not recover, and if that were true, then under applicable accounting rules an impairment would be required. *See, e.g.*, Compl. ¶¶ 84, 97, 112. But Plaintiff has only elicited testimony that undermines its theory. As a preliminary matter, the GeoComm market was only one part of the SSL business in 2017 and during the first half of 2018. *See* Ex. J at 132:06–08 ███████████████████████ ████████████████████████████████). As a result, even if it were true that GeoComm bottomed out in 2017 or early 2018 (it is not), that would not necessarily trigger an impairment for SSL—i.e., the business level at which asset impairment was tested under the applicable accounting rules. *See id*. at 200:05–07 ████████████████████████ ████████████████████████████████████████████████████).

Setting aside the technical accounting rules, testimony to date refutes Plaintiff's other GeoComm allegations. For example, Paul Estey, former Chief Operating Officer of SSL (the business that included GeoComm), testified that ███████████████████████████, Ex. K, May 19, 2022 Estey Depo. at 53:18–54:07, and that he ███████████████████ ████████████. *See id*. at 96:04–05 ██████████████████████████

4

██████████████████████ Bruce Stephenson, Maxar's former Chief Strategy Officer, and non-party William McCombe, Maxar's former Chief Financial Officer, ████████████████

████████████████████████████████████████████████████████

██████ *See* Ex. L, May 9, 2022 Stephenson Depo. at 117:06–08 ████████████████

██████████████████████); Ex. M, May 13, 2022 McCombe Depo. at 41:14–17 (████

████████████████████████████████████████████████ Ex.

N, May 17, 2022 McCombe Depo. at 292:01–05.  Mr. McCombe further testified that in 2017,

████████████████████████████████████████ *Id.* at 292:06–

11.  And the lead partner for Maxar's outside strategy consultant, Bain & Co., confirmed that

████████████████████████████████████████

██████████████████████████████ Ex. O, May 26, 2022

Radabaugh Depo. at 94:15–18.  SSL leadership proved to be correct.  Maxar's GeoComm

business continues to operate and secure significant contracts to this day.  *See* Ex. K. at 195:07–

18 (explaining that Maxar continues to "actively market" the 1300 product line in the GeoComm

business).

    *Representative AMOS-8 Testimony*.  Plaintiff has also struck out trying to elicit testimony

that the AMOS-8 award was illusory.  Mr. Estey testified that he was not skeptical about

Maxar's prospects for building AMOS-8, especially because there was a signed contract in place

early in 2018.  *See* Ex. K. at 205:19–20.  Indeed, Mr. Estey testified that ████████████████

████████████████████████████████████████████████████████

*See id.* at 210:04–07 ████████████████████████████████████████

████████████████████████████████████.  Mr. Estey further noted

that ████████████████████████████████████████████████

████████████████████████████████████████████████.

*See id.* at 213:23–214:08 ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████

## ARGUMENT

Dissatisfied with the testimony it has elicited to date, Plaintiff is now pushing to depose numerous others to try to support its narrative. But "[a] party seeking to exceed the presumptive limit [of 10 depositions] bears the burden of making a 'particularized showing' of the need for additional depositions." *Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. 2013). Plaintiff has failed to make that showing.

## I.    Plaintiff Has Not Exhausted Its 10 Deposition Limit.

Plaintiff's Motion fails in the first instance because Plaintiff took only three depositions before seeking relief from the Court. "Most courts hold that in order to make a 'particularized showing,' moving parties must, at a minimum, 'ordinarily exhaust their allowed number of depositions before making a request for additional' depositions." *Acosta v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941165, at *7 (C.D. Cal. Sept. 19, 2017). Failure to exhaust available depositions prevents an "informed determination of whether their proposed additional depositions would satisfy the standard promulgated in Federal Rules 30(a)(2)(A) and 26(b)(2)." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2006 WL 6487632, at *6 (D.N.J. Aug. 22, 2006).

Plaintiff attempts to sidestep this lapse by arguing that it needs more depositions simply because this is a complex securities case. *See* Mot. at 3. But nothing in Rule 30(a)(2)(A) provides that complex cases should be presumed to require more than 10 depositions. *See* Fed. R. Civ. P. 30(a)(2)(A) (requiring leave of court to take more than 10 depositions). Indeed, federal courts often require parties to exhaust their deposition limits in complex cases, including in securities cases. *See, e.g.*, *Alaska Elec. Pension Fund*, 2006 WL 6487632, at *4 (denying

6

plaintiffs' request for additional depositions in securities-fraud action where plaintiffs had not exhausted deposition limit); *Maxtak Cap. Advisors, LLC*, 2013 WL 12161858, at *2 (complex fraud matter where court held that "[i]f, after using the total number of depositions and interrogatories permitted by the Rules, Plaintiffs require additional depositions and interrogatories, Plaintiff may then file an appropriate motion."). In fact, "the complexity of the case underscores the Court's role in ensuring that the massive volume of potentially relevant information does not become an obstacle to efficient resolution of the matter." *Alaska Elec. Pension Fund*, 2006 WL 6487632, at *4.

