# EXHIBIT C

| | |
|---|---|
| **From:** | Trig Smith <TrigS@rgrdlaw.com> |
| **Sent:** | Tuesday, December 28, 2021 8:29 PM |
| **To:** | Rogers, Brittany |
| **Cc:** | Close, Matthew W.; Waxman, Jonathan; Spence Burkholz; Henry Rosen; Nicole Gilliland; Patton Johnson; Brad Sader |
| **Subject:** | RE: Maxar Securities Litigation - Deposition Coordination Protocol |
| **Attachments:** | Maxar Deponent List.pdf |

[EXTERNAL MESSAGE]

Counsel:

We would be more than happy to jump on a call to Judge Crews' chambers at your convenience tomorrow.  We disagree with your position on the ripeness of the number of deponents and we intend to bring that issue to the clerk's attention during the call.  We look forward to receiving the invite.

Attached please find plaintiff's most recent deponent list, which removes all unique selections by the State Action plaintiff and adds our client's and the class's non-party selections.

Best regards,

Trig Smith

---

**FOR DISCUSSION PURPOSES ONLY**
**DRAFT MAXAR DEPONENT LIST**
**As of:  December 28, 2021**

| Name | Relevance |
|---|---|
| Anderson, Jeremy | Former SSL CFO, resigned around the end of 2017.  Has knowledge of GeoCom's accounting practices, financial results and forecasting prior to his departure.  Prior to his departure, Anderson led a 45-person finance and accounting organization at SSL and was responsible for full cycle P&L and cash flow activities.  For example, Anderson presented monthly financial performance of SSL, which included the performance of GeoCom.  Anderson interacted with Maxar's 2017 auditor KPMG Canada, including signing management representation letters on behalf of SSL. |
| Brkic, Mladen | Was hired as the new CFO for SSL around July 2018.  Has knowledge of issues that arose regarding Maxar's impairment assessments and GeoCom's challenges.   For example, Brkic had conversations with Maxar senior management regarding GeoCom revenue and earnings misses during 2018.   When the Company did disclose its $383 million impairment charge in October 2018, Brkic also provided feedback on the drafts of Maxar's impairment disclosure. |
| Celli, John | SSL President (pre-Zamarian) for 11 years, and worked at SSL for 36 years in total. He has personal knowledge of the industry challenges for GeoCom and GeoCom's tactics/strategies throughout the relevant time period.   Celli communicated directly with Senior Management regarding these issues.  Celli retired in June 2017 when the Company announced a record-breaking lay-off of 173 employees in Palo Alto, CA and is quoted in the Complaint concerning the slowdown in orders for GEO satellites being the cause for reductions at Maxar. ¶72  External factors such as industry slowdowns and internal factors such as layoffs are alleged to be indicators of impairment that Maxar ignored. |

2

| Name | Relevance |
|---|---|
| Choo, Zhe | Choo is involved in the preparation of Maxar financial statements, assessing accounting standards including impairment, and the Company's debt covenants. Choo also asked questions of and provided information to Duff & Phelps, who conducted goodwill analyses for Maxar. Choo was heavily involved in Duff and Phelps' valuation work it completed to help Maxar conduct goodwill impairment testing for year-end 2017, a critical issue in this case. |
| Chou, Edward | Senior Manager of Finance. Involved in the preparation of Maxar's 3Q 2017 impairment test, including discussion regarding management's underlying assumptions. Chou was also heavily involved in the preparation of Maxar's year-end 2017 impairment testing. Chou is an important witness for understanding SSL's forecasting process given his role in FP&A. Chou was also involved in Maxar opportunistic change of its operating segments (or cash generating units) at the time of the DigitalGlobe acquisition, a highly relevant issue for Maxar's impairment testing in this case. |
| Currier, Rich | SVP GeoCom business development for the entire Class Period, 2013-2019. He has direct knowledge regarding GeoCom's challenges, including of presentations concerning these issues made directly to defendant Lance. He also prepared SSL's operating plans and discussed SSL's outlook and related industry trends with the Board. He personally interacted with Bain in 2017 and analyzed their assessments. Further, Mr. Currier met with customers, trying to win business for Maxar, and documents show intimate knowledge of the AMOS 8 contract, one of the major issues in this case. |
| Cyprus, Nick | Chair of the Audit Committee. Knowledge of Audit Committee investigation into Spruce Point allegations. Identified in Defendants' interrogatory responses as a person that was involved in the audit committee review and as a person that was involved in drafting, editing, |

