# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ......................................................................................................1

II.    HISTORY OF THE LITIGATION ........................................................................2

III.   THE PROPOSED SETTLEMENT.........................................................................3

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE............................................................................................................4

       A.    The Court Should Grant Preliminary Approval of the Proposed Settlement...........4

       B.    Standards for Preliminary Approval of a Proposed Settlement ..............................5

       C.    The Settlement Satisfies the Rule 23(e)(2) Factors ....................................................6

             1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
                   Class ...............................................................................................................6

             2.    The Settlement Was Negotiated at Arm's Length .......................................7

             3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks,
                   and Delay of Trial and Appeal........................................................................8

             4.    Serious Legal and Factual Questions Placed the Litigation's
                   Outcome in Doubt...........................................................................................8

             5.    Immediate Recovery Outweighs the Possibility of a More
                   Favorable Outcome After Further Litigation.............................................10

             6.    The Proposed Method for Distributing Relief Is Effective........................11

             7.    Attorneys' Fees and Expenses ...................................................................12

             8.    The Settling Parties Have No Additional Agreement Other than an
                   Agreement to Address Requests for Exclusion .........................................13

       D.    The Settlement Treats All Class Members Equitably...........................................13

       E.    The Settlement Satisfies the Remaining Factor Considered by Courts in
             the Tenth Circuit ...............................................................................................13

V.     THE COURT SHOULD APPROVE THE NOTICE PLAN ............................14

VI.    CONCLUSION.....................................................................................................15

- i -

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
    551 F.2d 804 (10th Cir. 1977) ................................................................4

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
    167 F. Supp. 2d 1216 (D. Colo. 2001)........................................................4

*Blanco v. Xtreme Drilling & Coil Servs.*,
    2020 U.S. Dist. LEXIS 121996 (D. Colo. Mar. 8, 2020) ......................................4, 5

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    2020 WL 3288059 (D. Kan. June 18, 2020)................................................6, 8, 11, 13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...............................................................14

*Fager v. CenturyLink Commc'ns., LLC*,
    854 F.3d 1167 (10th Cir. 2016) .................................................15

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245
    (N.D. Cal. Sept. 4, 2018) .......................................................13

*Horton v. Molina Healthcare, Inc.*,
    2019 WL 2207676 (N.D. Okla. May 22, 2019).....................................7

*In re Crocs, Inc. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 134396 (D. Colo. Sept. 18, 2014).........................13

*In re Crocs, Inc. Sec. Litig.*,
    2013 WL 4547404 (D. Colo. Aug. 29, 2013) ....................................5

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ................................................9

*In re Molycorp, Inc. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017) ..........................5, 7

*In re Qwest Commc'ns Int'l, Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009)..........................................8, 9

*In re Sandridge Energy, Inc. Sec. Litig.*,
    2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) ..................................6

**Page**

*In re Syngenta Ag Mir 162 Corn Litig.*,
  2018 WL 1726345 (D. Kan. Apr. 10, 2018).....................................................................6, 7, 10

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D. N.M. 2012) ...........................................................................8, 10, 11

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ...........................................................................................4, 11

*McNeely v. Nat'l Mobile Health Care, LLC*,
  2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ......................................................................8, 9

*O'Dowd v. Anthem, Inc.*,
  2019 WL 4279123 (D. Colo. Sept. 9, 2019).........................................................................4, 14

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 U.S. Dist. LEXIS 131699 (D. Colo. July 15, 2021) ........................................................12

*Rhodes v. Olson Assocs., P.C.*,
  308 F.R.D. 664 (D. Colo. 2015) ..................................................................................................5

*Tech Instrumentation Inc. v. Eurton Electric Co. Inc.*,
  2019 WL 4386401 (D. Colo. Sept. 13, 2019)............................................................................15

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ...................................................................................................14

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014)...........................................................................................4

*Villella v. Chemical & Mining Co. of Chile Inc.*,
  333 F.R.D. 29 (S.D.N.Y. 2019) ...................................................................................................6

