**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

4891-4731-9169.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................4

III.    LEAD PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE CLASS
        IN COMPLIANCE WITH RULE 23 AND DUE PROCESS ...........................................5

IV.     FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED..................................6

        A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ............8

        B.      The Proposed Settlement Was Negotiated at Arm's Length and With an
                Experienced Mediator...............................................................................................9

        C.      The Costs, Risks, and Delay of Trial and Appeal....................................................11

                1.      Serious Legal and Factual Questions Placed the Litigation's
                        Outcome in Doubt......................................................................................11

                2.      The Recovery Is Particularly Significant in Light of the Delay in
                        Further Litigation .........................................................................................14

        D.      The Proposed Method for Distributing Relief Is Effective.....................................16

        E.      The Requested Attorneys' Fees ...............................................................................16

        F.      The Settling Parties Have No Additional Agreement Other Than an
                Agreement to Address Requests for Exclusion .......................................................17

        G.      Class Members Are Treated Equitably....................................................................17

        H.      The Judgment of the Settling Parties ......................................................................18

V.      THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
        ADEQUATE....................................................................................................................19

VI.     CONCLUSION................................................................................................................20

- i -

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
2020 WL 3288059 (D. Kan. June 18, 2020)................................................................10, 11, 14

*Christine Asia Co. Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)....................................................................11, 17

*Diaz v. Lost Dog Pizza, LLC*,
2019 WL 2189485 (C. Colo. May 21, 2019)..........................................................................18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................................................................5

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ..................................................................................................17

*Grady v. De Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) ..................................................................................................6

*Hapka v. CareCentrix, Inc.*,
2018 WL 1871449 (D. Kan. Feb. 15, 2018) ..........................................................................18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
*aff'd sub nom. Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) ...........................................................................................19

*Horton v. Molina Healthcare, Inc.*,
2019 WL 2207676 (N.D. Okla. May 22, 2019)......................................................................10

*In King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)...........................................................................................15

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...................................................................................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ..............................................................................................10

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 4333997 (D. Colo. Feb. 15, 2017)..........................................................................10

4891-4731-9169.v1

**Page**

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 4333999 (D. Colo. Mar. 6, 2017) ...............................................................6

*In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2020 WL 2616711 (W.D. Okla. May 22, 2020).........................................................8

*In re Sprint Corp. ERISA Litig.*,
443 F. Supp. 2d 1249 (D. Kan. 2006).......................................................................12

*In re Syngenta Ag Mir 162 Corn Litig.*,
2018 WL 1726345 (D. Kan. Apr. 10, 2018)..............................................................15

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. Dec. 7, 2018) .......................................................7, 9

*In re Thornburg Mortg., Inc. Sec. Litig.*,
912 F. Supp. 2d 1178 (D.N.M. 2012) ............................................................. *passim*

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ..........................................................................15, 19

*McNeely v. Nat'l Mobile Health Care, LLC*,
2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...................................................12, 15

*Nieberding v. Barrette Outdoor Living, Inc.*,
129 F. Supp. 3d 1236 (D. Kan. 2015).......................................................................18

*O'Dowd v. Anthem, Inc.*,
2019 WL 4279123 (D. Colo. Sept. 9, 2019)..............................................................18

*Ogden v. Figgins*,
2017 WL 5068906 (D. Kan. Nov. 3, 2017) ...............................................................10

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 1387110 (D. Colo. Apr. 13, 2021)......................................................6, 7, 8

*Reiskin v. Reg'l Transp. Dist. Colo.*,
2017 WL 5990103 (D. Colo. July 11, 2017) ...............................................................9

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ....................................................................................14

4891-4731-9169.v1

**Page**

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002),
  *aff'd*, 997 F.3d 1077 (10th Cir. 2021)..........................................................................8

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015)................................................................6

*Tennille v. W. Union Co.*,
  2014 WL 5394624 (D. Colo. Oct. 15, 2014) .............................................................15

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) .........................................................................5, 7, 11

