**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00124-WJM-SKC
*Consolidated with Civil Action No. 1:19-cv-00758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

      Defendants.

---

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF
PURSUANT TO 15 U.S.C. §78u-4(a)(4) AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

4868-0919-8210.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    LEAD COUNSEL IS ENTITLED TO A REASONABLE PERCENTAGE OF THE COMMON FUND ........................................................................................3

III.   LEAD COUNSEL SEEKS A PERCENTAGE CONSISTENT WITH WHAT COURTS IN THIS DISTRICT AND CIRCUIT HAVE FOUND TO BE REASONABLE ......................................................................................................6

IV.   THE "*JOHNSON* FACTORS" SUPPORT THE REASONABLENESS OF LEAD COUNSEL'S FEE REQUEST ........................................................................7

     A.     The Amount Involved and the Results Obtained.......................................8

     B.     The Customary Fee – the Percentage Requested – Is Consistent with Those Typically Awarded in This District and This Circuit....................................9

     C.     Time and Labor Required .........................................................................9

          1.    The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee ..........................................................9

          2.    A Lodestar Cross-Check Also Supports Lead Counsel's Fee Request.......................................................................................10

     D.     The Novelty and Difficulty of the Legal and Factual Questions Support Lead Counsel's Fee Request.....................................................................12

          1.    Risk in Establishing Liability.....................................................12

          2.    Risk in Establishing Causation and Damages............................13

     E.     The Skill Required and the Experience, Reputation, and Ability of Lead Counsel Support the Requested Fee ....................................................14

     F.     The Contingent Nature of the Fee Weighs in Favor of the Requested Award...................................................................................................14

     G.     The Preclusion of Other Employment by Plaintiffs' Counsel Supports the Requested Fee ..................................................................................17

     H.     The Undesirability of the Case Supports the Requested Attorneys' Fees and Expenses........................................................................................17

4868-0919-8210.v1

**Page**

V.     THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER
       SUPPORTS ITS REASONABLENESS.............................................................................17

VI.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ITS REASONABLE
       LITIGATION EXPENSES ..............................................................................................18

VII.   THE REQUESTED PSLRA AWARD FOR LEAD PLAINTIFF SHOULD BE
       APPROVED ....................................................................................................................19

VIII.  CONCLUSION.................................................................................................................20

4868-0919-8210.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................................15

*Barr v. Qwest Commc'ns Co., LLC*,
2013 WL 141565 (D. Colo. Jan. 11, 2013)...........................................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).................................................................................................................4

*Bennett v. Sprint Nextel Corp.*,
2015 WL 13648083 (D. Kan. Aug. 12, 2015) ..................................................................11, 17

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................................4

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) .............................................................................................7, 8

*Cox v. Spring Commc'ns Co. L.P.*,
2012 WL 5512381 (D. Kan. Nov. 14, 2012) .........................................................................11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................................3, 13

*Eatinger v. BP Am. Prod. Co.*,
No. 6:07-cv-01266-EFM-KMH, ECF 375 (D. Kan. Sept. 17, 2012) ..............................16, 17

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ...............................................................................................4, 5

*Hubbard v. BankAtlantic Bankcorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................................16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................................13

*In re Charter Commc'ns, Inc.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................................12

**Page**

*In re Crocs., Inc. Sec. Litig.*,
   2014 WL 4670886 (D. Colo. Sept. 18, 2014)............................................................11, 12, 14

*In re EVCI Career Coll. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007).........................................................................13

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976)........................................................................................12

*In re Miniscribe Corp.*,
   309 F.3d 1234 (10th Cir. 2002) ...........................................................................................11

*In re Molycorp, Inc. Sec. Litig.*,
   2017 WL 11598681 (D. Colo. June 16, 2017)...................................................................7, 20

*In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*,
   149 P.3d 976 (N.M. Ct. App. 2006).......................................................................................5

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ...............16

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)...................................................................................................4

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   461 F. Supp. 2d 383 (D. Md. 2006).......................................................................................4

*In re Sandridge Energy, Inc. Sec. Litig.*,
   No. 12-1341-G, ECF 592 (W.D. Okla. Dec. 30, 2022) ...........................................................6

*In re St. Paul Travelers Sec. Litig.*,
   2006 WL 1116118 (D. Minn. Apr. 25, 2006).........................................................................5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................................4, 6

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ...................................................................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
   842 F. Supp. 2d 522 (S.D.N.Y. 2012)...................................................................................16

4868-0919-8210.v1

**Page**

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................................................................14

*In re Williams Sec. Litig.-WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) ......................................................................................16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)..........................................................................5, 16

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964)...........................................................................................................4

