# EXHIBIT C

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Gene R. Eatinger, on behalf of himself and all similarly situated royalty owners, | ) ) ) | |
| Plaintiffs, | ) ) | Case Number 07-1266-EFM-KMH |
| v. | ) ) | |
| BP America Production Company, | ) ) | |
| Defendant. | ) | |

### ORDER APPROVING SETTLEMENT AGREEMENT, AWARDING FEES AND EXPENSES TO CLASS COUNSEL, AND AWARDING INCENTIVE

This matter came before the Court for hearing pursuant to an Order dated August 3, 2012 (Dkt. 346), setting a hearing to determine whether or not to approve a Settlement in this class action case. Due and adequate notice was given of the Settlement as required in that Order. The Court has considered all papers filed and all proceedings in this case, the applicable law, and is well informed about this matter. The Court finds and orders as stated herein.

1. This Order incorporates by reference the definitions in the Settlement Agreement (herein "Agreement") (Dkt. 340-1), and all capitalized terms used herein shall have the same meanings as assigned to them in the Agreement except as expressly stated herein. The term "Class" means the Class defined by this Order. The term "Class Member" shall mean any member of the Class defined by the Agreement and this Order, but excludes those persons and entities who were excluded by the definition of the Class or by this Order which lists those who validly exercised their right to opt-out of the Class.

2. This Court has jurisdiction over the subject matter of the case and over the Defendant, Class Representative, and all Class Members.

1

Case No. 1:19-cv-00124-WJM-SKC   Document 375   filed 10/02/23   USDC Colorado
Case 6:07-cv-01266-EFM-KMH   Document 1975   Filed 09/17/12   Page 2 of 10
pg 3 of 17

3.      The parties shall bear their own costs, except as otherwise provided in the Agreement.  The persons or entities that validly and properly opted-out of the Class and are, therefore, not Class Members, are: 1) Pioneer Natural Resources USA, Inc.; 2) Devon Energy Production Company, L.P.; 3) Anadarko E&P Company, L.P.; 4) ExxonMobil Oil Corporation and Exxon Mobil Corporation; and 5) Osborn Heirs Company. (Dkt. 359)

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court approves the settlement set forth in the Agreement and the Class as defined by the Agreement.  The Court finds that settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of the Class Representative, the Class, and each of the Class Members. This Court further finds the settlement set forth in the Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Class on the one hand, and Defendant BP on the other.  Accordingly, the settlement embodied in the Agreement is hereby approved in all respects and shall be consummated in accordance with its terms and provisions. The parties are hereby ordered to perform the terms of the Agreement.

5.      On August 2, 2010, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certified a class that was substantially similar to the Class, found that all requisites for class certification had been specifically satisfied, and appointed Class Counsel and a Class Representative.  That Order (Dkt. 166 and 168 – modified class definition) is incorporated by reference.

In the Pretrial Order (Dkt. 327), the time frame of the class was extended to December 31, 2011, after which Defendant BP was no longer the working interest owner legally responsible for paying royalties to Class Members under Class Leases.

6.      The Class is:

All royalty owners of BP America Production Company (and its predecessors and successors) from wells located in Kansas that have been paid royalties for gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen, or condensate) before January 1, 2012 and whose gas was processed at BP's Jayhawk Processing plant.

Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); (2) Chesapeake Energy Corp., Chesapeake Operating Inc., Chesapeake Royalty, and any Chesapeake affiliated entity; (3) Defendant BP, its affiliates, predecessors, and employees, officers and directors; and (4) any claims for Gathering Charges.

With respect to the Class, this Court finds that: (a) the persons in the Class are so numerous that joinder of all persons in the Class is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Class Representative are typical of the claims of the Class; (d) the Class Representative and Class Counsel have fairly and adequately represented and protected the interests of all of the persons in the Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the persons in the Class in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by persons in the Class; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the case. (Dkt. 166). The findings and reasons for certifying the original class apply equally to the Class as defined by the Agreement and this Order. The Class satisfies all requirements for class certification under Rule 23.

7. Upon entry of this Order, the Class Representative does, and each of the Class Members shall be deemed to have, and by operation of this Order shall have, fully, finally, and

3

forever released, relinquished and discharged all Released Claims against the BP Released Parties. Any and all Released Claims are permanently barred, enjoined, and finally discharged.

