**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0124-WJM-SKC
*Consolidated with Civil Action No. 19-cv-0758-WJM-SKC*

OREGON LABORERS EMPLOYERS PENSION TRUST FUND, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE, and
ANIL WIRASEKARA,

    Defendants.

**ORDER GRANTING LEAD PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND EXPENSES**

Lead Plaintiff Oregon Laborers Employers Pension Trust Fund's ("Lead Plaintiff") sued Defendants Maxar Technologies Inc., Howard L. Lance, and Anil Wirasekara (collectively, "Defendants") for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  (ECF No. 44.)  Currently before the Court is Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Final Approval Motion") (ECF No. 196); and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. § 78u-4(a)(4) and Memorandum of Points and Authorities in Support Thereof ("Fees Motion") (ECF No. 197).  Both motions are unopposed.  (ECF No. 196 at 6 n.1;

ECF No. 197 at 8 n.1.)

For the reasons stated below, the Final Approval Motion and Fees Motion are granted.

## I. BACKGROUND

Logan Durant filed this securities class action on January 14, 2019. (ECF No. 1.) On August 7, 2019, the Court consolidated this action with a later-filed "lawsuit that was substantially the same as Durant's action but had a longer proposed class period." (ECF No. 41 at 2, 6–7.) In the same Order, the Court appointed Lead Plaintiff from six potential lead plaintiffs (or groups of lead plaintiffs). (*Id.* at 2–3, 6–7.) In its Consolidated Complaint for Violations of the Federal Securities Laws, Lead Plaintiff alleges that purchasers of Maxar's stock during the Class Period[1] were injured by Defendants' violations of federal securities laws by making materially false and misleading statements and omissions regarding Maxar's satellite business and its financial disclosures. (ECF No. 44.) Lead Plaintiff, a pension fund, purchased Maxar common stock during the Class Period and alleges it suffered damages as a result of Defendants' false and/or misleading statements and/or material omissions. (*Id.* ¶ 207.)

On December 6, 2019, Defendants filed a Motion to Dismiss the Consolidated Complaint. (ECF No. 51.) On September 11, 2020, the Court issued an order granting in part and denying in part Defendants' motion to dismiss (ECF No. 69); in that Order, the Court dismissed Lead Plaintiff's claims "to the extent they relate to Defendants' statements regarding the WorldView-4 satellite" and "to the extent they relate to

---

[1] Though the Consolidated Complaint alleges a class period from March 26, 2018 to January 6, 2019, inclusive, the Court certified a class period "from May 9, 2018 through October 30, 2018, inclusive." (ECF No. 44 ¶ 1; ECF No. 109 at 7.)

2

Defendants' March 26, 2018 statements regarding the AMOS-8 contract." (*Id.* at 39.) The Court denied the motion to dismiss "in all other respects." (*Id.*)

On February 12, 2021, Lead Plaintiff filed its Motion for Class Certification, and on July 16, 2021, the Court granted that motion. (ECF Nos. 90, 109.) About a year and a half later, on September 20, 2022, Lead Plaintiff filed its Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 177) and the Stipulation of Settlement (ECF No. 178). On June 5, 2023, the Court issued its Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 193.) In that Order, the Court set a Settlement Fairness Hearing to be held on November 9, 2023. (*Id.* ¶ 3.)

On October 2, 2023, Lead Plaintiff filed its Final Approval Motion (ECF No. 196) and Fees Motion (ECF No. 197). Both motions are unopposed, and no objections or opposition to either motion were filed with the Court. In a declaration filed with the Court, the third-party class action administrator ("Gilardi") represents that through October 1, 2023, a total of 34,075 notice packets were mailed to potential settlement class members and nominees. (ECF No. 200 at 2.) Gilardi has also maintained a settlement website and a toll-free number to respond to inquiries from settlement class members. (ECF No. 194 at 13–14.) Through October 1, 2023, Gilardi has received only three requests for exclusion, which were attached to the declaration as an exhibit. (ECF No. 200 at 2–3.)

The Court held a Settlement Fairness Hearing on November 9, 2023. (ECF No. 204.) No objectors appeared at the hearing, and to date, neither the Court nor Gilardi have received any objection to the settlement from any class member. At the

3

Settlement Fairness Hearing, the Court took both of Lead Plaintiff's motions under advisement.  (ECF No. 204 at 2.)  The Court noted at the conclusion of the hearing that this written order would issue to fully state the reasons for the Court's decision.