Plaintiff's reliance on cases where the parties ***agreed*** to increase applicable deposition limits are unavailing. Mot. at 3; *see In re Weatherford Int'l Sec. Litig.*, 2013 WL 5762923, at *1, *3 (S.D.N.Y. Oct. 24, 2013) (defendants agreed that more than 10 depositions were warranted in matter involving nearly $1 billion in controversy); Order, *Bettis v. Envision Healthcare Corp., et al.*, No. 3:17-CV-01112 (M.D. Tenn. July 14, 2021) (ECF 317) (defendants did not oppose plaintiffs' request for additional depositions in case with 24 defendants and approximately 30 third-parties that had produced documents in discovery). Although there was such an agreement here for a period, Plaintiff repudiated it.[4] Moreover, Plaintiff fails to account for the unique circumstances in those cases that warranted additional depositions. *See* Pretrial Order, *In Re: Lehman Bros. Sec. and ERISA Litig.*, No. 09-md-02017 (S.D.N.Y. Jan. 23, 2013) (allowing for additional depositions collectively across more than 30 related matters); Joint Report Regarding Contents of Scheduling Order at 4, *Buettgen v. Harless*, No. 3:09-cv-00791-K (N.D. Tex. Oct. 7, 2011) (ECF 137) (parties agreed that plaintiffs in different actions should be permitted to "collectively" take more than 10 depositions).

---

[4] As explained above, Plaintiff breached the parties' written agreement regarding additional depositions by bringing this motion before taking seven depositions. Defendants have not agreed, and do not agree, that Plaintiff has demonstrated good cause to take more than 10 depositions at this time.

Plaintiff cites only one case where a court granted an opposed request for additional depositions before a party exhausted its deposition limits: *SEC v. Zachariah*, 2009 WL 10669546, at *4 (S.D. Fla. May 21, 2009). But there, the Securities and Exchange Commission and the court were focused on complexities presented by a previous administrative proceeding, and the Commission's desire "to depose witnesses to make their deposition testimony, as well as that during the investigative process, admissible at trial, and to avoid any hearsay contentions." *Id.* at *2. It was therefore imperative, from the court's perspective, to provide all parties to the action an opportunity to cross examine the witnesses who had given testimony in the administrative proceeding. *See id.* at *4. None of those concerns are present here. Moreover, the *Zachariah* matter involved "different insider trading charges for two separate securities, different brokerage firms, and different sets of contacts, as well as separate alleged call/trade patterns." *Id.* at *3. The case at hand is much narrower.

There are good reasons for courts' reluctance to order more depositions before a party exhausts its limit. Without knowing which 10 depositions a party will take, and what those witnesses will say, the parties and the Court can only speculate about how the testimony will unfold. *See Smith v. Ardew Wood Prod., Ltd.*, 2008 WL 4837216, at *1–2 (W.D. Wash. Nov. 6, 2008) (denying as "speculative" a motion for additional depositions where moving party had not exhausted deposition limit). "The Court best satisfies [its] role by evaluating any motion for leave to take additional depositions against the backdrop of information already obtained in permitted depositions." *Alaska Elec. Pension Fund*, 2006 WL 6487632, at *4. Plaintiff's request for additional depositions should be denied.

## II.    Depositions Taken to Date Confirm That Plaintiff Does Not Need More.

Plaintiff's primary argument for seeking to double its allotted depositions is that "Plaintiff believes it is necessary to depose [various witnesses] about their own emails and documents reflecting their personal thoughts and written statements regarding GeoCom

challenges . . . ." *See* Mot. at 5–6. Rule 30(a)(2)(A), of course, does not set this as the standard or test for the number of permissible depositions. And Plaintiff's generic reasoning could apply in any case. Indeed, "the mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1285359, at *8 (D. Kan. Mar. 18, 2020). "[If] a party [were] entitled to depose all the witnesses to a relevant event . . . Rule 30(a)(2)(A)(i) would quickly become a dead letter." *Atkinson v. Goord*, 2009 WL 890682, at *3 (S.D.N.Y. Apr. 2, 2009).