| Name | Relevance |
|---|---|
|  | reviewing, or approving the impairment disclosure language in the Company's October 31, 2018 Form 6-K. |
| Davies, Mike | Director of FP&A at SSL and took on additional responsibilities as SSL's Controller when the former Controller left. As SSL Controller, Davies managed SSL's accounting function and team of 12 people. As a result, he has knowledge of GeoCom's accounting practices, financial results and forecasting. . |
| Estey, Paul | As former Executive Director SSL, and current COO, Mr. Etsy has personal knowledge of the operations of SSL, including execution of the backlog, completion of cost reduction projects and management of manpower. Estey was intricately involved in strategy and steering committee meetings, communicating and working directly with the individual defendants. Mr. Estey was directly involved in strategizing how to sell SSL and personally interacted with Bain in 2017. Mr. Estey is also listed in defendants' Rule 26(a)(1) disclosures as an individual likely to have discoverable information that defendants may use in support of their defenses. |
| Gotla, Nauzer | Gotla was Maxar's Head of Internal Audit. Has knowledge of Maxar's internal control structure and challenges including the material weaknesses disclosed at year-end 2018 that were in part due to SSL's deficiencies. Gotla has knowledge of the 2018 summary of internal control deficiencies, which concluded that Maxar management failed to provide evidence they were reviewing the management assumptions of the Company's impairment tests, including any evaluation of the discount rate and forecasted cash flows. |
| Gursky, Jason | Mr. Gursky is VP of Investor Relations, and has served in this role since 2017, coming to Maxar from Citigroup where he was a U.S. aerospace and defense analyst Mr. Gursky heavily involved in messages Maxar put out |

| Name | Relevance |
|---|---|
|  | to the street, writing scripts and Q&A responses with defendants. Gursky's contact information is part of Maxar's August 24, 2018 press release regarding the Spruce Point report, which is alleged to be among the reason why defendants misrepresentations regarding their accounting came to light. In addition, Gursky has information about investor, analyst and media accounts related to other underlying allegations such as the AMOS 8 contract and the strategic alternatives for SSL. Mr. Gursky is also listed in defendants' Rule 26(a)(1) as an individual likely to have discoverable information that defendants may use in support of their defenses. |
| Hanafy, Yasir | SSL Director of Financial Planning & Analysis was responsible for key areas such as revenue and estimates at completion that impact whether Maxar's assets were impaired. Hanafy was involved in revenue estimates, including whether new GeoCom awards and backlog would materialize. Accordingly, he has personal knowledge of facts related to alleged impairment indicators, including cash flow forecasts and financials distributed to senior management regarding GeoCom. |
| Harrah, Theresa | SSL's assistant controller. Has knowledge of SSL accounting and internal controls, including impairment procedures. Harrah has knowledge of whether any impairment testing was done of SSL's long-lived assets prior to the merger with DigitalGlobe. Also, Harrah was a main contact at SSL for KPMG Canada's 2017 audit, including the fulfillment of KPMG Canada's Client (PBC) Request List. Harrah was also involved in the internal control deficiencies at SSL in 2018 and will have knowledge about the accounting considerations for elimination of GeoCom personnel. |
| Hoegler, Darren | Was MDA's Corporate Assistant Controller, until he was replaced at the end of March 2018. He has knowledge of MDA's |

5

| Name | Relevance |
|---|---|
|  | impairment assessments prior to the DigitalGlobe acquisition. He was also involved in the impairment testing at year-end 2017 prior to his departure. Also, Hoegler has knowledge concerning proposed and actual changes to Maxar's change in operating segments, including setting up the reporting segments in such a manner that it would allow Defendants to conceal from investors the actual operating results for the GeoCom business during 2018. |
| Lance, Howard | Named individual defendant. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. |
| Lau, Angela | Lau was the Sr. V.P. of Finance and Corporate Strategy. Lau had a critical role for a March 2018 engagement where Duff and Phelps was hired to assist the Company in its initial tax planning requirements for its U.S. domestication. As part of that engagement, Duff and Phelps estimated the fair market value of Maxar's SSL business as part of Maxar's goodwill impairment testing several times between late 2017 and early 2018. |
| McCombe, William | Former CFO of Maxar, from October 2017 until February 2018. Mr. McCombe has personal knowledge of issues surrounding new segment structure, GeoCom financial performance, why Bain was brought in, impairment testing procedures and new reporting segment structure during 2017 and early 2018. Mr. McCombe attended and presented at board meetings and investor conference calls. He was responsible for budgets and providing financial updates to defendant Lance. He also discussed SSL's financials, the satellite market and DigitalGlobe business combination with analysts and investors. |
| Porter, Biggs | New Maxar CFO in 3Q18. As CFO Mr. Porter had responsibility over finance and accounting, and accordingly has personal knowledge of the impairment charge taken in 3Q18. Mr. Porter was responsible for |