*Voulgaris v. Array Biopharma*,
  2021 U.S. Dist. LEXIS 249646 (D. Colo. Dec. 3, 2021)..................................................4, 7, 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b)......................................................................................................................................2, 9
  §78t(a)..........................................................................................................................................2
  §78u-4(a)(4) ...............................................................................................................................12
  §78u-4(a)(7) ...............................................................................................................................15
  §78u-4(a)(7)(A)-(F) ...................................................................................................................14

**Page**

Federal Rules of Civil Procedure
    Rule 23(b)(3)...................................................................................................................14
    Rule 23(c)(2) ..................................................................................................................15
    Rule 23(e)...................................................................................................................4, 8
    Rule 23(e)(1) .............................................................................................................5, 14
    Rule 23(e)(2) ...............................................................................................................5, 6
    Rule 23(e)(2)(B)....................................................................................................5, 7, 14
    Rule 23(e)(2)(C)(i).........................................................................................................8
    Rule 23(e)(2)(C)(ii).....................................................................................................11
    Rule 23(e)(2)(C)(iii)....................................................................................................12
    Rule 23(e)(3) ..................................................................................................................6

17 C.F.R.
    §240.10b-5 ......................................................................................................................2

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021
    Review and Analysis* (Cornerstone Research 2022)....................................................11

## I.    INTRODUCTION

After three years of vigorous litigation in this Action,[1] Lead Plaintiff Oregon Laborers Employers Pension Trust Fund ("Oregon Laborers" or 'Lead Plaintiff') and Defendants Maxar Technologies Inc. ("Maxar" or the "Company"), Howard L. Lance, and Anil Wirasekara ("Defendants") (together, the "Settling Parties") have reached an agreement to resolve the Action for $27 million in exchange for the release of the claims asserted against Defendants in the above-captioned action (the "Action" or "Litigation").  The terms of the Settlement are contained in the Stipulation.  The result is favorable for the Class – a $27 million recovery without the costs and delays of further litigation, including further fact discovery, expert discovery, motions for summary judgment, and the uncertainty and risks associated with a lengthy trial and potential subsequent appeal.

By this motion, Lead Plaintiff seeks an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of notifying the Class of the proposed Settlement; and (3) setting a hearing date for the Court to consider final approval of the Settlement, the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for an award of attorneys' fees and expenses, and Lead Plaintiff's application for reimbursement of expenses directly related to its representation of the Class (the "Final Approval Hearing") and a schedule for various deadlines relevant thereto ("Preliminary Approval Order").

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning given to them in the September 12, 2022 Stipulation of Settlement (the "Stipulation"), submitted herewith.  All emphasis is added, and citations are omitted, unless otherwise noted.

## II.    HISTORY OF THE LITIGATION

Lead Plaintiff alleges that from May 9, 2018 through October 30, 2018, Defendants made false and misleading statements about Maxar's financial and operational status, in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5 promulgated thereunder.

On October 7, 2019, Lead Plaintiff filed the Complaint against Defendants (ECF 44). On December 6, 2019, Defendants filed their Motion to Dismiss the Consolidated Complaint (the "Motion to Dismiss") (ECF 51). On September 11, 2020, this Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Consolidated Complaint (ECF 69).

On February 12, 2021, Lead Plaintiff moved to certify the class (ECF 90). Defendants took discovery in connection with that motion, and on June 4, 2021, filed a statement of non-opposition to Lead Plaintiff's motion for class certification, reserving their rights to: (i) seek to alter the size of composition of the class or the length of the class period, and (ii) move to decertify the putative class (ECF 102). On July 16, 2021, the Court granted Lead Plaintiff's motion and certified the class.

On March 31, 2021, the parties participated in a voluntary, confidential mediation with Gregory P. Lindstrom, Esq., a highly respected mediator of complex civil cases. The parties engaged in arm's-length, good-faith negotiations, but did not reach a settlement that day, and litigation continued. The parties had a follow-up, second mediation a few weeks later but no settlement was reached. The parties continued to litigate the case for over a year, during which time the parties conducted comprehensive fact discovery. Defendants produced and Lead Plaintiff reviewed hundreds of thousands of pages of documents, and Lead Plaintiff deposed multiple fact witnesses. The parties also litigated several discovery disputes.