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ...............................................................................................................7, 16
  Rule 23(a)(4).............................................................................................................8
  Rule 23(c)(2)(B)....................................................................................................5, 6
  Rule 23(e)(1)..............................................................................................................5
  Rule 23(e)(1)(B).........................................................................................................5
  Rule 23(e)(2) ..........................................................................................1, 7, 8, 11
  Rule 23(e)(2)(A)........................................................................................................9
  Rule 23(e)(2)(B)....................................................................................................9, 11
  Rule 23(e)(2)(C)(i)...................................................................................................11
  Rule 23(e)(2)(C)(ii).................................................................................................16
  Rule 23(e)(2)(C)(iii)................................................................................................16
  Rule 23(e)(2)(C)(iv)................................................................................................17
  Rule 23(e)(2)(D) .....................................................................................................17
  Rule 23(e)(3)............................................................................................................17

17 C.F.R.
  §240.10b-5 ................................................................................................................4

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements: 2022 Review and Analysis*
  Laarni T. Bulan and Laura E. Simmons (Cornerstone Research 2023)...................14

4891-4731-9169.v1

Lead Plaintiff Oregon Laborers Employers Pension Trust Fund respectfully submits this memorandum in support of its motion[1] for final approval of the all-cash $27 million proposed Settlement ("Settlement Amount"), and approval of the Plan of Allocation of settlement proceeds.[2]

## I.    INTRODUCTION

Lead Plaintiff has obtained a Settlement of this securities class action for $27,000,000 in cash. It is an excellent recovery for the Class and satisfies each of the Rule 23(e)(2) factors as well as the factors considered by the Tenth Circuit in deciding whether a settlement is fair, reasonable, and adequate. The Settlement represents a significant percentage of estimated recoverable damages and was negotiated by counsel with extensive experience in securities class actions who intelligently evaluated the merits of Lead Plaintiff's claims, including the risks to recovery and likelihood of ultimate success, based on their extensive litigation of this matter. The Settlement is particularly beneficial to the Class in light of the many risks Lead Plaintiff faced, including that: (i) the Court would dismiss the remaining alleged misstatements on the grounds that they were inactionable, forward-looking statements or inactionable puffery; (ii) Lead Plaintiff could not compel Canadian witnesses to testify at trial; (iii) the Court or jury would determine that scienter was not proven because assessing asset impairment requires complex accounting estimates and significant exercise

---

[1]    Pursuant to D.C.COLO.L.CivR 7.1(a): Lead Counsel has conferred with Defendants' Counsel prior to filing this motion. Lead Plaintiff is authorized to state that Defendants do not oppose the relief Lead Plaintiff seeks in this motion, but Defendants do not endorse or join in Lead Plaintiff's characterization of its claims.

[2]    All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Stipulation of Settlement, dated September 12, 2022 ("Stipulation"). ECF 178. Citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

4891-4731-9169.v1

of judgment; and (iv) protracted and expensive continued litigation, including trial and likely appeals, could ultimately lead to a much smaller recovery or no recovery at all.

Before agreeing to the Settlement, Lead Counsel had a thorough understanding of the strengths and weaknesses of the case. Indeed, the Settlement is the result of more than four years of hard-fought litigation among sophisticated parties and experienced and well-informed counsel. Lead Counsel undertook a thorough investigation and filed a detailed amended complaint, in response to which Defendants filed a partially successful motion to dismiss. Lead Plaintiff obtained certification of the Class. The parties conducted fact, class, and expert discovery. Discovery was contentious but resulted in the production, review, and analysis of hundreds of thousands of pages of documents from Defendants and third parties as well as the completion of nearly a dozen depositions. Moreover, the Settling Parties participated in three formal mediation sessions and numerous additional informal settlement discussions with an experienced mediator, Gregory P. Lindstrom, Esq. of Phillips ADR.

On June 5, 2023, the Court granted preliminary approval of the Settlement, and permitted notice to the Class ("Preliminary Approval Order"), finding that the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. ECF 193, ¶¶1-2. Nothing has changed to disturb the Court's assessment of the Settlement at preliminary approval.