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974),
*abrogated by Blanchard v. Bergeron*,
489 U.S. 87 (1989) ...........................................................................................7, 8, 14, 17

*Lucas v. Kmart Corp.*,
2006 WL 2729260 (D. Colo. July 27, 2006) ..................................................................17

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .............................................................................................6

*Millsap v. McDonnell Douglas Corp.*,
2003 WL 21277124 (N.D. Okla. May 28, 2003)..........................................................8, 17

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)...........................................................................................................6

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010)..........................................................................................................16

*Nakamura v. Wells Fargo Bank, Nat'l Ass'n*,
2019 WL 2185081 (D. Kan. May 21, 2019).....................................................................6

*Oppenlander v. Standard Oil Co. (Ind.)*,
64 F.R.D. 597 (D. Colo. 1974) ..........................................................................................8

*Paulson v. McKowen*,
2023 WL 2528783 (D. Colo. Mar. 15, 2023) ..............................................................6, 11

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 1387110 (D. Colo. Apr. 13, 2021)................................................................3, 19

4868-0919-8210.v1

**Page**

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) .................................................................... *passim*

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018) ..........................................................................16

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015).............................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).......................................................................................3

*Uselton v. Com. Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) .........................................................................5, 8

*Vaszlavik v. Storage Corp.*,
  2000 WL 1268824 (D. Colo. Mar. 9, 2020) .............................................11, 14, 18

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
  No. 2:18-cv-02662-JWL-KGG, ECF 107 (D. Kan. Dec. 18, 2020).........................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ...............................................................................1, 3, 19, 20
  §78u-4(a)(6) ...................................................................................4

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369, at 35 (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730 ....................................................................19

Laarni T. Bulan and Laura E. Simmons,
  *Securities Class Action Settlements: 2022 Review and Analysis*
  (Cornerstone Research 2023)...........................................................................9

*Report of the Third Circuit Task Force, Court Awarded Attorneys Fees*,
  108 F.R.D. 237 (Oct. 8, 1985) ..........................................................................5

4868-0919-8210.v1

Lead Counsel respectfully submits this memorandum in support of its application for an award of attorneys' fees and expenses and an award to Lead Plaintiff Oregon Laborers Employers Pension Trust Fund ("Oregon Laborers") pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.[1]

## I. INTRODUCTION

Lead Counsel aggressively litigated this highly complex securities litigation for over four years, overcame obstacles throughout the case, and achieved a commendable result for the Class. In awarding fees, courts consider several factors, including the quality and quantity of work as reflected in the results obtained. Here, Lead Counsel worked tirelessly in devoting over 13,900 hours without pay in order to obtain a very favorable Settlement for the Class. The Settlement Fund consists of $27,000,000, plus interest earned thereon. For all the reasons set forth herein and in the accompanying Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Memorandum") and Declaration of Trig R. Smith in Support of Motions for Final Approval of Class Action Settlement, Plan of Allocation, and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Smith Decl."), the Settlement is an outstanding result.

The $27,000,000 all-cash recovery was achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of highly complex factual and legal issues, considerable risk,

---

[1] Pursuant to D.C.COLO.L.Civ.R. 7.1(a): Lead Counsel has conferred with Defendants' Counsel prior to filing this motion. Lead Counsel is authorized to state that Defendants do not oppose the relief Lead Counsel seeks in this motion, but Defendants do not endorse or join in Lead Counsel's motion.

- 1 -

and an aggressive defense. The Settlement was reached only after Lead Counsel partially overcame Defendants' motion to dismiss by sufficiently alleging, and arguing the legal merits of, Lead Plaintiff's claims and obtaining class certification. Absent the Settlement, and assuming Lead Plaintiff prevailed on Defendants' certain-to-be-filed summary judgment and *Daubert* motions, the claims against Defendants could have continued for many years through trial, and likely appeals. The Settlement provides Class Members with a substantial cash benefit now, rather than a potential recovery after several years of continued litigation, and eliminates the possibility of no recovery at all or of the costs of litigation diminishing the recovery.

As compensation for its efforts, Lead Counsel respectfully requests an award of attorneys' fees of 30% of the Settlement Amount and payment of litigation expenses of $825,853.33, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund. Lead Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Faced with complex issues, and opposed by experienced defense counsel, Lead Counsel nevertheless succeeded in securing a favorable result for the Class. Lead Counsel believes its reputation as a leader in this field, its diligent efforts, and its dedication to the interests of the Class substantially contributed to obtaining the Settlement. The requested fee is well within the range of percentages normally awarded in securities class action and other common fund settlements in this Circuit, and it is the appropriate method of compensating counsel.