8.     Upon entry of this Order, each and every Class Member is deemed to have accepted and ratified the Agreement.

**I.     Findings of Fact and Conclusions of Law on Due Process of Settlement Class Notice**

9.     The distribution of the Notice of Proposed Settlement of Class Action  was the same distribution approved by this Court of a prior notice advising of the certification of the class (Dkt. 172, 346) and again constituted the best notice practicable under the circumstances to all persons entitled to such notice, including individual notice to all persons in the Class who could be identified through reasonable effort, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, and any other applicable law.

10.     The Notice was written in plain English and included (i) a description of the Settlement Class; (ii) a description of the proposed settlement; (iii) the names of Class Counsel; (iv) a statement of the maximum amount of attorneys' fees that may be sought by Class Counsel; (v) a statement of the maximum amount of an incentive award that may be sought by the Class Representative; (vi) the fairness hearing date; (vii) a description of eligibility to appear at the hearing; (viii) a statement of the deadlines for filing objections to the settlement, for submitting a claim, and for filing requests for exclusion; (ix) the consequences of exclusion; (x) the consequences of remaining in Settlement Class; and (xi) how to obtain further information. (Dkt. 358-1).

11.     BP provided from its records of persons or entities to which it was making, or had made, royalty payments, a mailing list of Class Members to be used in giving Notice.  BP also

provided BP Payment Information (as defined in the notice sent to the settlement class) containing payment information only for Class Members plus payment information for the opt-outs listed above and 4 entities (identified with BP royalty numbers) that were excluded from the Class by the definition of the Class.  Notice was provided to all Class Members by first class mail at the address on BP's initial list.  Some mailings were returned, and both BP, by providing another updated list, and Class Counsel, through various means described below, engaged in, and Class Counsel continues to engage in, efforts to identify and locate these people. Class Counsel hired a private investigator to conduct skip traces to locate, or attempt to locate those whose addresses had changed, traced Social Security numbers through the U.S. Social Security Death Index database and US Info Search, and determined that many on the list, or their predecessor, had received Notice or were deceased. Many more have been and were in BP's suspense account list. As a result, the Notice reached approximately 95% of the Class Members.  Moreover, there was information about this case on the internet and the Agreement, Notice, and Preliminary Distribution Plan were posted on a website hosted by the Notice Administrator.

12.     Adequate notice of the settlement of the Class Action Litigation has been given as required by law to the members of the Settlement Class.  All members of the Settlement Class have been afforded a reasonable opportunity to opt out of the Settlement Class and to object to the settlement.

13.     Those persons who are not Class Members are free to pursue or not pursue their own claims in other litigation as they see fit at their own cost and expense.  No claims by anyone who is not a Class Member are being asserted in this case against BP.

## II.      Findings of Fact and Conclusions of Law on Class Settlement Factors

14.      This Court approved Notice to the Class after its terms were announced and presented to Court by the filing of the Settlement Agreement, Joint Motion (Dkt. 340) and after a telephonic hearing held by the Court (Dkt. 336).

15.       In its prior order, this Court set a final approval hearing to determine whether the settlement was fair, reasonable, and adequate.  (Dkt. 346).

16.      In determining whether a settlement should be approved as fair, reasonable, and adequate, the following factors may be examined:  (a) whether the settlement was fairly and honestly negotiated; (b) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (c) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; (d) the opinion of the parties that the settlement is fair and reasonable. *Gottlieb v. Wiles,* 11 F.3d 1004, 1014 (10th Cir.1993); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *Newberg on Class Actions* §18.58 (factors to be considered at fairness hearing include: (1) likelihood of recovery; (2) recommendations and experience of counsel; (3) amount and nature of discovery; (4) future expense and likely duration of litigation; and (5) number of objectors and quality of objections).  The Court considered all relevant factors in determining to approve the Settlement.

17.      *The Settlement Was Fairly Negotiated.*  The Settlement was achieved after hard fought litigation, mediation, more litigation, more mediation, more litigation, and further settlement discussions among experienced and adversarial attorneys.  There is no evidence of collusion.  The Settlement was fairly negotiated.

18.      *The Outcome of the Litigation Was Not Assured.*  Both parties were convinced of their legal and factual positions. The litigation was not assured one way or the other.  Although

6

the Kansas Marketable Condition Rule was consistent with the Class's theory, the case involved primarily processing deductions which in Kansas had not been pursued in other prior royalty owner class actions.