## II. LEGAL STANDARDS

### A.   Settlement Approval

In deciding whether to approve a settlement in a class action, a court must determine whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

A court considers the following four factors in reviewing a proposed class action settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  The Court may also consider the fact that no objections were filed by any class members.  *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out.  One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing.  No objection was raised at the fairness hearing.  The Court gives these factors

substantial weight in approving the proposed settlement.").

Under amendments to Rule 23 that became effective on December 1, 2018, there are four factors a court must find render an agreement as fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The advisory committee noted these factors were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (citing Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment). The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23. *See id.* Accordingly, a court considers the Rule 23(e)(2) factors as the main tool in

evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors.

## B.     Attorneys' Fees and Expenses

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[2] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because Lead Plaintiff's fee request is for a percentage of the common fund, the Court will calculate the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Id.* at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

---

[2] The lodestar amount is calculated based upon "the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust[ing] the lodestar upward or downward to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation marks omitted).

6

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . .; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455–56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

### III. SETTLEMENT AGREEMENT ANALYSIS

Having thoroughly reviewed the Final Approval Motion and the Settlement Agreement in the context of both the Tenth Circuit's factors and the factors set forth in Rule 23, the Court finds that the settlement negotiated by counsel is fair, reasonable, and adequate.

The parties have demonstrated that the Settlement Agreement was fairly and honestly negotiated at arms' length and in good faith by counsel experienced in these types of cases. There is no evidence of fraud or collusion between the parties. The parties engaged in extensive (and sometimes contentious) discovery, participated in Federal Rule of Civil Procedure 12 motion practice, undertook three mediation sessions

with an experienced and neutral mediator, and negotiated a Plan of Allocation for the class members.  *See In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved").

The parties have also shown that serious questions of fact and law put the outcome in doubt, particularly with regard to future dispositive motion practice and Lead Plaintiff's ability to prove liability and damages because they might not have been able to establish loss causation.  (ECF No. 196 at 16–18; *see In re Crocs Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) ("Litigating an action under the PSLRA is not a simple undertaking . . . .")).  These factual and legal issues weigh in favor of approving the Settlement Agreement.

Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation.  Courts have held that the presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.  The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings.  This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation.  Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.  In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia*

*Marketing, Ltd.*, 2017 WL 5900344, at *3 (D. Colo. Nov. 30, 2017).  Here, Lead Plaintiff states that the $27 million recovery achieved represents approximately 28% of the reasonably estimated total recoverable damages, which is multiples of the median 4.9% recovery for settlements in securities class actions where damages are between $75 and $149 million.  (ECF No. 196 at 19.)  Lead Plaintiff further argues that there is inherent value in immediate recovery and the certainty of settlement, particularly when further litigation expenses would eat away at any potential recovery.  (*Id.* at 19–20.)

The Court also finds that Lead Plaintiff adequately represented the class.  Lead Plaintiff is an institutional investor of the type favored by Congress when passing the PSLRA and has adequately represented the interests of the settlement class by closely monitoring and participating in this litigation from the outset through resolution.  (ECF No. 196 at 13; ECF No. 199 ¶ 5.)  Lead Plaintiff has no conflicts with any members of the class and by litigating this action vigorously, created the leverage necessary to reach a favorable resolution for the class.  (ECF No. 196 at 13.)

Lead Plaintiff's claims here are typical of the claims of the class because they all purchased Maxar's common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions and suffered damages as a result, thus Lead Plaintiff's and the class's claims are subject to the same proof.  Lead Plaintiff has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest-possible recovery in this class action was firmly aligned with all class members.  Additionally, the Court gives weight to the judgment of Lead Counsel, who are highly experienced in prosecuting securities class actions, and to the fact that the settlement Lead Counsel achieved is an excellent result for the class.  Finally, the Court notes that Defendants

also stated at the Settlement Fairness Hearing that the settlement is, in their estimation, a fair, hard-fought, and reasonable result for both parties.