Plaintiff's stated intentions are also inconsistent with its actions to date. Plaintiff has hardly focused on witnesses' own emails and documents in depositions thus far. For example, Plaintiff spent the last two hours of Lance Weber's deposition asking him about documents that made no mention of Mr. Weber whatsoever. *See* Ex. J at 241:05–322:2; 241:05–07 ("Q. And again, I'll represent to you for the record that Exhibit 16 -- you are not on this document."); 261:06–08 ("A. I am saying that the only reason I know it came from him is because it has 'From: Howard Lance' on the email header."); 288:09–11 ("A. … these are all speculations since I've never -- never saw any of these communications."). In fact, Plaintiff has spent long blocks of each deposition asking questions about documents that the witnesses had never seen before. *See, e.g.*, Ex. J at 241:06 (Weber not on exhibits); Ex. I at 20:22, 208:21-22, 209:23-24; Ex. L at 70:09 ("I'm not sure who wrote this"); Ex. M at 204:23-24 , 223:11; Ex. K at 216:06–08 ("Well, I'm not on this thread so I didn't -- it looks like that's his speculation or his opinion."). All of this goes to show that Plaintiff has not used its allotted deposition time to elicit unique testimony from witnesses with particular knowledge of critical issues.

III.    **Plaintiff Has Not Made a Particularized Showing That It Needs to Double Its Deposition Limit.**

Finally, Plaintiff has not demonstrated a particularized need to take 20 depositions.  "The purpose of the limitation in [Rule 30(a)] is to force counsel to think long and hard about who they want to depose and to depose only those who are really important."  *Lawson*, 2020 WL 1285359, at *8.  Plaintiff has failed to do so since day one of negotiations on the parties' Deposition Coordination Protocol ('the Protocol").  Instead, Plaintiff used negotiations over the Protocol as an attempt to extract excessive and over-the-top concessions about deposition limits, making completely unsupported assertions about good cause despite the 10 deposition limit set by this Court's Scheduling Order:

- **November 8, 2021**: Counsel for Defendants circulated a draft deposition coordination protocol to Plaintiff's counsel and counsel for plaintiff in the related action pending in Santa Clara County Superior Court, *In re Maxar Technologies Inc. Shareholder Litigation*, Case No. 19-cv-357070 (the "State Matter") to facilitate depositions, "encourage efficiency and avoid undue burden."  *See* Ex. A, November 8, 2021 to December 28, 2021 Email Chain Between Plaintiff's Counsel and Defendants' Counsel, at 13.

- **November 29, 2021**: Plaintiff's counsel sent its first complete counter-proposal to Defendants' November 8, 2021 draft deposition coordination protocol.  *See id*. at 9. Plaintiff's counter-proposal reflected Plaintiff's effort to extract unrelated concessions by including Plaintiff's request for ***444 hours of deposition time, or 37 total depositions***.  *Id.*

- **December 7, 2021**: Plaintiff's counsel circulated Plaintiff's proposed deponent list, identifying ***35 individual witnesses*** (without any proposed third-party deponents).  *See* Ex. B, December 7, 2021 Email from Plaintiff's Counsel.

- **December 28, 2021**: Plaintiff's counsel sent an updated proposed deponent list, identifying ***34 proposed deponents***.  The December 28 list removed the State Matter

10

plaintiff's unique selections from the December 7 list and *added* proposed third-party deponents. *See* Ex. C, December 28, 2021 Email from Plaintiff's Counsel.

- **December 29, 2021**: The parties called Magistrate Judge Crews' chambers to discuss the parties' disputes regarding the proposed deposition coordination protocol and Plaintiff's insistence that the protocol address the number of depositions available to Plaintiff. Plaintiff stated that it believed it needed *32 depositions*. *See* December 29, 2021 Order Setting Discovery Briefing (Dkt. 127).

- **January 10, 2022**: Plaintiff filed the parties' Joint Discovery Dispute Report (Dkt. 129). In filing the parties' Joint Report, Plaintiff ignored the Court's December 29, 2021 Order (Dkt. 127) and included its own separate 26-page submission. *See* January 10, 2022 Joint Discovery Dispute Report (Dkt. 129). Plaintiff argued that it needed *26 depositions*. *See id*. at 4.

- **February 17, 2022**: The Court rejected the parties' Joint Discovery Dispute Report due to Plaintiff's failure to follow the Court's instructions. *See* February 17, 2022 Minute Order (Dkt. 134).