| Name | Relevance |
|---|---|
|  | Maxar's review of whether its assets were impaired and ultimate decision to take an impairment, including the testing done during 3Q18 (including with PwC), the decisions made at the c-suite regarding the impairment and disclosures to the public. He also was involved in issues surrounding Maxar's concerns with its debt covenants, selling its GeoCom real estate, as well as the desire to sell GeoCom. He is also identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. |
| Santoro, Michael | Santoro was SSL VP of Finance and Interim CFO after Jeremy Anderson left. He was involved in SSL's financial performance and discussions on the direction of the business. Santoro is also involved in SSL's forecasting process, including its deteriorating cash flow projections. Santoro also has knowledge of the challenges with GeoCom obsolete inventory. Santoro was involved in GeoCom strategic alternative discussions, including discussions with Bain that included the fundamental shift in the GeoCom industry towards digital payloads and lower orbit, smaller satellites.. |
| Stephenson, Bruce | Maxar Chief Strategy Officer until he left the company in 2019. Has knowledge regarding the Company's GeoCom business, including tactics, strategies and competitive position throughout the relevant time period. Interacted with the Maxar executive team including Howard Lance and Dario Zamarian regarding GeoCom performance and outlook and internal guidance. Mr. Stephenson also has direct knowledge of several indicators of impairment that arose in 2017. He also presented to the Board on GeoCom strategic alternatives and Project Gold. |
| Torres, Jose | Maxar's Chief Accounting Officer after the Merger with DigitalGlobe. Has direct knowledge of accounting and factual issues, including Maxar's impairment testing (or lack thereof in the first 2 quarters of 2018) in each |

7

| Name | Relevance |
|---|---|
|  | quarter for 2018. Torres reviewed the quarterly impairment checklist each quarter that was prepared by Jill Windrum. Torres was also directly involved in Maxar's responses to the Spruce Point report, as well as Maxar's accounting treatment for the GeoCom impaired assets and obsolete inventory. Torres also has knowledge regarding DigitalGlobe's due diligence of GeoCom prior to the merger.. |
| Weber, Lance | Weber worked in PwC's Valuation group on engagements for Maxar and later was hired as the Segment Controller at Maxar. Weber will be a critical witness that worked both as a consultant for Maxar when he was at PwC and then was later hired as a new accountant for Maxar. When Weber was at PwC, he helped Maxar's accounting department draft accounting memos and impairment disclosure language, as well as assess SSL's inventory reserves and capitalized R&D. He had constant interactions with Maxar's top corporate accountants, Windrum and Torres. Also, he helped Maxar quantify its 3Q18 impairment charges of GeoCom's intangible assets and fixed assets. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. |
| Wilkinson, Paul | Former SSL employee and SSL consultant. Knowledge of most accounting and factual issues in the case. Has knowledge of segment reporting realignment issues post-merger. For example, he was involved in responding to analyst questions regarding accounting changes post-merger. |
| Windrum, Jill | One of Maxar's technical accountants along with Jose Torres. Windrum has knowledge of the accounting factual issues between year-end 2017 and 3Q18 in this the case. Windrum prepared the quarterly impairment checklist each quarter that was then reviewed by Jose Torres. Windrum was heavily involved in the year-end 2017 impairment testing, including the review of the Duff and Phelps' work. |