On June 21, 2022, the parties participated in a third mediation session with Mr. Lindstrom. During the mediation, the parties reached an agreement-in-principle to resolve the Litigation, and on June 28, 2022, the parties executed a Settlement Term Sheet. The agreement-in-principle contemplates full releases of liability in return for a cash payment of $27 million for the benefit of the Class, subject to the approval by the Court.

## III. THE PROPOSED SETTLEMENT

The Settlement resolves the Class's claims against all Defendants. The Stipulation provides that Maxar shall pay, or cause to be paid within 30 business days of entry of the Preliminary Approval Order, $27 million in cash. The cost of settlement administration, including the costs of notice to the Class, as well as taxes and tax expenses, will be funded by the Settlement Fund. Stipulation, ¶2.9.

In exchange for the benefits provided under the Stipulation, Class Members will release Defendants as provided for in Paragraph 4.1 of the Stipulation. The Settling Parties have also agreed that Defendants shall have the option to terminate the Settlement in the event that requests for exclusion from the Class exceed a certain threshold. Stipulation, ¶7.4.

The Settlement meets the standards for preliminary approval. It was the product of arm's-length negotiations between experienced, knowledgeable counsel and before a widely respected and experienced mediator, has no obvious deficiencies, and provides for notice that is reasonably calculated to apprise Class Members of the Settlement and their rights and options.

**IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

**A.    The Court Should Grant Preliminary Approval of the Proposed Settlement**

As the Tenth Circuit has held, "'[t]he inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims.'" *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977); *see also Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law favors and encourages settlements[;] [t]he settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation."). "Courts have held that the presumption in favor of voluntary settlement agreements 'is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014); *see also O'Dowd v. Anthem, Inc.*, 2019 WL 4279123  (D. Colo. Sep. 9, 2019) (same).

Under Federal Rule of Civil Procedure 23(e), the trial court must approve a class action settlement.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the Court's approval").  Class action approval is a well-established two-step process. *See Voulgaris v. Array Biopharma*, 2021 U.S. Dist. LEXIS 249646, at *8 (D. Colo. Dec. 3, 2021).  In the first stage (the preliminary approval stage), the court "is tasked with determining whether there is 'any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *Blanco v. Xtreme Drilling & Coil Servs.*, 2020 U.S. Dist. LEXIS 121996, at *2-*3 (D. Colo. Mar. 8, 2020) (citing *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).  "'[T]he standard that governs the

- 4 -

preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.'" *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015). *See also In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *3 (D. Colo. Aug. 29, 2013) ("'Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").

Through this Preliminary Approval Motion, Lead Plaintiff requests the Court take the first step in this two-step process – granting preliminary approval. The settlement "'appear[s] to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Blanco*, 2020 U.S. Dist. LEXIS 121996, at *3; *see also In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017) (same).

### B.    Standards for Preliminary Approval of a Proposed Settlement

Under Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[2] Rule 23(e)(2)(B). Rule 23(e)(2) provides that a class action may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In deciding whether to approve a class action settlement, courts should consider whether:

> **(A)**    the class representatives and class counsel have adequately represented the class; **(B)** the proposal was negotiated at arm's length; **(C)** the relief provided for the class is adequate, taking into account: **(i)** the costs, risks, and delay of trial and appeal; **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; **(iii)** the terms of any

---

[2]    As noted above, the Court has already certified the Class. ECF 109.

proposed award of attorney's fees, including timing of payment; and **(iv)** any agreement required to be identified under Rule 23(e)(3); and **(D)** the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

Additionally, in deciding whether a settlement is "fair, reasonable, and adequate," courts traditionally consider whether: "'(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.'" *In re Syngenta Ag Mir 162 Corn Litig.*, 2018 WL 1726345, at \*2 (D. Kan. Apr. 10, 2018).  Because the Tenth's Circuit's additional factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not being subsumed" into it, courts now "consider [] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors.  *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at \*2 (D. Kan. June 18, 2020).

### C.    The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have diligently prosecuted the Litigation, including, among other things:  (i) investigating the relevant factual events; (ii) drafting the detailed consolidated complaint; (iii) opposing Defendants' Motion to Dismiss; (iv) obtaining class certification; (v) conducting fact and expert discovery; and (vi) participating in three mediation sessions.