In accordance with the Preliminary Approval Order, Lead Counsel ensured distribution of the robust Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses ("Notice") and publication of the Summary Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses ("Summary Notice"). *See*

- 2 -

4891-4731-9169.v1

Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl.") (ECF 194), ¶¶3-10, and the Supplemental Declaration of Ross D. Murray Regarding Notice Dissemination and Requests for Exclusion Received to Date ("Supp. Murray Decl."), ¶¶4-12, submitted herewith. On July 7, 2023, the Claims Administrator, Gilardi & Co. LLC ("Gilardi"), commenced mailing copies of the Notice Packet (defined herein) by First-Class Mail to all Class Members who could be identified with reasonable effort and posted it on the Settlement website along with comprehensive information about the Settlement and how to submit a claim both electronically and by mail. Murray Decl., ¶¶5-8, 14. Further, on July 24, 2023, the Summary Notice was published in both *The Wall Street Journal* and over *Business Wire*. *Id.*, ¶12. To date, not a single objection to the proposed Settlement has been made, and only three requests for exclusion have been received. Supp. Murray Decl., ¶¶5-6.

The Notice also includes the Plan of Allocation which governs how claims will be calculated and how Settlement proceeds will be allocated among Authorized Claimants. To date, not a single objection to the Plan of Allocation has been filed.

Lead Counsel has concluded that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and in the best interest of the Class. *See generally* Declaration of Trig R. Smith in Support of Motions for Final Approval of Class Action Settlement, Plan of Allocation, and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Smith Decl." or "Smith Declaration"), submitted herewith. The Settlement and Plan of Allocation warrant the Court's final approval. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement as set forth in the Stipulation and the proposed Plan of Allocation as fair, reasonable, and adequate.

4891-4731-9169.v1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This securities fraud class action alleges violations of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against Defendants on behalf of a class of purchasers of Maxar common stock between May 9, 2018 through October 30, 2018, inclusive, and who were damaged thereby (with certain exceptions) ("Class").[3]  Lead Plaintiff alleges that, during the Class Period, Defendants knowingly or recklessly made materially false or misleading statements and omissions regarding the value and trajectory of Maxar's GeoComm satellite business, misrepresenting or omitting information concerning, among other things, Maxar's AMOS-8 satellite contract, the decline in demand for GeoComm satellites, and the financial impairment of Maxar's GeoComm business.  Smith Decl., ¶6.  Lead Plaintiff also alleges that the price of Maxar common stock was artificially inflated by Defendants' allegedly misleading statements and omissions, and that Lead Plaintiff and the Class suffered damages when the truth about Maxar's GeoComm business emerged in a series of disclosures and Maxar's stock price dropped by over 44%.  Defendants deny, and continue to deny, Lead Plaintiff's allegations of wrongdoing.  The Smith Declaration, filed simultaneously herewith, and adopted by reference herein, fully describes the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.  *See generally* Smith Decl.

---

[3]    Lead Plaintiff initially alleged a class period of May 9, 2018, through January 6, 2019, inclusive, but in its order on Defendants' motion to dismiss, the Court narrowed Lead Plaintiff's claims such that the Class Period was shortened to May 9 2018, through October 30, 2018, inclusive.  ECF 69.

- 4 -

### III.     LEAD PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2)(B) also provides that notice of a class settlement must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).  Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

As explained in Lead Plaintiff's memorandum in support of preliminary approval (ECF 177, at §V), the Court-approved Notice and Proof of Claim (the "Notice Packet") satisfy these standards and amply inform Class Members of all relevant case and Settlement-related information.  For these reasons, the Court's Preliminary Approval Order found that the form and content of the notice program here, as well as the methods for notifying the Class proposed on preliminary approval, "constitute the best notice to Class Members practicable under the circumstances" and "satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rule 23(c)-(e)), the United States Constitution (including the Due Process Clause), Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the [PSLRA], the Rules of this Court, and other applicable law."  ECF 193, ¶4.