The Litigation may have been settled at a far lesser amount earlier in the litigation, but Lead Counsel continued to incur risk and expense by litigating to a more favorable resolution. Throughout the Litigation, Lead Counsel demonstrated it was prepared to take this case through trial

- 2 -

4868-0919-8210.v1

and beyond to achieve a terrific result for the Class.  Since fee awards are designed to encourage counsel to get the best possible result for the class, the amount requested in this case is warranted given the exceptional recovery obtained and the significant obstacles and risks Lead Counsel faced in bringing and prosecuting this case.

Lead Plaintiff, an institutional investor that has overseen the Litigation, approves of and endorses the requested fee.  The endorsement by the Court-appointed Lead Plaintiff is particularly significant because the PSLRA was passed to encourage more diligent institutional investors to seek lead plaintiff status and oversee securities class actions.  *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110 (D. Colo. Apr. 13, 2021) ("*DaVita I*").  Lead Counsel respectfully requests that this Court approve the requested amount of fees and litigation expenses as justified under the particular facts of this case.

Separately, Lead Plaintiff seeks an award of $3,900.00 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  Lead Plaintiff supports its application with a declaration setting forth the basis for the award, which is substantially lower than awards in other similar cases.  *See* Declaration of Ryan Stephens ("Stephens Decl."), submitted herewith.  Lead Plaintiff respectfully requests that the Court approve the requested award.

## II.     LEAD COUNSEL IS ENTITLED TO A REASONABLE PERCENTAGE OF THE COMMON FUND

Fee awards in meritorious cases promote private enforcement of, and compliance with, the federal securities laws, which "seek to maintain public confidence in the marketplace.  They do so by deterring fraud, in part, through the availability of private securities fraud actions."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  For over fifty years, the Supreme Court has repeatedly emphasized that

- 3 -

4868-0919-8210.v1

private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"[2]  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class").  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered on the theory "'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'"  *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (awarding fees based on percentage of settlement fund) (quoting *Boeing*, 444 U.S. at 478).

In 1995, Congress passed the PSLRA and codified the percentage-of-recovery approach for awarding fees in common fund securities fraud cases.  15 U.S.C. §78u-4(a)(6).  Under the PSLRA, "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  Indeed, by its plain terms, the PSLRA sets the "award of attorneys' fees and expenses to 'a reasonable percentage' of any recovery."  *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006).

---

[2]    Internal citations are omitted and emphasis is added throughout.

4868-0919-8210.v1

The Tenth Circuit has generally adhered to the percentage of the fund method for awarding attorneys' fees in common-fund cases such as this. *Gottlieb*, 43 F.3d at 482 ("the more recent trend has been toward utilizing the percentage method in common fund cases"). In *Gottlieb*, for instance, the Tenth Circuit explained that a percentage method for setting a fee "is less subjective than the lodestar plus multiplier approach," matches the marketplace most closely thus providing better incentive to counsel, and is better suited where class counsel "was initially retained on a contingent fee basis." 43 F.3d at 484; *see also Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (accepting the propriety of the percentage approach "rather than lodestar" in the awarding of attorneys' fees); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *1 (D. Colo. July 15, 2021) ("*DaVita II*") ("In common fund cases, the Tenth Circuit has 'recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis.'") (internal citation omitted).

"There are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005); *see also Rep. of the Third Cir. Task Force, Court Awarded Att'y Fees*, 108 F.R.D. 237, 254 (3d Cir. 1985). **First**, "[the percentage] methodology rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances." *In re St. Paul Travelers Sec. Litig.*, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006); *see also In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 149 P.3d 976, 993 (N.M. Ct. App. 2006) ("The percentage method is preferred in some jurisdictions, including the Tenth Circuit, because this method rewards efficient

- 5 -

and prompt resolutions of class actions . . . .").[3] ***Second***, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). ***Third***, use of the percentage method decreases the burden imposed upon courts by the "lodestar" method, and assures that class members do not experience undue delay in receiving their share of the settlement. *See Telik*, 576 F. Supp. 2d at 585 ("the 'primary source of dissatisfaction' with the lodestar methodology 'was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits'").

## III.   LEAD COUNSEL SEEKS A PERCENTAGE CONSISTENT WITH WHAT COURTS IN THIS DISTRICT AND CIRCUIT HAVE FOUND TO BE REASONABLE

As the Supreme Court has recognized, an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the open marketplace. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In complex cases, such as this one, "a fee award of one-third of the common fund [is] 'well within the range typically awarded in class actions.'" *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, 2019 WL 2185081, at *2 (D. Kan. May 21, 2019); *see Shaw*, 2015 WL 1867861, at *6 ("'customary fee . . . in a common fund settlement is approximately one third of the total economic benefit'").