19.     *The Value of Immediate Recovery Outweighed the Possibility of Future Relief After Protracted and Expensive Litigation.* BP made it clear that it would vigorously pursue the litigation, and if not successful, appeal.  It did so recently in a royalty owner class action in New Mexico federal court, and, after a jury verdict against BP, obtained a reversal on appeal. Any future relief to the Class was literally years away.  The Settlement is substantial and outweighs the possibility of future relief.

20.     *The Opinions of the Parties.* Both parties are represented by experienced counsel who opine that the Agreement is fair, reasonable, and adequate for the Class.  And the Class Representative concurs.

21.     The Court is satisfied that Agreement was the product of arm's-length negotiations in which the Class and BP were both represented by experienced counsel who diligently represented the interests of their respective clients.  The Agreement was reached after vigorous litigation as reflected by the record.  This Court had made several rulings including a ruling about affirmative defenses asserted by BP as to the effect of prior class action settlements on the vast majority of the claims in this case.  At the time of settlement, extensive briefing had been filed by the parties as to a motion for summary judgment that was pending.  Each side also had the benefit of experts of their own choosing in assessing matters about the case and with regard to settlement.  The Class Members were all paid royalties by BP and information on BP's royalty payments to Class Members was provided on a hard-drive that comprised some 65 gigabytes of information.  So, given the common method of payment used by BP to pay Class

7

Members for royalties with respect to Class Wells, Class Counsel and experts for the Class had

access to detailed information about what was paid and not paid to Class Members by BP during

most of the class period, particularly with respect to royalty payments on NGLs and helium, the

alleged underpayment for which comprised virtually all of the damages claims sought by the

Class. The settlement process was lengthy, arduous, fair, unbiased, and, ultimately, productive.

22.     The   extensive record and briefing on file establish that BP strongly contested

liability and damages.  It was prepared and had the resources to try the case and appeal any

adverse ruling that it felt could be appealed.  Though very ably represented by Class Counsel,

there was no assurance that Class Members would recover anything or that, if they did, it would

be anything like amounts requested.  Virtually all of the alleged damages sought by the Class

involved BP's alleged underpayment of royalties on NGLs and Helium by allegedly wrongfully

deducting various fees or deducting unreasonably high fees, assuming that some fees were

deductable.  BP claimed that such claims, and others as well, were barred by a prior class action

settlement.  The Class contended otherwise.  Both parties moved for summary judgment on such

affirmative defenses by BP.  The Court ruled that there were fact issues on BP's defenses that

would have to be resolved at trial, not by competing summary judgment motions.

23.     The class experts had opinions about damages under two different theories, and,

BP's experts had opinions that such damages claims were far too high even if liability was

assumed. BP also presented experts and arguments contending that there was no liability

whatsoever.  The issues regarding liability and the proper calculation of damages, if any, were

never resolved by the Court.

24.     While the Class may have recovered more of the damages years from now after

trial and appeal, the risk existed that the Class would recover nothing at all or far less than what

8

was obtained in settlement.  The amount obtained in settlement is substantial.  Further, no Class Member voiced any objection to the settlement, indicating wide-spread approval.  (Dkt. 359).  Balanced against myriad of litigation and appellate risks, risks of statutory changes or enactments affecting the case, and other risks to recovery and of the risk of delay in payment and in the event of any recovery, the Court finds the settlement is fair, reasonable and adequate in all respects and that should be, and is, approved by the Court in accordance with Rule 23.  The Court bases its approval upon its review of the file and information presented and the *cumulative* written and testimonial evidence presented and the Court's assessment of that evidence, and not based upon any *single* witness, document, or other piece of evidence.

**III.      Findings of Fact and Conclusions of Law on Plan of Allocation and Distribution**

25.      The plan of allocation and distribution must be fair, adequate, and reasonable.  *Law v. National Collegiate Athletic Ass'n,* 108 F.Supp.2d 1193, 1196 (D.Kan. 2000). The Plan of Allocation and Distribution Order is found at Docket Number 363-8.  The Plan here is based upon the NGLs and helium that BP paid royalties upon to Class Members.  This is appropriate as the NGLs and helium claims are virtually all of the Class claims asserted against BP for alleged underpayments by BP of royalties.  The assumptions about who should receive distributions are reasonable and proper and are bolstered by the requirement that anyone receiving funds that rightfully belong to another must pay any such amount to the rightful owner.  The practical result of the Plan is that amounts from BP wells are being distributed in proportion to the underpayment claims that were asserted with regard to such wells and the monies appropriately distributed so that Class Members entitled to receive the distributions with respect to alleged underpayments do so on a proportionate basis that reflects the actual production of such wells.  Based on the evidence submitted, the Court finds that the Plan of Allocation and Distribution