The Court will also briefly discuss various additional factors supporting final approval of the Settlement Agreement. First, the Plan of Allocation satisfies Rule 23(e)(2)(D) because it treats all class members equally. The settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims. (ECF No. 178-2 at 20.)

Next, the settlement also satisfies Rule 23(e)(2)(C). The notice complied with both the Preliminary Approval Order and the Settlement Agreement. The notice contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. § 78u-4(a)(7), and due process because it sufficiently apprised the class of, among other things, the nature of the action and the claims asserted; the settlement's basic terms, including the method of distribution provided for in the Plan of Allocation; and notice of the binding effect of a judgment on the class. (ECF No. 178-2.) Gilardi has properly mailed the notice packet to potential class members, published the summary notice, and established a website with information relevant to the settlement. (ECF Nos. 194, 200.)

Third, the Court has under advisement the unopposed Fees Motion. (ECF No. 197.) At the Settlement Fairness Hearing, the Court discussed the reasonableness of the Fees Motion at length with counsel for both parties and rules on the reasonableness of Lead Counsel's fees below.

Finally, the Court has considered and gives great weight to the fact that no class member has objected to any aspect of the settlement, and Gilardi has received only

three requests for exclusion from the class submitted by retail investors who hold a relatively small number of shares. (ECF No. 200-1.) "The fact that no class member objects shows that the class also considers this settlement fair and reasonable." *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *3 (D. Colo. May 21, 2019).

Based on these considerations, the Court approves the Plan of Allocation and finds good cause to order final approval of the Settlement Agreement entered into between the parties to this action.

## IV. REIMBURSEMENT AWARD

When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

Lead Plaintiff seeks $3,900 as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—awards that are specifically envisioned in the PSLRA and routinely awarded by courts nationwide. (ECF No. 197 (quoting 15 U.S.C. § 78u-4(a)(4)); s*ee In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (finding $10,000 award "reasonable" considering plaintiff's extensive participation in the case).) Here, Lead Plaintiff devoted considerable time and effort in actively supervising the litigation over a multi-year period, including by collecting and producing numerous documents

and responding to interrogatories; preparing for and attending a deposition; and participating in ongoing settlement discussions. (ECF No. 199 ¶¶ 5, 10.) Further, Lead Plaintiff has been fully committed to pursuing the interests of the settlement class and has actively and effectively complied with the many demands that arose during the litigation. The Court finds that its efforts warrant the modest reimbursement sought.

For the reasons explained above, the Court approves a reimbursement award of $3,900 for Lead Plaintiff.

## V. ATTORNEYS' FEES AND EXPENSES

Lead Counsel "requests an award of attorneys' fees of 30% of the Settlement Amount and payment of litigation expenses of $825,853.33, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund." (ECF No. 197 at 9.)

**A. Fee Award**

1. Time and Labor Involved

Lead Plaintiff submits that prosecuting this case required Lead Counsel to expend nearly 14,000 hours, equivalent to approximately $8.6 million in attorney and staff time, over the course of more than four years of vigorous litigation. (ECF No. 197 at 17.) These efforts included an extensive investigation, which included interviewing third-party witnesses; filing an amended complaint after consolidation; a substantial victory at the motion to dismiss stage; and identification and retention of relevant experts. (*Id.* at 16.) Furthermore, Lead Counsel engaged in comprehensive discovery, including reviewing over 560,000 documents produced by Defendants and third parties; extensive class certification-related briefing and discovery, including taking and

defending nearly a dozen depositions; seeking discovery from individuals and entities in Canada; and responding to Defendants' discovery requests. (*Id.* at 16–17.) In addition, the extensive settlement negotiations were time-consuming, including three formal mediation sessions that culminated in the Settlement. (*Id.* at 17.) In the Fees Motion, Lead Plaintiff notes that Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process and assist with implementation of the Settlement. (*Id.* at 17 n.6.)

Based on the foregoing efforts by Lead Counsel, the Court concludes that the time and labor expended was appropriate and reasonable given the nature of the case, and finds that this factor supports the requested fee.

2. Novelty and Difficulty of Legal and Factual Questions

"Litigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to plead such claims." *In re Crocs*, 2014 WL 4670886, at *3. The difficulty and complexity of this case is demonstrated by the 105-page complaint and the Court's Orders—particularly its 40-page Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Consolidated Complaint. (ECF Nos. 44, 69.) Therefore, the obvious difficulty of litigating this case weighs in favor of the requested fee.