- **February 28, 2022**: Consistent with the Court's February 17, 2022 Minute Order (Dkt. 134), the parties filed an amended Joint Discovery Dispute Report. Plaintiff reiterated its request to take *26 depositions*. *See* February 28, 2022 Joint Discovery Dispute Report (Dkt. 137) at 2.

- **March 8, 2022**: The Court issued its Order regarding the Protocol and Plaintiff's request to take additional depositions. The Court "accept[ed] Defendants' proposed language" for the Protocol and "agree[d] with Defendant that the Deposition Protocol should not address the limit on the number of depositions." March 8, 2022 Order (Dkt. 138) at 3, 7.

- **March 8, 2022**: Plaintiff informed Defendants' counsel that it intended to "immediately" file a motion for more depositions less than 20 minutes after the Court's March 8 Order

on the issue.  *See* Ex. F, March 8–11, 2022 Email Chain Between Plaintiff's Counsel and Defendants' Counsel, at 5.

- **March 14, 2022**: Plaintiff's counsel circulated a list of the "first 8 depositions the State and Federal Action Plaintiffs would like to prioritize for depositions beginning ~ April 11."  Plaintiff's priority list did not include either individual defendant or Maxar's Audit Committee Chair.  *See* Ex. G, March 14–21 Email Chain Between Plaintiff's Counsel and Defendants' Counsel, at 2.

- **March 10–11, 2022**: In an effort to avoid burdening the Court with Plaintiff's contemplated motion when it was obviously premature, and to get Plaintiff focused on taking depositions instead of litigating deposition limits, Defendants proposed an agreement to increase Plaintiff's deposition limit from 10 to 13, so long as Plaintiff waited until it had taken seven depositions before filing any motion for permission to take more.  *See* Ex. F, at 2.  Defendants were willing to agree to an increase above the 10 deposition limit in order to get Plaintiff to start the deposition process and to stop burdening the Court and the parties with unnecessary and premature discovery issues.  Plaintiff agreed in writing on March 11, 2022.  *See id.* at 1.

- **May 10, 2022**: Plaintiff breached the parties' March 10–11, 2022 agreement by filing the instant motion after taking just three deposition.

As with the deponent lists Plaintiff proposed in the past, Plaintiff seeks an increase in its allotted deposition limit to depose witnesses with overlapping roles, responsibilities, and experience.[5]  Plaintiff has already spent hours on the record asking Mr. Stephenson, a former

---

[5] Plaintiff filed Exhibit A with its Motion, a 27-page argument laden chart that is another thinly-veiled improper attempt to circumvent its page limits.  *See* Mot. at 5 n.5 ("To the extent the Court would like to review Plaintiff's justification for those depositions, *see* Ex. A.").  Cognizant of the District Court's Practice Standards and this Court's previous admonitions, Defendants will not respond in kind and requests that the Court disregard Plaintiff's Exhibit A.  *See* Judge Martinez Practice Standards at III.C.1 ("All page limitations stated below are inclusive of all text

12

Bain & Company partner, about his work on corporate strategy with Bain while at Maxar.  *See,
e.g.*, Ex. L at 50:22–78:01, 87:01–104:12, 124:07–147:22, 189:10–198:16, 219:16–223:22,
238:23–244:06.  Plaintiff likewise spent considerable time asking Mr. Estey—SSL's former
Chief Operating Officer—about his work with Bain while at Maxar.  *See, e.g.*, Ex. K at 77:07–
77:25, 93:25–96:22, 99:20–104:05, 146:22–152:19, 174:15–181:18, 189:23–195:19.  Plaintiff
then deposed Tina Radabaugh, a Bain partner, about Bain's work with Mr. Stephenson and Mr.
Zamarian.  *See, e.g.* Ex. O at 101:01–101:10, 115:01–136:25.  And Plaintiff intends to depose
Dario Zamarian next week.  Plaintiff will undoubtedly probe Mr. Zamarian about his work with
Bain—the same work that Plaintiff has already discussed extensively with three other witnesses.
Plaintiff's full proposed list indicates that Plaintiff intends to depose ***even more*** witnesses about
strategic planning work at Maxar, bringing the total to six.  Mot. at 4–15.  Plaintiff does not need
all six depositions to explore an issue that is only minimally connected to the accounting claims
in the case.  And Plaintiff certainly cannot point to cumulative depositions to justify the need to
expand its limit.  *See, e.g.*, *Raba v. Suozzi*, 2006 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006)
("Plaintiffs do not demonstrate why these depositions would not be cumulative or duplicative, or
whether this information will be attainable from any of the prior ten depositions to be taken.");
*Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 483 (N.D. Tex. 2001) (denying motion
for additional depositions because "the additional depositions simply would have been
cumulative").