| Name | Relevance |
|---|---|
| | Windrum was a main contact for Maxar's external auditor KPMG, as well as consultants Duff and Phelps and PwC. Windrum was involved in Maxar's 3Q18 impairment disclosure made on October 31, 2018, including critical edits that were made to the disclosure in the drafting process. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. |
| Wiresekara, Anil | Named individual defendant. Identified by Defendants in their Rule 26(a)(1) disclosures as having information Defendants may use in support of their defenses. |
| Zamarian, Dario | SSL CEO from June 2017 to April 2019. Author of numerous relevant documents regarding GeoCom's challenges and assessment of strategic alternatives for GeoCom. Was personally involved in finding potential purchasers for GeoCom and has personal knowledge of various indicators of impairment for GeoCom. Zamarian often directly communicated those facts the defendant Lance. |
| KPMG Canada (witness: Phil Dowad) | Maxar's auditor during the 2017 audit and 1Q18 review of Maxar's financial statements. During the 2017 audit, Maxar's impairment testing and valuation procedures for GeoComm were a "focal point" of KPMG Canada annual audit. Defendants have asserted a reliance on the professional advice of KPMG Canada to defend this action. |
| KPMG US (witness: Michael Kraehnke) | KPMG US was Maxar's auditor during 2Q18, 3Q18 financial statement reviews and the 2018 audit of Maxar's financial statements. KPMG US was involved in the investigation of Spruce Point's allegations of accounting fraud in August 2018, as well as the Company's accounting treatment of the GeoCom impairment and inventory obsolescence issues disclosed to investors on October 31, 2018. Defendants have asserted the defense of reliance on the professional advice of KPMG US to defend this action |

9

| Name | Relevance |
| --- | --- |
| Duff & Phelps (witness: Judd Schneider) | Duff & Phelps performed several valuations of GeoCom in late 2017 and early 2018. In April 2018, for example, Duff & Phelps delivered a valuation report of GeoCom to Maxar, which indicated that the fair value of GeoCom was hundreds of millions of dollars less than the respective book value of the assets. In addition, Duff & Phelps will provide testimony regarding whether the assumptions it used in its various valuations were those of Maxar management or those of Duff & Phelps. Plaintiff also anticipates Defendants will be asserting reliance on the work of Duff & Phelps. |
| PwC (witness: Tom Ouimette) | PwC began assessing SSL assets (e.g., inventory and capitalized R&D expenditures) for potential impairment no later than June 2018. In June 2018, PwC issued its report regarding this work and noted, *inter alia*, it appeared Maxar "does not regularly assess for triggering events" of impairment. PwC was also involved in "Project Gold," the code-name attributed to Maxar's strategic effort to sell GeoCom. Project Gold was commenced sometime prior to June 15, 2018. Plaintiff also anticipates that Defendants will be asserting reliance on the work of PwC. |
| Bain & Co. (witness: Tina Radabaugh) | Consulted Defendants and other key executives regarding the need to "reinvent" and potentially exit GeoCom due to, inter alia, changes in customer demand, continued depressed overall demand and relative uncompetitive position with respect to Maxar's digital payload offering. This work commenced in early 2017 and Bain continued to consult Maxar regarding GeoCom throughout the class period, including working on Project Gold. Bain was also present during the April 2018 meeting with defendants Lance and Wiresakara where GeoCom strategic, including selling GeoCom, were openly discussed. |
| Financial Reporting Advisors (witness: Scott Taub) | Chairman of the Maxar's Audit Committee brought Financial Reporting Advisors ("FRA") in to act as an advisor to the Audit |

| Name | Relevance |
|---|---|
| | Committee for purposes of investigating the Spruce Point allegations of accounting fraud. FRA was directly involved in how the Company would disclose the impairment charges for GeoCom long-lived assets and inventory obsolescence. |
| Joele Frank (witness: Kara Brickman) | Joele Frank assisted Maxar with its investor relations and public relations response to the Spruce Point allegations on August 7, 2018, Defendants more fulsome response to Spruce point on August 24, 2018, and investors and Maxar employees' responses to the disclosure of the alleged fraud. Joel Frank, for example, presented recommended strategy and potential tactics to respond to Spruce Point. Deliverables of Joele Frank's work included proving Maxar aid in crafting crisis communications, a CEO plan, developing key messages for Maxar's IR team and monitoring investor feedback to Maxar news. |
| PJT Partners and/or Goldman Sachs (witness, unknown at this time) | Were responsible for identifying potentially interested parties to acquire GeoCom from Maxar. This was part of Project Gold, commended sometime prior to mid-June 2018. These entities were only capable of finding one party who had potential interest in the GeoCom business or parts of its assets. |

11