Lead Counsel has significant experience prosecuting complex class actions.  *See, e.g.*, *In re Sandridge Energy, Inc. Sec. Litig.*, 2019 WL 4752268, at \*9 (W.D. Okla. Sept. 30, 2019) (recognizing that "attorneys of Robbins Geller are experienced class-action litigators"); *Villella v.*

*Chemical & Mining Co. of Chile Inc.*, 333 F.R.D. 29, 59 (S.D.N.Y. 2019) (observing that Robbins Geller "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law").  Moreover, the Court-approved Lead Plaintiff is an experienced fiduciary overseeing hundreds of millions in pension assets for thousands of participants.  ECF 25 at 4.

### 2.    The Settlement Was Negotiated at Arm's Length

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by courts in the Tenth Circuit and assesses whether "'the Settlement was fairly and honestly negotiated.'" *Syngenta*, 2018 WL 1726354, at *2.  Here, it cannot be seriously disputed that the Settlement was negotiated at arm's length, as it was reached only after lengthy mediation efforts overseen by a neutral, third party mediator.  Prior to agreeing to the Settlement, Lead Plaintiff and Lead Counsel gained a thorough understanding of the facts of the case and merits of the claims.

The Settlement was reached with the guidance of Mr. Lindstrom, who has considerable experience in both litigating and mediating complex cases such as this one.  Mr. Lindstrom conducted three lengthy and informative mediation sessions with the parties, and apprised the parties of each side's respective strengths and weaknesses.  Courts recognize that "utilization 'of an experienced mediator supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.'" *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *18 (citing *In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017)) (internal citations omitted); *Horton v. Molina Healthcare, Inc.*, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (approving settlement because, *inter alia*, it was

"negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator").

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The Court should also balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with the Litigation. Rule 23(e)(2)(C)(i). This factor is based on the premise that the Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). This consideration largely overlaps with the second ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt'") and third factors ("'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'") traditionally considered by courts in the Tenth Circuit. *Chavez Rodriguez*, 2020 WL 3288059, at *2-*3. Thus, courts consider these factors to be "subsumed under Rule 23's requirement." *Id.*

### 4. Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

The presence of serious legal and factual questions concerning the outcome of the litigation weighs in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Securities class actions in particular are notoriously complex and present numerous hurdles to proving liability and damages. *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1242 (D. N.M. 2012)

- 8 -

(recognizing difficulty associated with proving loss causation and establishing damages, and finding that the parties "disagree on many factual and legal issues, making the likelihood of prevailing at trial problematic"); *Qwest*, 625 F. Supp. 2d at 1138 (finding that the issues of scienter, causation, and damages in a securities fraud action were "complex and problematic" and that "[p]resenting these issues to a jury would create substantial risks for all parties, including the plaintiffs"); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) (recognizing "a risk that plaintiffs would be unable to establish the required elements of their §10(b) claims").

Lead Plaintiff alleged that during the Class Period, Defendants knowingly and/or recklessly issued false and misleading statements and omitted material information regarding: (i) the Company's reported balance sheet assets concerning its geostationary communications satellite business ("GEO"); and (ii) a GEO satellite construction contract known as AMOS-8. Lead Plaintiff also alleges that the price of Maxar stock was artificially inflated by Defendants' allegedly false and misleading statements and omissions, and that Lead Plaintiff and the Class suffered damages when the truth was revealed.

While Lead Plaintiff believes that its claims would be borne out by the evidence presented at trial, it recognizes that there are significant hurdles to proving liability or even proceeding to trial. Indeed, although the Court largely denied Defendants' Motion to Dismiss, "that ruling provides no guarantee that [Lead Plaintiff] will ultimately prevail on the merits." *McNeely*, 2008 WL 4816510, at *13. Thus Lead Plaintiff must "consider [its] likelihood of success . . . surviving summary judgment, and winning at trial." *Crocs*, 306 F.R.D. at 691.

Defendants, represented by experienced and skilled counsel, continue to argue that they did not make any false or misleading statements or omissions. They argued that the fact that Maxar later

took an impairment charge on its GEO assets does not render its earlier financial statements, where no impairment was taken, false or misleading. They also argued that the decision to take an impairment charge is a matter of judgment, on which reasonable minds may differ, and that both the Company's independent auditor and a valuation expert performed an independent analysis of the Company's assets, and concluded that Maxar's accounting for its assets was appropriate.[3] Defendants also vigorously argued that Lead Plaintiff could not establish scienter, because there was no evidence of suspicious stock sales or motive to engage in securities fraud.