Here, the combination of: (i) individual First-Class Mail of more than 34,000 copies of the Notice Packet to all potential Class Members who could be identified with reasonable effort and

- 5 -

known record holders, supplemented by mailed notice to brokers and nominees; and (ii) publication of the Summary Notice in a relevant, widely-circulated publication, transmission on a newswire and through a settlement website, has proven highly successful and is typical of notice plans approved in securities class action settlements.[4]  It was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *2 (D. Colo. Apr. 13, 2021) (approving a substantially similar proposed notice and method for mailing, distributing, and publishing the notice); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333999, at *2 (D. Colo. Mar. 6, 2017) (same); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 693 (D. Colo. 2014) (approving proposed method of notice, consisting of mailing notice to class members identified through reasonable efforts and through posting a summary notice by press releases issued over leading business oriented newspapers).

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

It is well established within this Circuit that the settlement of a complex class action, such as this, is both favored and encouraged.  *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) (approving class action settlement, noting that "'[i]t is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies'") (quoting *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969)).  Because of this, when exercising their sound discretion to approve a settlement, courts are mindful "'not to decide the merits of the case or resolve unsettled legal questions.'"  *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015).

---

[4]    Murray Decl., ¶¶11-14; Supp. Murray Decl., ¶4.

4891-4731-9169.v1

Fed. R. Civ. P. 23(e)(2) provides that a class action settlement may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate," and identifies the following factors to be considered by courts at final approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Tenth Circuit traditionally consider the following, which largely overlap with the Rule 23(e)(2) factors:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1101 (D. Kan. Dec. 7, 2018) (citing *Tennille*, 785 F.3d at 434).[5]

The Court preliminarily determined that the proposed Settlement for $27,000,000 meets these standards and is fair, reasonable, and adequate. ECF 193, ¶2. As discussed below, the Court's initial disposition was correct, as the Settlement easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors to support final approval.

---

[5]    The new Rule 23(e) factors "were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement." *DaVita*, 2021 WL 1387110, at *3. "The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23. Accordingly, a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *Id.*

- 7 -

4891-4731-9169.v1

A.    **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

To determine if the Class is adequately represented under Rule 23(e)(2), courts have utilized the standard for evaluating adequacy under Rule 23(a)(4) for class certification purposes: "whether (1) 'the named plaintiffs and their counsel have any conflicts of interest with other class members'; and (2) 'the named plaintiffs and their counsel [have] prosecute[d] the action vigorously on behalf of the class.'" *In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020) (alterations in original) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)), *aff'd*, 997 F.3d 1077 (10th Cir. 2021).  Lead Counsel and Lead Plaintiff readily meet this factor.

***First***, neither Lead Counsel nor Lead Plaintiff have any conflicts of interest with the Class. Lead Plaintiff's interests are fully aligned with the Class, and it has received no preferential treatment.  *See, e.g.*, ECF 26-2, 26-3 (demonstrating Lead Plaintiff's Class Period purchases of Maxar common stock, and resulting damages).  Lead Plaintiff is an "institutional investor[] of the type favored by Congress when passing the PSLRA and [has] adequately represented the interests of the settlement class by closely monitoring and participating in this litigation from the outset through resolution." *DaVita*, 2021 WL 1387110, at *4.

***Second***, as described in Section II, above, Lead Counsel and Lead Plaintiff have vigorously prosecuted this action for over four years on behalf of the Class.  In addition to a thorough investigation, Lead Plaintiff filed a detailed amended complaint and Defendants filed a substantial, wide-ranging motion to dismiss.  Smith Decl., ¶¶22-31.  The parties conducted fact, class and expert discovery, and Lead Plaintiff successfully obtained class certification.  *Id.*, ¶¶22-67.

4891-4731-9169.v1

These vigorous efforts, among others, created a strong negotiating position and demonstrate Lead Plaintiff's and Lead Counsel's adequacy. *See Reiskin v. Reg'l Transp. Dist. Colo.*, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) ("The case involved intensive discovery, including the review of thousands of pages of documents. . . . Numerous motions were filed and responded to, including well-briefed dispositive motions."); *Thornburg*, 912 F. Supp. 2d at 1237 ("[T]he Plaintiffs have vigorously prosecuted this action on behalf of the class, as the Plaintiffs successfully defended their claims through a motion to dismiss, and successfully reached a settlement with the Settling Defendants.").