Lead Counsel's request for attorneys' fees of 30% is consistent with fee percentages awarded by district courts within the Tenth Circuit in common fund cases. *See, e.g.*, *Paulson v. McKowen*,

---

[3]   *See also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) ("'The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis . . . .'") (awarding one third of common fund).

- 6 -

4868-0919-8210.v1

2023 WL 2528783, at *8 (D. Colo. Mar. 15, 2023) (awarding one-third fee); *In re Sandridge Energy, Inc. Sec. Litig.*, No. 12-1341-G, ECF 592, ¶3 (W.D. Okla. Dec. 30, 2022) (awarding one-third fee), attached as Exhibit A hereto; *DaVita II*, 2021 WL 2981970, at *4 (awarding 30% of $135 million settlement); *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, No. 2:18-cv-02662-JWL-KGG, ECF 107, ¶4 (D. Kan. Dec. 18, 2020) (awarding 30% fee) (Ex. B hereto); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 11598681, at *1 (D. Colo. June 16, 2017) (awarding 30%).  Based on the fees routinely awarded in common fund settlements like this, Lead Counsel's 30% fee request is both fair and reasonable.

## IV.    THE "*JOHNSON* FACTORS" SUPPORT THE REASONABLENESS OF LEAD COUNSEL'S FEE REQUEST

Courts in this jurisdiction consider the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989), for added guidance on setting reasonable fees.  *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (noting that "federal courts have relied heavily on the factors articulated . . . in [*Johnson*] in calculating and reviewing attorneys' fees awards").  The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  The weight to be given to each of the *Johnson* factors

4868-0919-8210.v1

varies from case to case, and each factor is not always applicable. *DaVita II*, 2021 WL 2981970, at *2. The factors applicable to this Litigation are addressed below.[4]

When evaluated under the applicable *Johnson* factors, Lead Counsel's fee request is reasonable.

### A.    The Amount Involved and the Results Obtained

"While other criteria in determining reasonable attorney fees are legitimate considerations, the amount of the recovery, and end result achieved, is of primary importance." *Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597, 605 (D. Colo. 1974). *See also DaVita II*, 2021 WL 2981970, at 2 ("Courts in this District have repeatedly found that when determining the amount of fees to be awarded, the 'greatest weight should be given to the monetary results achieved for the benefits of the class.'"). In addition, this factor "'may be given greater weight [in a common fund case when the court] determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class.'" *Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *8 (N.D. Okla. May 28, 2003) (quoting *Brown*, 838 F.2d at 456). Through its extensive efforts during the prosecution and settlement of this Litigation for over four years, Lead Counsel has obtained a substantial recovery for the Class of $27,000,000.

Based on an analysis of the parties' respective positions, Lead Counsel estimates that the Class's reasonable recoverable damages were approximately $96 million. The Settlement represents approximately 28% of this estimated amount. Smith Decl., ¶75. And it does so while avoiding the

---

[4]    The following factors do not pertain to this Litigation:  time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client. Thus, Lead Counsel will not analyze these factors. *See Uselton*, 9 F.3d at 854 (recognizing that "'rarely are all of the *Johnson* factors applicable'").

4868-0919-8210.v1

substantial risks Lead Plaintiff faced in establishing the Class's damages at trial.  Indeed, the recovery here is multiples above the median recovery of 4.9% in securities class actions in 2022 where damages are between $75 and $149 million.[5]  That Lead Counsel has secured such a result in the face of significant risks demonstrates that the requested fee of 30% is reasonable and fair.

**B.      The Customary Fee – the Percentage Requested – Is Consistent with Those Typically Awarded in This District and This Circuit**

As discussed above, Lead Counsel's request for 30% of the Settlement Amount is consistent with percentages routinely approved as fair and reasonable by courts in this District and in this Circuit in other complex class actions.  *See* §III, *supra*.

**C.      Time and Labor Required**

**1.      The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee**

The amount of time and labor Lead Counsel dedicated to the prosecution and settlement of the Litigation also demonstrates the reasonableness of the 30% fee request.  As detailed in the Smith Declaration, Lead Counsel vigorously prosecuted this Litigation for over four years.  This case was settled only after Lead Counsel, among other things: (i) conducted an extensive investigation, including investigative interviews of relevant third-party witnesses; (ii) filed a detailed amended complaint; (iii) successfully overcame, in substantial part, Defendants' motion to dismiss the Consolidated Complaint; (iv) identified, retained and consulted with experts in accounting, the satellite industry; market efficiency, causation and damages; (v) conducted comprehensive fact, class

---

[5]      *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, at 6, Fig. 5 (Cornerstone Research 2023), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf and attached as Ex. A to the Smith Decl.