9

Case No. 1:19-cv-00124-WJM-SKC   Document 197-3   filed 10/02/23   USDC Colorado
Case 6:07-cv-01266-EFM-KMH   Document 375-3   Filed 09/17/12   Page 10 of 16
pg 11 of 17

Order (Dkt. 363-8) is fair, adequate, and reasonable.  Accordingly, the Plan of Allocation and Distribution Order is incorporated by reference and approved and ordered.  The Claims Administrators, previously appointed by Dkt. 357 (incorporated herein), shall follow the Plan of Allocation and Distribution approved by this Court in making distributions to Class Members. In cases where there is some question about who should receive a distribution, the matter shall be determined by the Claims Administrators and the party receiving such distribution shall be responsible to make payment to any rightful owner in any event. In addition, the Claims Administrators are to be paid reasonable fees and expenses out of the Net Settlement Fund as set forth in the Agreement.  (Dkt. 340-1 at 4, 7).

**IV.     Findings of Fact and Conclusions of Law on Class Counsels' Fees and Expenses and Incentive Award to Class Representative**

26.     In a diversity case, like this case, the award of attorneys' fees is governed by Kansas law. *See, e.g., Combs v. Shelter Mut. Ins. Co.,* 551 F.3d 991, 1001 (10th Cir. 2008) ("In diversity cases, attorney fees are a substantive matter controlled by state law."); *Boyd Rosene & Associates, Inc. v. Kansas Mun. Gas Agency,* 123 F.3d 1351, 1352-53 (10th Cir. 1997) ("in this circuit, the matter of attorney's fees in a diversity suit is substantive and is controlled by state law.")  Kansas law permits the award of attorneys fees in a class action based upon a percentage of total recovery calculated in accordance with KRPC 1.5(a)(1-8).  Many Kansas class action cases have done so.  *See, e.g.,   Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 679 P.2d 1159 (1984), *aff'd in part and rev'd in part on other grounds*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed. 2d 628 (1985); and *Freebird, Inc. v. Cimarex Energy Co.*, 46 Kan.App.2d 631, 264 P.3d 500, (2011), *rev. denied* (Kan. June 13, 2012) (awarding one-third fee in royalty owner underpayment class settled before class certification and merits discovery).  The Court has considered the

10

applicable Kansas law and factors set forth in KRPC 1.5(a)(1-8) and finds that the law and all of

the factors support the award that the Court makes herein.

27. *Contingent Fee*. Certain factors are more applicable to contingent class litigation

than other factors. The starting point is the contingent nature of such engagements. Given that

the case was taken on a contingent fee basis, it should be analyzed for fee reasonableness on that

basis. The Kansas law recognizes this when awarding class action fees under a percentage of the

common fund approach. *Hawkins v. Dennis,* 258 Kan. 329, 349-50, 905 P.2d 678 (1995) (holding that

a contingent fee award was reasonable despite defendant's protest that it represented four times the usual

hourly rate).

28. *The Results Obtained*. This is the most important factor in contingent fee

litigation. "[T]he consideration of the benefit the lawsuit has produced" is "[o]f major importance" in

deciding the reasonableness of attorneys' fees in the class action context. *Shutts,* 235 Kan. at 223. *Hensley*

*v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, $19 million was obtained for the Class that it would not

have otherwise received.

29. *Fee Customarily Charged.* There really are few plaintiff class action firms in

Kansas, especially those with oil and gas expertise. Those that do class action litigation

routinely command a one-third fee, especially in gas royalty litigation. *See Littell et. al. v. OXY*

*USA, Inc*., Case No. 98 CV 51 (Stevens Co. Dist. Ct.) (awarding "one-third" fee) (March 4, 2008);

*Alford v. Pioneer Natural Resources USA, Inc*., 93-CV-37 (Stevens Co. Dist. Ct.) (awarding "one-

third" fee) (Feb. 9, 2007); and *Coulter v. Anadarko Petroleum Corporation*, No. 98-CV-40

(Stevens Co. Dist. Ct.) (awarding "one-third" fee) (Sept. 17, 2009). *See also, Premier Pork, Inc. v.*

*Rhone-Poulene S.A.,* 2006 WL 1388464 n. 3 at *5 (Kan. Dist. Ct., January 31, 2006) (*citing* numerous

royalty owner class actions awarding one-third fees). Courts in Oklahoma have similarly ordered a one-

11

third or higher contingent attorney fee in royalty underpayment class actions.  *See Cimarron Pipeline*

*Const., Inc., v. National Council on Compensation Ins.,* Nos. 89-822 & 89-1186 (W. D. Okla.