3. Skill Required and Preclusion from Other Employment

This action was litigated by firms with exceptional skill and reputations. On one side of the "v" is Lead Counsel, prominent and experienced plaintiff's counsel in securities class actions such as this one. (*See* ECF No. 201-6.) And on the other side were first Latham & Watkins LLP and then O'Melveny & Meyers LLP, two of the largest

13

and most successful firms in the United States.[3]  The Court agrees with Lead Plaintiff that the "skill, experience, reputation, and ability of both Lead Plaintiff's and Defendants' counsel further support the requested fee award."  (ECF No. 197 at 21.)  Further, the time and effort Lead Counsel was required to commit to overcome the difficulty of ligating this action against such formidable opposition caused Lead Counsel to forgo other work; this opportunity cost also weighs in favor of awarding the requested fee.  (*Id.* at 24.)

    4.    <u>The Amount Involved and Results Obtained</u>

Courts in this District have repeatedly found that when determining the amount of fees to be awarded, the "greatest weight should be given to the monetary results achieved for the benefits of the class."  *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("The degree of success . . . is a critical factor in determining the amount of fees to be awarded.").

As Lead Plaintiff points out, the monetary result here is "multiples above the median recovery of 4.9% [of recoverable damages] in securities class actions in 2022 where damages" are reasonably similar to those estimated by Lead Counsel.  (ECF No. 197 at 15–16.)  Here, the parties appear not to contest the fact that the likely maximum damages at trial were approximately $96 million, and therefore the Settlement recovers approximately 28% of the Class's damages.  *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing "approximately

---

[3] *The 2023 Am Law 100: Ranked by Gross Revenue*, The American Lawyer, April 18, 2023, https://www.law.com/americanlawyer/2023/04/18/the-2023-am-law-100-ranked-by-gross-revenue/.

14

1.3% of the amount of damages that could be achieved"). Given the nature of the recovery for class members, the Court finds that this factor also favors granting the fee request.

     5.    <u>Customary Fee and Awards in Similar Cases</u>

Courts in the Tenth Circuit have noted that "the typical fee award in complex cases is around one third of the common fund." *In re Crocs*, 2014 WL 4670886, at *3; *see also Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm"); *Nakkhumpun v. Taylor*, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (same).

In addition, the Court notes that a lodestar cross-check, while not required in the Tenth Circuit, supports the fee request. Here, Lead Counsel's calculated total lodestar is $8,662,461.25, and the requested 30% fee thus equates to a multiplier of 0.93 (or 93%). (ECF No. 197 at 18 (citing multiple cases in which courts found a percent award less than the lodestar amount was reasonable).) As the Court noted at the Settlement Fairness Hearing, Lead Counsel's hourly rates—ranging from $450 to $1,250 for attorneys, $150 to $625 for support staff, and $75–175 for interns[4]—are among the very highest hourly rates ever submitted to the undersigned. (ECF No. 205 at 21:16–22:13.) The undersigned stated that the highest rate ever submitted to him was approximately $950; however, in *Ramos v. Banner Health*, the undersigned approved a slightly higher rate in an ERISA class action. *See* 2020 WL 6585849 (D. Colo. Nov. 10, 2020) and 2021 WL 2823079 (D. Colo. July 7, 2021) (approving rates ranging from $490 to $1,060 per hour). Regardless, Lead Counsel's rates are very high for the Denver market and may therefore make the 30% fee look more reasonable in comparison to a lodestar

---

[4] Summer associates are included in this range.

15

calculated using rates more typical of Denver.

As Lead Counsel argued at the Settlement Fairness Hearing, however, it is common in this District to approve contingency fees resulting in fee awards that are multiples of the lodestar amount.  (ECF No. 205 at 24:1–8; *see, e.g.*, *In re DaVita*, 2015 WL 3582265, at *5 (multiplier of 3 "in line with the multipliers awarded in similar cases"); *In re Crocs*, 2014 WL 4670886, at *4 (referencing District cases approving multipliers ranging from 2.5 to 4.6).)  As already noted, the Settlement the Court approves in this Order is a superior result for the class, and the Court finds that whether understood as 93% of the lodestar as calculated by Lead Counsel, or some modest multiplier predicated on a more appropriate lodestar that might be calculated, the 30% fee requested remains well within the range customarily approved by courts.  Therefore, despite Lead Counsel's high hourly rates, the Court concludes this factor also supports the fee request.