Plaintiff has not prioritized purportedly "necessary" depositions.  Mot at 4.  As Plaintiff
recognizes, one of the witnesses it elected to depose first had limited knowledge of potentially
relevant information.  *See id*.  Plaintiff admits that it deposed SSL's assistant controller, even

. . . ."); *see also* February 17, 2022 Minute Order (Dkt. 134) ("The directive to counsel was to
submit a joint report.  However, Plaintiff included a separate, 26-page, explanation of the reasons
why agreement could not be reached.").  If the Court wants Defendants to respond to Plaintiff's
additional 27 pages of argument, Defendants would be happy to do so.

13

though she had no involvement in "impairment testing and decision making regarding whether any indicator of impairment existed for GeoCom" because she was "lower-level … accounting and financial planning personnel." *Id*. If Plaintiff had merely examined the documents Defendants produced well in advance of the depositions, Plaintiff would have understood that the relevant accounting work was done by Maxar's corporate accounting department, and could have avoided this deposition altogether. *See, e.g.*, Ex. P, MAXAR_0001855 (impairment analysis memo performed by "MDA Corporate Accounting"); Ex. Q, MAXAR_0320923 (2Q2018 Impairment checklist performed by corporate accounting). The Court should not reward Plaintiff with additional depositions simply because it was not diligent in selecting its 10 permitted witnesses.[6]

Plaintiff has essentially front-loaded duplicative and unnecessary depositions so that it can tactically point to others it intentionally deprioritized in order to justify a request for more depositions. If Plaintiff does not withdraw any of its pending deposition notices, it will hit its limit without deposing Maxar's auditor, a technical accountant who served as a witness in a parallel Canadian action (which case has now been dismissed by that court), the external consultant who advised on Maxar's impairment testing, or either of the two individual defendants in this matter—Howard Lance (Maxar's former CEO) and Anil Wirasekara (Maxar's former interim CFO).

Plaintiff has known about these individuals from the early stages of this litigation. Indeed, most of the remaining deponents on Plaintiff's list of allegedly "necessary" deponents were identified in Plaintiff's Amended Complaint, Plaintiff's initial disclosures, Defendants' initial disclosures, or some combination of the three. Plaintiff cannot "indirectly circumvent the

---

[6] Plaintiff also does not attempt to make a good cause showing for the depositions that it has taken. *See* Mot. at 5 n.5 ("Plaintiff will not make a good cause showing for them in this Motion"). But "a party seeking to take more than ten depositions must demonstrate the need for not only the additional depositions but also the depositions already taken." *Newell*, 2007 WL 3166757, at *1.

14

cap on depositions by exhausting the maximum allotted number to take those that [it] could not justify under the Rule 26(b)(2) standards, and then seek[] leave to exceed the limit in order to take depositions that [it] could substantiate." *Barrow*, 202 F.R.D. at 483.

Plaintiff's tactical gamesmanship does not demonstrate a particularized need to depart from this Court's Orders or the Federal Rules. Before taking a single deposition, Plaintiff knew that the Court had twice ordered that Plaintiff is limited to 10 depositions, including in the Court's Scheduling Order. *See* October 28, 2020 Scheduling Order (Dkt. 77) at 7 ("Each side is limited to 10 depositions."); March 8, 2022 Order Re Joint Discovery Dispute Report (Dkt. 138) at 3 (rejecting Plaintiff's request to increase limit beyond 10 depositions). By prioritizing unnecessary and duplicative depositions over purportedly "necessary" depositions, Plaintiff ignored that "[a] scheduling order is an important tool necessary for the orderly preparation of a case for trial. It is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." March 8, 2022 Order Re Joint Discovery Dispute Report (Dkt. 138) (internal citations omitted).

## CONCLUSION

Because Plaintiff moved for relief prematurely, prioritized unimportant and duplicative witnesses, and chose not to depose key witnesses within its 10 allotted depositions, the Court should deny Plaintiff's Motion.

15

DATED:  May 31, 2022                              Respectfully submitted,

/s/ Matthew W. Close
Matthew W. Close
Brittany Rogers
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
brogers@omm.com
mclose@omm.com

Jerome H. Sturhahn
Milton L. Smith
Peter G. Koclanes
Sherman & Howard LLC
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
jsturhahn@shermanhoward.com
msmith@shermanhoward.com
pkoclanes@shermanhoward.com

*Attorneys for Defendants Maxar Technologies
Inc., Howard L. Lance, and Anil Wirasekara*

16