Lead Plaintiff also faced significant risks in establishing loss causation and damages. Defendants challenged that any of the "corrective disclosures" revealed any new information that rendered their prior statements materially false or misleading. Defendants would have argued that Lead Plaintiff's damages methodology is unreliable and does not accurately account for the effect that confounding or market factors had on the alleged decline in the price of Maxar stock. Establishing loss causation and damages would have likely come down to an unpredictable and hotly disputed "'battle of the experts.'" *Thornburg*, 912 F. Supp. 2d at 1242. If, for some reason, the Court determined that even one of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's claims would become much more difficult to prove.

### 5. Immediate Recovery Outweighs the Possibility of a More Favorable Outcome After Further Litigation

Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *Syngenta*, 2018

---

[3]    Notably, Maxar has never restated its prior financial statements.

WL 1726345, at *2; *Thornburg*, 912 F. Supp. 2d at 1244 ("'[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now'").

The $27 million Settlement here represents a very good result; the result exceeds the median and average recovery in securities settlements reached during 2021, the last year for which data is available. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 18, Appendix 1 (Cornerstone Research 2022), available at https:/www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf. Likewise, it far eclipses the $8.5 million median settlement amount for cases settled in the Tenth Circuit between 2012-2021. *Id.* at 19, Appendix 3.

Further, this case has already been pending for over three years, and the Court would expend significant additional time, resources, and costs to complete the pre-trial proceedings, including summary judgment and *Daubert* motions. *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial"). In addition, Defendants could appeal any verdict eventually obtained for Lead Plaintiff and the Class to the Tenth Circuit, which could take years to resolve. *Kmart Corp.*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

### 6.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan involves direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. In addition, a

settlement-specific website will be created where settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

Lead Plaintiff proposes a thorough and comprehensive claims administration process. Specifically, a standard claim form will request the information necessary to establish membership in the Class and calculate a Claimant's Recognized Loss Amount pursuant to the Plan of Allocation. The Claims Administrator will process the Claims, calculate Claimants' recognized losses and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.[4]

### 7.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Notice provides that Lead Counsel will apply to the Court for an award of attorneys' fees of up to 30% of the Settlement Amount and litigation expenses in an amount not to exceed $1,000,000, plus interest on those amounts at the same rate as earned by the Settlement Fund.  Notice at 4.  In addition, Lead Plaintiff may seek an award of no more than $15,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  *Id.*  With respect to the timing of payment, the Stipulation provides that any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel once the Court executes the Judgment and an order awarding such fees and expenses.  Stipulation, ¶6.2.

Lead Counsel's fee request is well within the range that have been approved in complex class actions. *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 U.S. Dist. LEXIS 131699, at *6 (D. Colo. July 15, 2021) (awarding 30% of $135 million recovery plus expenses); *In*

---

[4]    The Notice also provides Class Members with the procedure to challenge the rejection of any Claim.

*re Crocs, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 134396, at *18 (D. Colo. Sept. 18, 2014) (awarding 30% fee plus expenses).

**8.    The Settling Parties Have No Additional Agreement Other
than an Agreement to Address Requests for Exclusion**

The Settling Parties have entered into a standard supplemental agreement which provides solely that in the event that Class Members with Class Period purchases of Maxar common stock that exceed a certain threshold validly request exclusion from the Class, the Defendants shall have the option to terminate the Settlement.  Stipulation, ¶7.4.

**D.    The Settlement Treats All Class Members Equitably**

Lead Plaintiff's settlement notice (the "Notice") provides that if the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Class Members who timely submit valid Proofs of Claim that are accepted for payment by the Court ("Authorized Claimants"). The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis, based on the size of their claim.  Courts in this District and others have held similar plans "treat[ed] class members equitably relative to each other." *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *22; *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("the allocation plan disburses the Settlement Fund to class members on a '*pro rata* basis based on the relative size of' the potential claims that they are compromising . . . [t]his type of *pro rata* distribution has frequently been determined to be fair, adequate, and reasonable").

**E.    The Settlement Satisfies the Remaining Factor Considered by Courts
in the Tenth Circuit**

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'"  *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In

- 13 -

analyzing this factor, courts recognize that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'" *O'Dowd*, 2019 WL 4279123, at \*14.  Bringing its extensive experience and knowledge to bear, Lead Counsel believes that the Settlement is in the best interests of the Class, as it provides a meaningful cash recovery to the Class now, eliminating the risk that the Class will ultimately obtain nothing.

## V.    THE COURT SHOULD APPROVE THE NOTICE PLAN

Lead Counsel proposes that mailed and published notice be given substantially in the form of the Notice and Summary Notice, attached as Exhibits 1 and 3 to the Preliminary Approval Order, submitted herewith.  The proposed Notice fulfills the requirements of due process and complies with the Federal Rules of Civil Procedure, as well as the separate disclosure requirements imposed by the Private Securities Litigation Reform Act ("PSLRA").  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The Court must direct notice to potential Class Members who would be bound by the proposal in a "reasonable manner." Fed. R. Civ. P. 23(e)(1).  Rule 23(e)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(2)(B).  Notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)).

The proposed form of the Notice describes the Settlement in plain terms, the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate and

reasonable, the maximum amount Lead Counsel will seek in attorneys' fees and expenses, the maximum amount Lead Plaintiff will seek for expenses in connection with its representation of the Class, the procedure for requesting exclusion from the Class or filing objections, and the date and time of the Final Approval Hearing. *See* Rule 23(c)(2) and the 15 U.S.C. §78u-4(a)(7).

Lead Plaintiff, through an experienced settlement claims administrator, Gilardi & Co. LLC ("Gilardi"), proposes to give interested parties notice in two ways: by First-Class Mail, addressed to all Members of the Class who can reasonably be identified and located, and by publication in a nationally-circulated newspaper, *The Wall Street Journal*, and over a national newswire service. Gilardi will also post the Notice on a dedicated case website: www.MaxarSecuritiesClassLitigation.com. The proposed method of giving notice provides Class Members with the best notice practicable under the circumstances. *See Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) ("Notice by first-class mail was adequate . . . ."); *Tech Instrumentation Inc. v. Eurton Electric Co. Inc.*, 2019 WL 4386401, at *1 (D. Colo. Sept. 13, 2019) (finding "a summary postcard and full notice posted on a website" [were] an adequate means to notify and inform members of the class").

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order.

DATED:  September 20, 2022                    Respectfully submitted,

                                    s/ Spencer A. Burkholz
                                    SPENCER A. BURKHOLZ

- 15 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
TRIG R. SMITH
JEFFREY J. STEIN
CHRISTOPHER D. STEWART
NICOLE Q. GILLILAND
PATTON L. JOHNSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
elleng@rgrdlaw.com
trigs@rgrdlaw.com
jstein@rgrdlaw.com
cstewart@rgrdlaw.com
ngilliland@rgrdlaw.com
pjohnson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

- 16 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on September 20, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Spencer A. Burkholz*
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
sburkholz@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-00124-WJM-SKC Oregon Laborers Employers Pension Trust Fund et al v. Maxar Technologies Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew W. Close**
  mclose@omm.com,matthew-close-5511@ecf.pacerpro.com,mmena-hadyka@omm.com,mleu@omm.com

- **Nicole Gilliland**
  ngilliland@rgrdlaw.com

- **Kate Mie Ikehara**
  kikehara@omm.com,kate-ikehara-0705@ecf.pacerpro.com

- **Patton L. Johnson**
  pjohnson@rgrdlaw.com,panderson@rgrdlaw.com,TerreeD@rgrdlaw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Brittany Allison Rogers**
  brogers@omm.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,panderson@rgrdlaw.com,ChristC@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com

- **Christopher Dennis Stewart**
  cstewart@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Jerome H. Sturhahn**
  jsturhahn@shermanhoward.com,efiling@shermanhoward.com,jbulanow@shermanhoward.com

- **Jonathan Bryce Waxman**
  jwaxman@omm.com,jonathan-waxman-8134@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Phillup G  Newhope
,

Logan Durant
,

Michael W Slaunwhite
,