Throughout the Litigation, and as evidenced by the highly favorable Settlement, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Class. Therefore, Lead Plaintiff and Lead Counsel respectfully submit that they have adequately represented the Class and satisfy Rule 23(e)(2)(A) for purposes of final approval.

## B.     The Proposed Settlement Was Negotiated at Arm's Length and With an Experienced Mediator

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by the Tenth Circuit, which assesses whether "the settlement was fairly and honestly negotiated." *See Syngenta*, 357 F. Supp. 3d. at 1102. The Settlement was achieved as a result of extensive, arm's-length negotiations by Mr. Lindstrom, a neutral, third-party mediator. Smith Decl., ¶¶68-70. The three formal mediation sessions involved thorough discussions regarding the parties' respective claims and defenses as well as the strengths and weaknesses of the Litigation. *Id.* The parties were unable to reach a compromise at the mediations, but continued negotiating until Lead Plaintiff was

- 9 -

able to reach a settlement with Defendants.  *Id.*, ¶70.  This mediation process demonstrates that the Settlement was negotiated absent any collusion between the parties.[6]

Likewise, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and well-versed counsel.  *See Ogden v. Figgins*, 2017 WL 5068906, at *3 (D. Kan. Nov. 3, 2017) ("'When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.'"); *Horton v. Molina Healthcare, Inc.*, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement fair and reasonable because, *inter alia*, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator").  The Settlement was reached at an advanced stage of the case, following substantial discovery, when Lead Counsel was certainly well-versed on the strengths and weaknesses of the case.  Moreover, the fact that the Settlement was reached under the supervision and endorsement of Lead Plaintiff, a sophisticated institutional investor, further bolsters its reasonableness.[7]  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) ("Settlement negotiations were carried out under the direction of Lead Plaintiffs, sophisticated institutional investors whose involvement suggests procedural fairness."), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40

---

[6]    *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020) (determining that a settlement "negotiated through a formal mediation" with an experienced mediator supported the conclusion that the settlement "is a product of an arm's length negotiation"); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion, and should therefore be approved.").

[7]    *See* Declaration of Ryan Stephens ("Stephens Decl."), ¶7, submitted herewith.

4891-4731-9169.v1

(2d Cir. 2020).  As such, the Settlement was fairly and honestly negotiated and the requirements of

Rule 23(e)(2)(B) are met.

### C.     The Costs, Risks, and Delay of Trial and Appeal

The third factor considered under Rule 23(e)(2) instructs courts to consider the adequacy of

the settlement relief in light of "the costs, risks, and delay of trial and appeal."  *See* Fed. R. Civ. P.

23(e)(2)(C)(i).  This factor overlaps with the combined second and third factors considered by the

Tenth Circuit – whether "serious legal and factual questions placed the litigation's outcome in

doubt" and whether "'the immediate recovery was more valuable than the mere possibility of a more

favorable outcome after further litigation.'"  *Tennille*, 785 F.3d at 434; *see Chavez Rodriguez*, 2020

WL 3288059, at *3.  Taken together, these factors also weigh heavily in support of final approval of

the Settlement.

### 1.     Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

If the Litigation were to continue, serious questions of law and fact would place the outcome

in significant doubt.  Courts within this Circuit and nationwide recognize that securities class actions

are notoriously complex and present numerous hurdles at all stages of litigation.[8]  This case is no

exception.

---

[8]  *See, e.g.*, *Christine Asia Co. Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019)
("'In evaluating the settlement of a securities class action, federal courts, including this Court, have
long recognized that such litigation is notably difficult and notoriously uncertain.'"); *Crocs*, 306
F.R.D. at 691 (recognizing "a risk that plaintiffs would be unable to establish the required elements
of their §10(b) claims" and that plaintiffs should "consider their likelihood of success certifying a
relevant class, surviving summary judgment, and winning at trial"); *Thornburg*, 912 F. Supp. 2d at
1242 (recognizing difficulty associated with proving loss causation and establishing damages, and
finding that the parties "disagree on many factual and legal issues, making the likelihood of
prevailing at trial problematic").

- 11 -

While Lead Plaintiff was able to partially successfully overcome Defendants' motion to dismiss, "that ruling provides no guarantee that [Lead Plaintiff] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008); *see In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) ("Although plaintiffs survived defendants' motion to dismiss, they did so only under the very narrow standard of review which the court must apply to Rule 12(b)(6) motions.").[9] Defendants would undoubtedly file dispositive motions, including motions for summary judgment and *Daubert* motions, and if Lead Plaintiff's claims survived those motions, a trial would be lengthy, complicated, and risky. *See Sprint*, 443 F. Supp. 2d at 1261 ("even if plaintiffs could have survived defendants' motions for summary judgment, additional serious questions of law and fact also would have placed in doubt the value of the recovery plaintiffs might have been able to obtain").

Defendants strenuously argued that they face no liability. Specifically, Defendants maintained that the majority of Lead Plaintiff's allegations are based on non-actionable, forward-looking statements and that certain other statements were non-actionable puffery. *See* Smith Decl., ¶8.[10] Defendants also claimed that Lead Plaintiff could not prove that any Defendant acted with the requisite state of mind, because assessing for impairment requires complex accounting estimates and significant exercise of judgment, and the failure to take an impairment was not the result of

---

[9]    Notably, the Court's order on the motion to dismiss shortened the proposed Class Period by three months.  Smith Decl., ¶6.

[10]    Defendants argued that Maxar later took an impairment charge on its GeoComm assets in due course, and that its earlier financial statements, where no impairment was taken, were not false or misleading. *Id.*, ¶8.

- 12 -

fraudulent intent. *Id*. Notably, Maxar's auditors had signed off on Maxar's accounting during the Class Period. *Id*.

Lead Plaintiff would face additional risk in establishing loss causation and damages. As to loss causation, Defendants disputed that the alleged fraud caused the price of Maxar common stock to drop. Defendants argued that the alleged corrective disclosures "did not correct any prior misstatements." ECF 51 at 24. Ultimately, these issues would come down to an unpredictable and hotly disputed "'battle of the experts,'" *see Thornburg*, 912 F. Supp. 2d at 1242, and Lead Plaintiff's claims were at risk because Lead Plaintiff's expert witness testimony would inevitably be challenged by Defendants under *Daubert*. *See* Smith Decl., ¶¶76-77. Lead Plaintiff's case would become much more difficult to prove if the Court were to determine that even one of Lead Plaintiff's experts should be excluded from testifying at trial. As a result, "[t]he suggestion that the Court should force an experienced, seasoned Plaintiffs' class counsel to take the case to trial should not be made lightly, for victory is not assured or even likely except in the very best of cases." *Thornburg*, 912 F. Supp. 2d at 1242.[11]

Therefore, considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation and additional delays, the Class could have received an amount significantly less than the Settlement Amount, or nothing at all.

---

[11]  Further complicating a possible trial on the litigation was the fact that several key witnesses reside in Canada, outside the jurisdiction and subpoena power of this Court, and there was no guarantee that these witnesses would voluntarily appear at trial. Smith Decl., ¶11.

- 13 -

4891-4731-9169.v1

### 2. The Recovery Is Particularly Significant in Light of the Delay in Further Litigation

The $27,000,000 relief offered by the proposed Settlement is substantial, approximately 28% of the reasonably estimated recoverable damages. *See* Smith Decl., ¶75. This percentage recovery is multiples of the 4.9% median ratio of settlement amount to estimated investor losses for securities class actions in 2022 where damages are between $75 and $149 million.[12] *Id*. Indeed, courts within this Circuit have found settlements representing less than 2% of estimated damages as appropriate for final approval. *See, e.g.*, *Crocs*, 306 F.R.D. at 691 n.20 (finding recovery of approximately 1.3% of amount of damages "is in line with the median ratio of settlement size to investor losses"). Further, there is something to be said about the additional value inherent in immediacy. *See Thornburg*, 912 F. Supp. 2d at 1244 ("'To most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)). This is particularly so where the size of any potential recovery would have been reduced by additional costs incurred by Lead Counsel in taking this case through trial and likely appeals. *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial").

Indeed, while this Litigation has been pending for over four years, absent settlement there would likely be many more years of litigation ahead. The Settling Parties and the Court would expend significant time, resources, and costs to complete pre-trial proceedings, including completion of discovery, and briefing on Defendants' likely summary judgment and *Daubert* motions. *See*

---

[12] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023) at 6, Fig. 5, available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf and attached as Ex. A to the Smith Decl.

4891-4731-9169.v1

*Thornburg*, 912 F. Supp. 2d at 1206 ("any insurance proceeds which remain could be depleted by covering the defense costs necessary to go to trial, including discovery, depositions, and time in court").  Even assuming Lead Plaintiff was successful at trial, Defendants could still appeal any verdict eventually obtained, which could take years to resolve and would unnecessarily expend judicial resources.  *See, e.g.*, *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

Courts routinely recognize the value of an immediate recovery in the face of delays and uncertainty.  *See McNeely*, 2008 WL 4816510, at *13 ("The class . . . is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."); *Crocs*, 306 F.R.D. at 691 ("[The] immediate recovery in this case outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery."); *In King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("In this respect, 'it has been held proper "to take the bird in the hand instead of a prospective flock in the bush."'"); *accord Tennille v. W. Union Co.*, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014).

Considering the hurdles associated with continued litigation, the immediate, substantial relief offered by the $27,000,000 Settlement greatly outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."  *See In re Syngenta Ag Mir 162 Corn Litig.*, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018).  Therefore, Lead Plaintiff respectfully submits that consideration of the costs, risks, and delay of trial and appeal strongly weighs in favor of the Settlement.

- 15 -

### D.    The Proposed Method for Distributing Relief Is Effective

As demonstrated above and discussed in more detail in the Murray Declarations, the method of disseminating the notice and the claims administration process are both "effective" pursuant to Rule 23(e)(2)(C)(ii).  As described in §III herein, Lead Plaintiff and Lead Counsel provided the best notice practicable under the circumstances in accordance with the Court's Preliminary Approval Order and the requirements of Rule 23, due process, and the PSLRA.  The Notice and claims processes are similar to that commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided.  *See* §§III and V, *infra*. As described in §V herein, the proposed Plan of Allocation was formulated after analysis from Lead Counsel's damages consultant.  It is designed to fairly and rationally allocate the proceeds of this Settlement to the Class in a cost-effective manner.  Thus, Lead Plaintiff respectfully submits that it has demonstrated a thorough and effective method of distributing relief, further supporting final approval.

### E.    The Requested Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's separate application, it seeks an award of attorneys' fees in the amount of 30% of the Settlement Amount, in addition to interest earned on such amount.

This request is in line with recent fee awards in this Circuit.  *See* Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), at 6-7.  Further, this is an all-cash, non-reversionary settlement and the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible to do.  As such,

- 16 -

there is no risk that Lead Counsel will be paid but Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).[13]

**F.      The Settling Parties Have No Additional Agreement Other Than an Agreement to Address Requests for Exclusion**

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As disclosed in moving for preliminary approval, the Settling Parties have entered into a standard supplemental agreement providing that, in the event Class Members with Class Period purchases of Maxar common stock that exceed a certain threshold validly request exclusion from the Class, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.4. These types of agreements are "standard in securities class action settlements and [therefore] ha[ve] no negative impact on the fairness" of the Settlement. *See Christine Asia*, 2019 WL 5257534, at *15.

**G.      Class Members Are Treated Equitably**

Rule 23(e)(2)(D) considers whether Class Members are treated equitably. As discussed further below in §V, all Class Members are treated equitably under the terms of the Stipulation, including the Plan of Allocation set forth in the Notice. The Plan of Allocation provides that each Class Member that properly submits a valid Proof of Claim will receive his, her or its *pro rata* share of the Net Settlement Fund. *See* §V, *infra*. Indeed, Lead Plaintiff will be subject to the same

---

[13]    The Stipulation provides that any attorneys' fee award shall be paid to Lead Counsel after the Court executes the Judgment and Order awarding such fees. Stipulation, ¶6.2.

- 17 -

4891-4731-9169.v1

formula for distribution of the Net Settlement Fund as every other Class Member. This factor therefore supports granting final approval of the Settlement.

### H.    The Judgment of the Settling Parties

The final, additional factor courts in the Tenth Circuit consider is whether the parties view the settlement as fair and reasonable. *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1246 (D. Kan. 2015). Lead Plaintiff and Lead Counsel both strongly endorse the Settlement as fair and reasonable, and believe it is in the best interests of the Class. *See* Stephens Decl., ¶7. Lead Counsel has extensive experience litigating securities class actions (*See* accompanying Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. F (RGRD firm resume)) and considered the risks and delays of continued litigation and the range of possible recovery. Smith Decl., ¶80. As a result, this factor weighs heavily in favor of final approval. *See O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at \*14 (D. Colo. Sept. 9, 2019) (recognizing that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight'") (alteration in original); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at \*5 (D. Kan. Feb. 15, 2018) ("'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'").

Additionally, the reaction of the Class to date has been overwhelmingly positive. While over 34,000 Notice Packets have been mailed, and the Summary Notice has been published, no objections and only three opt outs have been received. Suppl. Murray Decl., ¶¶4-6. This positive reaction further evidences the merit of the Settlement. *See Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485,

at *3 (C. Colo. May 21, 2019) ("The fact that no class member objects shows that the class also considers this settlement fair and reasonable.").

## V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The proposed Plan of Allocation, set forth in the Notice, details how the Net Settlement Fund is to be allocated among Authorized Claimants.  The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, reasonable, and adequate." *See Lucas*, 234 F.R.D. at 695.  In making this determination, courts give great weight to the recommendation of experienced counsel.  *See id.*  ("'An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'").

Here, the Plan of Allocation was formulated after analysis from Lead Counsel's damages consultant.  It is based on the out-of-pocket measure of damages and is consistent with Lead Plaintiff's allegations.  Further, the Plan of Allocation will distribute the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants.  Calculation of a Recognized Claim will depend upon several factors, including when the securities were purchased, acquired, sold, or held.

Lead Counsel submits that this method of distributing settlement funds is fair, reasonable, and adequate, and warrants this Court's approval.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *2 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving similar plan of allocation); *Crocs*, 306 F.R.D. at 692 (approving plan of allocation in securities class action settlement where funds will be allocated "pro rata" based on similar factors and plaintiffs "consulted with damages experts").  Notably, there have been no

- 19 -

objections to the Plan of Allocation to date, which further supports its merit at final approval. *See id.* at 691 ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair.").

## VI. CONCLUSION

For the reasons set forth above and in the accompanying declarations, Lead Plaintiff respectfully requests that the Court: (i) approve the proposed Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable.

DATED: October 2, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
TRIG R. SMITH
JEFFREY J. STEIN
CHRISTOPHER D. STEWART
NICOLE Q. GILLILAND
PATTON L. JOHNSON

s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
elleng@rgrdlaw.com
trigs@rgrdlaw.com
jstein@rgrdlaw.com
cstewart@rgrdlaw.com
ngilliland@rgrdlaw.com
pjohnson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

- 20 -

4891-4731-9169.v1

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 2, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Spencer A. Burkholz*
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com

## Mailing Information for a Case 1:19-cv-00124-WJM-SKC Oregon Laborers Employers Pension Trust Fund et al v. Maxar Technologies Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew W. Close**
  mclose@omm.com,matthew-close-5511@ecf.pacerpro.com,mmena-hadyka@omm.com,mleu@omm.com

- **Nicole Gilliland**
  ngilliland@rgrdlaw.com

- **Kate Mie Ikehara**
  kikehara@omm.com,kate-ikehara-0705@ecf.pacerpro.com

- **Patton L. Johnson**
  pjohnson@rgrdlaw.com,panderson@rgrdlaw.com,TerreeD@rgrdlaw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Brittany Allison Rogers**
  brogers@omm.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,panderson@rgrdlaw.com,ChristC@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com

- **Christopher Dennis Stewart**
  cstewart@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Ellen Gusikoff Anne Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan Bryce Waxman**
  jwaxman@omm.com,jonathan-waxman-8134@ecf.pacerpro.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Phillup G  Newhope
,

Logan Durant
,

Michael W Slaunwhite
,