- 9 -

and expert discovery, which involved numerous contentious meet and confer sessions with defense counsel and third party witnesses and the taking or defending of nearly a dozen depositions; (vi) reviewed and analyzed over 560,000 documents produced by Defendants and third parties; (vii) successfully moved for class certification supported by an expert report; (viii) sought discovery from individuals and entities in Canada; (ix) responded to Defendants' discovery requests; (x) coordinated discovery with counsel for plaintiffs in a related derivative action; and (xi) engaged in vigorous and protracted settlement negotiations with Defendants' Counsel, with the continued assistance of an experienced mediator.[6] *See generally* Smith Decl.  These significant efforts over a four-year period, paved the way for Lead Counsel to obtain a substantial financial recovery for the Class, and Lead Counsel should now be appropriately compensated for its efforts.

### 2. A Lodestar Cross-Check Also Supports Lead Counsel's Fee Request

The requested fee not only represents a reasonable percentage of the benefit obtained, but also reasonably reflects the work invested by Lead Counsel.  As demonstrated by Lead Counsel's fee declaration, after the review of all billing entries and the exercise of billing judgment, over 13,900 hours, resulting in an aggregate lodestar of $8,662,461.25, have been invested in this Litigation.  *See* accompanying Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Fee Decl."), ¶4.  As a result, Lead Counsel's request for an award of 30% of the Settlement Amount

---

[6]    Lead Counsel has and will continue to perform legal work on behalf of the Class should the Court approve the proposed Settlement and Plan of Allocation.  Additional resources will be expended assisting Class Members with their Proofs of Claim and related inquiries and working with the Claims Administrator, Gilardi & Co. LLC, to ensure the smooth progression of claims processing.

- 10 -

($8,100,000) – a 0.93 ***negative*** lodestar multiplier – is a slight discount on the time actually spent litigating the matter.

While courts in this Circuit regularly approve positive multipliers,[7] courts have repeatedly recognized that the reasonableness of a fee request under the percentage method is reinforced where the requested percentage fee would represent a negative multiplier of the lodestar, as is the case here. *See Paulson*, 2023 WL 2528783, at *7 ("[C]lass counsel will receive less than would have been warranted under the lodestar method.  This weighs in favor of the reasonableness."); *Bennett v. Sprint Nextel Corp.*, 2015 WL 13648083, at *1 (D. Kan. Aug. 12, 2015) (fee award resulted in significant negative multiplier); *Cox v. Spring Commc'ns Co. L.P.*, 2012 WL 5512381, at *3 (D. Kan. Nov. 14, 2012) (finding that the Kansas-only portion of a cumulative $41,500,000 attorneys' fee request was reasonable, in part because it was "subject to a ***negative*** multiplier") (emphasis in original); *Barr v. Qwest Commc'ns Co., LLC*, 2013 WL 141565, at *5 (D. Colo. Jan. 11, 2013) ("the fee-and-expense award is far from excessive" as it represents a negative multiplier); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1259 (D.N.M. 2012) ("The attorneys' fees represent a negative multiplier of the total lodestar amount and are an acceptable percentage of the Class' award.").

Accordingly, the reasonableness of Lead Counsel's 30% fee request is confirmed by a lodestar cross-check analysis.

---

[7]    *See, e.g.*, *DaVita II*, 2021 WL 2981970, at *3 (awarding fee representing 2.75 multiplier, "which is at the low end of the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit"); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming application of a 2.57 multiplier); *In re Crocs., Inc. Sec. Litig.*, 2014 WL 4670886, at *4-*5 (D. Colo. Sept. 18, 2014) (holding that the 1.23 multiplier was "well below" other approved multipliers that range from 2.5 to 4.6); *Vaszlavik v. Storage Corp.*, 2000 WL 1268824, at *3-*4 (D. Colo. Mar. 9, 2000) (noting that "[c]ourts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed").

4868-0919-8210.v1

### D.    The Novelty and Difficulty of the Legal and Factual Questions Support Lead Counsel's Fee Request

An analysis of the novelty and difficulty of the issues involved in the Litigation also favors granting Lead Counsel's request for attorneys' fees. "Securities fraud class actions are by their nature, complex and difficult to prove." *In re Charter Commc'ns, Inc.*, 2005 WL 4045741, at *14-*15 (E.D. Mo. June 30, 2005). *See also Crocs*, 2014 WL 4670886, at *3 ("[l]itigating an action under the PSLRA is not a simple undertaking"). This Litigation focused on highly complex factual and legal issues involving Maxar's GeoComm satellite business, and the accounting for asset impairment charges, specifically whether the failure to take an impairment charge was the result of fraudulent intent or judgment that just turned out to be wrong. Lead Counsel required the assistance of experts and consultants to understand the operation of Maxar's business and the alleged falsity and materiality of Defendants' statements during the Class Period. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 632 (D. Colo. 1976) (finding novelty and difficulty of issues supported requested fees where "[t]he litigation . . . involved unique and substantial issues of law in the technical area of SEC Rule 10b-5 . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages").

### 1.    Risk in Establishing Liability

As just discussed above and in the Settlement Memorandum (at §IV.C.1.), Lead Plaintiff faced substantial risks in moving forward with the Litigation. While Lead Plaintiff disagrees with Defendants' contentions, there was a substantial risk of recovering limited or no damages if the Court or jury agreed with any of Defendants' arguments on the remaining claims at summary judgment or at trial. In addition, Defendants Lance and Wirasekara directly challenged their status as "control persons" subject to liability under §20(a). Smith Decl., ¶28. Again, Lead Plaintiff

- 12 -

disagreed, but recognized that Defendants would be able to present testimony from numerous fact and/or expert witnesses that could call into question these Defendants' liability.

### 2. Risk in Establishing Causation and Damages

Even if Lead Plaintiff ultimately succeeded in overcoming each and every defense Defendants could raise regarding liability, Lead Plaintiff also faced risks in establishing causation and damages. Lead Plaintiff would be required to prove that Defendants' alleged false statements and omissions of material fact inflated the price of Maxar common stock during the Class Period, and that, upon the disclosures relating to such misinformation, the price of Maxar shares dropped, damaging Lead Plaintiff and the Class. *See Dura*, 544 U.S. at 341-42.

Even though Lead Counsel worked extensively with a causation and damages expert and believed it would be able to present expert testimony to meet Lead Plaintiff's burden on loss causation and establish damages with respect to the alleged corrective disclosures, Defendants would likely seek to exclude that expert's testimony through a *Daubert* motion and, even if unsuccessful, Defendants undoubtedly would advocate at trial for a substantially smaller damages figure, or zero. The jury would have been presented with expert testimony on the portions of Maxar's stock price declines related to the disclosure of the alleged fraud and tasked with determining what amount, if any, of the price declines was fraud-related. As a result, the crucial element of damages would almost certainly have been reduced at trial to a "battle of the experts." *See* Smith Decl., ¶10; *see also, e.g.*, *In re EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007) (noting unpredictability of battle of damage experts); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"). Accounting for the foregoing risks,

4868-0919-8210.v1

the Class would by no means be assured of a ruling in its favor.  Accordingly, the novelty and difficulty of these legal and factual questions further support the Settlement achieved and the requested attorneys' fees.

E.    **The Skill Required and the Experience, Reputation, and Ability of Lead Counsel Support the Requested Fee**

The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award.  *See Johnson*, 488 F.2d at 717-19.  Lead Counsel is among the nation's preeminent law firms in class action securities litigation and has successfully litigated and tried numerous class actions on behalf of major institutional investors.  *See* RGRD Fee Decl., Ex. F (RGRD firm resume).

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  During the course of this Litigation, Defendants have been represented by experienced and skilled defense counsel, first Latham & Watkins LLP and then O'Melveny & Myers LLP, which spared no effort in the defense of their clients' claims.  In the face of this formidable opposition, Lead Counsel developed its case so as to persuade Defendants to agree to a substantial $27,000,000 financial recovery for the Class.  The skill, experience, reputation, and ability of both Lead Plaintiff's and Defendants' counsel further support the requested fee award.

F.    **The Contingent Nature of the Fee Weighs in Favor of the Requested Award**

Courts in this Circuit have found that "the risk of non-recovery" weighs heavily in considering an award of attorneys' fees.  *Vaszlavik*, 2000 WL 1268824, at *4; *see also Crocs*, 2014 WL 4670886, at *4 ("A contingent fee arrangement often weighs in favor of a greater fee because

- 14 -

'[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices.'")
(alterations in original).  Lead Counsel has prosecuted this Litigation on a wholly contingent basis
for over four years and has borne all the risks, including surviving a motion to dismiss and obtaining
class certification.  Surviving a motion to dismiss in a securities class action is particularly difficult.
As the Fifth Circuit has recognized, "[t]o be successful, a securities class-action plaintiff must thread
the eye of a needle made smaller and smaller over the years by judicial decree and congressional
action."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Lead Counsel understood from the outset that it was embarking on a complex, expensive, and
lengthy litigation, which would require a significant investment of attorney time and expenses, with
no guarantee of ever being compensated for the investment of such time and money.  Lead Counsel
also understood that Defendants would (and, in fact, did) retain large and highly experienced
corporate defense firms to mount a strong defense.  In undertaking this risk, Lead Counsel was
obligated to, and did, ensure that sufficient resources were dedicated to the prosecution of this
Litigation.  When this case settled, Lead Plaintiff was undertaking expensive discovery, and
dispositive motions would likely be filed at its conclusion.

Litigation of these cases can be extremely protracted and yet salaries, leases, and other
expenses must be paid, while counsel waits for several years to be paid, if at all.  For example, in a
case handled by Lead Counsel, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-
cv-05893 (N.D. Ill.), Lead Counsel litigated the case through trial and appeal for 14 years before
reaching a settlement.  In Lead Counsel's view, it is their hard earned reputation and willingness to
go all the way to get the best possible result that benefits the Class and makes it a highly sought out
firm for clients.  Nevertheless, in every case the risk of losing and not being paid at all remains, as

- 15 -

4868-0919-8210.v1

there are numerous class actions in which plaintiffs' counsel expended thousands of hours and lost, receiving no compensation. *See Xcel*, 364 F. Supp. 2d at 994 ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").[8]

The risks of contingent litigation are also highlighted by the fact that a dramatic change in the law can result in the dismissal of a claim after a great deal of time and effort has been expended on the case. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following change of law in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming grant of summary judgment for energy company in PSLRA case based on Supreme Court decision in *Dura*). Thus, there existed a real risk that Lead Counsel (and the Class) would invest substantial resources and efforts and receive nothing. *See Eatinger v. BP Am. Prod. Co.*, No. 6:07-cv-01266-EFM-KMH, ECF 375 at 14 (D. Kan. Sept. 17, 2012) (Ex. C hereto) ("Finally, the contingent nature of the case meant that at the end of the day, Class Counsel could have been left with no fee and no recovery of the enormous expenses that it had paid and carried for years."). As such, this factor further supports the requested fee award.

---

[8]   Even surviving a motion to dismiss is not a guarantee of ultimate success. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation; *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted in favor of defendants after eight years of litigation and after plaintiffs' counsel incurred over $6 million in expenses and worked over 100,000 hours), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. For example, in *BankAtlantic*, the Eleventh Circuit upheld a lower court's decision overturning a jury verdict in favor of the lead plaintiff on the issue of loss causation. *See Hubbard v. BankAtlantic Bankcorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

- 16 -

**G.    The Preclusion of Other Employment by Plaintiffs' Counsel Supports the Requested Fee**

As demonstrated by the 13,900 hours incurred in prosecuting this Litigation, Lead Counsel was precluded from other employment due to its acceptance of this Litigation.  Accordingly, this factor weighs in favor of approving the fee request.  *See Lucas v. Kmart Corp.*, 2006 WL 2729260, at \*6 (D. Colo. July 27, 2006) ("Large-scale class actions . . . necessarily require a great deal of work, and a concomitant inability to take on other cases.").

**H.    The Undesirability of the Case Supports the Requested Attorneys' Fees and Expenses**

Securities class action cases have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands required to litigate cases of such size and complexity.  *See, e.g.*, *Eatinger*, slip op. at 13 (Ex. 3) ("The time, effort, and out-of-pocket investment makes a class action undesirable to most attorneys."); *Millsap*, 2003 WL 21277124, at \*12 ("This case is . . . undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures . . . .").  Like the rest of the relevant *Johnson* factors, this factor too supports the approval of Lead Counsel's requested fees.

**V.    THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER SUPPORTS ITS REASONABLENESS**

Although not specifically cited as a factor for consideration by the Tenth Circuit, courts also recognize the significance of the class members' reaction to the request for attorneys' fees and expenses.  *See Sprint*, 443 F. Supp. 2d at 1262.  Lead Plaintiff fully supports the Settlement and Lead Counsel's request for its fees and expenses.  *See* Stephens Decl., ¶¶8-9.  Here, over 34,000 copies of the notice of the proposed Settlement were mailed to potential Class Members and nominees, advising them that Lead Counsel would be requesting an award of attorneys' fees not to

- 17 -

exceed 30% of the Settlement Amount and litigation expenses not to exceed $1 million, plus interest on both amounts at the same rate as earned by the Settlement Fund, all to be paid from the Settlement Fund. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Report on Requests for Exclusion Received to Date (ECF 194), Ex. A (Notice at 3). As of the filing of this memorandum, not one Class Member has objected to these requests, further bolstering the reasonableness of the fee request.

## VI.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ITS REASONABLE LITIGATION EXPENSES

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 WL 1268824, at *4. Here, Lead Counsel requests an award of litigation expenses and charges in the amount of $825,853.33 incurred by it to date in connection with the prosecution of the Litigation on behalf of the Class, plus interest on such amount at the same rate as earned by the Settlement Fund. A large portion of these expenses was used to pay for Lead Plaintiff's experts. Additional costs were for investigation, document duplication and database management, on-line research, and mediation fees. These expenses and other expenses were directly related to the prosecution of this Litigation and are all the type of expenses that would be paid by a fee-paying client. *See* RGRD Fee Decl., Ex. B; *DaVita II*, 2021 WL 2981970, at *4 (awarding similar expenses which are "routinely awarded in similar actions"). To date, no objections have been received regarding this expense request. Accordingly, Lead Counsel respectfully requests an award of $825,853.33 for these expenses and charges.

- 18 -

4868-0919-8210.v1

## VII.    THE REQUESTED PSLRA AWARD FOR LEAD PLAINTIFF SHOULD BE APPROVED

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).[9] Here, as set forth in the Stephens Declaration, ¶10, Lead Plaintiff is seeking $3,900 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

Lead Plaintiff has been fully committed to pursuing the Class's claims against Defendants since moving for appointment as Lead Plaintiff. Lead Plaintiff has actively and effectively fulfilled its obligations as the representative for the Class, complying with all of the many demands placed on it during the prosecution and settlement of the Litigation, and providing invaluable assistance to Lead Counsel. Among other things, Lead Plaintiff reviewed and approved the filing of significant pleadings and briefs, engaged in conferences and correspondence with Lead Counsel regarding the Litigation, participated in discovery by searching for and collecting responsive documents, provided deposition testimony, and consulted with Lead Counsel regarding mediation and settlement strategy. *See* Stephens Decl., ¶¶4-6. These are precisely the types of activities courts have found to support awards to class representatives. *See DaVita I*, 2021 WL 1387110, at *7 (granting awards of $10,000 to lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) where they actively participated in litigation);

---

[9]    In enacting the PSLRA, Congress intended to grant courts discretion in this regard. *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734 (lead plaintiffs should be compensated for activities "associated with service as lead plaintiff . . . and [the committee] grants the courts discretion to award fees accordingly").

4868-0919-8210.v1

*MolyCorp*, 2017 WL 11598681, at *2 (awarding approximately $10,000 in the aggregate to three lead plaintiffs).

Lead Counsel respectfully submits that Lead Plaintiff's participation in the Litigation fully warrants the Court's approval of an award to it of $3,900.

## VIII.  CONCLUSION

For the reasons set forth above, Lead Counsel respectfully requests that the Court enter an order awarding attorneys' fees of 30% of the Settlement Amount, expenses of $825,853.33 plus interest earned on both amounts, and an award to Lead Plaintiff of $3,900 pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  October 2, 2023                          Respectfully submitted,

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 SPENCER A. BURKHOLZ
                                                 ELLEN GUSIKOFF STEWART
                                                 TRIG R. SMITH
                                                 JEFFREY J. STEIN
                                                 CHRISTOPHER D. STEWART
                                                 NICOLE Q. GILLILAND
                                                 PATTON L. JOHNSON


                                                     s/ Spencer A. Burkholz
                                                 SPENCER A. BURKHOLZ

- 20 -

4868-0919-8210.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
elleng@rgrdlaw.com
trigs@rgrdlaw.com
jstein@rgrdlaw.com
cstewart@rgrdlaw.com
ngilliland@rgrdlaw.com
pjohnson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

- 21 -

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 2, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Spencer A. Burkholz*
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-00124-WJM-SKC Oregon Laborers Employers Pension Trust Fund et al v. Maxar Technologies Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew W. Close**
  mclose@omm.com,matthew-close-5511@ecf.pacerpro.com,mmena-hadyka@omm.com,mleu@omm.com

- **Nicole Gilliland**
  ngilliland@rgrdlaw.com

- **Kate Mie Ikehara**
  kikehara@omm.com,kate-ikehara-0705@ecf.pacerpro.com

- **Patton L. Johnson**
  pjohnson@rgrdlaw.com,panderson@rgrdlaw.com,TerreeD@rgrdlaw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Brittany Allison Rogers**
  brogers@omm.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,panderson@rgrdlaw.com,ChristC@rgrdlaw.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com

- **Christopher Dennis Stewart**
  cstewart@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Ellen Gusikoff Anne Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan Bryce Waxman**
  jwaxman@omm.com,jonathan-waxman-8134@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Phillup G  Newhope
,

Logan Durant
,

Michael W Slaunwhite
,