1993) (34.9% of $35 million); *Kouns v. Conoco*, Inc., No. CJ-98-61, Dist. Ct. for Dewey County,

Oklahoma (order approving fees filed December 2, 2004); and *Velma-Alma Independent School*

*District No. 15 v. Texaco, Inc*., Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-

496M, Dist. Ct. for Stephens County, Oklahoma (awarding 40% of the $27 million common

fund, order approving fees filed Dec. 22, 2005).  Thus, a one-third fee is a reasonable starting

point.

30.	In addition, it is customary in contingent fee litigation for the percentage to be

higher in the event of an appeal, usually 40% or more.  If the Settlement requires appellate work

to defend the Settlement or any part thereof contained in this Order, Class Counsel would be

entitled to a higher fee, perhaps the usual 40%, but Class Counsel has only requested an

additional 5% which is eminently reasonable.  However, if the appeal does not involve or delay the

Settlement payout, Class Counsel would not be entitled to additional compensation from the Settlement

Fund.

31.	*Experience, Reputation, and Ability of Counsel.*  Class Counsel is not a neophyte in

complex civil litigation or class actions.  Class Counsel has been lead or co-lead Class Counsel in

cases all over the country, including some of the most recent Kansas appellate class action decision.

*See* Sharp Affidavit.  The reputation and ability of Class Counsel is well known and well respected.  This

factor would weigh in favor of enhancing the usual one-third contingent fee.

32.	*Time and Labor Required.* This is of lesser importance in a non-hourly case, but the

evidence shows that this case took substantial time and labor to complete.  The novelty and difficulty of

the questions involved was high as Class Counsel pursued theories on Conservation Fees, non-gathering

12

Case No. 1:19-cv-00124-WJM-SKC   Document 197-3   filed 01/02/23   USDC Colorado
Case 6:07-cv-01266-EFM-KMH   Document 375-3   Filed 09/17/12   Page 13 of 16
pg 14 of 17

deductions, and other difficult questions. The expert presentations and arguments by BP were not matters that had been tried and decided by any Kansas court.  The skill requisite to perform the legal service properly as Class Counsel is likewise high.  Thus, the fee could be enhanced over the usual one third fee.

33.     *Novelty and Difficulty.*  The questions presented contained many novel issues mentioned above and even the ones that were not novel were difficult against a formidable opponent, BP, which is a large participant in the oil and gas industry, having industry expertise and knowledge, and supported by experienced and talented attorneys.  The core issue actually involved processing deductions arguably not pursued by other class action lawyers against BP's predecessor in a prior class action, and has never been pursued in Kansas except by Class Counsel in this case and other cases like it.

34.     *Skill Required.*  This factor overlaps with the factor above as well as the experience and skill of class counsel.  *In re Qwest Communication Int'l Sec. Litig.*, 625 F.Supp.2d 1143, 1150 (D.Colo. 2009) (considering some factors together).  The novelty and difficulty of the issues made the skill required high.  There are "few simple class action cases".  *In re Qwest Communication Int'l Sec. Litig.*, 625 F.Supp.2d 1143, 1149 (D.Colo. 2009).  This case required a high degree of skill. In a similar royalty underpayment class action, the court stated that "Class Counsel's knowledge and experience ... significantly contributed to a fair and reasonable settlement". *Anderson v. Merit Energy Co.,* 2009 WL 3378526, at *3.  The same is true here. This factor supports a one-third fee, and more if an appeal is necessary.

35.     *Undesirability of the Case*.  The time, effort, and out-of -pocket investment makes a class action undesirable to most attorneys.  The record reflects that over three million dollars in attorney and paralegal time was expended, for which Class Counsel was not being paid as the

13

Case No. 1:19-cv-00124-WJM-SKC   Document 197-3   filed 10/02/23   USDC Colorado
Case 6:07-cv-01266-EFM-KMH   Document 375-3   Filed 09/17/12   Page 14 of 16
pg 15 of 17

case progressed.  Indeed, without a recovery, no fee at all would have been received for the enormous investment of time.  Moreover, the litigation expenses that Class Counsel was expected to bear, and did bear without any assurance of recovery, were likewise enormous, topping a half million dollars.  The Defendant had deep pockets and could be expected, and did, hire talented attorneys to contest the litigation at every turn.  Finally, the contingent nature of the case meant that at the end of the day, Class Counsel could have been left with no fee and no recovery of the enormous expenses that it had paid and carried for years.  Class Counsel only requests a one-third fee after litigation expenses and 5% more if the Settlement is appealed.  Those litigation expenses, totaling $573,387.90, were reasonable and necessary for the successful completion of the class case and are hereby approved.  The fee of one-third of the Settlement Fund after netting out litigation expenses is also approved.  If the case requires appellate work regarding this Order, Class Counsel should be compensated an additional 5% of the Settlement Fund for the added risk, labor, and expenses associated therewith. Such expenses and such one-third fee (and additional appellate fee if necessary) are hereby ordered to be paid from the Settlement Fund of $19 million plus accrued interest.

36.    Kansas courts have adopted a three part test for considering incentive awards: "(1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation." *Freebird, Inc. v. Cimarex Energy Co*., 46 Kan.App.2d 631, 644, 264 P.3d 500, 510 (2011), *rev. denied* (Kan. June 13, 2012) (approving a 1% incentive award over an objection in another royalty underpayment case). Here, the Class Representative, Gene Eatinger was especially vigilant in investigating royalty owner claims and securing competent Class Counsel.  The Class Representative was thereafter

14

actively and continuously involved in the discovery and settlement process on behalf of the Class. Mr. Eatinger requests an incentive award of one half of one percent of the Settlement Amount of $19 million plus accrued interest. The incentive award in this case which is less than 1% approved in *Freebird.* Case law from analogous jurisdictions where gas class actions occur confirms the reasonableness and appropriateness of granting an incentive award of one percent or more of the common fund. *See Velma-Alma Independent School District No. 15 v. Texaco, Inc*., Consolidated Case Nos. CJ-2002-304, CJ-04-581-E and CJ-2005-496M, Dist. Ct. for Stephens County, Oklahoma (awarded 1-2% of the respective total settlement amounts, filed December 22, 2005); and *Robertson v. Sanguine, Ltd.,* Case No. CJ-02-150, Dist. Ct. for Caddo County, Oklahoma (approved 1% Class Representative fee, filed July 11, 2003). The requested incentive award under the law and circumstances is fair and reasonable. A class representative incentive award of 1/2 of one percent of the Settlement Fund with interest is hereby ordered and shall be paid to the Class Representative by the Claims Administrators in accordance with the Agreement.

37. The Court approves payment of Class Counsel's Fees and Expenses, including the Class Representative's incentive award, as set forth above.

38. Neither the Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the settlement: (a) is or may be deemed to be or may be offered, attempted to be offered, or used in any way by the parties as a presumption, a concession, or an admission of or evidence of, any fault, liability or wrongdoing by the BP Released Parties or of the validity of any Released Claims against the BP Released Parties; or (b) is or may be offered or received as evidence or otherwise used by any person in these or any other actions or proceedings, whether civil,

15

criminal, or administrative, against any parties to the Agreement other than to enforce the terms of the Agreement or orders or Orders issued by the Court in connection with the settlement. Class Representative, Class Counsel, BP , or any Class Member may file the Agreement or Order in any action (a) that may be brought against any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, order bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or (b) to enforce or otherwise effectuate the terms of the Agreement or orders or Orders issued by the Court in connection with the settlement, such Claims being excluded from the releases contained herein.

39. Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; and (c) all parties hereto for the purpose of construing, enforcing, and administering the injunction set forth in paragraph 7 of this Order.

40. In the event that the settlement does not become effective in accordance with the terms of the Agreement or the Order does not become Final, then this Order shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

IT IS SO ORDERED.

SIGNED this 17th day of September, 2012.

*Eric F. Melgren*

Honorable Eric F. Melgren
UNITED STATES DISTRICT JUDGE

16