      6.    <u>The Contingent Nature of the Fee</u>

"Federal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success."  *In re Crocs*, 2014 WL 4670886, at *5.  As a result, "[s]uch cases are often seen as undesirable."  *In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011).  Importantly, the risk that Lead Counsel "would recover no compensation for their extensive efforts was not merely hypothetical, especially where, as here, Lead Plaintiff[] w[as] subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision."  *In re Crocs*, 2014 WL 4670886, at *5.  To date, Lead Counsel has received no compensation for its prosecution of this case, and the primary focus of this

factor is to acknowledge this incongruence by permitting a higher recovery to compensate for the risk of recovering nothing. As courts in this District have held, "[a] contingent fee arrangement often weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *In re Crocs*, 2014 WL 4670886, at *4. The significant burdens inherent in a contingent fee arrangement in a case of this magnitude "weighs heavily in support of a substantial fee award." *Syngenta*, 357 F. Supp. 3d at 1113. The Court concludes that this factor also weighs in favor of the requested award.

    7.    <u>Undesirability of the Case</u>

Taking on actions requiring substantial upfront costs where both reimbursement of expenses and payment for the work done are contingent on victory is inherently "undesirable." *See Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, *12 (N.D. Okla. May 28, 2003). Therefore, "this case is . . . undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures, for the past [four] years." *Id.*

    8.    <u>Additional Considerations</u>

The Court briefly notes that none of the class members objected to the requested attorneys' fees, which weighs in favor of the requested award. *See Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.").

The Court finds that in combination the applicable *Johnson* factors compel its conclusion that 30% of the $27 million common fund, or $8,100,000, reflects a

17

reasonable attorney fee award in this case.  *See* 15 U.S.C. § 78u–4(a)(6).  As a consequence, the Court will grant in full Lead Plaintiff's request for attorneys' fees.

**B.      Expense Reimbursement**

The PSLRA also contemplates compensating class counsel for expenses incurred in prosecuting a class action.  15 U.S.C. § 78u–4(a)(6).  "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund."  *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423, 434 (E.D. Pa. 2001) (quotation marks omitted, emphasis in original).  Expenses "'that are normally itemized and billed in addition to the hourly rate should be included in fee allowances . . . if reasonable in amount.'"  *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (quoting *Ramos*, 713 F.2d at 559).

Lead Counsel seek reimbursement of $825,853.33 in litigation expenses reasonably incurred in litigating the action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses.  (ECF No. 197 at 25.)  *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *3 (D. Colo. July 31, 2014) ($3.5 million of expenses found reasonable in securities class action).  Lead Counsel provided a table itemizing the expenses for which they request reimbursement.  (ECF No. 201-2.)  Notably, the requested expenses are significantly less than the $1,000,000 amount set forth in the Notice, and no objections have been lodged thereto—further supporting the reasonableness of the expense reimbursement request.  (ECF No. 205 at 28:24–29:2.)  Moreover, on balance, the Court is satisfied by Lead Counsel's explanations for certain line items the Court had questions about during the Settlement Fairness Hearing, most

notably the costs incurred in the course of determining the viability of a Canadian class and performing discovery in Canada.  (*Id.* at 26:22–28–7.)

Upon due consideration, the Court concludes the total amount of expenses sought by Lead Plaintiff are reasonable, given the complexity and costly nature of this this litigation, and are of the type normally billed to clients.  The Court will therefore award Lead Counsel $825,853.33 in litigation expenses reasonably incurred in the prosecution of this case.

As requested, the fees award and expense reimbursement will accrue interest at the same rate as the Settlement Fund.

## VI. CONCLUSION

1. Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof (ECF No. 196) is GRANTED;

2. Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. § 78u-4(a)(4) and Memorandum of Points and Authorities in Support Thereof (ECF No. 197) is GRANTED;

3. The Stipulation of Settlement (ECF No. 178) is APPROVED; and

4. The Court SHALL RETAIN jurisdiction over the interpretation and implementation of the Settlement Agreement.

Dated this 9th day of January, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge